COURT OF APPEAL FOR THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

FRANK E. ROGOZIENSKI,                    CASE NO. D047858

    Plaintiff and Appellant,             San Diego County
                                         Superior Court
                                         Case No. GIC818343
JAMES D. ALLEN and S. MICHAEL
LOVE,

    Defendants and Respondents.

---

APPELLANT'S IN SUPPORT OF
APPELLANT'S OPENING BRIEF
VOLUME I OF II
Pages 1-275

---

On Appeal From The Superior Court
County of San Diego
The Honorable Joan M. Lewis

FRANK E. ROGOZIENSKI, INC.
FRANK E. ROGOZIENSKI, ESQ.  BAR NO. 53445
A Professional Corporation
Attorneys At Law
1650 Union Street, Third Floor
San Diego, CA 92101
Telephone: (619) 237-1678
Facsimile: (619) 237-1870
Attorneys for Plaintiff and Appellant

**EXHIBIT 2 PAGE 104**

LOVE00475

COURT OF APPEAL FOR THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRANK E. ROGOZIENSKI, | CASE NO. D047858 |
| Plaintiff and Appellant, | |
| | San Diego County |
| v. | Superior Court |
| | Case No. GIC843843 |
| JAMES D. ALLEN and S. MICHAEL LOVE, | |
| Defendants and Respondents. | |

---

**APPELLANT'S IN SUPPORT OF
APPELLANT'S OPENING BRIEF
VOLUME I OF II
Pages 1-275**

---

On Appeal From The Superior Court
County of San Diego
The Honorable Joan M. Lewis

FRANK E. ROGOZIENSKI, INC.
FRANK E. ROGOZIENSKI, ESQ., BAR NO. 51445
A Professional Corporation
Attorneys At Law
1660 Union Street, Third Floor
San Diego, CA 92101
Telephone:  (619) 237-1878
Facsimile:  (619) 237-1870
Attorneys for Plaintiff and Appellant

**EXHIBIT 2 PAGE 105**

LOVE00476

ROGOZIENSKI v. ALLEN, LOVE, et al.

APPENDIX

CHRONOLOGICAL INDEX

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|---|---|---|---|
| 1 | 03/07/03 03/10/03 07/03/03 | Request For Disclosure; Corrected Request For Disclosure; Findings And Order After Hearing | I;1-3 I;5-7 I;9-11 |
| 2 | 03/28/05 | First Amended Complaint For Damages, etc. | I;12-47 |
| 3 | 03/30/05 | Notice Of Correction Of Typographical Error In First Amended Complaint. | I;48-49 |
| 4 | 05/23/05 | Peremptory Challenge | I;50 |
| 5 | 05/25/05 | Notice Of Demurrer and Demurrer to First Amended Complaint by Defendant S. Michael Love | I;51-54 |
| 6 | 05/25/05 | Memorandum of Points and Authorities in Support of Demurrer of Defendant S. Michael Love to First Amended Complaint | I;55-69 |
| 7 | 05/25/05 | Request for Judicial Notice | I;70-83 |
| 8 | 05/26/05 | Notice Of Case Reassignment | I;84 |
| 9 | 06/13/05 | Notice of Hearing on Defendant, James D. Allen's Demurrer to Plaintiff's First Amended Complaint | I;85-86 |

i

**EXHIBIT 2 PAGE 106**

LOVE00477

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|---|---|---|---|
| 10 | 06/13/05 | Defendant, James D. Allen's Demurrer to Plaintiff's First Amended Complaint | I;87-93 |
| 11 | 06/13/05 | Defendant James D. Allen's Memorandum of Points and Authorities in Support of Demurrer to First Amended Complaint | I;94-114 |
| 12 | 06/13/05 | Defendant James D. Allen's Notice Of Lodgment Of Documents In Support Of Demurrer to Plaintiff's First Amended Complaint | I;115-241 |
| 13 | 06/13/05 | Defendant James D. Allen's Request For Judicial Notice In Support Of Demurrer To Plaintiff's First Amended Complaint | I;242-244 |
| 14 | 07/01/05 | Memorandum Of Points And Authorities In Opposition To Demurrer Of Defendant, S. Michael Love, To First Amended Complaint | I;245-262 |
| 15 | 07/01/05 | Memorandum Of Points And Authorities In Opposition To Demurrer Of Defendant, James D. Allen, To First Amended Complaint | I;263-275 |
| 16 | 07/01/05 | Notice Of Lodgment Of Non-California Cases [CRC 313(h)] (Plaintiff) | II;276-337 |

ii

**EXHIBIT 2 PAGE 107**

LOVE00478

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|-----|------|-------------|--------------------|
| 17 | 07/08/05 | Reply In Support Of Demurrer Of Defendant S. Michael Love To First Amended Complaint | II;338-348 |
| 18 | 07/08/05 | Defendant James D. Allen's Reply Memorandum Of Points And Authorities In Support Of Demurrer To Plaintiff's First Amended Complaint | II;349-359 |
| 19 | 07/08/05 | Defendant James D. Allen's Notice Of Lodgment Of Federal Authorities In Support Of Demurrer To Plaintiff's First Amended Complaint | II;360-438 |
| 20 | 07/13/05 | Minute Order Re: Court's Recusal | II;439 |
| 21 | 07/15/05 | Notice Of Case Reassignment Due To Challenge, Recusal Or Special Assignment | II;440 |
| 22 | 07/15/05 | Amended Notice Of Demurrer Hearing To First Amended Complaint By Defendant S. Michael Love | II;441 |
| 23 | 07/20/05 | Amended Notice Of Hearing On Defendant James D. Allen's Demurrer To Plaintiff's First Amended Complaint | II;442-443 |

iii

**EXHIBIT 2 PAGE 108**

L0VE00479

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|---|---|---|---|
| 24 | 07/20/05 | Second Amended Notice Of Demurrer Hearing To First Amended Complaint By Defendant S. Michael Love | II;444 |
| 25 | 07/25/05 | Notice Of Case Assignment And Case Management Conference | II;445 |
| 26 | 09/01/05 | Tentative Ruling | II;446-447 |
| 27 | 10/19/05 | Order Sustaining Defendants' James D. Allen And S. Michael Love's Demurrers To First Amended Complaint, And Each Cause Of Action, Without Leave To Amend | II;448-454 |
| 28 | 10/19/05 | Judgment Of Dismissal | II;455-458 |
| 29 | 11/09/05 | Proof Of Service By Mail (serving Nos. 26 and 27) | II;459-460 |
| 30 | 11/14/05 | Notice Of Ruling And Notice Of Order | II;461-469 |
| 31 | 11/14/05 | Notice Of Entry Of Judgment | II;470-476 |
| 32 | 11/14/05 | Proof Of Service By Mail (serving Nos. 29 and 30) | II;477-478 |
| 33 | 01/03/06 | Notice Of Appeal | II;479-480 |
| 34 | 01/06/06 | Notice Designating Record On Appeal | II;481-484 |

iv

**EXHIBIT 2 PAGE 109**

LOVE00480

LOVE00481

ROGOZIENSKI v. ALLEN, LOVE, et al.

APPENDIX

ALPHABETICAL INDEX

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|---|---|---|---|
| 22 | 07/15/05 | Amended Notice Of Demurrer Hearing To First Amended Complaint By Defendant S. Michael Love | II;441 |
| 23 | 07/20/05 | Amended Notice Of Hearing On Defendant James D. Allen's Demurrer To Plaintiff's First Amended Complaint | II;442-443 |
| 10 | 06/13/05 | Defendant, James D. Allen's Demurrer to Plaintiff's First Amended Complaint | I;87-93 |
| 11 | 06/13/05 | Defendant James D. Allen's Memorandum of Points and Authorities in Support of Demurrer to First Amended Complaint | I;94-114 |
| 12 | 06/13/05 | Defendant James D. Allen's Notice Of Lodgment Of Documents In Support Of Demurrer to Plaintiff's First Amended Complaint | I;115-241 |
| 19 | 07/08/05 | Defendant James D. Allen's Notice Of Lodgment Of Federal Authorities In Support Of Demurrer To Plaintiff's First Amended Complaint | II;360-438 |

v

**EXHIBIT 2 PAGE 110**

LOVE00482

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|---|---|---|---|
| 18 | 07/08/05 | Defendant James D. Allen's Reply Memorandum Of Points And Authorities In Support Of Demurrer To Plaintiff's First Amended Complaint | II;349-359 |
| 13 | 06/13/05 | Defendant James D. Allen's Request For Judicial Notice In Support Of Demurrer To Plaintiff's First Amended Complaint | I;242-244 |
| 2 | 03/28/05 | First Amended Complaint For Damages, etc. | I;12-47 |
| 28 | 10/19/05 | Judgment Of Dismissal | II;455-458 |
| 15 | 07/01/05 | Memorandum Of Points And Authorities In Opposition To Demurrer Of Defendant, James D. Allen, To First Amended Complaint | I;263-275 |
| 14 | 07/01/05 | Memorandum Of Points And Authorities In Opposition To Demurrer Of Defendant, S. Michael Love, To First Amended Complaint | I;245-262 |
| 6 | 05/25/05 | Memorandum of Points and Authorities in Support of Demurrer of Defendant S. Michael Love to First Amended Complaint | I;55-69 |
| 20 | 07/13/05 | Minute Order Re: Court's Recusal | II;439 |
| 34 | 01/06/06 | Notice Designating Record On Appeal | II;481-484 |

vi

**EXHIBIT 2 PAGE 111**

L0VE00483


| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|---|---|---|---|
| 33 | 01/03/06 | Notice Of Appeal | II;479-480 |
| 25 | 07/25/05 | Notice Of Case Assignment And Case Management Conference | II;445 |
| 8 | 05/26/05 | Notice Of Case Reassignment | I;84 |
| 21 | 07/15/05 | Notice Of Case Reassignment Due To Challenge, Recusal Or Special Assignment | II;440 |
| 3 | 03/30/05 | Notice Of Correction Of Typographical Error In First Amended Complaint | I;48-49 |
| 5 | 05/25/05 | Notice Of Demurrer and Demurrer to First Amended Complaint by Defendant S. Michael Love | I;51-54 |
| 31 | 11/14/05 | Notice Of Entry Of Judgment | II;470-476 |
| 9 | 06/13/05 | Notice of Hearing on Defendant, James D. Allen's Demurrer to Plaintiff's First Amended Complaint | I;85-86 |
| 16 | 07/01/05 | Notice Of Lodgment Of Non-California Cases [CRC 313(h)] (Plaintiff) | II;276-337 |
| 30 | 11/14/05 | Notice Of Ruling And Notice Of Order | II;461-469 |

vii

EXHIBIT 2 PAGE 112

LOVE00484

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|---|---|---|---|
| 27 | 10/19/05 | Order Sustaining Defendants' James D. Allen And S. Michael Love's Demurrers To First Amended Complaint, And Each Cause Of Action, Without Leave To Amend | II;448-454 |
| 4 | 05/23/05 | Peremptory Challenge | I;50 |
| 29 | 11/09/05 | Proof Of Service By Mail (serving Nos. 26 and 27) | II;459-460 |
| 32 | 11/14/05 | Proof Of Service By Mail (serving Nos. 29 and 30) | II;477-478 |
| 17 | 07/08/05 | Reply In Support Of Demurrer Of Defendant S. Michael Love To First Amended Complaint | II;338-348 |
| 1 | 03/07/03 03/10/03 07/03/03 | Request For Disclosure; Corrected Request For Disclosure; Findings And Order After Hearing | I;1-3 I;5-7 I;9-11 |
| 7 | 05/25/05 | Request for Judicial Notice | I;70-83 |
| 24 | 07/20/05 | Second Amended Notice Of Demurrer Hearing To First Amended Complaint By Defendant S. Michael Love | II;444 |
| 26 | 09/01/05 | Tentative Ruling | II;446-447 |

viii

**EXHIBIT 2 PAGE 113**

LOVE00485

1

EXHIBIT 2 PAGE 114

LOVE00486

1   GERALD L. McMAHON (#036050)
    SELTZER CAPLAN McMAHON VITEK
2   A Professional Corporation
    Attorneys at Law
3   750 "B" Street, 2100 Symphony Towers
    San Diego, CA 92101
4   Telephone: (619) 685-3003
    Facsimile: (619) 685-3100
5
6   FRANK E. ROGOZIENSKI (#51445)
    FRANK E. ROGOZIENSKI, INC.
7   A Professional Corporation
    Attorneys at Law
8   Coronado Professional Square
    1203 Second Street
9   Coronado, CA 92118
    Telephone: (619) 437-1878
10  Facsimile: (619) 437-4894

11  Attorneys for Respondent

12

13          SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                   COUNTY OF SAN DIEGO

15  In Re The Marriage Of:            )     No. D 440154
                                      )
16  Petitioner: SHIRLEY L. ROGOZIENSKI )    REQUEST FOR DISCLOSURE
                                      )     TO THE PARTIES
17      and                           )
                                      )
18  Respondent: FRANK E. ROGOZIENSKI  )
                                      )
19  ─────────────────────────────────

20

21      TO:  Temporary Judge James D. Allen:

22      Respondent respectfully requests the temporary judgment make

23  disclosure to the parties as required by Rule 244(c) of the

24  California Rules Of Court (including but not limited to subdivision

25  / / / /

26  / / / /

27

28

REQUEST FOR DISCLOSURE TO THE PARTIES

                              1                    **EXHIBIT 2 PAGE 115**

                                                                    1-

L0VE00487

1  D(2)(f) of Canon 6 of the Code of Judicial Ethics) and as otherwise

2  required by law.

3  Dated: March 7, 2003

FRANK E. ROGOZIENSKI, INC.

By: _____

Frank E. Rogozienski
Attorney for Respondent

REQUEST FOR DISCLOSURE TO THE PARTIES

2

**EXHIBIT 2 PAGE 116**

2

LOVE00488

1    FRANK E. ROGOZIENSKI, ESQ. (Bar No. 51445)
     FRANK E. ROGOZIENSKI, INC.
2    A Professional Corporation
     Attorneys at Law
3    Coronado Professional Square
     1203 Second Street
4    Coronado, CA 92118
     Telephone: (619)437-1878
5    Facsimile: (619)437-4894
6    Attorneys for Respondent

7

8         SUPERIOR COURT OF THE STATE OF CALIFORNIA
             FOR THE COUNTY OF SAN DIEGO
9

10   SHIRLEY ROGOZIENSKI     )   CASE NO. D440154
             Petitioner,  )   PROOF OF SERVICE
11                   )
12          v.           )
13                   )
   FRANK E. ROGOZIENSKI     )
14          Respondent.)
15   _____)

16

17      I, the undersigned, certify and declare that I am a citizen of the United
   States, over the age of 18 years, employed in the County of San Diego, State of
   California, and not a party to the above entitled cause. On March 7, 2003, I
   served by facsimile transmission, a copy of the attached REQUEST FOR DISCLOSURE
   TO THE PARTIES, as follows:

S. MICHAEL LOVE, ESQ.              GERALD L. McMAHON, ESQ.
McDOUGAL LOVE BORIS & BOEHMER      SELTZER CAPLAN McMAHON VITEK
450 N. Magnolia, Drawer 1466        750 "B" St., No. 2100
El Cajon, CA 92020              San Diego, CA 92101
(619)440-4907                (619)702-6803

JAMES D. ALLEN (TEMPORARY JUDGE)
ALLEN MAGIDSON
401 West "A", Ste. 2050
San Diego, CA 92101
(619)232-2951

Executed on: March 7, 2003

    I declare under penalty of perjury under the laws of the State of California
that the above is true and correct.

                            _____
                            Sherryl M. Bolinger

**EXHIBIT 2 PAGE 117**

3

LOVE00489

**EXHIBIT 2 PAGE 118**    4

LOVE00490

GERALD L. McMAHON (#036050)
SELTZER CAPLAN McMAHON VITEK
A Professional Corporation
Attorneys at Law
750 "B" Street, 2100 Symphony Towers
San Diego, CA 92101
Telephone: (619)685-3003
Facsimile: (619)685-3100

FRANK E. ROGOZIENSKI (#51445)
FRANK E. ROGOZIENSKI, INC.
A Professional Corporation
Attorneys at Law
Coronado Professional Square
1203 Second Street
Coronado, CA 92118
Telephone: (619)437-1878
Facsimile: (619)437-4894

Attorneys for Respondent

*original mailed for filing 3/10/03*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

In Re The Marriage of:

Petitioner: SHIRLEY L. ROGOZIENSKI

    and

Respondent: FRANK E. ROGOZIENSKI

No. D 440154

[CORRECTED][1]
REQUEST FOR DISCLOSURE
TO THE PARTIES

TO:  Temporary Judge James D. Allen:

Respondent respectfully requests the temporary judge make disclosure to the parties as required by Rule 244(c) of the California Rules Of Court (including but not limited to subdivision

---

[1]To correct a typographical error in the Request For Disclosure To The Parties dated and served March 7, 2003.

REQUEST FOR DISCLOSURE TO THE PARTIES

1

**EXHIBIT 2 PAGE 119**

5.

LOVE00491

1   D(2)(f) of Canon 6 of the Code of Judicial Ethics) and as otherwise

2   required by law.

3   Dated: March 10, 2003               FRANK E. ROGOZIENSKI, INC.

4

5                             By: _____

6                                Frank E. Rogozienski
                                   Attorney for Respondent

REQUEST FOR DISCLOSURE TO THE PARTIES

**EXHIBIT 2 PAGE 120**

8

LOVE00492

1  FRANK E. ROGOZIENSKI, ESQ. (Bar No. 51445)
2  FRANK E. ROGOZIENSKI, INC.
   A Professional Corporation
3  Attorneys at Law
   Coronado Professional Square
4  1203 Second Street
   Coronado, CA 92118
5  Telephone: (619)437-1878
   Facsimile: (619)437-4894
6  Attorneys for Respondent
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
                    FOR THE COUNTY OF SAN DIEGO

   SHIRLEY ROGOZIENSKI          )    CASE NO. D440154
                   Petitioner,  )    PROOF OF SERVICE
                                )
              v.                )
                                )
   FRANK E. ROGOZIENSKI         )
                   Respondent.) )
                                )
                                )

         I, the undersigned, certify and declare that I am a citizen of the United
   States, over the age of 18 years, employed in the County of San Diego, State of
   California, and not a party to the above entitled cause.  On March 10, 2003, I
   served by United States mail, postage prepaid, and by facsimile transmission, a
   copy of the attached [CORRECTED] REQUEST FOR DISCLOSURE TO THE PARTIES, as
   follows:

   S. MICHAEL LOVE, ESQ.                    GERALD L. McMAHON, ESQ.
   McDOUGAL LOVE ECKIS & BOEHMER            SELTZER CAPLAN McMAHON VITEK
   460 N. Magnolia, Drawer 1466             750 "B" St., No. 2100
   El Cajon, CA 92020                       San Diego, CA 92101
   (619)440-4907                            (619)702-5803

   JAMES D. ALLEN (TEMPORARY JUDGE)
   ALLEN MAGIDSON
   401 West "A", Ste. 2050
   San Diego, CA 92101
   (619)232-2051

   Executed on: March 10, 2003

         I declare under penalty of perjury under the laws of the State of California
   that the above is true and correct.

                                    _____
                                    Sherryl M. Bolinger

                                         **EXHIBIT 2 PAGE 121**

7

LOVE00493

8

EXHIBIT 2 PAGE 122

MAY. 27. 2004   12:47PM                                      NO.696    P.1

FL-340

| ATTORNEY OR PARTY WITHOUT ATTORNEY (N...     ...res): | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

GERALD L. MC MAHON, ESQ. (SBN 036050)      619/685-3003
SELTZER CAPLAN MC MAHON VITEK, A Law Corporation
750 "B" Street
2100 Symphony Towers
San Diego, CA  92101
ATTORNEY FOR (Name): Frank E. Rogozienski

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO
  STREET ADDRESS: 1551-55 Sixth Avenue
  MAILING ADDRESS: Same
  CITY AND ZIP CODE: San Diego, CA  92101
  BRANCH NAME: Downtown Family Law

PETITIONER/PLAINTIFF: SHIRLEY L. ROGOZIENSKI

RESPONDENT/DEFENDANT: FRANK E. ROGOZIENSKI

CLAIMANT:

**F I L E D**
Clerk of the Superior Court

JUL 0 3 2003

By A. HUSTED, Deputy

| FINDINGS AND ORDER AFTER HEARING | CASE NUMBER: D 440154 |
|---|---|

1. This proceeding was heard
   on (date): June 3, 2003       at (time): 9:00 a.m.  In Dept.: F-1      Room:
   by Judge (name): Hon. DeAnn M. Salcido      ☐ Temporary Judge

   ☐ Petitioner/plaintiff present                    S. Michael Love and
   ☒ Respondent/defendant present            ☒ Attorney present (name): Steven E. Boehmer
   ☐ Claimant present                                   ☒ Attorney present (name): Gerald L. McMahon
   On the order to show cause or motion filed (date): 4/17/03      ☐ Attorney present (name):
                                                                         by (name): Petitioner Shirley
                                                                                          Rogozienski
2. THE COURT ORDERS
3. Custody and visitation:          ☐ As attached        ☒ Not applicable

4. Child support:                      ☐ As attached        ☒ Not applicable

5. Spousal-Family support:       ☐ As attached        ☒ Not applicable

6. Property orders:                   ☐ As attached        ☒ Not applicable

7. Other orders:                       ☒ As attached        ☐ Not applicable

8. ☐ Attorney fees (specify amount): $
      Payable to (name and address):

      Payable  ☐ forthwith   ☐ other (specify):

9. All other issues are reserved until further order of court.

Date:   JUL 0 3 2003

                                             ▶ DEANN M. SALCIDO
Approved as conforming to court order.                    JUDGE OF THE SUPERIOR COURT

▶ SEE SIGNATURE ATTACHED HERETO

SIGNATURE OF ATTORNEY FOR   ☐ PETITIONER / PLAINTIFF  ☒ RESPONDENT / DEFENDANT

Form Adopted for Mandatory Use
Judicial Council of California
FL-340 (Rev. January 1, 2003)
**FINDINGS AND ORDER AFTER HEARING**
(Family Law—Custody and Support—Uniform Parentage)
Legal
Solutions
Plus

Page 1 of ____

9

**EXHIBIT 2 PAGE 123**

L0VE00495

COPY



1  GERALD L. McMAHON (#036050)
   SELTZER CAPLAN McMAHON VITEK
2  A Law Corporation
3  750 "B" Street, 2100 Symphony Towers
   San Diego, CA 92101
4  Telephone: (619) 685-3003
5  Facsimile: (619) 685-3100

6  FRANK E. ROGOZIENSKI (#051445)
7  FRANK E. ROGOZIENSKI, INC.
   A Professional Corporation
8  Attorneys at Law
9  Coronado Professional Square
   1203 Second Street
10 Coronado, CA 92118
   Telephone: (619) 437-1878
11 Facsimile: (619) 437-4894

12
   Attorneys for Respondent
13

14            SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                        COUNTY OF SAN DIEGO

16  In Re The Marriage Of:              )  No. D 440154
                                        )
17                                      )
18  Petitioner:  SHIRLEY L. ROGOZIENSKI )  ORDER RE PETITIONER'S MOTION TO
                                        )  QUASH DEPOSITION SUBPOENAS TO
19            and                       )  S. MICHAEL LOVE, HAROLD S.
                                        )  BOTTOMLEY, III, AND TEMPORARY
20  Respondent:  FRANK E. ROGOZIENSKI   )  JUDGE JAMES D. ALLEN; AND FOR
                                        )  MONETARY SANCTIONS
21                                      )
22                                      )  DATE: June 3, 2003
                                        )  TIME: 9:00 a.m.
23 _____)  DEPT: F-1

24

25      Petitioner's above-captioned motion came on regularly for hearing on June 3, 2003 at

26  9:00 a.m., in Department F-1 before the Hon. Deann Salcido, Judge Presiding.  Petitioner was

27  represented by attorneys S. Michael Love and Steven E. Boehmer; Respondent was present

28

─────────────────────────────────────────────────────────
Order Re Petitioner's Motion to Quash Deposition Subpoenas to S. Michael Love, Harold S. Bottomley, III, and Judge    10
James D. Allen; and for Monetary Sanctions

                                **EXHIBIT 2 PAGE 124**

LOVE00496

MAY. 27. 2004  12:29PM                                                  NO. 638    P. 2

and was represented by attorney Gerald L. McMahon.  The Court, having examined the papers

submitted in support of and in opposition to the motion, having heard the arguments of

counsel, and the matter being submitted, hereby ORDERS that:

     1.   Petitioner's motion is denied, except as follows;

     2.   Respondent shall not be permitted to take the oral deposition of S. Michael Love

        at this time.  This order is without prejudice to Respondent proceeding by way of

        interrogatories and/or other discovery devices directed to Mr. Love, after which,

        if Respondent believes that Mr. Love's oral deposition is still needed,

        Respondent may seek leave of court to do so on ex parte application or noticed

        motion.

APPROVED AS TO FORM:      McDOUGAL, LOVE, ECKIS, SMITH & BOEHMER

                           By: _____

                              Steven E. Boehmer, Esq.
                              Attorneys for Petitioner

                             IT IS SO ORDERED

DATE: _____JUL 0 3 2003_____        DE ANN M. SALCIDO
                              JUDGE OF THE SUPERIOR COURT

**EXHIBIT 2 PAGE 125**

2

Order Re Petitioner's Motion to Quash Deposition Subpoenas to S. Michael Love, Harold S. Bottomley, III, and Judge    1
James D. Allen; and for Monetary Sanctions

LOVE00497

2

EXHIBIT 2 PAGE 126

LOVE00498

1    FRANK E. ROGOZIENSKI, ESQ., California Bar No. 51445
2    FRANK E. ROGOZIENSKI, INC.
3    A Professional Corporation
    Attorneys at Law
4    Coronado Professional Square
    1203 Second Street
5    Coronado, CA 92118
    Telephone: (619)437-1878
6    Facsimile: (619)437-4894

FILED
CIVIL BUSINESS OFFICE 18
CENTRAL DIVISION

2005 MAR 28 P 4 20

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

7    Attorneys for Plaintiff, FRANK E. ROGOZIENSKI

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11               FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| FRANK E. ROGOZIENSKI, ) | Case No. GIC843843 |
| Plaintiff, ) | FIRST AMENDED COMPLAINT FOR DAMAGES (Interference with Contract, Interference with Economic Relations, Civil Rights Violations, Deceit-Fraudulent Concealment, Breach of Contract, Unfair Competition, Intentional Misconduct, Negligence and Unjust Enrichment) |
| v. ) | |
| JAMES D. ALLEN, S. MICHAEL ) LOVE and DOES 1 through 10, ) inclusive, ) | |
| Defendants. ) | |

Plaintiff alleges:

### 1. JURISDICTION AND VENUE

1.    The within action is an unlimited civil case for damages in excess of $25,000.00.

2.    The within action arose in San Diego, California.

/ / /

/ / /

**EXHIBIT 2 PAGE 127**

1

FIRST AMENDED COMPLAINT FOR DAMAGES

12

LOVE00499

A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
1ST POST OFFICE BOX 181890
1609 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1617
(619) 437-1976

## 2. PARTIES

3.    At all times herein mentioned, Plaintiff was, and now is, a resident of San Diego County, California.

4.    At all times herein relevant, Defendant, JAMES D. ALLEN [herein "ALLEN"], was, and now is, a resident of San Diego County, California. At all times herein relevant, ALLEN was, and now is, an attorney duly licensed to practice law in the State of California. At all times herein relevant, ALLEN engaged in the practice of law as a sole proprietor under the fictitious name "Allen-Magidson".

5.    At all times herein relevant, Defendant, S. MICHAEL LOVE [herein "LOVE"] was, and now is, a resident of San Diego County, California. At all times herein relevant, LOVE was, and now is, an attorney duly license to practice law in the State of California.

6.    Plaintiff is ignorant of the true names or capacities of Defendants sued herein under the fictitious names DOES 1 through 10, and therefore sues such Defendants pursuant to California Code of Civil Procedure section 474.   Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 are residents and citizens of one of the States of the United States, and participated in the acts herein alleged and are responsible in some manner for the injuries and damages to Plaintiff as herein alleged.

7.    Plaintiff is informed and believe, and thereon alleges, that at times herein relevant, each of the Defendants was the agent and employee of each of the remaining Defendants, and was at times herein mentioned acting within the purpose and scope of said agency

**EXHIBIT 2 PAGE 128**

FIRST AMENDED COMPLAINT FOR DAMAGES

13

LOVE00500

1  and employment, and further that each of the Defendants at times

2  herein mentioned conspired and agreed together and acted in concert

3  in proximately causing the injuries and damages to Plaintiff as

4  herein alleged.  Plaintiff is further informed and believes, and

5  thereon alleges, that at other times herein mentioned, each of the

6  Defendants was acting solely in their individual capacities, and

7  that with respect to those acts, each of the other Defendants

8  ratified, affirmed and adopted these actions.

9

10    8.    Plaintiff is in some doubt as to whether he is entitled

11  to redress from all of the Defendants or from one or more of them,

12  and all Defendants have therefore been joined herein with the

13  intent that the question as to whether all the Defendants are, or

14  one or more of them are, liable to Plaintiff, and to what extent,

15  and that the liability may be determined in this action; and that

16  the Court may award judgment to Plaintiff as against the Defendants

17  either jointly, severally or in the alternative.

18

19                    3. FACTUAL BACKGROUND

20              A. The Underlying Proceeding

21    9.    Plaintiff was married in 1982, and in October, 1997,

22  Plaintiff's then spouse [herein the "Petitioner"] brought a

23  Petition for Dissolution of their marriage [herein the "Underlying

24  Proceeding"].    In the Underlying Proceeding, LOVE represented

25  Petitioner until February, 2005 when he withdrew as Petitioner's

26  attorney of record.

27  / / /

28                                        **EXHIBIT 2 PAGE 129**

A PROFESSIONAL CORPORATION
COLE & ASSOCIATES
POST OFFICE BOX 1529
1825 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1979

LOVE00501

**B. Agreement to Employ And to Pay ALLEN**

10.  In or about June 1998, Plaintiff and Petitioner entered into a written agreement in which they agreed (a) to the entry of an order that ALLEN could act as temporary judge in the Underlying Proceeding and (b) that all costs of ALLEN shall be borne by them, with each paying one-half the cost of the services of ALLEN. Although, no hourly rate or fee amount was set expressly forth in the written agreement, the agreement was that Plaintiff would pay one-half of ALLEN's services in the Underlying Proceeding at ALLEN's normal and customary billing rate as an attorney on a fee-for-service basis.  Between June 1998 and August 4, 1998, and prior to his appointment as temporary judge, ALLEN performed services and charged fees which were paid under Plaintiff's and Petitioner's agreement one-half by Plaintiff and one-half by Petitioner.  ALLEN served as temporary judge from the time of his appointment by the Presiding Judge of the Superior Court on August 4, 1998 until his withdrawal on March 27, 2003 in response to Plaintiff's challenge of him for cause.  At all times herein relevant, ALLEN submitted billings to Plaintiff as a lawyer on the letterhead of Allen-Magidson.

**C. Harold S. Bottomley**

11.  At all times herein relevant, Harold S. Bottomley [herein "Bottomley"] was, and now is, an attorney duly licensed to practice law in the State of California.  Bottomley had been an associate of ALLEN's former law firm on two occasions for a number of years

A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
1205 SECOND STREET AT ORANGE AVENUE
CORONADO, CALIFORNIA 92118-4417
(619) 437-1079

4

**EXHIBIT 2 PAGE 130**

15

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00502

A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181417
1809 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 497-1879

during the 1980ies and then again for several years in the 1990ies. At all times herein relevant, ALLEN and Bottomley were good friends, and with their respective families, regularly socialized together. At times herein relevant, ALLEN and Bottomley shared Charger tickets. ALLEN and Bottomley have referred cases to each other. As more fully alleged herein, Bottomley acted as the strawman in the transfer to ALLEN of the LOVES' Unit 850A one-half interest in Warner Springs Ranch.

D. Relationships between LOVE and ALLEN

12. At all times herein relevant, ALLEN and LOVE were well acquainted, had a social relationship, and at times were officers and members of the same associations. At all times herein relevant, they were on a first name basis. At times herein relevant, LOVE had been to ALLEN's home. Neither LOVE nor ALLEN made any disclosure of these relationships, and Plaintiff did not learn of these relationships prior to ALLEN's withdrawal in March 2003 as temporary judge in the Underlying Proceeding.

E. ALLEN's Interest in Warner Springs Ranch

13. Sometime prior to November 2001, Bottomley and his family visited the Alisol Ranch near Santa Barbara, and thereafter Bottomley discussed with ALLEN how much they had enjoyed it. ALLEN and Bottomley agreed they would share a trip there together.

14. Between October 24, 2001 and November 19, 2001, ALLEN, acting in his role as then temporary judge in the Underlying Proceeding, presided over elements of the trial in that proceeding.

**EXHIBIT 2 PAGE 131**

5

6

LOVE00503

1  LOVE was Petitioner's lead trial attorney in that trial.

2  

3  15.  In about November 2001, Bottomley took his family to

4  Warner Springs Ranch, and as a result of that experience and

5  because it was much closer and considerably less expensive than the

6  Alisol Ranch, became interested in becoming a member.  ALLEN and

7  Bottomley then had discussions about inquiries Bottomley was making

8  concerning acquiring a membership in Warner Springs Ranch, and how

9  it would be very nice if the two of them were members so they could

10  go there together with their respective families.  Bottomley was

11  made aware that Warner Springs Ranch Realty was offering half-

12  interests in Warner Springs Ranch for $2,500.

13  ### F.  The Conspiracy Between LOVE and ALLEN

14  16.  In or about the Summer of 2001, but no later than

15  November or early December of 2001, ALLEN and LOVE entered into a

16  conspiracy [herein the "CONSPIRACY"] to benefit themselves and

17  others with whom they were associated designed to injure, harm and

18  cause damage to Plaintiff by, among other things, interfering with

19  Plaintiff's contractual relations; interfering with Plaintiff's

20  prospective economic advantage, violating Plaintiff's civil

21  rights, defrauding and deceiving Plaintiff, engaging in unfair

22  competition in violation of applicable California law, and engaging

23  in willful and negligent misconduct.  As more fully alleged herein,

24  a purpose of the CONSPIRACY was for LOVE to make a gift to ALLEN of

25  the LOVE's interest in Warner Springs Ranch in violation of ALLEN's

26  and  LOVE's ethical and other obligations, and to conceal the fact

27  

28  

**EXHIBIT 2 PAGE 132**

6

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00504

1   of such gift.

2

3      17. In about November or early December 2001, ALLEN had a

4 conversation with LOVE about Warner Springs Ranch. LOVE told ALLEN

5 he was interested in divesting himself of his membership in Warner

6 Springs Ranch since his children were grown and LOVE and his wife

7 had recently joined the San Diego Country Club and were not using

8 Warner Springs Ranch any longer. ALLEN told LOVE of Bottomley's

9 interest, called Bottomley, advised him of LOVE's comments, and

10 suggested Bottomley call LOVE. At the time, the LOVES owned two

11 independent and separate half-interests or memberships in the

12 Ranch, namely Unit 850A and Unit 1546B. The "A" Unit permitted use

13 of the Ranch and its facilities during odd months of the year and

14 the "B" Unit permitted use during even months of the year.

15      18. At a Christmas party at ALLEN's residence in December

16 2001, Bottomley spoke with the LOVES about Warner Springs Ranch,

17 the Bottomleys' recent visit there, and the things the Ranch had to

18 offer. The LOVES discussed their membership, that they weren't

19 using it anymore and would Bottomley and his wife be interested in

20 assuming the LOVES' interest and the monthly membership fees. On

21 information and belief, ALLEN knew at the time of this discussion

22 that LOVE was talking to Bottomley about the LOVES' interest in

23 Warner Springs Ranch.

24

25      19. At the end of the Christmas party, and after the other

26 guests had left, Bottomley stayed behind and spoke with ALLEN about

27 his discussion with LOVE earlier that evening, and that he was

28

7

**EXHIBIT 2 PAGE 133**

FIRST AMENDED COMPLAINT FOR DAMAGES

18

1  going to acquire the LOVES' interest in Warner Springs Ranch.

2  Following the Christmas party, Bottomley and ALLEN discussed that

3  if Bottomley acquired the LOVES' interest at no cost, Bottomley

4  would split the cost of whatever it would have cost ALLEN to

5  acquire a full interest in the Ranch, so that each of them would

6  have the same financial investment in their memberships and split

7  it that way.  Their idea was that Bottomley and ALLEN would each

8  have full memberships so they could use Warner Springs Ranch

9  together during the same months.  In these conversations, Bottomley

10  also learned from ALLEN that ALLEN was acting as a temporary judge

11  in the Underlying Proceeding where LOVE was representing a party

12      20.  Within a week or ten days after the Christmas party,

13  Bottomley decided the $260 monthly cost of a full membership or

14  interest in Warner Springs Ranch did not make good financial sense

15  for him and his wife, and decided it would be better for them not

16  to have a full [A and B] membership, but rather to have a B half-

17  membership, and to see whether or not the A half-membership a part

18  of what the LOVES were going to convey, could be converted into a

19  B half-membership to be given to ALLEN so that ALLEN could use the

20  Ranch at the same time (during the same months) as the Bottomleys.

21  Bottomley then spoke to LOVE about Bottomley and ALLEN each taking

22  one of the LOVES' two half memberships.  And although LOVE

23  allegedly told Bottomley at the time that "I really don't want to

24  know any more about [your] business, [and] I can't do anything

25  directly with Mr. ALLEN", he nevertheless wrote the below letter of

26

27

28

EXHIBIT 2 PAGE 134

8

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00506

January 11, 2002 to Warner Springs Ranch and continued to work towards the transaction that placed the LOVES' Unit 1546B one-half interest in Bottomleys' names and LOVES' Unit 850A one-half interest in ALLEN's name. ALLEN was aware that both the half-interests were coming from the LOVES.

21. In a letter dated January 11, 2002, LOVE solicited Warner Springs Ranch to be able to convert his A and B half-interests into two A or two B half-interests. LOVE sent a copy of his letter to Bottomley. In his letter LOVE states he "personally know[s] each of the families to whom [he is proposing to sell his half-interests] and each of the male members of the families are attorneys," a reference to ALLEN and Bottomley. At the time of LOVE's letter, ALLEN was separated or divorced, and on information and belief, LOVE intentionally misled and deceived Warner Springs Ranch by characterizing his intended gift to ALLEN of an interest in Warner Springs Ranch as a "sale" to unnamed "families."

22. Following LOVE's letter, Bottomley's contemporaneous handwritten notes reflect a telephone discussion with LOVE on January 18, 2002. In this conversation, LOVE told Bottomley that the Ranch would not allow conversion of the LOVES' two half-interests into either two A's or two B's. Bottomley then asked LOVE if he could find out what it would cost to upgrade the half-interest going to ALLEN to a full interest. Bottomley discussed what LOVE had told him with ALLEN.

23. Bottomley's contemporaneous handwritten notes also

EXHIBIT 2 PAGE 135

9

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00507

reflect a telephone discussion with LOVE on January 23, 2002. In this conversation LOVE told Bottomley of a "trade-up" option which Warner Springs Ranch was offering, whereby an owner of an A or a B half-interest could trade that one half-interest up to a full (A and B) membership for $850. Bottomley then discussed this with ALLEN.

24.    Before transfer of the LOVES' two half-interests in Warner Springs Ranch, ALLEN agreed with Bottomley that he (ALLEN) would take one of the LOVES' one-half-interests, and use it to "trade-up" (with $850) for a full membership. This would permit ALLEN to use the Ranch during the same months when Bottomley would also be using the facilities. At the time ALLEN agreed with Bottomley to take one of the LOVES' half-interests, ALLEN knew Bottomley was getting both half interests from LOVE, that Bottomley did not intend to keep both half-interests himself, and that Bottomley intended to immediately transfer one of the LOVES' half interests to ALLEN. Both ALLEN and LOVE knew that Bottomley was acting as a strawman in the gift to ALLEN of the LOVES' Unit 850A one-half interest in Warner Springs Ranch.         **EXHIBIT 2 PAGE 136**

G. The gift to ALLEN of the LOVES' half-interest in
Warner Springs Ranch

25.    By Quit Claim Deeds signed February 8, 2002, (a) the LOVES transferred to Bottomley and his wife the LOVES' Unit 1546B one-half interest in Warner Springs Ranch, and (b) the LOVES transferred to Bottomley (and not Mr. Bottomley) the LOVES' Unit 850A one-half interest in Warner Springs Ranch. Both Quit Claim

A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
FOUR CORNERS PROFESSIONAL
1205 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1876

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00508

1
2    Deeds were recorded by Bottomley on February 22, 2002. As more
3    fully hereinafter alleged, both LOVE and ALLEN knew the reason for
4    the transfer of the LOVES' Unit 850A interest in Warner Springs
5    Ranch to Bottomley, and to only Bottomley, and not to Bottomley and
6    his wife, was that Bottomley was acting as a strawman for the
7    transfer of that interest through to ALLEN, its intended recipient.

8         26.   By Quit Claim Deed signed March 15, 2002, Bottomley
9    transferred to ALLEN the LOVES' Unit 850A one-half interest in
10   Warner Springs Ranch. This Quit Claim Deed was recorded March 18,
11   2002.

12        27.   Bottomley did not prepare any of the deeds which
13   transferred the LOVES' half-interests in Warner Springs Ranch.
14   LOVE (or someone on his behalf) prepared the Quitclaim Deed from
15   the LOVES, and ALLEN (or someone on his behalf) prepared the
16   Quitclaim Deed to himself.   Bottomley explained to LOVE his
17   intention of transferring the LOVES' Unit 850A half-interest to
18   ALLEN so ALLEN could use that half-interest to upgrade to a full
19   membership.  Bottomley further explained to LOVE that because he
20   [Bottomley] was simply passing Unit 850A on to ALLEN, it did not
21   make sense for LOVE to prepare the Quitclaim Deed for that half-
22   interest in Bottomley's and his wife's names, as LOVE was doing for
23   the LOVES' Unit 1546B half-interest which Bottomley and his wife
24   were keeping.  Bottomley explained that it would be simpler if only
25   he (and not Bottomley and his wife) had to sign the transfer
26   through to ALLEN.   The Quitclaim Deeds transferring the LOVES'
27
28

**EXHIBIT 2 PAGE 137**

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00509

CORONADO PROFESSIONAL (LAW FIRM)
1200 FIRST STREET, "D" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1676

1   interests in Warner Springs Ranch recite they are "gifts".

2

3       28.   In February, 2002, ALLEN contacted Warner Springs Ranch

4   to ask if it would be possible for him to "upgrade" the half-

5   interest he was going to receive through Bottomley to a full

6   interest (so that he and Bottomley could utilize the Ranch

7   facilities at the same time).

8       29.   On February 27, 2002, after receiving the recorded

9   Quitclaim Deeds from the LOVES back from the San Diego County

10  Recorder's office, Bottomley faxed to ALLEN a copy of the Quitclaim

11  Deed from the LOVES for Unit 850A for ALLEN to prepare the deed

12  conveying this Unit to himself. On information and belief, neither

13  LOVE, ALLEN nor Bottomley took any steps to cause the records of

14  Warner Springs Ranch to be changed to reflect this transaction

15  because Defendants knew that Bottomley would immediately transfer

16  the LOVES' Unit 850A half-interest to ALLEN, its intended

17  recipient.

18

19      30.   In mid-March, 2002, ALLEN prepared and had Bottomley sign

20  a Quitclaim Deed transferring the LOVES' Unit 850A half-interest

21  to himself. This deed recites it is a "gift". ALLEN caused this

22  deed to be recorded on March 18, 2002, however, on information and

23  belief, did not take any steps to cause the records of Warner

24  Springs Ranch to be changed to reflect ALLEN's ownership of the

25  LOVES' Unit 850A.

26      31.   After receiving the recorded deed to Unit 850A from the

27  San Diego County Recorder, in late March, 2002, and prior to May

28

**EXHIBIT 2 PAGE 138**

12

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00510

20, 2002, ALLEN had communications with the Warner Springs Ranch Owners Association [the "Association"] to trade-up the LOVES' Unit 850A into a new, full membership.   ALLEN was informed that the title company had some questions regarding the transfer by the LOVES. To resolve these questions, ALLEN called LOVE to discuss "some recordation problem," and asked that LOVE assist him in resolving a matter involving Unit 850A that had occurred when the LOVES owned that Unit.

32.   After the title problems were resolved, ALLEN signed a Grant Deed transferring the LOVES' Unit 850A half interest in the Ranch to the Association.   This deed recites it is a "½ interest Owner Trading Up."  Sequentially with the recording of this deed on May 20, 2002, a Corporation Grant Deed from the Association was recorded transferring a full interest [new Unit 4257] in the Ranch to ALLEN.   On information and belief, at this time the records of the Association were first changed to show ALLEN as a member, owning Unit 4257.

33.  The circuitous movements Defendants orchestrated of the LOVES' Unit 850A half interest in Warner Springs Ranch effectively laundered this transaction so as to obscure this gift to ALLEN.

### H.   Disqualification of ALLEN

34.   Defendants knew or should have known that making the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch would result in ALLEN being disqualified from acting as temporary judge in the Underlying Proceeding.   Defendants further

**EXHIBIT 2 PAGE 139**

LOVE00511

1  knew or should have known that once made, the gift to ALLEN of the

2  LOVES' Unit 850A half-interest in Warner Springs Ranch disqualified

3  ALLEN from acting as temporary judge in the Underlying Proceeding.

4  35.   ALLEN's acceptance of the gift of the LOVES' Unit 850A

5  half interest in Warner Springs Ranch in March 2002 immediately

6  disqualified him from acting as temporary judge in the Underlying

7  Proceeding.  The making, and ALLEN's acceptance, of the gift of the

8  LOVES' Unit 850A half-interest in Warner Springs Ranch was not a

9  judicial act, was not done in the course of the conduct of the

10  Underlying Proceeding and was not done to achieve the legitimate

11  objectives of the Underlying Proceeding.

12  I. <u>Concealment and Failure to disclose the gift.</u>

13  36.  In a telephone status conference in the Underlying

14  Proceeding on April 30, 2002, ALLEN, acting in his role as then

15  temporary judge in the Underlying Proceeding, stated ". . . insofar

16  as fees [including for LOVE] are concerned, that's one of the other

17  issues that I'm still struggling with and I'm still looking at some

18  of the pleadings and kind of going through my notes". Although both

19  knew, neither ALLEN nor LOVE  made any disclosure of the gift of

20  the LOVES' Unit 850A half-interest in Warner Springs Ranch which

21  had been made to ALLEN in March of 2002. Both LOVE and ALLEN

22  further concealed that ALLEN was at the time disqualified from

23  acting as temporary judge.

24  37.   On October 11, 2002, ALLEN, acting in his role as then

25  temporary judge in the Underlying Proceeding, reopened trial in the

**EXHIBIT 2 PAGE 140**

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00512

A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181630
1202 SECOND STREET, 2ND AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 487-1079

1  Underlying Proceeding to receive evidence on certain issues he had

2  reserved from the trial in October - November 2000. The trial on

3  these issues was completed on that date.  At this hearing, ALLEN

4  stated he would order Plaintiff herein to pay $250,000 of

5  Petitioner's attorneys' fees and costs, including fees for LOVE.

6  Although both knew, neither LOVE nor ALLEN made any disclosure of

7  the gift of the LOVES' Unit 850A half-interest in Warner Springs

8  Ranch which had been made to ALLEN in March of 2002. Both LOVE and

9  ALLEN further continued to conceal that ALLEN was at the time

10 disqualified from acting as temporary judge.

11      38.  On October 23, 2002, ALLEN, acting in his role as then

12 temporary judge in the Underlying Proceeding, issued his Amended

13 Statement Of Decision.  On November 12, 2002, ALLEN, acting in his

14 role as then temporary judge in the Underlying Proceeding, signed

15 and issued his Second Amended Statement Of Decision and the final

16 Judgment.  Although both knew, neither LOVE nor ALLEN made any

17 disclosure of the gift of the LOVES' Unit 850A half-interest in

18 Warner Springs Ranch which had been made to ALLEN in March of 2002.

19 Both LOVE and ALLEN further continued to conceal that ALLEN was at

20 these times disqualified from acting as temporary judge.

21      39.  On December 17, 2002, LOVE met privately with ALLEN,

22 without notice, and obtained ALLEN's signature on certain orders

23 which permitted the immediate issuance, over the counter, of a writ

24 of execution on Plaintiff's separate and share of the community

25 property, and which  permitted the levy on assets held in

**EXHIBIT 2 PAGE 141**

LOVE00513

Plaintiff's Family Trust. LOVE thereafter aggressively pursued enforcement and collection of the final Judgment ALLEN had entered in the Underlying Proceeding, which Judgement LOVE knew, and continued to conceal and did not disclose had been made and was being enforced with orders made after ALLEN was disqualified from acting as temporary judge in the Underlying Proceeding. LOVE and ALLEN benefitted from those actions in that, among other things, Plaintiff's separate property and share of community property was used for payment and reimbursement of their fees and expenses. Payments and transfers of assets by Plaintiff were further made through LOVE and those assisting LOVE. There is no transcript of what ALLEN and LOVE discussed.

40. On March 7, 2003, during a post-judgment hearing in the Underlying Proceeding attended by LOVE, Plaintiff's counsel objected to ALLEN presiding at the hearing inasmuch as ALLEN had not made a certification (under California Rule 244(b)). Although both knew, neither ALLEN nor LOVE made any disclosure of the gift of the LOVES' Unit 850A half-interest in Warner Springs Ranch which had been made to ALLEN in March of 2002. Both LOVE and ALLEN further continued to conceal that ALLEN was at these times disqualified from acting as temporary judge.

41. Prior to ALLEN filing his Statement Of Withdrawal in the Underlying Proceeding on March 23, 2003, neither ALLEN nor LOVE had disclosed the Warner Springs Ranch transactions. ALLEN has refused to answer why he did not disclose these transactions.

**EXHIBIT 2 PAGE 142**

16

LOVE00514

42.  Since ALLEN was given the LOVES' Unit 850A half-interest in Warner Springs Ranch in March 2002, ALLEN has used the Ranch facilities on multiple occasions.

### J.  Setting aside of ALLEN's rulings

43.  As a result of the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch, ALLEN was disqualified, and rulings of ALLEN while acting in his role as then temporary judge have been set aside by the Judge of the Superior Court who replaced ALLEN in the Underlying Proceeding, and a new trial has been ordered on these set aside rulings.

### K.  ALLEN's Statements to the Press

44.  On information and belief, in or about September and October 2003, and after ALLEN filed his Statement of Withdrawal in the Underlying Proceeding, ALLEN and ALLEN's counsel spoke with one or more reporters and made threatening, misleading and disparaging remarks about the truth of ALLEN's involvement in the gift to him of the LOVES' Unit 850B one-half interest in Warner Springs Ranch. On information and belief, ALLEN and ALLEN's counsel made these statements as a part of and in furtherance of the CONSPIRACY, to discredit Plaintiff and coerce Plaintiff into accepting ALLEN's rulings, and to bolster and support actions ALLEN had previously taken in his judicial capacity.  In speaking with the press, ALLEN was not acting in his judicial capacity or in the course of the conduct of the Underlying Proceeding, or to achieve the legitimate objectives of the Underlying Proceeding.

**EXHIBIT 2 PAGE 143**

17

LOVE00515

A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 11550
1230 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1075

### L.  Plaintiff's economic damages

45.  As a result of the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch and of Defendants' concealment and nondisclosure of this transaction and the fact of the disqualification of ALLEN, Plaintiff has lost the fees, costs and expenses paid in the prior trial on the now set-aside rulings, and the depreciation and loss in the value and use of assets which were taken from Plaintiff under the now set-aside rulings. In addition, Plaintiff has incurred and will be required to continue to incur the fees, costs and expenses of having a new trial on these set-aside rulings.

### M. Plaintiff's non-economic injuries

46.  As a further result of the actions and conduct of Defendants as aforesaid, Plaintiff has suffered and continues to suffer serious and severe emotional distress.

### N. No judicial immunity

47.  Except where otherwise expressly stated to the contrary, the actions and conduct of ALLEN alleged herein were not done by ALLEN in his role or capacity as a judicial officer. The actions and conduct on which ALLEN is sued herein are not judicial acts.

### O.  No litigation privilege

48.  The actions and conduct on which Defendants are sued herein were not done in the course of the conduct of the Underlying Proceeding and were not done to achieve the legitimate objectives of the Underlying Proceeding.

**EXHIBIT 2 PAGE 144**

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00516

**P. Estoppel to rely on statute of limitations**

49.    Defendants are estopped to rely on all applicable statutes of limitations because, prior to the time such applicable statutes of limitations would have run (a) Defendants fraudulently concealed and failed to disclose the fact of the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch, (b) Defendants fraudulently concealed that Plaintiff had the causes of action alleged herein, (c) Plaintiff reasonably relied upon Defendants' fraudulent concealments, and that Defendants would act in accordance with the disclosure requirements provided by law, (d) Defendants intended their concealments to be acted upon by Plaintiff, and Plaintiff had the right to believe that the fact Defendants made no disclosure was intended to be relied upon that no gifts had been made, and (e) Plaintiff exercised due diligence to ascertain the truth. Plaintiff did not discover prior to March 7, 2003 evidence of the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch which had been made in March 2002; and prior to March 27, 2002 when ALLEN filed his Statement of Withdrawal in the Underlying Proceeding, did not discover the fact of the gift and fact of ALLEN's disqualification.

50.   [Reserved]

### 4. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FOR INTENTIONAL INTERFERENCE WITH
### CONTRACTUAL RELATIONS AGAINST
### ALL DEFENDANTS

**EXHIBIT 2 PAGE 145**

19

FIRST AMENDED COMPLAINT FOR DAMAGES

51. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 50 hereinabove set forth.

52. At times herein relevant, there existed contractual relationships between Plaintiff and Petitioner, including a prenuptial agreement, agreements for the ownership and control of real and personal property, and deposit accounts.

53. At times herein relevant, there existed contractual relationships between Plaintiff and third persons, including with Qualcomm relating to the acquisition of Qualcomm stock and stock options, and loans to Qualcomm.

54. At times herein relevant, there existed a contractual relationship between Plaintiff and Plaintiff's counsel in the Underlying Proceeding for providing legal services to Plaintiff in that proceeding on a fee-for-service basis.

55. Defendants knew of the existence of each of these contracts.

56. In engaging in the actions and conduct hereinabove alleged, Defendants either (a) intended to prevent Plaintiff's performance or to cause Plaintiff's performance under the aforementioned contracts to be more expensive and burdensome, or (b) knew that prevention of Plaintiff's performance was certain or substantially certain to occur or that Plaintiff's performance would be more expensive or burdensome as a result of Defendants' actions and conduct.

**EXHIBIT 2 PAGE 146**

20

LOVE00518

1

2    57. Defendants engaged in the actions and conduct hereinabove

3    alleged which either (a) prevented Plaintiff's performance of those

4    contracts or (b) caused Plaintiff's performance to be more

5    expensive and burdensome.

6    58. The actions and conduct of Defendants as hereinabove

7    alleged interfered with Plaintiff's contractual relations and were

8    a cause of injury, damage, loss and harm to Plaintiff in an amount

9    according to proof in excess of $25,000.

10    59. The actions and conduct of Defendants as hereinabove

11    alleged were willful and oppressive, fraudulent and malicious,

12    entitling Plaintiff to an award of punitive and exemplary damages

13    in an amount according to proof.

14

15    SECOND CAUSE OF ACTION
      FOR INTENTIONAL INTERFERENCE WITH
16    CONTRACTUAL RELATIONS AGAINST LOVE

17    60. Plaintiff realleges and incorporates herein by reference

18    each and every allegation contained in paragraphs 1 through 50

19    hereinabove set forth.

20    61. At times herein relevant, there existed an agreement for

21    payment by Plaintiff of one-half of ALLEN's services in the

22    Underlying Proceeding at his normal and customary rate as an

23    attorney on a fee-for-service basis.

24    62. LOVE knew of the existence of this contract.

25    63. In engaging in the actions and conduct hereinabove

26    alleged, LOVE either (a) intended to cause Plaintiff's performance

27    under the contract to be more expensive or burdensome, or (b) knew

28

**EXHIBIT 2 PAGE 147**

21                                                    32

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00519

1    that Plaintiff's performance would be more expensive or burdensome

2    as a result of LOVE's actions and conduct.

3

4    64.  LOVE engaged in the actions and conduct hereinabove

5    alleged which caused Plaintiff's performance of the contract to be

6    more expensive and burdensome.

7    65. The actions and conduct of LOVE as hereinabove alleged

8    interfered with Plaintiff's contractual relations and were a cause

9    of injury, damage, loss and harm to Plaintiff in an amount

10   according to proof in excess of $25,000.

11   66.  The actions and conduct of LOVE as hereinabove alleged

12   were willful and oppressive, fraudulent and malicious, entitling

13   Plaintiff to an award of punitive and exemplary damages in an

14   amount according to proof.

15

16   THIRD CAUSE OF ACTION
     FOR INTENTIONAL INTERFERENCE WITH
17   PROSPECTIVE ECONOMIC ADVANTAGE
     AGAINST ALL DEFENDANTS

18   67.  Plaintiff realleges and incorporates herein by reference

19   each and every allegation contained in paragraphs 1 through 50 and

20   paragraphs 52 through 54 hereinabove set forth.

21   68.  At times herein relevant, there existed economic

22   relationships between Plaintiff and Petitioner, between Plaintiff

23   and Plaintiff's counsel in the Underlying Proceeding, and between

24   Plaintiff and Qualcomm and other third persons engaging or

25   proposing to engage in business transactions with Plaintiff,

26   containing a probable future economic benefit or advantage to

27

28
**EXHIBIT 2 PAGE 148**

22

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00520

Plaintiff.

69. Defendants knew of the existence of these relationships.

70. Defendants engaged in wrongful conduct as hereinabove alleged designed to interfere with or disrupt these relationships.

71. Defendants engaged in said wrongful conduct either (a) with the intent to interfere with or disrupt these relationships, or (b) with the knowledge that the interference or disruption was certain or substantially certain to occur as a result of Defendants actions.

72. The economic relationships were actually interfered with or disrupted.

73. The wrongful conduct of Defendants which was designed to interfere with or disrupt these relationships caused injury, damage, loss and harm to Plaintiff in an amount according to proof in excess of $25,000.

74. The actions and conduct of Defendants as hereinabove alleged were willful and oppressive, fraudulent and malicious, entitling Plaintiff to an award of punitive and exemplary damages in an amount according to proof

<u>FOURTH CAUSE OF ACTION
FOR INTENTIONAL INTERFERENCE WITH
PROSPECTIVE ECONOMIC ADVANTAGE
AGAINST LOVE</u>

75. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 50 and paragraph 61 hereinabove set forth.

EXHIBIT 2 PAGE 149

23

FIRST AMENDED COMPLAINT FOR DAMAGES

PETERS LAW OFFICE, PREMTON
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181690
1202 SECOND STREET AT C AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1976

LOVE00521

76. An economic relationship existed between Plaintiff and ALLEN, containing a probable future economic benefit or advantage to Plaintiff. This economic relationship included the arrangement that ALLEN would serve as a temporary judge in the Underlying Proceeding. The economic benefit or advantage to Plaintiff included resolution of the Underlying Proceeding in an expeditious and cost-effective manner.

77. LOVE knew of the existence of this relationship.

78. LOVE engaged in wrongful conduct as hereinabove alleged designed to interfere with or disrupt this relationship.

79. LOVE engaged in this wrongful conduct either (a) with the intent to interfere with or disrupt this relationship or (b) with the knowledge that the interference or disruption was certain or substantially certain to occur as a result of LOVE's actions.

80. The economic relationship was actually interfered with and disrupted.

81. The within conduct of LOVE which was designed to interfere with or disrupt this relationship caused injury, damage, loss and harm to Plaintiff in an amount according to proof in excess of $25,000.

82. The actions and conduct of LOVE as hereinabove alleged were willful and oppressive, fraudulent and malicious, entitling Plaintiff to an award of punitive and exemplary damages in an amount according to proof.

FIFTH CAUSE OF ACTION
FOR NEGLIGENT INTERFERENCE WITH

**EXHIBIT 2 PAGE 150**

24

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00522

## PROSPECTIVE ECONOMIC ADVANTAGE
### AGAINST ALL DEFENDANTS

83.  Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 50 and paragraphs 52 through 54 as hereinabove set forth.

84.  At times herein relevant, an economic relationship existed between Plaintiff and Petitioner, between Plaintiff and Plaintiff's counsel in the Underlying Proceeding, and between Plaintiff and Qualcomm and other third persons engaging and proposing to engage in business transactions with Plaintiff, containing a probable future economic benefit or advantage to Plaintiff.

85.  Defendants knew of the existence of these economic relationships.

86.  Defendants engaged in wrongful conduct as hereinabove alleged.

87.  It was reasonably foreseeable that Defendants' wrongful conduct would interfere with or disrupt these economic relationships if Defendants failed to exercise due care.

88.  Defendants were negligent in their conduct as hereinabove alleged, in that Defendants failed to exercise due care.

89.  These economic relationships were actually interfered with and disrupted.

90.  Defendants' conduct caused Plaintiff to suffer injury, damage, loss and harm in that, among other things, Plaintiff has been injured and has lost the economic benefit and advantage from

FIRST AMENDED COMPLAINT FOR DAMAGES

EXHIBIT 2 PAGE 151

L0VE00523

these economic relationships in an amount according to proof in excess of $25,000.

### SIXTH CAUSE OF ACTION
### FOR NEGLIGENT INTERFERENCE WITH
### PROSPECT ECONOMIC ADVANTAGE
### AGAINST LOVE

91. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 50 and paragraph 61 as hereinabove set forth.

92. As more fully alleged in the Factual Background, an economic relationship existed between Plaintiff and ALLEN containing a probable future economic benefit or advantage to Plaintiff. This economic relationship included the arrangement that ALLEN would serve as temporary judge in the Underlying Proceeding. The economic benefit or advantage to Plaintiff included resolution of the Underlying Proceeding in an expeditious and cost-effective manner.

93. LOVE knew of the existence of this economic relationship.

94. LOVE engaged in wrongful conduct as herein alleged.

95. LOVE was negligent in his conduct, in that LOVE failed to exercise due care.

96. This economic relationship was actually interfered with and disrupted.

97. LOVE's conduct caused Plaintiff to suffer injury, damage, loss and harm in that, among other things, Plaintiff has been injured and has lost the economic benefit or advantage from this

**EXHIBIT 2 PAGE 152**

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00524

economic relationship in an amount according to proof in excess of $25,000.

### SEVENTH CAUSE OF ACTION FOR CIVIL RIGHTS VIOLATIONS AGAINST ALL DEFENDANTS

98.  Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 50 hereinabove set forth.

99.  As more fully alleged in the FACTUAL BACKGROUND, Defendants interfered or attempted to interfere by coercion with the exercise or enjoyment by Plaintiff of Plaintiff's rights to a fair trial secured by the Constitution and laws of the United States and of the State of California.  This right to a fair trial includes a trial free from actions and conduct which disqualify the trial judge and a trial where doubts are not raised concerning the trial judge's impartiality.

100.  As more fully alleged in the Factual Background, the interference or attempted interference in Plaintiff's right to a fair trial caused Plaintiff to suffer injury, damage, loss and harm in an amount according to proof in excess of $25,000.

101.  The actions and conduct of Defendants as hereinabove alleged were willful and oppressive, fraudulent and malicious entitling Plaintiff to an award of punitive and exemplary damages in an amount according to proof.

### EIGHTH CAUSE OF ACTION FOR DECEIT

EXHIBIT 2 PAGE 153

27

L0VE00525

FRAUDULENT CONCEALMENT
AGAINST ALL DEFENDANTS

102. Plaintiff realleges and incorporate herein by reference each and every allegation contained in paragraphs 1 through 50 hereinabove set forth.

103. As more fully alleged in the Factual Background, Defendants did not disclose the fact of the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch, which gift Defendants should have disclosed because, at the time of the gift, LOVE was attorney for Petitioner in the Underlying Proceeding and ALLEN was the temporary judge in that proceeding, and the gift caused the immediate disqualification of ALLEN from acting as temporary judge in the Underlying Proceeding.

104. Defendants knew that they concealed or failed to disclose the fact of the gift to ALLEN of the LOVE's Unit 850A half-interest in Warner Springs Ranch.

105. Defendants intended that their concealment of or failure to disclose said facts would cause Plaintiff to proceed in the Underlying Proceeding without challenging ALLEN's acting as the temporary judge, to continue to pay ALLEN's invoices for his services, and to continue to pay the invoices of Bruno, Mack and Barclay and other experts retained by ALLEN and by Plaintiff.

106. Plaintiff relied on the fact that Defendants had not disclosed that the gift had been made to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch.    **EXHIBIT 2 PAGE 154**

107. Plaintiff was justified in relying on the fact that

28

LOVE00526

Defendants had not disclosed that the gift had been made to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch.

108. As a result of Defendants' deceit and fraudulent concealment, Plaintiff has and will continue to sustain injury, damage, loss and harm in an amount according to proof in excess of $25,000.

109. The actions and conduct of Defendants as hereinabove alleged were willful and oppressive, fraudulent and malicious, entitling Plaintiff to an award of punitive and exemplary damages in an amount according to proof.

## NINTH CAUSE OF ACTION
### FOR BREACH OF CONTRACT AGAINST ALLEN

110. Plaintiff realleges and incorporate herein by reference each and every allegation contained in paragraphs 1 through 50 hereinabove set forth.

111. In submitting each of his invoices to Plaintiff, ALLEN expressly and impliedly represented that he had satisfied all conditions required on his part to be entitled to payment, and was entitled to be paid the amounts billed.

112. As more fully alleged in the Factual Background, ALLEN breached his agreement with Plaintiff in that, among other things, ALLEN continued to invoice and to accept payment from Plaintiff for services allegedly rendered by ALLEN after he had accepted the gift of the LOVES' Unit 850A half-interest in Warner Springs Ranch and knew he was disqualified and thus barred as an attorney from making further charges to Plaintiff.

**EXHIBIT 2 PAGE 155**

29

40

LOVE00527

113.   There is implied in every contract a covenant of good faith and fair dealing to refrain from doing anything which would interfere with the rights of the other party to receive the benefits of the contract.

114.   Plaintiff has performed all terms of his agreement to pay ALLEN required on Plaintiff's part to be performed.

115.   As a result of ALLEN's breach of the implied covenant of good faith and fair dealing and the breach of his agreements with Plaintiff as aforesaid, Plaintiff has and will continue to sustain injury, damage, loss and harm in an amount according to proof in excess of $25,000.

### TENTH CAUSE OF ACTION
### FOR UNFAIR COMPETITION
### AGAINST LOVE

116.   Plaintiff realleges and incorporate herein by reference each and every allegation contained in paragraphs 1 through 50 hereinabove set forth.

117.   As more fully alleged in the Factual Background, LOVE engaged in unfair and fraudulent business acts and practices in violation of Business and Profession Code §§17200, et seq.   The gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch was an unfair and fraudulent business act and practice designed to provide, and which provided LOVE an unfair advantage over Plaintiff and Plaintiff's counsel in the Underlying Proceeding.

118.   As a result of the fraudulent acts and business

CORONADO PUBLIC CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 180210
1203 SECOND STREET AT ORANGE AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1678

**EXHIBIT 2 PAGE 156**

30

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00528

practices of LOVE as aforesaid, Plaintiff is entitled to restitution of the amounts Plaintiff paid to ALLEN, to Plaintiff's counsel, for the benefit of and indirectly to LOVE, to Bruno, Mack and Barclay and to Plaintiff's experts in the Underlying Proceeding, all in an amount according to proof in excess of $25,000.

## ELEVENTH CAUSE OF ACTION
### FOR WILLFUL MISCONDUCT AND INTENTIONAL INFLICTION OF INJURY AGAINST ALL DEFENDANTS

119. Plaintiff realleges and incorporate herein by reference each and every allegation contained in paragraphs 1 through 50 hereinabove set forth.

120. As members of the State Bar of California, Defendants each owed a duty to Plaintiff to refrain from conduct Defendants knew or should have known would cause or was certain or substantially certain to cause injury to Plaintiff, including the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch and the concealment and failure to disclose this gift and the fact of the disqualification of ALLEN to act as temporary judge in the Underlying Proceeding.

121. These duties are reflected in part in Rule 5-300(A) of the Rules of Professional Conduct which provides that:

> "A member [of the State Bar] shall not directly or indirectly give...anything of value to a judge [or] official...of a tribunal unless the personal or family relationship between the member and the judge, official or employee is such that gifts are customarily

**EXHIBIT 2 PAGE 157**

31

LOVE00529

1
2              given and exchanged..."

3  and in Rule 1-710 of the Rules of Professional Conduct which

4  provides that:

5          "A member [of the State Bar] who is serving as
           a temporary judge ...and is subject under the
6          Code of Judicial Ethics to Canon 6D, shall
           comply with the terms of that canon."
7
   In turn, Canon 6D(2)(f) provides that :
8
9          "A temporary judge...shall...disclose in
           writing or on the record information as
10         required by law, or information the temporary
           judge...believes the parties or their lawyers
11         might consider relevant to the question of
           disqualification, even where it is believed
12         that there is no actual basis for
           disqualification..."
13
14     122.   These duties are further reflected in Penal Code

15  sections 92, 93, 94 and/or 95 which prohibit bribery and

16  corruption.

17     123.  The aforementioned Rules of Professional Conduct embody

18  the public policy of this State applicable to persons who are

19  licensed to practice law, and the aforementioned Penal Code

20  sections embody the public policy of this state applicable to all

21  persions.    These Rules and Penal Code sections are intended to

22  benefit and protect persons in the circumstances of Plaintiff as

23  hereinabove alleged.

24     124.   As more fully set forth in the Factual Background,

25  Defendants willfully breached their respective duties of care and

26  as members of the State Bar of California by making, and then

27  failing to disclose and concealing, the gift to ALLEN of the LOVES'

28

                              32                    **EXHIBIT 2 PAGE 158**            43
                    FIRST AMENDED COMPLAINT FOR DAMAGES

                                                              L0VE00530

1    Unit 850A half-interest in Warner Springs Ranch and the fact of the

2    disqualification of ALLEN to act as temporary judge in the

3    Underlying Proceeding.  On information and belief, the gift of the

4    LOVES' Unit 850 one-half interest in Warner Springs Ranch

5    constituted bribery and corruption under the aforementioned Penal

6    Code Sections.

7         125.  At all times herein relevant, Defendants knew or should

8    have known their actions and conduct were certain or substantially

9    certain to cause injury to Plaintiff.

10        126.  At all times herein relevant, Defendants consciously and

11   intentionally failed to take steps to avoid breaching their

12   aforesaid duties as members of the State Bar of California.

13        127.  As more fully set forth in the Factual Background,

14   Defendants acted intentionally either (a) with knowledge that

15   serious injury to Plaintiff would be the probable result of their

16   actions and conduct, or (b) with wanton and reckless disregard of

17   the consequences of their actions and conduct.

18        128.  As a proximate cause of Defendants' breach of their

19   respective duties, Plaintiff has and will continue to sustain

20   injury, damage, loss and harm in an amount according to proof in

21   excess of $25,000.

22        129.  The actions and conduct of Defendants as hereinabove

23   alleged were willful and oppressive, fraudulent and malicious,

24   entitling Plaintiff to an award of punitive and exemplary damages

25   in an amount according to proof.

**EXHIBIT 2 PAGE 159**

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00531

A PROFESSIONAL CORPORATION
CORONADO OFFICE PROFESSIONAL SQUARE
POST OFFICE BOX 180189
1330 SECOND STREET, AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1979

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TWELFTH CAUSE OF ACTION
## FOR NEGLIGENCE AGAINST
## ALL DEFENDANTS

130. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 50 and paragraphs 121 and 124 hereinabove set forth.

131. As members of the State Bar of California, Defendants each owed a duty to care to Plaintiff, to refrain from extrajudicial actions and conduct that would cause or was reasonably foreseeable to cause injury or damage to Plaintiff.

132. As more fully set forth in the Factual Background, Defendants breached their respective duties of care and as members of the State Bar of California and otherwise by making, and then failing to disclose and concealing, the gift to ALLEN of the LOVES' Unit 850A half interest in Warner Springs Ranch and the fact of the disqualification of ALLEN to act as temporary judge in the Underlying Proceeding.

133. It was reasonably foreseeable that Defendants' actions and conduct as hereinabove alleged would cause injury or damage to Plaintiff.

134. Defendants were negligent in their actions and conduct as hereinabove alleged, in that Defendants failed to exercise due care.

135. As a direct and proximate result of Defendants negligence as aforesaid, Plaintiff sustained and will continue to sustain injury, damage, loss and harm in an amount according to

EXHIBIT 2 PAGE 160

LOVE00532

proof in excess of $25,000.

### THIRTEENTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### FOR UNJUST ENRICHMENT

136. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 135.

137. As more fully hereinabove alleged, Defendants and others have profited, gained and been unjustly enriched to Plaintiff's detriment by Defendants fraud and deceit, interference with Plaintiff's contractual relations, and economic advantage, and undue influences and other negligent and wrongful acts, by reason of which Plaintiff is entitled to recoupment of, and Defendants hold as constructive trustees for the benefit of Plaintiff, all monies paid by Plaintiff and all of Plaintiff's separate property and share of community property wrongfully acquired or detained by Defendants, including the full value and loss of use of all monies paid and provided by Plaintiff because of Defendants' actions, and the full value and loss of use of all of Plaintiff's separate property and share of community property improperly detained and taken from Plaintiff.

### PRAYER

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. For general and special injury and damages in an amount according to proof in excess of $25,000.00;

2. For restitution in an amount according to proof in excess

35

EXHIBIT 2 PAGE 161

L0VE00533

PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181620
1320 SECOND STREET, AT C AVENUE
CORONADO, CALIFORNIA 92178-1417
(619) 437-1076

of $25,000;

3.   For imposition of a constructive trust for the full value and loss of all monies paid by Plaintiff and of Plaintiff's separate property and share of community property wrongfully acquired or detained by Defendants;

4.   For punitive damages in an amount appropriate to punish or set an example of Defendants;

5.   For interest at the maximum legal rate permitted by law;

6.   For attorney fees in an amount according to proof;

7.   For costs of suit in an amount according to proof; and

8.   For such other and further relief as the Court deems just and proper.

Dated: March 28, 2005

FRANK E. ROGOZIENSKI, INC.

By: _____
    Frank E. Rogozienski
    Attorney for Plaintiff

A PROFESSIONAL CORPORATION,
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 1530
1200 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1876

**EXHIBIT 2 PAGE 162**

36

47

LOVE00534

3

EXHIBIT 2 PAGE 163

LOVE00535

1  FRANK E. ROGOZIENSKI, ESQ., California Bar No. 51445
2  FRANK E. ROGOZIENSKI, INC.
3  A Professional Corporation
   Attorneys at Law
   Coronado Professional Square                    F I L E D
4  1203 Second Street                              Clerk of the Superior Court
5  Coronado, CA 92118
   Telephone: (619)437-1878                        MAR 3 0 2005
6  Facsimile: (619)437-4894
                                                   By: S. ALYEA, Deputy
7  Attorneys for Plaintiff, FRANK E. ROGOZIENSKI

8

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   FOR THE COUNTY OF SAN DIEGO

12                                                  BY FAX

13  FRANK E. ROGOZIENSKI,        )    Case No. GIC843843
                                 )
14              Plaintiff,       )    NOTICE OF CORRECTION OF
                                 )    TYPOGRAPHICAL ERROR IN FIRST
15         v.                    )    AMENDED COMPLAINT
                                 )
16  JAMES D. ALLEN, S. MICHAEL   )
    LOVE and DOES 1 through 10,  )
17  inclusive,                   )
                                 )    DEPT. 75
18              Defendants.      )    HON. Richard E. L. Strauss
                                 )
19                               )

20

21      Plaintiff  hereby  provides  notice  of  correction  of  a

22  typographical error in the First Amended Complaint For Damages

23  (Interference with Contract, Interference with Economic Relations,

24  Civil Rights Violations, Deceit-Fraudulent Concealment, Breach of

25  Contract, Unfair Competition, Intentional Misconduct, Negligence

26  and Unjust Enrichment) filed in the above entitled Court on March

27

28  ─────────────────────────────        **EXHIBIT 2 PAGE 164**
    NOTICE OF CORRECTION OF TYPOGRAPHICAL ERROR
    IN FIRST AMENDED COMPLAINT
                                          
                        1

1   28, 2005, at page 19, line 20, which is corrected to read as

2   follows:

3   "and prior to March 27, 2003 when ALLEN filed his Statement of"

4

5   Dated: March 30, 2005                    FRANK E. ROGOZIENSKI, INC.

6
                                           By: _____
7                                               Frank E. Rogozienski
                                                Attorney for Plaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   NOTICE OF CORRECTION OF TYPOGRAPHICAL ERROR
     IN FIRST AMENDED COMPLAINT

                    2        **EXHIBIT 2 PAGE 165**        48

L0VE00537

4

EXHIBIT 2 PAGE 166

L0VE00538

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):

Donald A. English, Esq. (State Bar No. 115569)
English & Gloven, A Professional Corporation
550 West "C" Street, Suite 1800
San Diego, CA 92101

TELEPHONE NO.: (619) 338-6610    FAX NO.: (619) 338-6657
ATTORNEY FOR (Name): James D. Allen

FOR COURT USE ONLY

RECEIVED
MAY 25 2005
BY
MAY 2005
CLERK
SUPERIOR COURT
SAN DIEGO
JUDICIAL
DISTRICT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

- [ ] COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814
- [X] HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
- [ ] FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296
- [ ] MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105
- [ ] NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643
- [ ] EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
- [ ] RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
- [ ] SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649
- [ ] JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792

PLAINTIFF(S) Frank E. Rogozienski

DEFENDANT(S) James D. Allen, et al.

IN THE MATTER OF

A MINOR

JUDGE: Richard E.L. Strauss

DEPT: 75

PEREMPTORY CHALLENGE
(CCP 170.6; Superior Court Rules, Division II, Rule 5.5)

CASE NUMBER
GIC843843

_Donald A. English_, is [ ] a party [X] an attorney for a party in the above-entitled case and declares that _Richard E.L. Strauss_, the Judge to whom this case is assigned, is prejudiced against the party or the party's attorney or the interests of the party or the party's attorney such that the said party or parties believe(s) that a fair and impartial trial or hearing cannot be had before such Judge.

THEREFORE, pursuant to the provisions of §170.6 of the California Code of Civil Procedure, I respectfully request that this Court issue its order reassigning said case to another, and different, Judge for further proceedings.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: May 23, 2005

English & Gloven, A Professional Corporation

_(Signature)_
Donald A. English, Esq.

[X] GRANTED    [ ] DENIED    ORDER OF THE COURT

This case is referred to Presiding/Supervising Department for reassignment and a Notice will be mailed to counsel.

Dated: MAY 2 4 2005

RICHARD E. L. STRAUSS
Judge of the Superior Court

FOR OFFICE USE ONLY

This case has been reassigned to Judge _____ per Presiding/Supervising Judge
on _____

50

CIV-249 (Rev. 5-00)    PEREMPTORY CHALLENGE    **EXHIBIT 2 PAGE 167**    SD-249

LOVE00539

5

**EXHIBIT 2 PAGE 168**

L0VE00540

1   Daniel M. White (SBN# 068011)
   Steven G. Amundson (SBN# 073501 )
2   **WHITE & OLIVER**
   A Professional Corporation
3   550 West C Street, Suite 950
   San Diego, California 92101
4   Telephone: (619) 239-0300
   Facsimile: (619) 239-0344
5



  **RECEIVED**
  MAY 2 6 2005
  BY:.....................

6   Attorneys for Defendant
   S. MICHAEL LOVE

7

8        SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9           FOR THE COUNTY OF SAN DIEGO

10   FRANK E. ROGOZIENSKI,      )  Case No. GIC843843

11        Plaintiff,         )  **NOTICE OF DEMURRER AND**
                      )  **DEMURRER TO FIRST**
12                    )  **AMENDED COMPLAINT BY**
      v.                )  **DEFENDANT**
13                    )  **S. MICHAEL LOVE**

14   JAMES D. ALLEN, S. MICHAEL LOVE, and  )  Date: July 15, 2005
   DOES 1 through 10, inclusive,     )  Time: 11:00 a.m.
15                    )  Dept: 61
       Defendants.       )  The Honorable John S. Meyer
16                    )

17   TO THE PARTIES HERETO AND THEIR ATTORNEYS OF RECORD:

18       PLEASE TAKE NOTICE that on July 15, 2005, at 11:00 a.m. in Department 61 of the

19   above-entitled Court, located at 330 W. Broadway, San Diego, California, Defendant S. Michael

20   Love will and hereby does demur to the First Amended Complaint filed by Plaintiff Frank E.

21   Rogozienski, on each of the following grounds:

                                     **EXHIBIT 2 PAGE 169**

22            __DEMURRER TO FIRST CAUSE OF ACTION__

23       1.    The First Cause of Action fails to state facts sufficient to constitute a cause of

24   action against this Defendant.

25       2.    The First Cause of Action for intentional interference with contractual relations is

26   uncertain because it cannot be ascertained from the allegations how Love's conduct allegedly did

27   or even could have tortiously interfered with (1) Frank Rogozienski's contractual relationships

28   with Shirley Rogozienski (First Amended Complaint ("FAC") ¶ 52), who Love was then

                                                     51

                                                63638.1

                                                  LOVE00541

*WHITE & OLIVER
A Professional Corporation*

1    representing in Shirley's marital dissolution action against Frank (FAC ¶ 9); (2) with the

2    contractual relations between Plaintiff and third persons, including Qualcomm, regarding

3    Plaintiff's stock and loan relationships with Qualcomm (FAC ¶ 53); or (3) with the contractual

4    relationship between Plaintiff and the attorney representing him in the dissolution action (FAC ¶

5    54).

6    <u>DEMURRER TO SECOND CAUSE OF ACTION</u>

7       1.    The Second Cause of Action fails to state facts sufficient to constitute a cause of

8    action against this Defendant.

9       2.    The Second Cause of Action for intentional interference with contractual relations

10   against Love is uncertain, because it cannot be ascertained how Love's alleged conduct did or

11   could have interfered with Frank Rogozienski's relationship with Love's co-defendant James

12   Allen (FAC ¶ 63), when Rogozienski acknowledges that Allen withdrew as acting judge in the

13   dissolution proceeding between Shirley and Frank after Frank challenged Allen and insisted he

14   withdraw (FAC ¶¶ 40, 41).

15    <u>DEMURRER TO THIRD CAUSE OF ACTION</u>

16       1.    The Third Cause of Action fails to state facts sufficient to constitute a cause of

17   action against this Defendant.

18       2.    The Third Cause of Action for intentional interference with prospective economic

19   advantage is uncertain, because it cannot be ascertained from the allegations how the alleged

20   conduct of Defendant Love did or could have tortiously interfered with any prospective

21   economic gain to Frank from: (1) an economic relationship between Frank and Shirley (FAC ¶

22   68), when Love was then representing Shirley in the dissolution proceedings against Frank (FAC

23   ¶ 9); (2) the relationship between Frank and Frank's own attorney in the dissolution proceeding,

24   who Frank was presumably paying (FAC ¶ 68); or (3) with Qualcomm or other unnamed third

25   persons with whom Frank might have been engaged or intended to engage in business

26   transactions (FAC ¶ 68).

27   ///

28   ///

WHITE & OLIVER
A Professional Corporation

**EXHIBIT 2 PAGE 170**

52

63638.1

NOTICE OF DEMURRER AND DEMURRER TO FIRST AMENDED COMPLAINT BY DEFENDANT S. MICHAEL LOVE

LOVE00542

### DEMURRER TO FOURTH CAUSE OF ACTION

1.   The Fourth Cause of Action fails to state facts sufficient to constitute a cause of action against this Defendant.

2.   The Fourth Cause of Action for intentional interference with prospective economic advantage is uncertain as against Love because it cannot be ascertained from the pleadings how Love's alleged conduct did or could have interfered with a relationship between Plaintiff and Love's co-defendant James Allen (FAC ¶ 76), with whom Frank alleges the existence of no economic relationship from which Frank could conceivably receive any economic benefit.

### DEMURRER TO FIFTH CAUSE OF ACTION

1.   The Fifth Cause of Action fails to state facts sufficient to constitute a cause of action against this Defendant.

2.   The Fifth Cause of Action for negligent interference with prospective economic advantage is uncertain, because it cannot be ascertained from the allegations how the alleged conduct of Defendant Love did or could have tortiously interfered with any prospective economic gain to Frank from: (1) an economic relationship between Frank Rogozienski and Shirley Rogozienski (FAC ¶ 84), when Love was then representing Shirley in the dissolution proceedings against Frank (FAC ¶ 9); (2) the economic relationship between Frank and his own attorney in the dissolution proceeding, who Frank was presumably paying (FAC ¶ 84); or (3) with Qualcomm or other unnamed third persons with whom Frank might have been engaged or intended to engage in business transactions (FAC ¶ 84).

### DEMURRER TO SIXTH CAUSE OF ACTION

**EXHIBIT 2 PAGE 171**

1.   The Sixth Cause of Action fails to state facts sufficient to constitute a cause of action against this Defendant.

2.   The Sixth Cause of Action for intentional interference with prospective economic advantage is uncertain as against Love, because it cannot be ascertained from the pleadings how Love's alleged conduct did or could have interfered with an economic relationship between Frank and Love's co-defendant James Allen, with whom Frank alleges the existence of no

53

63638.1

NOTICE OF DEMURRER AND DEMURRER TO FIRST AMENDED COMPLAINT BY DEFENDANT S. MICHAEL LOVE

LOVE00543

WHITE & OLIVER
A Professional Corporation

1  economic relationship from which Frank could conceivably receive an economic benefit (FAC ¶
2  92).

### DEMURRER TO SEVENTH CAUSE OF ACTION

4    1.    The Seventh Cause of Action fails to state facts sufficient to constitute a cause of
5  action for civil rights violations against this Defendant.

### DEMURRER TO EIGHTH CAUSE OF ACTION

7    1.    The Eighth Cause of Action fails to state facts sufficient to constitute a cause of
8  action against this Defendant.

### DEMURRER TO TENTH CAUSE OF ACTION

10    1.    The Tenth Cause of Action fails to state facts sufficient to constitute a cause of
11  action against this Defendant.

### DEMURRER TO ELEVENTH CAUSE OF ACTION

13    1.    The Eleventh Cause of Action fails to state facts sufficient to constitute a cause of
14  action against this Defendant.

### DEMURRER TO TWELFTH CAUSE OF ACTION

16    1.    The Twelfth Cause of Action fails to state facts sufficient to constitute a cause of
17  action against this Defendant.

### DEMURRER TO THIRTEENTH CAUSE OF ACTION

19    1.    The Thirteenth Cause of Action fails to state facts sufficient to constitute a cause
20  of action against this Defendant.

WHITE & OLIVER

By: _____
Steven G. Amundson
Attorneys for Defendant
S. MICHAEL LOVE

**EXHIBIT 2 PAGE 172**

54

- 4 -

63638.1

NOTICE OF DEMURRER AND DEMURRER TO FIRST AMENDED COMPLAINT BY DEFENDANT S. MICHAEL LOVE

LOVE00544

WHITE & OLIVER
A Professional Corporation

6

EXHIBIT 2 PAGE 173

LOVE00545

1  Daniel M. White (SBN# 068011)
2  Steven G. Amundson (SBN# 073501 )
   WHITE & OLIVER
3  A Professional Corporation
   550 West C Street, Suite 950
   San Diego, California 92101
4  Telephone: (619) 239-0300
   Facsimile: (619) 239-0344
5
6  Attorneys for Defendant
   S. MICHAEL LOVE
7

RECEIVED
MAY 2 6 2005
BY:_____

8          SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF SAN DIEGO

10  FRANK E. ROGOZIENSKI,                )  Case No. GIC843843
                                         )
11          Plaintiff,                   )  MEMORANDUM OF POINTS AND
                                         )  AUTHORITIES IN SUPPORT OF
12                                       )  DEMURRER OF DEFENDANT S.
        v.                               )  MICHAEL LOVE TO FIRST
13                                       )  AMENDED COMPLAINT
                                         )
14  JAMES D. ALLEN, S. MICHAEL LOVE, and )  Date: July 15, 2005
    DOES 1 through 10, inclusive,        )  Time: 11:00 a.m.
15                                       )  Dept: 61
        Defendants.                      )  The Honorable John S. Meyer
16                                       )

17

18

19

20

21

22

23

24

25

26

27                                       EXHIBIT 2 PAGE 174

28
                                                                     55

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WHITE & OLIVER
A Professional Corporation

<u>TABLE OF CONTENTS</u>

Pages

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    THE ALLEGATIONS OF THE UNDERLYING "GIFT" WHICH CONSTITUTE THE
       FACTUAL BASIS FOR ALL FRANK R.'S CAUSES OF ACTION . . . . . . . . . . . . . . 3

III.   THE RULES OF PROFESSIONAL CONDUCT AND LOVE'S DUTY . . . . . . . . . . . . 3

IV.    THE FIRST AND SECOND CAUSES OF ACTION
       FAIL TO STATE CAUSES OF ACTION FOR INTENTIONAL
       INTERFERENCE WITH CONTRACTUAL RELATIONS
       AND ARE UNCERTAIN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.     THE THIRD, FOURTH, FIFTH AND SIXTH CAUSES OF ACTION
       FAIL TO STATE FACTS SUFFICIENT TO CONSTITUTE CAUSES
       OF ACTION AGAINST LOVE FOR INTENTIONAL OR NEGLIGENT
       INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
       AND ARE UNCERTAIN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.    THE SEVENTH CAUSE OF ACTION FAILS TO STATE
       FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF
       ACTION FOR CIVIL RIGHTS VIOLATIONS
       AGAINST THIS DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VII.   THE EIGHTH CAUSE OF ACTION FAILS TO STATE
       FACTS SUFFICIENT TO CONSTITUTE A CAUSE
       OF ACTION AGAINST THIS DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VIII.  THE TENTH CAUSE OF ACTION FAILS TO STATE
       FACTS SUFFICIENT TO CONSTITUTE A CAUSE
       OF ACTION AGAINST THIS DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IX.    THE ELEVENTH AND TWELFTH CAUSES OF ACTION FAIL TO STATE
       FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF
       ACTION AGAINST THIS DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

X.     THE THIRTEENTH CAUSE OF ACTION FAILS TO STATE
       FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF
       ACTION AGAINST THIS DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

XI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**EXHIBIT 2 PAGE 175**

56

- i -

63642.1

MEMO OF PS AND AS IN SUPPORT OF DEMURRER AND DEMURRER TO FAC BY DEFENDANT S. MICHAEL LOVE

LOVE00547

## TABLE OF AUTHORITIES

**Pages**

### CASES

*Calistoga Civic Club v. Calistoga*
(1983) 143 Cal.App.3d 111 ....................... 10

*Burger v. Pond*
(1990) 224 Cal.App.3d 597 ........................ 4

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*
(1995) 11 Cal.App.4th 376 ........................ 4

*Dupont v. Dupont*
(2001) 88 Cal.App.4th 192 ........................ 1

*Fox v. Pollack*
(1986) 181 Cal.App.3d 954 ........................ 4

*Jenkins v. MCI Telecommunications Corp.*
(C.D. Cal. 1997) 973 F.Supp. 1133 ................. 7

*LiMandri v. Judkins*
(1997) 52 Cal.App.4th 326 ........................ 8

*Rose v. Royal Ins. Co.*
(1991) 2 Cal.App.4th 709 ......................... 3

*Ross v. Creel Printing & Publishing Co.*
(2002) 100 Cal.App.4th 736 ....................... 9

*Settimo Assoc. v. Environ Systems, Inc.*
(1993) 14 Cal.App.4th 842 ........................ 6

*Youst v. Longo*
(1987) 43 Cal.3d 64 .............................. 6

### STATUTES

Code of Civil Procedure section 430.3(a) ............................ 1

Business and Professions Code section 17200 ........................ 8

California Rule of Professional Conduct 1-100 ....................... 9

California Rule of Professional Conduct 5-300 (A) .............. 1, 3, 4, 9, 11

Code of Civil Procedure section 430.20(a) .......................... 7

Code of Civil Procedure section 431.20(b) .............. 7

Evidence Code section 452(d) ....................... 1

**EXHIBIT 2 PAGE 176**

57

WHITE & OLIVER
A Professional Corporation

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Evidence Code section 453 ............................................................. 1

## OTHER

11 Witkin, Summary of California Law (9th Ed.) *Trusts,* §305 ........................ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WHITE & OLIVER
A Professional Corporation

**EXHIBIT 2 PAGE 177**

58

63642.1

MEMO OF PS AND AS IN SUPPORT OF DEMURRER AND DEMURRER TO FAC BY DEFENDANT S. MICHAEL LOVE

LOVE00549

## I.

## INTRODUCTION

1    Plaintiff Frank Rogozienski ("Frank R.") now attempts to state a variety of causes of

2 action against two defendants. They are James D. Allen ("Allen"), who served as a stipulated

3 acting judge in the dissolution proceeding between Frank R. and his ex-wife Shirley Rogozienski

4 ("Shirley R."), and demurring defendant S. Michael Love ("Love"), who represented Shirley R.

5 during a part of that dissolution action, which has not concluded. As against Love, Frank R.

6 attempts but fails to plead twelve separate civil causes of action, all based solely on a claim that

7 Love violated California Rule of Professional Conduct ("RPC") 5-300(A).

8    The alleged violation was a gift by Love ultimately to Allen of a half-interest share in

9 Winter Springs Ranch in March 2002. First Amended Complaint ("FAC") ¶ 42. Allen was then

10 serving a judge in the dissolution proceeding between Frank R. and Shirley R. (FAC ¶ 10), in

11 which Love was then representing Shirley R. FAC ¶ 9. Allen withdrew as judge in the

12 dissolution action on March 23, 2003. FAC ¶ 41. Frank R. then challenged rulings which had

13 been made by Allen. FAC ¶ 43.

14    On October 20, 2004, the rulings made by Allen after, *but not those before the February*

15 *2002 transfer of Love's interest in the Warner Spring Ranch,* were set aside. October 20, 2004

16 Statement of Decision ("SOD") in *Shirley R. v. Frank R.,* San Diego Superior Court Case No.

17 D440154. The court is requested to take judicial notice of a certified copy of that statement of

18 decision. (Evidence Code sections 452(d) and 453.) The court is authorized to consider as

19 grounds for demurrer matters of which the court may or must take judicial notice. Code of Civil

20 Procedure section 430.3 (a). A new trial in the dissolution action between Frank R. and Shirley

21 R. was then ordered as to those post-"gift" rulings which had been set aside. SOD, p. 11. In other

22 words, any rulings by Allen which may have been tainted, or perceived to be possibly tainted,

**EXHIBIT 2 PAGE 178**

WHITE & OLIVER
A Professional Corporation

---

The underlying action was a marital dissolution proceeding between the Rogozienskis, in which
defendant S. Michael Love represented the wife. For clarity and ease of reference, and because it is the
preferable practice in family law, the parties to that underlying action will be referred to by their first
names. *Dupont v. Dupont* (2001) 88 Cal.App.4th 192, 194.

- 1 -

63642.1

MEMO OF PS AND AS IN SUPPORT OF DEMURRER AND DEMURRER TO FAC BY DEFENDANT S. MICHAEL LOVE

59

LOVE00550

1   were set aside with Frank R. now entitled to a "do over" of them.

2        Frank R. here acknowledges that he "is in some doubt as to whether he is entitled to

3   redress from all the Defendants or from one or more of them... ." FAC ¶ 8. Ignoring these

4   doubts, Frank R. nevertheless attempts to plead some twelve causes of action against Defendant

5   Love. All are based on Love's claimed violation of RPC 5-300(A) which, as will be explained,

6   does not give rise to any civil cause of action. These include:

7       •   The first and second causes of action for intentional interference with contractual

8          relations;

9       •   The third and fourth causes of action for intentional interference with prospective

10        economic advantage;

11      •   The fifth and sixth causes of action for negligent interference with prospective

12        economic advantage;

13      •   The seventh cause of action for civil rights violations absent any allegation Love

14        was a state actor;

15      •   The eighth cause of action for fraudulent concealment;

16      •   The tenth cause of action for unfair competition in violation of Business and

17        Professions Code ("B&P") section 17200;

18      •   The eleventh cause of action for "willful misconduct and intentional infliction of

19        injury" (with no attempt to even set forth a legally cognizable tort);

20      •   The twelfth cause of action for negligence; and

21      •   The thirteenth cause of action for unjust enrichment.

22        Frank R. should have listened to his doubts, because in every instance he fails to state

23   facts sufficient to constitute a cause of action against Love. He has no right to redress against

24   Love.

25   ///

26   ///

27   ///                      **EXHIBIT 2 PAGE 179**

28   ///

*WHITE & OLIVER*
*A Professional Corporation*

63642.1

60

LOVE00551

## II.

### THE ALLEGATIONS OF THE UNDERLYING "GIFT" WHICH CONSTITUTE THE FACTUAL BASIS FOR ALL FRANK R.'S CAUSES OF ACTION

Frank R. alleges a chronological history of events, which for purposes of this demurrer are assumed to be true. *Rose v. Royal Ins. Co.* (1991) 2 Cal.App.4th 709, 716. Frank R. and Shirley R. were married from 1992. In October 1997 Shirley R. brought a dissolution action, in which Love represented her until February 2005. FAC ¶ 9. In June 1998 Frank R. and Shirley R. entered into a written agreement for Allen to act as temporary judge in the dissolution action, the costs to be split. FAC ¶ 10. Allen was appointed and served in that capacity until he withdrew on March 27, 2003. FAC ¶ 10.

Allen was friends with attorney Harold Bottomley, who was a former associate in Allen's firm. FAC ¶ 11. Bottomley was interested in acquiring a membership in Warner Springs Ranch, and Allen became interested. FAC ¶ 15. Love had two separate half-interest memberships in Warner Springs, which he was not using and no longer wanted. FAC ¶ 17. In February 2002, Love quit-claimed the two interests to Bottomley, who in turn quit-claimed one to Allen. FAC ¶ 24-25. Neither Allen nor Love disclosed this to Frank R. FAC ¶ 36. Allen subsequently made decisions in the dissolution action, including an order that Frank R. pay $250,000 for Shirley R.'s attorneys fees. FAC ¶ 37-38. The rulings and orders of Allen subsequent to the gift were set aside and are subject to new trial. October 20, 2004 SOD. FAC ¶ 43.

## III.

### THE RULES OF PROFESSIONAL CONDUCT AND LOVE'S DUTY

**EXHIBIT 2 PAGE 180**

Frank R. asserts that Love's gift to Allen violated Rule of Professional Conduct 5-300(A). FAC ¶ 120-121. From nothing more than this alleged violation, Frank R. attempts to state twelve separate causes of action against Love. Frank R. was the party adverse to Love's client Shirley in the dissolution proceeding. No matter how it is couched under the various tort claims Frank R. attempts to plead, Love owed no duty to Frank R. not to violate RPC 5-300(A). "[T]he

61

- 3 -

WHITE & OLIVER
A Professional Corporation

1   attorney is not burdened with any duty toward nonclients merely because of his or her status as

2   an attorney." *Fox v. Pollack* (1986) 181 Cal.App.3d 954, 960, cited in *Burger v. Pond* (1990)

3   224 Cal.App.3d 597. Love simply had no duty to Frank which would give rise to any tort cause

4   of action arising out of a violation of RPC 5-300(A).

5        Frank R. also asserts that Allen, but not Love, had a duty as a temporary judge to make

6   disclosures about the gift. FAC ¶ 123. Frank R. got the relief the law provides for any claimed

7   violation by the disqualification of Allen and partial set aside, that of post-"gift" rulings.

8   October 20, 2004 SOD.

### IV.

### THE FIRST AND SECOND CAUSES OF ACTION FAIL TO STATE CAUSES OF ACTION FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND ARE UNCERTAIN

13       The First Cause of Action is against both Allen and Love for intentional interference with

14  contractual relationships. Those relationships alleged in the First Cause of Action are: (a)

15  contractual relationships between Frank R. and Shirley R. - FAC ¶ 52; (b) Frank R's contractual

16  relationships with Qualcomm for his stock and with unidentified third parties - FAC ¶ 53; (c)

17  and the contractual relationship between Frank R. and his lawyer in the dissolution proceeding -

18  FAC ¶ 54. Defendants allegedly prevented performance of those contracts or caused them to be

19  more expensive and burdensome. FAC ¶ 57. The Second Cause of Action is only against Love.

20  Frank R. alleges Love's gift to Allen somehow interfered with Frank R.'s agreement for

21  payment of services to Allen, in Allen's capacity as temporary judge in the dissolution

22  proceeding. FAC ¶ 61-63.                           **EXHIBIT 2 PAGE 181**

23       Both causes of action fail to state facts sufficient to constitute causes of action against

24  Love, because they fail to allege facts and are uncertain. In its decision in *LiMandri v. Judkins*

25  (1997) 52 Cal.App.4th 326, this court explained the requisites of a claim for intentional

26  interference with contractual relations, as had been addressed by the California Supreme Court

27  in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.App.4th 376. Among the

28  elements are that the defendant must have engaged in intentional acts designed to induce a

WHITE & OLIVER
A Professional Corporation

- 4 -

LOVE00553

1  breach or disruption of the contractual relationship, and actual breach or disruption of the

2  relationship with resulting damages. *Id*. at 343-344. This court found that LiMandri in his

3  complaint had stated facts sufficient to constitute a cause of action, reciting LiMandri's

4  allegations as to the specifics and the methods and conduct by which there had been interference

5  causing him damage. *Id*. at 344.

6        Love fails completely to allege any such facts in either of the first two causes of action.

7  There is no allegation, nor can there conceivably be one, as to how Love's "gift" to Allen

8  interfered with the pre-nuptial agreement or property agreements between Frank R. and Shirley

9  R., or with Frank R.'s contracts for Qualcomm stock, or with Frank R.'s fee agreement with his

10  own dissolution attorney. FAC ¶ 52-54. Similarly there is no allegation as to how Love's gift to

11  Allen caused damage to Frank R. with respect to Frank R.'s obligation to pay half of Allen's

12  fees for services of temporary judge. FAC ¶ 61. To the contrary Frank R. acknowledges that he

13  challenged Allen, who withdrew. FAC ¶ 41.

14               V.

15     **THE THIRD, FOURTH, FIFTH AND SIXTH CAUSES OF ACTION**
16     **FAIL TO STATE FACTS SUFFICIENT TO CONSTITUTE CAUSES**
       **OF ACTION AGAINST LOVE FOR INTENTIONAL OR NEGLIGENT**
17     **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
       **AND ARE UNCERTAIN**

18       The Third Cause of Action alleges that Love (and Allen) intentionally interfered with the

19  prospective economic advantage Frank R. claims he would derive from: (a) the economic

20  relationship between Frank R. and Shirley R., who was suing him for divorce; (b) the economic

21  relationship between Frank R. and the attorney he was paying to represent him in the divorce;

22  and (c) between Frank R. and Qualcomm or other unidentified third persons with whom he

23  proposed to do business. FAC ¶ 68. The Fourth Cause of Action, against only Love, alleges

24  that Love interfered with the "probable future economic" advantage Frank R. hoped to derive

25  from his economic relationship with Allen (FAC ¶ 76), which economic relationship is

26  identified as nothing more than Frank R. paying one-half of Allen's fees as a temporary judge.

27  FAC ¶ 10.

28  ///                  **EXHIBIT 2 PAGE 182**

WHITE & OLIVER
A Professional Corporation

- 5 -

63642.1

LOVE00554

1        The Fifth Cause of Action against Love (and Allen) is for negligent interference with

2  prospective economic advantage. The economic relationships from which anticipated future

3  economic benefit with which there was alleged interference causing Frank R. damages, again

4  were: (a) the economic relationship between Frank R. and Shirley R., who was suing him for

5  divorce; (b) the economic relationship between Frank R. and the lawyer he was paying to

6  represent him in the dissolution; and (c) the economic relationship between plaintiff and

7  Qualcomm and other unspecified third persons, which relationships are identified nor is

8  provided how Love possibly interfered with them, either intentionally or negligently. FAC ¶ 84.

9        The Sixth Cause of Action again alleges that Frank Rogozienski's relationship with Allen

10  – that for which Frank was paying half of Allen's fee for services as a temporary judge (FAC ¶

11  10) contained probable future economic benefit or advantage to Frank Rogozienski (FAC ¶ 92).

12  Frank Rogozienski has not alleged facts, nor can it be conceived, how this was to have occurred.

13        All four causes of action fail to state facts sufficient to constitute a cause of action against

14  Love for any interference with prospective economic relations, whether intentional or negligent.

15  "The tort of intentional or negligent interference with prospective economic advantage imposes

16  liability for improper methods of disrupting or diverting the business relationship of another

17  which fall outside the boundaries of fair competition." *Settimo Assoc. v. Environ Systems, Inc.*

18  (1993) 14 Cal.App.4th 842, 845. A threshold with respect to the issue of a prospective

19  economic benefit is that "it must be reasonably probable that the prospective economic

20  advantage would have been realized but for defendant's interference." *Youst v. Longo* (1987) 43

21  Cal.3d 64, 71.                      **EXHIBIT 2 PAGE 183**

22        There is nothing alleged in the Third through the Sixth Causes of Action to state facts or.

23  even suggest how Love interfered with economic relationships which could prospectively have

24  brought economic advantage to Frank, whether it be the economic relationship alleged between

25  Frank and Shirley, who was suing him for divorce, between Frank and Frank's divorce lawyer

26  whose fees were being paid by Frank, or between Frank and Allen, half of whose fees were

27  being paid by Frank. The only other prospective economic relationship(s) is between Frank and

28  Qualcomm or unnamed third parties. However, the FAC is silent as to what those relationships

WHITE & OLIVER
A Professional Corporation

64

- 6 -               63642.1

1  prospectively were, or how any conduct by Love interfered, particularly with those of unnamed

2  third persons. The Third through the Sixth Causes of Action collectively fail to state facts

3  sufficient to constitute any cause of action against Love. Code of Civil Procedure section

4  430.20(a). They are uncertain and completely unintelligible as to what those relationships were

5  or how Love might have interfered with them. Code of Civil Procedure section 431.20(b).

VI.

### THE SEVENTH CAUSE OF ACTION FAILS TO STATE FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION FOR CIVIL RIGHTS VIOLATIONS AGAINST THIS DEFENDANT

10  Defendant Love is alleged to have been a private attorney representing Shirley

11  Rogozienski in the dissolution proceeding she brought against Frank. (FAC ¶ 9.) Love as a

12  private party is alleged to have made a gift of a membership interest in Warner Springs Ranch to

13  Attorney Allen. (FAC ¶¶ 29-30.) Frank Rogozienski asserts he was denied the right to a fair

14  trial. (FAC ¶ 99.)

15  The Seventh Cause of Action fails to state and cannot be amended to state a cause of

16  action for violation of civil rights. "State action is a prerequisite for maintaining a cause of

17  action for a violation of civil rights." *Jenkins v. MCI Telecommunications Corp.* (C.D. Cal.

18  1997) 973 F.Supp. 1133, 1136. Frank has not alleged and cannot allege that Love was a state

19  actor, and as such his claim for civil rights violations against Love must fail as a matter of law.

20  (*Id.* at 1136.) The Seventh Cause of Action fails to state any cognizable cause of action.

VII

### THE EIGHTH CAUSE OF ACTION FAILS TO STATE FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION AGAINST THIS DEFENDANT

**EXHIBIT 2 PAGE 184**

24  The Eighth Cause of Action fails to state any claim against Love for fraudulent

25  concealment. Frank alleges that Allen and Love did not disclose the fact of a gift to Allen of the

26  one-half interest in a Warner Springs membership, which gift he alleges defendants "should

27  have disclosed." (FAC ¶ 103.) Love represented Shirley, and Frank was the adverse party in the

28  dissolution proceeding. One essential element of a claim for fraudulent concealment which must

65

- 7 -

63642.1

WHITE & OLIVER
A Professional Corporation

LOVE00556

1    be alleged is that there is some basis by which Love may have had a duty to disclose the gift to

2    Frank. This court again addressed those circumstances in the *LiMandri v. Judkins* (1997) 52

3    Cal.App.4th 326 action. As stated:

> There are 'four circumstances in which nondisclosure or concealment
> may constitute actionable fraud: (1) when the defendant is in a fiduciary
> relationship with the plaintiff; (2) when the defendant had exclusive
> knowledge of material facts not known to the plaintiff; (3) when the
> defendant actively conceals a material fact from the plaintiff; and (4)
> when the defendant makes partial representations but also suppresses
> some material facts. . . Each of the [three nonfiduciary] circumstances in
> which nondisclosure may be actionable presupposes the existence of some
> other relationship between the plaintiff and defendant in which a duty to
> disclose can arise.

> [S]uch a relationship can only come into being as a result of some sort of
> transaction between the parties. . . Thus, a duty to disclose may arise from
> the relationship between seller and buyer, employer and prospective
> employee, doctor and patient, or parties entering into any kind of
> contractual agreement.' All of these relationships are created by
> transactions between parties from which a duty to disclose facts material
> to the transaction arises under certain circumstances.

14    *Id*. at 326, 336-337.

15         The court found that LiMandri had not sufficiently alleged circumstances, nor could he

16    allege circumstances, by which he could allege that a duty of disclosure had been imposed on

17    defendant Judkins. Similarly here, Frank has not met and cannot meet that burden. None of the

18    circumstances has been alleged, and none existed.

19                                   VIII.                          **EXHIBIT 2 PAGE 185**

20    <u>THE TENTH CAUSE OF ACTION FAILS TO STATE
      FACTS SUFFICIENT TO CONSTITUTE A CAUSE</u>

21    <u>OF ACTION AGAINST THIS DEFENDANT</u>

22         Frank claims that Love engaged in unfair and fraudulent business practices in violation of

23    Business and Professions Code section 17200, *et seq*., because the Warner Springs gift provided

24    an unfair advantage. (FAC ¶ 117.) First, it must be remembered that all the rulings by Allen

25    subsequent to the "gift" have been set aside, with a new trial pending.

26         In particular as against Love, the cause of action is therefore nonsensical. There is no

27    allegation, nor has California law recognized, that a violation of RPC 5-300(A) constitutes an

28    unfair business practice under Business and Professions Code section 17200. Love represented

WHITS & OLIVER
A Professional Corporation

66

LOVE00557

WHITE & OLIVER
A Professional Corporation

1    Shirley in her divorce action against Frank. There would be no relief available under the act.

2    There is and could be no injunction as against Love under Business and Professions Code

3    section 17203 based on the conduct alleged. Similarly, there is not any allegation that Love is in

4    possession of anything of Frank's which Love could be ordered to restore under section 17203.

5    Love did not receive anything by way of Love's gift to Allen which would be legally restorable

6    to Frank. The demurrer should be sustained without leave to amend.

7                                                IX.

8        **THE ELEVENTH AND TWELFTH CAUSES OF ACTION FAIL TO STATE
         FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF**

9                    **ACTION AGAINST THIS DEFENDANT**

10            The Eleventh Cause of Action is not labeled, nor does it include in its contents any

11    allegations of the elements of any cognizable tort for which Frank R. could pursue relief as

12    against Love. Rather, the Eleventh Cause of Action alleges that Love and Allen breached their

13    respective duties to him in their capacities as members of the State Bar of California. (FAC ¶

14    132.)

15            In the Eleventh and Twelfth Causes of Action, it is alleged that Love violated RPC Rule

16    5-300(A). The alleged violation is alternatively claimed to be willful (FAC ¶ 124), or negligent

17    (FAC ¶ 134). As discussed, a violation of that Rule of Professional Conduct does not give rise

18    to a civil cause of action, either for alleged willful and intentional conduct or negligent conduct.

19    RPC 1-100. "There is no independent cause of action for the breach of a disciplinary rule.

20    While the rules may provide a standard of conduct for attorneys, they do not alone support a

21    claim for damages." (*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 746

22    (citations omitted).)

                                                 **EXHIBIT 2 PAGE 186**

23            As set forth in RPC 1-100(A):

24            These rules are not intended to create new civil causes of action. Nothing
              in these rules shall be deemed to create, augment, diminish, or eliminate
25            any substantive legal duty of lawyers or the non-disciplinary consequences
              of violating such a duty. RPC 1-100(A).

26

27            The Eleventh and Twelfth Causes of Action do not state causes of action, and the

28    allegations therein do not and cannot constitute causes of action, in California. The demurrer to

                                          - 9 -                              .67

1   these causes of action should be sustained without leave to amend.

2   ## X.

3   ## THE THIRTEENTH CAUSE OF ACTION FAILS TO STATE FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION AGAINST THIS DEFENDANT

5   The Thirteenth Cause of Action as against all defendants is entitled "unjust enrichment."

6   Frank R. alleges that the defendants unjustly enriched themselves to his detriment and hold

7   monies paid by Frank R. as "constructive trustees." FAC ¶ 137. Frank R. seeks imposition of a

8   constructive trust for monies paid by him and "wrongfully acquired or detained by Defendants."

9   Prayer ¶ 3.

10   The purported cause of action makes no sense and fails to state any cause of action against

11   Love. Nowhere has it been alleged or could it be alleged that Love wrongfully acquired Frank

12   R.'s property. Love represented Shirley R. in the divorce action. In order to state a claim for

13   unjust enrichment, it "must be shown . . . that the acquisition of the property was wrongful and

14   that the keeping of the property by the defendant would constitute unjust enrichment." *Calistoga*

15   *Civic Club v. Calistoga* (1983) 143 Cal.App.3d 111, 116. In such instances the appropriate

16   equitable remedy may be a constructive trust. See generally, 11 Witkin, Summary of California

17   Law (9th Ed.) *Trusts*, §305 *et seq.*

18   There is no allegation of any conduct or identification of any property of Love on which a

19   constructive trust could or should be imposed, for a supposedly wrongful gift by Love to Allen of

20   the one half interest in the Warner Springs Ranch share. The cause of action simply fails to state

21   any facts sufficient to constitute a cause of action for unjust enrichment or entitlement to a

22   constructive trust as against Love. The demurrer should be sustained without leave to amend.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

*(left margin, vertical)* WHITE & OLIVER, A Professional Corporation

**EXHIBIT 2 PAGE 187**

88

63642.1

MEMO OF PS AND AS IN SUPPORT OF DEMURRER AND DEMURRER TO FAC BY DEFENDANT S. MICHAEL LOVE

LOVE00559

## XI.

## CONCLUSION

The demurrer to each cause of action as against Love should be sustained without leave to amend. It is clear from the face of the first amended complaint, Frank R.'s second effort, that he has no claim against Love other than a claim which gives no independent rise to civil liability, i.e. a claim that Love is in violation of California RPC-300(A).

WHITE & OLIVER

By: _____
Steven G. Amundson
Attorneys for Defendant
S, MICHAEL LOVE

WHITE & OLIVER
A Professional Corporation

**EXHIBIT 2 PAGE 188**

- 11 -

63642.1

69

MEMO OF PS AND AS IN SUPPORT OF DEMURRER AND DEMURRER TO FAC BY DEFENDANT S. MICHAEL LOVE

LOVE00560

7

EXHIBIT 2 PAGE 189

LOVE00561

1   Daniel M. White (SBN# 068011)
    Steven G. Amundson (SBN# 073501 )
2   WHITE & OLIVER
    A Professional Corporation
3   550 West C Street, Suite 950
    San Diego, California 92101
4   Telephone: (619) 239-0300
    Facsimile: (619) 239-0344
5

6   Attorneys for Defendant
    S. MICHAEL LOVE



RECEIVED
MAY 2 6 2005
BY:.....................

7

8            SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                FOR THE COUNTY OF SAN DIEGO

10   FRANK E. ROGOZIENSKI,         )   Case No. GIC843843

11          Plaintiff,             )   REQUEST FOR JUDICIAL
                            )   NOTICE
12       v.                        )
                            )   Date: July 15 ,2005
13   JAMES D. ALLEN, S. MICHAEL LOVE, and  )   Time: 11:00 a.m.
    DOES 1 through 10, inclusive,       )   Dept: 61
14                         )   The Honorable John S. Meyer
        Defendants.           )
15                         )

16        Defendant S. Michael Love requests that this Court take judicial notice pursuant to

17   Evidence Code sections 452 and 453 of the following document, which is subject to judicial

18   notice and relevant to the instant demurrer:

19       Exhibit A:     Certified copy of Statement of Decision in *Re The Marriage of Shirley L.*

20                    *Rogozienski v. Frank E. Rogozienski*, San Diego County Superior Court

21                    Case No. D440154, dated October 20, 2004.

22                        WHITE & OLIVER

23

24              By: _____
25                 Steven G. Amundson
                Attorneys for Defendant
26                 S. MICHAEL LOVE

**EXHIBIT 2 PAGE 190**

27

28                                                  70

WHITE & OLIVER
A Professional Corporation

**EXHIBIT 2 PAGE 191**

71

Exhibit A

LOVE00563

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F I L E D
Clerk of the Superior Court

OCT 2 0 2004

By: L. GARIBAY-SANCHEZ, Deputy

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

In re the Marriage of:

Petitioner:   SHIRLEY L. ROGOZIENSKI

and

Respondent:   FRANK E. ROGOZIENSKI

Case No. D440154

STATEMENT OF DECISION

　　　This matter came before the Court on Respondent's properly Noticed Motion to Set Aside Judgment and Non-Stipulated Interlocutory Rulings, following the Court of Appeal's granting of Respondent's Petition for Writ of Error *Coram Vobis*. Petitioner was present and represented by Douglas Butz and Michael S. Love; Respondent was present and represented by Gerald L. McMahon. The Court read and considered the written pleadings of the parties, all admitted evidence and declarations, and arguments of counsel in reaching its determination in this matter.

### BACKGROUND

Frank and Shirley Rogozienski[1] were married January 30, 1982, and separated on October 27, 1997.  Shirley filed a petition for dissolution of marriage on October 30, 1997.

---
[1] The parties are referred to by their first names, not out of familiarity or disrespect, but for ease of reference and because it is the preferred practice in family law cases. *Dupont v. Dupont* (4th Dist. 2001) 88 Cal. App. 4th 1992,1994.

1

**EXHIBIT 2 PAGE 192**

72

LOVE00564

1  On August 4, 1998, the parties stipulated to having attorney James D. Allen (Allen) serve as

2  a temporary judge for all purposes.  Over the next four years, Allen issued decisions affecting

3  the characterization and distribution of the parties' assets and obligations.  Initially, Allen

4  conducted a two-day trial on September 16-17, 1998, on the bifurcated issue of the parties'

5  Antenuptial Agreement.  A Statement of Decision on the validity of the Antenuptial Agreement

6  was filed on May 10, 1999.  Trial on the remaining issues took place from October 24, 2001

7  through November 19, 2001, but with some issues being reserved.  Evidence on the reserved

8  issues was received on October 11, 2002.  Allen issued an Amended Statement of Decision

9  on October 23, 2002, and a Second Amended Statement of Decision on November 12, 2002.

10 Judgment was entered on November 25, 2002.    Both parties have appealed the final

11 judgment.

12      While researching issues related to the scope of Allen's jurisdictional authority on post-

13 judgment matters, Frank became aware of California Rules of Court, Rule 244(b) requiring a

14 temporary judge to make disclosures in compliance with Canon 6 of the Code of Judicial

15 Ethics and the Rules of Court.  On March 7, 2003, Frank requested Allen to make any

16 disclosures as required by law.  Allen did not respond.  Frank's own research then revealed

17 conduct and relationships involving Allen that he believed should have been disclosed and

18 that he now alleges disqualified Allen from acting as a temporary judge.  On March 17, 2003,

19 Frank filed a Statement of Disqualification pursuant to Code of Civil Procedure §170.3(c).

20 On March 27, 2003, Allen filed a responsive statement voluntarily withdrawing as temporary

21 judge but not conceding that any of Frank's allegations were grounds for disqualification.

22      On May 23, 2003, Frank filed a Petition for Writ of Error *Coram Vobis* asking the Court

23 of Appeal to direct the current trial court judge to hear and rule on Frank's motion to set aside

24 certain of Allen's rulings made by him at the time he was allegedly disqualified.  The Court of

73

**EXHIBIT 2 PAGE 193**

2

LOVE00565

1  Appeal granted Frank's petition.   The writ directs the trial court to hear and rule on Frank's

2  motion which seeks to set aside (1) the November 25, 2002, Judgment, (2) the November 12,

3  2002, Second Amended Statement of Decision, (3) the May 10, 1999, Statement of Decision

4  on the validity of the prenuptial agreement, and (4) the July 27, 1999, order appointing Bruno,

5  Mack & Barclay to perform tracing and accounting services.

6

7                               CRITERIA FOR DISQUALIFICATION OF A JUDGE

8  The test for disqualification:

9       In its opinion on the writ petition, the Court of Appeal clearly set forth the standard or

10  test for disqualification. "A judge shall be disqualified if a person aware of the facts might

11  reasonably entertain a doubt that the judge would be able to be impartial." ([Code of Civil

12  Procedure] §170.1, subd. (a)(6)(C).) The standard for disqualification is fundamentally an

13  objective one and not limited to actual bias. (*United Farm Workers of America v. Superior*

14  *Court* (1985) 170 California Appellate 3d 97,104.) Disqualification is mandated if a

15  reasonable person would entertain doubts concerning the judge's impartiality. (Ibid.) Except

16  in very limited circumstances not applicable here, a disqualified judge has no power to act in

17  any proceedings after his or her disqualification. (Code of Civil Procedure §170.4.)."

18  *Rogozienski v. Superior Court* (California Unpublished Opinion, 2003) pp. 5-6.

19  When disqualification occurs:

20       The Court of Appeal also delineated the timing of disqualification. "Disqualification

21  occurs when the facts creating disqualification arise, not when disqualification is established.

22  (*Tatum v. Southern Pacific Co.* (1967) 250 California Appellate 2d 40, 43, 58 California

23  Reporter 238. See also *Urias v. Harris Farms, Inc.* (1991) 234 California Appellate 3d 415,

24  422-427, 285 California Reporter 659.)"   *Rogozienski v. Superior Court, supra* at p. 6.

25  ///

26

27

28

                                                              **EXHIBIT 2 PAGE 194**

                                                                                         74

                                    3

L0VE00566

<u>Rulings subject to set aside:</u>

"In the event that grounds for disqualification are first learned of or arise after the judge has made one or more rulings in a proceeding but before the judge has completed judicial action in a proceeding, the judge shall, unless the disqualification be waived, disqualify himself or herself, but in the absence of good cause the rulings he or she has made up to that time shall not be set aside by the judge who replaces the disqualified judge." Code of Civil Procedure §170.3(b)(4). In this case, the alleged grounds for disqualification were first learned of after Allen had made all of the rulings at issue, but they arose at various points in time over the four years Allen acted as a judge.

<u>Frank's burden to have rulings set aside:</u>

To prevail on his motion to set aside, Frank must prove that (1) the factual allegations are true; (2) these true facts give rise to disqualification as being contrary to the Code of Judicial Ethics -- that is, a reasonable person aware of the facts would entertain doubts concerning the judge's impartiality; (3) the disqualification occurred at a point in time prior to the ruling(s) at issue; and (4) for those rulings that occurred prior to the disqualification, there is good cause to set aside the ruling(s).

THE ALLEGED DISQUALIFYING CONDUCT OR EVENTS

<u>Allen's professional relationship with Christopher Barclay:</u>

The first alleged disqualifying conduct is Allen's professional relationship with Christopher Barclay of the accounting firm of Bruno, Mack & Barclay and his failure to disclose this relationship. More specifically, Frank alleges that Allen had used Barclay to provide forensic accounting services for Allen's own clients both before and during the time Barclay was providing expert services on this case. Moreover, Allen was in a position to order payment of $400,000 to Barclay for his services on this case.

**EXHIBIT 2 PAGE 195**

4

15

1        The alleged disqualifying conduct took place on July 27, 1999, when Allen appointed

2  Barclay to perform tracing services for the court. Is it undisputed that Allen had a previous

3  and on-going professional relationship with Barclay, that he appointed Barclay to perform

4  expert accounting services for the court in this case, and that he was in a position to award

5  Barclay $400,000 in fees. Would a reasonable person aware of these facts entertain doubts

6  concerning the judge's impartiality? The fact that Allen, the judge, had used Barclay's expert

7  services on behalf of his own clients in the past produces no meaningful benefit or drawback

8  to either Frank or Shirley, or their counsel. Neither party would be advantaged or

9  disadvantaged by the judge's reliance upon a familiar expert's capabilities. While Allen might

10  arguably be on the receiving end of Barclay's gratitude for the award of hundreds of

11  thousands of dollars in expert fees in this case, this prospective personal benefit to Allen

12  would not create a bias one way or the other as to the Rogozienskis. A reasonable person

13  would not doubt Allen's impartiality based on this information. Therefore, Allen's professional

14  relationship with Barclay does not constitute disqualifying conduct and cannot serve as a

15  basis for setting aside any of Allen's orders.

16  <u>Allen's personal relationship with Edward Silverman and his financial relationship with the</u>

17  <u>Procopio Cory law firm:</u>

18        The second alleged disqualifying conduct is Allen's personal relationship with Edward

19  Silverman, one of Shirley's attorneys, and Allen's financial relationship with the Procopio Cory

20  law firm, and his failure to disclose either relationship. Frank specifically contends that Allen

21  was in a position to award Silverman significant attorney's fees; that Allen had a financial

22  interest in the Procopio Cory law firm through his ex-wife; that Allen and Silverman had

23  worked on an appeal together; and, that Allen's associate accepted a referral from Silverman

24  during the time Allen was acting as temporary judge.

**EXHIBIT 2 PAGE 196**

5

LOVE00568

1   The alleged disqualifying conduct took place on September 9, 2002, when Silverman

2   associated in as co-counsel for Shirley.  It is undisputed that Silverman has been a lawyer

3   with the Procopio Cory law firm for 25 years.  It is undisputed that Allen was married to Linda

4   Cory and that Linda is the daughter of Alec Cory, a named partner in Silverman's law firm.  It

5   is undisputed that Alec retired in 1993 and receives only a set monthly pension from the law

6   firm.  Further, Allen and Linda separated in 1999 and subsequently divorced.  Finally, Allen

7   was in a position to award significant attorney's fees to Silverman.  Would a reasonable

8   person aware of these facts entertain doubts concerning the judge's impartiality?  The only

9   arguable impartiality would come from concluding that Allen might benefit by either awarding

10  or not awarding fees to Silverman.  The fee award arguably would affect Alec's pension,

11  which in turn would affect Linda's financial or emotional well being, leading to some financial

12  or emotional satisfaction for Allen.   However, Frank has failed to establish any financial or

13  emotional benefit or, indeed, even a meaningful correlation between Silverman and Allen.  In

14  addition, that they have worked together on one appeal or have referred a case one to the

15  other would not cause a reasonable person to entertain doubts about the impartiality of the

16  attorney acting as the temporary judge. This is particularly so when one takes into account

17  the necessarily close professional and social interaction among San Diego family law

18  practitioners.  Therefore, Allen's personal relationship with Silverman does not constitute

19  disqualifying conduct and is not grounds for setting aside any of Allen's orders.

20  <u>Transfer of Love's Interest in the Warner Springs Ranch:</u>

21      The third and final alleged disqualifying conduct is Allen's acceptance of the timeshare

22  interest in Warner Springs Ranch as a gift from S. Michael Love, another of Shirley's

23  attorneys, and his failure to disclose this gift.   Frank contends that Allen awarded Love

24  $250,000 attorney's fees after Love gifted a one-half timeshare interest in the Warner Springs

**EXHIBIT 2 PAGE 197**

6

LOVE00569

1   Ranch facilities to Allen through another attorney, Harold S. Bottomley, III.

2        Contrary to Frank's position, the Appellate Court did not conclusively determine that

3   the transfer of the Warner Springs Ranch timeshare was disqualifying conduct. Rather, the

4   Appellate Court found, for purposes of the writ, that the alleged facts concerning the Warner

5   Springs Ranch timeshare would support disqualification. The Appellate Court also noted that

6   it would be for the trial court to consider in the context of the motion to set aside Allen's ruling,

7   the contentions raised by Shirley that (1) the Warner Springs interest has no real value; (2)

8   Allen's decisions were impartial and largely involved questions of law; and (3) facts are to be

9   viewed in the context of the everyday realities affecting the bench.

10       The alleged disqualifying conduct took place over February and March 2002. It is

11  undisputed that Love transferred two one-half timeshare interests in the Warner Springs

12  Ranch to Bottomley, that the transfers were designated as "gifts," and that no payment of

13  money or other consideration was involved. A month later Bottomley transferred one of those

14  half interests (Unit 850A) to Allen, again reciting that the transfer was a "gift." Love admits

15  that prior to the initial transfer from himself to Bottomley he was aware Bottomley had been

16  discussing with Allen his taking one of the half interests. Love admits he wrote a letter to the

17  president of the Warner Springs Board of Directors on behalf of two attorneys (Bottomley and

18  Allen) asking about interest conversions. Love admits that he learned in or about March

19  2002 that Allen had, in fact, received one of Love's half interests from Bottomley. It is

20  undisputed that Allen knew his half interest had very recently been owned by Love. And,

21  lastly, it is undisputed that after the transfer of the property, Allen awarded Love $250,000 in

22  attorney's fees. A temporary judge shall under no circumstance accept a gift if the donor is a

23  party or person whose interests are reasonably likely to come before the temporary judge.

24  California Code of Judicial Ethics, Canon 6D(2)(d). Knowing these facts, a reasonable

EXHIBIT 2 PAGE 198

78

7

LOVE00570

1   person would likely entertain doubts about Allen's impartiality. The court need not find

2   insincere Love's assertion that the transfer of the timeshare was an innocent transaction to

3   rid himself of vacation property that was no longer of any use to him. Rather, it is the

4   reasonable person's view of the facts that governs disqualification.

5

6       The monetary value, or alleged lack thereof, of the Warner Springs timeshare to Love

7   does not erase the doubts regarding Allen's ability to remain impartial. The property obviously

8   was of some value to Allen or he would not have accepted it, along with its attendant

9   maintenance fee obligations, from Bottomley.

10      Assuming Allen's decisions were "largely" questions of law, they were not exclusively

11   questions of law. Moreover, the questions of law necessarily required Allen's impartial

12   hearing of legal arguments, a determination of the truthfulness of facts, and the impartial

13   application of those facts to the law. The Court is not convinced that a reasonable person,

14

15   aware of Allen's receipt of the "gift," would believe that Allen's legal application of the facts to

16   the law would be wholly unaffected by his acquisition of Love's Warner Springs property.

17      As noted above, the Court recognizes and appreciates the close professional and

18   social interaction among San Diego family law practitioners. This collegiality is in general a

19   positive force in the esoteric, and at times heart-rending, field of family law. However,

20   collegiality must be accompanied by diligent self-policing, lest the family law practitioner risk

21   eroding the public trust, not only in the practitioner, but in the justice system itself. The flames

22   of enmity that envelop many family law litigants are fanned by conduct that encourages

23   distrust of the family law bar and, in this case, judicial officers. The deleterious effect that this

24   distrust has on our justice system cannot be overstated, and cannot go unaddressed.

25

26      Love knew Bottomley was planning on transferring Love's Warner Springs property

27   immediately to Allen at a time when Allen was acting as a judge in one of Love's cases, and

28

**EXHIBIT 2 PAGE 199**

9

LOVE00571

1    was in a position to award Love significant attorney's fees, and Allen knew the property was

2    coming, albeit indirectly, from Love. A reasonable person aware of these facts would likely

3    entertain doubts about Allen's impartiality. Therefore, the court finds that the receipt by Allen,

4    via Bottomley, of Love's interest in the Warner Springs Ranch, where both transfers were

5    characterized as "gifts", constitutes conduct that disqualified Allen from continuing to act as a

6

7    judge.

8                            **THE ORDERS SUBJECT TO SET ASIDE**

9         In accordance with the statute, the rulings Allen made up to the time the grounds for

10   disqualification arose cannot be set aside absent good cause. Code of Civil Procedure

11   §170.3(b)(4). In this case, as noted by the Appellate Court, "the parties [have] agree[d] that

12   only those actions taken by a disqualified judge after the grounds for disqualification [arose]

13

14   are voidable." *Rogozienski v. Superior Court* (California Unpublished Opinion, 2003) p. 10.

15   However, this court does read the Appellate Court's comment as limiting the trial court's

16   jurisdictional authority, in ruling on the set aside motion, to Allen's decisions that followed the

17   disqualifying conduct. The only disqualifying conduct that occurred (i.e., the transfer of the

18   interest in Warner Springs Ranch) took place, at the earliest, in February 2002.

19   The May 10, 1999, Ruling on the Antenuptial Agreement:

20        The ruling on the premarital agreement predated the disqualifying conduct. This ruling

21   is not voidable and, therefore, should not be set aside. Additionally, Frank has failed to

22

23   establish good cause for setting aside the May 10, 1999, ruling on the premarital agreement.

24   Given the facts of this case, neither the 1998 trial nor the 1999 ruling logically could have

25   been prejudiced by events that took place nearly three years later. The Court is not

26   persuaded that the incorporation of the 1999 decision into the 2002 judgment renders it an

27   interlocutory judgment, thereby contaminated by the 2002 Warner Springs disqualifying

28

**EXHIBIT 2 PAGE 200**

80

9

LOVE00572

1   conduct. The 1999 decision was on a bifurcated issue – it was final when made, and was not

2   altered by its incorporation into the 2002 judgment.  Even assuming the 1999 decision was

3   interlocutory and could be set aside, the court nevertheless finds that a reasonable person

4   aware of the facts of the 2002 Warner Springs transfers, without more, would not entertain

5   doubts as to Allen's impartiality in 1999.

6

7   The July 27, 1999, order appointing Bruno, Marck & Barclay:

8        For the reasons stated above, the appointment of Bruno, Mack & Barclay predated the

9   disqualifying conduct by nearly two and one-half years, and in any event there is no good

10  cause to set this order aside.

11  The November 12, 2002, Second Amended Statement of Decision and the November 25,

12  2002, Judgment:

13

14       The February 2002 transfer of the interest in Warner Springs Ranch, and Allen's

15  failure to disclose his receipt of this interest, compels this Court to set aside the November

16  12, 2002, Second Amended Statement of Decision and the final judgment.  The court further

17  finds that there is good cause for setting aside the Second Amended Statement of Decision

18  and the judgment, because the Second Amended Statement of Decision was the culmination

19  of a fourteen-day trial, which included the characterization and distribution of hundreds of

20  millions of dollars in assets.  Allen's decisions also included an award of $250,000 in

21

22  attorney's fees to Shirley, and obligated Frank to pay the $400,000 in fees due Barclay.  The

23  disqualifying conduct caused the objective evaluation of the facts and law to become

24  reasonably questionable and tainted the fairness of the trial.   Setting aside the decision is

25  necessary to protect from further erosion the public's perception of the system of justice, and

26  to maintain public confidence in the judicial officers who serve that system.

27  ///

28

EXHIBIT 2 PAGE 201

81

LOVE00573

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

The November 12, 2002, Second Amended Statement of Decision and the judgment entered November 25, 2002, are hereby set aside, with the exception of both the uncontested part of the judgment dissolving the marriage, and the May 10, 1999, bifurcated decision on the Antenuptial Agreement that was incorporated into the judgment. A new trial on all issues affected by the set aside shall be scheduled.

DATED: October 20, 2004                    _Michael T. Smyth_

                                       MICHAEL T. SMYTH
                                       Judge of the Superior Court

**EXHIBIT 2 PAGE 202**    82

11

L0VE00574

**EXHIBIT 2 PAGE 203**



The foregoing instrument is a full, true and correct
copy of the original on file in this office.

Attest: __MAY 2 5 2005__

Clerk of the Superior Court of the State of California,
in and for the County of San Diego.

By _____ Deputy   83

8

EXHIBIT 2 PAGE 204

L0VE00576

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

330 W. Broadway, Dept. 61
San Diego, CA 92101
619-685-6138

R E C E I V E D
MAY 3 1 2005
BY:..................

TO:

FRANK E. ROGOZIENSKI        #51445
1203 SECOND STREET
CORONADO, CA 92118

| | |
|---|---|
| FRANK E ROGOZIENSKI  Plaintiff(s)  vs.  JAMES D ALLEN, et al.  Defendant(s) | Case No.: GIC843843  **NOTICE OF CASE REASSIGNMENT**  DUE TO CHALLENGE, RECUSAL  OR SPECIAL ASSIGNMENT |

COMPLAINT FILED  03/07/05

EFFECTIVE IMMEDIATELY, THE ABOVE-ENTITLED CASE HAS BEEN REASSIGNED TO THE INDEPENDENT CALENDAR PROGRAM WITH JUDGE **JOHN S. MEYER, DEPARTMENT 61, 619-685-6138.**

ALL SUBSEQUENT DOCUMENTS FILED IN THIS CASE MUST INCLUDE THE NAME OF THE NEW JUDGE AND THE DEPARTMENT NUMBER ON THE FIRST PAGE IMMEDIATELY BELOW THE NUMBER OF THE CASE. ALL COUNSEL AND PARTIES IN PRO PER ARE ADVISED THAT DIVISION 11 OF THE SUPERIOR COURT RULES IS STRICTLY ENFORCED. IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

UNLESS NOTIFIED OTHERWISE, ALL PENDING DATES ARE VACATED. PLEASE RESCHEDULE ANY CURRENTLY PENDING MOTIONS OR EX PARTE HEARINGS IN THE NEW DEPARTMENT.

CERTIFICATE OF SERVICE

I certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by placing a true copy in a separate envelope, addressed as shown; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at San Diego California.

DATED: 05/26/05                              BY: CLERK OF THE SUPERIOR COURT

STEVEN G. AMUNDSON (D)
DONALD A. ENGLISH (D)
FRANK E. ROGOZIENSKI (P)

84

SUPCT CIV-723(Rev 2-00)          REA-NOTICE OF CASE REASSIGNMENT          **EXHIBIT 2 PAGE 205**

LOVE00577

9

EXHIBIT 2 PAGE 206

1 | Donald A. English, Esq.        (State Bar No. 115569)
2 | Christy L. Yee, Esq.            (State Bar No. 166238)
  | ENGLISH & GLOVEN
3 | A Professional Corporation
  | 550 West "C" Street, Suite 1800
4 | San Diego, California 92101
  | Telephone:  (619) 338-6610
5 | Facsimile:  (619) 338-6657

RECEIVED
JUN 1 4 2005
BY:..................

6 | Attorneys for Defendant
  | James D. Allen

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **FOR THE COUNTY OF SAN DIEGO**

10 | FRANK E. ROGOZIENSKI,              ) Case No. GIC 843843
11 |              Plaintiff            )
   |                                  ) **NOTICE OF HEARING ON DEFENDANT**
12 |        v.                        ) **JAMES D. ALLEN'S DEMURRER TO**
   |                                  ) **PLAINTIFF'S FIRST AMENDED**
13 | JAMES D. ALLEN, S. MICHAEL LOVE  ) **COMPLAINT**
   | and DOES 1 through 10, inclusive, )
14 |                                  )
   |              Defendants.         ) Date:      July 15, 2005
15 |                                  ) Time:      11:00 a.m.
   |                                  ) Dept:      61
16 |                                  ) Judge:     John S. Meyer
17 |                                  )
   |                                  ) Complaint Filed:   March 7, 2005
18 |                                  ) Trial Date:        None set

19 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20 | PLEASE TAKE NOTICE THAT on July 15, 2005, at 11:00 a.m., or as soon thereafter as this

21 | matter may be heard in Department 61 of the San Diego Superior Court located at 330 West Broadway,

22 | San Diego, California, defendant James D. Allen ("Mr. Allen") will demur to plaintiff Frank E.

23 | Rogozienski's First Amended Complaint in the above-entitled matter. The demurrer will be based upon

24 | this notice, the demurrer, the memorandum of points and authorities, the request for judicial notice, the

25 | ///

26 | ///

27 | ///

28 |

**EXHIBIT 2 PAGE 207**

85

LOVE00579

1    notice of lodgment of documents and attached exhibits, the pleadings, records and files in this action, and

2    on such further argument as may be presented at the hearing, if any.

3

4    Dated: _June 13, 2005_                    ENGLISH & GLOVEN

5                                              A Professional Corporation

6

7                                              By: _Donald English._
                                                   Donald A. English
8                                                  Christy I. Yee
                                               Attorneys for Defendant
9                                              James D. Allen

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                         **EXHIBIT 2 PAGE 208**

28                                                                          86

                                    2    JAMES D. ALLEN'S NOTICE OF HEARING ON
                                         DEMURRER TO FIRST AMENDED COMPLAINT

LOVE00580

10

EXHIBIT 2 PAGE 209

LOVE00581

1   Donald A. English, Esq.      (State Bar No. 115569)
    Christy L. Yee, Esq.         (State Bar No. 166238)
2   ENGLISH & GLOVEN
    A Professional Corporation
3   550 West "C" Street, Suite 1800
    San Diego, California 92101
4   Telephone: (619) 338-6610
    Facsimile:  (619) 338-6657
5

6   Attorneys for Defendant
    James D. Allen
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SAN DIEGO

10  FRANK E. ROGOZIENSKI,              )   Case No. GIC 843843
                                       )
11            Plaintiff                )   DEFENDANT JAMES D. ALLEN'S
                                       )   DEMURRER TO PLAINTIFF'S FIRST
12        v.                           )   AMENDED COMPLAINT
                                       )
13  JAMES D. ALLEN, S. MICHAEL LOVE    )   Date:    July 15, 2005
    and DOES 1 through 10, inclusive,  )   Time:    11:00 a.m.
14                                     )   Dept:    61
                                       )   Judge:   John S. Meyer
15            Defendants.              )
                                       )
16                                     )
                                       )   Complaint Filed:   March 7, 2005
17                                     )   Trial Date:        None set
                                       )
18

19        Defendant James D. Allen ("Mr. Allen") hereby generally and specially demurs to the First

20  Amended Complaint, filed by Frank E. Rogozienski ("Mr. Rogozienski") and to the following causes of

21  action on the following grounds:

22                                      I.

23            DEMURRER TO THE FIRST CAUSE OF ACTION

24            (Intentional Interference with Contractual Relations)

25        1.     Mr. Allen generally demurs to the First Cause of Action for Intentional Interference with

26  Contractual Relations under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the

27                                      **EXHIBIT 2 PAGE 210**

28                                                                          87

                                        JAMES D. ALLEN'S DEMURRER TO
                                        FIRST AMENDED COMPLAINT

RECEIVED
JUN 14 2005
BY:

1  allegations fail to state facts sufficient to constitute a cause of action and are barred by the doctrine of

2  judicial immunity. (Howard v. Drapkin (1990) 222 Cal.App.3d 843, 852.)

3      2.    Mr. Allen generally demurs to the First Cause of Action for Intentional Interference with

4  Contractual Relations under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the

5  allegations fail to state facts sufficient to constitute a cause of action and are barred by the litigation

6  privilege. (Silberg v. Anderson (1990) 50 Cal.3d 205, 212.)

7      3.    Mr. Allen generally demurs to the First Cause of Action for Intentional Interference with

8  Contractual Relations under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the

9  allegations fail to state facts sufficient to constitute a cause of action and are barred by the Tort Claims

10  Act. (Gov. Code, §§ 905.2, 911.2, 945.4; Mazzola v. Feinstein (1984) 154 Cal.App.3d 305, 310.)

11                                          II.

12                  DEMURRER TO THE THIRD CAUSE OF ACTION

13              (Intentional Interference with Prospective Economic Relations)

14      1.    Mr. Allen generally demurs to the Third Cause of Action for Intentional Interference with

15  Prospective Economic Relations under Code of Civil Procedure, § 430.10, subd. (e), on the ground that

16  the allegations fail to state facts sufficient to constitute a cause of action and are barred by the doctrine

17  of judicial immunity. (Howard v. Drapkin (1990) 222 Cal.App.3d 843, 852.)

18      2.    Mr. Allen generally demurs to the Third Cause of Action for Intentional Interference with

19  Prospective Economic Relations under Code of Civil Procedure, § 430.10, subd. (e), on the ground that

20  the allegations fail to state facts sufficient to constitute a cause of action and are barred by the litigation

21  privilege. (Silberg v. Anderson (1990) 50 Cal.3d 205, 212.)

22      3.    Mr. Allen generally demurs to the Third Cause of Action for Intentional Interference with

23  Prospective Economic Relations under Code of Civil Procedure, § 430.10, subd. (e), on the ground that

24  the allegations fail to state facts sufficient to constitute a cause of action and are barred by the Tort

25  Claims Act. (Gov. Code, §§ 905.2, 911.2, 945.4; Mazzola v. Feinstein (1984) 154 Cal.App.3d 305, 310.)

26  ///

27  ///

28

EXHIBIT 2 PAGE 211

88

                        2                    JAMES D. ALLEN'S DEMURRER TO
                                             FIRST AMENDED COMPLAINT

L0VE00583

III.

### DEMURRER TO THE FIFTH CAUSE OF ACTION

(Negligent Interference with Prospective Economic Advantage)

1.    Mr. Allen generally demurs to the Fifth Cause of Action for Negligent Interference with Prospective Economic Advantage under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts sufficient to constitute a cause of action and are barred by the doctrine of judicial immunity. (Howard v. Drapkin (1990) 222 Cal.App.3d 843, 852.)

2.    Mr. Allen generally demurs to the Fifth Cause of Action for Negligent Interference with Prospective Economic Advantage under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts sufficient to constitute a cause of action and are barred by the litigation privilege. (Silberg v. Anderson (1990) 50 Cal.3d 205, 212.)

3.    Mr. Allen generally demurs to the Fifth Cause of Action for Negligent Interference with Prospective Economic Advantage under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts sufficient to constitute a cause of action and are barred by the Tort Claims Act. (Gov. Code, §§ 905.2, 911.2, 945.4; Mazzola v. Feinstein (1984) 154 Cal.App.3d 305, 310.)

IV.

### DEMURRER TO THE SEVENTH CAUSE OF ACTION

(Civil Rights Violations)

1.    Mr. Allen generally demurs to the Seventh Cause of Action for Civil Rights Violations under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts sufficient to constitute a cause of action and are barred by the doctrine of judicial immunity. (Howard v. Drapkin (1990) 222 Cal.App.3d 843, 852.)

2.    Mr. Allen generally demurs to the Seventh Cause of Action for Civil Rights Violations under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts sufficient to constitute a cause of action and are barred by the litigation privilege. (Silberg v. Anderson (1990) 50 Cal.3d 205, 212.)

///

**EXHIBIT 2 PAGE 212**

89

3

JAMES D. ALLEN'S DEMURRER TO
FIRST AMENDED COMPLAINT

LOVE00584



1    3.    Mr. Allen generally demurs to the Seventh Cause of Action for Civil Rights Violations

2  under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts

3  sufficient to constitute a cause of action and are barred by the Tort Claims Act.  (Gov. Code, §§ 905.2,

4  911.2, 945.4; Mazzola v. Feinstein (1984) 154 Cal.App.3d 305, 310.)

5    4.    Mr. Allen specially demurs to the Seventh Cause of Action for Civil Rights Violations

6  under Code of Civil Procedure, § 430.10, subd. (f), as the allegations set forth at paragraph 99 (page 27,

7  lines 10-17) are vague, unintelligible, and uncertain.

8                                          V.

9              **DEMURRER TO THE EIGHTH CAUSE OF ACTION**

10                        (Deceit and Fraudulent Concealment)

11    1.    Mr. Allen generally demurs to the Eighth Cause of Action for Deceit and Fraudulent

12  Concealment under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail

13  to state facts sufficient to constitute a cause of action and are barred by the doctrine of judicial immunity.

14  (Howard v. Drapkin (1990) 222 Cal.App.3d 843, 852.)

15    2.    Mr. Allen generally demurs to the Eighth Cause of Action for Deceit and Fraudulent

16  Concealment under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail

17  to state facts sufficient to constitute a cause of action and are barred by the litigation privilege.  (Silberg v.

18  Anderson (1990) 50 Cal.3d 205, 212.)

19    3.    Mr. Allen generally demurs to the Eighth Cause of Action for Deceit and Fraudulent

20  Concealment under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail

21  to state facts sufficient to constitute a cause of action and are barred by the Tort Claims Act.  (Gov. Code,

22  §§ 905.2, 911.2, 945.4; Mazzola v. Feinstein (1984) 154 Cal.App.3d 305, 310.)

23                                        VI.

24              **DEMURRER TO THE NINTH CAUSE OF ACTION**

25                          (Breach of Contract)                    **EXHIBIT 2 PAGE 213**

26    1.    Mr. Allen generally demurs to the Ninth Cause of Action for Breach of Contract under

27  Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts

28                                                                              90

JAMES D. ALLEN'S DEMURRER TO
FIRST AMENDED COMPLAINT

L0VE00585

1  sufficient to constitute a cause of action and are barred by the doctrine of judicial immunity. (Howard v.

2  Drapkin (1990) 222 Cal.App.3d 843, 852.)

3       2.    Mr. Allen generally demurs to the Ninth Cause of Action for Breach of Contract under

4  Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts

5  sufficient to constitute a cause of action and are barred by the litigation privilege. (Silberg v. Anderson

6  (1990) 50 Cal.3d 205, 212.)

7       3.    Mr. Allen generally demurs to the Ninth Cause of Action for Breach of Contract under

8  Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts

9  sufficient to constitute a cause of action and are barred by the Tort Claims Act. (Gov. Code, §§ 905.2,

10  911.2, 945.4; Mazzola v. Feinstein (1984) 154 Cal.App.3d 305, 310.)

11                                   VII.

12          DEMURRER TO THE ELEVENTH CAUSE OF ACTION

13          ("Willful Misconduct and Intentional Infliction of Injury")

14       1.    Mr. Allen generally demurs to the Eleventh Cause of Action for "Willful Misconduct and

15  Intentional Infliction of Injury" under Code of Civil Procedure, § 430.10, subd. (e), on the ground that

16  the allegations fail to state facts sufficient to constitute a cause of action and are barred by the doctrine

17  of judicial immunity. (Howard v. Drapkin (1990) 222 Cal.App.3d 843, 852.)

18       2.    Mr. Allen generally demurs to the Eleventh Cause of Action for "Willful Misconduct and

19  Intentional Infliction of Injury" under Code of Civil Procedure, § 430.10, subd. (e), on the ground that

20  the allegations fail to state facts sufficient to constitute a cause of action and are barred by the litigation

21  privilege. (Silberg v. Anderson (1990) 50 Cal.3d 205, 212.)

22       3.    Mr. Allen generally demurs to the Eleventh Cause of Action for "Willful Misconduct and

23  Intentional Infliction of Injury" under Code of Civil Procedure, § 430.10, subd. (e), on the ground that

24  the allegations fail to state facts sufficient to constitute a cause of action and are barred by the Tort

25  Claims Act. (Gov. Code, §§ 905.2, 911.2, 945.4; Mazzola v. Feinstein (1984) 154 Cal.App.3d 305, 310.)

26       4.    Mr. Allen generally demurs to the Eleventh Cause of Action for "Willful Misconduct and

27  Intentional Infliction of Injury" under Code of Civil Procedure, § 430.10, subd. (e), on the ground that

28

**EXHIBIT 2 PAGE 214**

                                   91

                                   5

1  the allegations fail to state facts sufficient to constitute a cause of action, as they, among other things,

2  cannot constitute an actionable claim. (Rules of Prof. Conduct, Rule 1-100; <u>Noble v. Sears Roebuck &</u>

3  <u>Co.</u> (1973) 33 Cal.App.3d 654, 658-659.)

VIII.

## DEMURRER TO THE TWELFTH CAUSE OF ACTION

6  (Negligence)

7    1.    Mr. Allen generally demurs to the Twelfth Cause of Action for Negligence under Code

8  of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts sufficient to

9  constitute a cause of action and are barred by the doctrine of judicial immunity. (<u>Howard v. Drapkin</u>

10  (1990) 222 Cal.App.3d 843, 852.)

11    2.    Mr. Allen generally demurs to the Twelfth Cause of Action for Negligence under Code

12  of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts sufficient to

13  constitute a cause of action and are barred by the litigation privilege. (<u>Silberg v. Anderson</u> (1990) 50

14  Cal.3d 205, 212.)

15    3.    Mr. Allen generally demurs to the Twelfth Cause of Action for Negligence under Code

16  of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts sufficient to

17  constitute a cause of action and are barred by the Tort Claims Act. (Gov. Code, §§ 905.2, 911.2, 945.4;

18  <u>Mazzola v. Feinstein</u> (1984) 154 Cal.App.3d 305, 310.)

19    4.    Mr. Allen generally demurs to the Twelfth Cause of Action for Negligence under Code

20  of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts sufficient to

21  constitute a cause of action, as they, among other things, cannot constitute an actionable claim. (Rules

22  of Prof. Conduct, Rule 1-100; <u>Noble v. Sears Roebuck & Co.</u> (1973) 33 Cal.App.3d 654, 658-659.)

IX.

## DEMURRER TO THE THIRTEENTH CAUSE OF ACTION

25  (Unjust Enrichment)    **EXHIBIT 2 PAGE 215**

26    1.    Mr. Allen generally demurs to the Thirteenth Cause of Action for Unjust Enrichment

27  under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts

28

6

JAMES D. ALLEN'S DEMURRER TO
FIRST AMENDED COMPLAINT

L0VE00587

1  sufficient to constitute a cause of action and are barred by the doctrine of judicial immunity. (Howard v.

2  Drapkin (1990) 222 Cal.App.3d 843, 852.)

3      2.    Mr. Allen generally demurs to the Thirteenth Cause of Action for Unjust Enrichment

4  under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts

5  sufficient to constitute a cause of action and are barred by the litigation privilege. (Silberg v. Anderson

6  (1990) 50 Cal.3d 205, 212.)

7      3.    Mr. Allen generally demurs to the Thirteenth Cause of Action for Unjust Enrichment

8  under Code of Civil Procedure, § 430.10, subd. (e), on the ground that the allegations fail to state facts

9  sufficient to constitute a cause of action and are barred by the Tort Claims Act. (Gov. Code, §§ 905.2,

10  911.2, 945.4; Mazzola v. Feinstein (1984) 154 Cal.App.3d 305, 310.)

11

12  Dated:  *June 13, 2005*

ENGLISH & GLOVEN
A Professional Corporation

13

14

15  By: *Donald A. English*

Donald A. English
Christy I. Yee
Attorneys for Defendant
James D. Allen

16

17

18

19

20

21

22

23

24

25

26

27

**EXHIBIT 2 PAGE 216**

28

93

7

LOVE00588

11

**EXHIBIT 2 PAGE 217**

L0VE00589

1   Donald A. English, Esq.   (State Bar No. 115569)
    Christy I. Yee, Esq.     (State Bar No. 166238)
2   ENGLISH & GLOVEN
    A Professional Corporation
3   550 West "C" Street, Suite 1800
    San Diego, California 92101
4   Telephone: (619) 338-6610
    Facsimile:  (619) 338-6657
5

6   Attorneys for Defendant
    James D. Allen
7



8         SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           FOR THE COUNTY OF SAN DIEGO

10  FRANK E. ROGOZIENSKI,    )   Case No. GIC 843843
                               )
11        Plaintiff          )   DEFENDANT JAMES D. ALLEN'S
                               )   MEMORANDUM OF POINTS AND
12       v.            )   AUTHORITIES IN SUPPORT OF
                               )   DEMURRER TO PLAINTIFF'S FIRST
13  JAMES D. ALLEN, S. MICHAEL LOVE )  AMENDED COMPLAINT
    and DOES 1 through 10, inclusive,    )
14                               )   Date:      July 15, 2005
        Defendants,       )   Time:      11:00 a.m.
15                               )   Dept:      61
                               )   Judge:    John S. Meyer
16                               )
17                               )   Complaint Filed:  March 7, 2005
                               )   Trial Date:     None set
18  _____)

19  ///
20  ///
21  ///

22

23

24

25

26                                  **EXHIBIT 2 PAGE 218**
27

28                                     94

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 1 |
| | A. The Underlying Marital Dissolution Action. | 1 |
| | B. Mr. Rogozienski's Claims against Mr. Allen in this Action. | 2 |
| III. | STANDARD FOR DEMURRER | 3 |
| IV. | MR. ALLEN'S DEMURRER SHOULD BE SUSTAINED WITHOUT LEAVE TO AMEND | 4 |
| | A. The Absolute Judicial Immunity Doctrine Precludes Each and Every Claim Alleged Against Mr. Allen. | 4 |
| | 1. The Absolute Judicial Immunity Doctrine. | 4 |
| | 2. Claims Precluded by the Judicial Immunity Doctrine Must be Dismissed on Demurrer as a Matter of Law. | 5 |
| | 3. The Judicial Immunity Doctrine Applies to All Claims Alleging Judicial Misconduct in the Performance of Judicial Acts, including Bribery and Corruption. | 6 |
| | 4. Mr. Allen is a Judicial or Quasi-Judicial Officer Entitled to Protection from Civil Liability Under the Absolute Judicial Immunity Doctrine. | 7 |
| | 5. Mr. Allen's Alleged Acts Giving Rise to Each of Mr. Rogozienski's Nine Claims are Judicial Acts Protected by the Absolute Judicial Immunity Doctrine. | 8 |
| | B. The Litigation Privilege Precludes Each and Every Claim Alleged Against Mr. Allen. | 11 |
| | 1. The Litigation Privilege. | 11 |
| | 2. Mr. Rogozienski's Claims Must be Dismissed as a Matter of Law Because They are Based Upon Privileged Communications. | 12 |
| | C. Mr. Rogozienski's Claims against Mr. Allen are Barred by the Tort Claims Act. | 12 |
| | 1. The Tort Claims Act Requires Timely Presentation of Claims. | 12 |
| | 2. Mr. Rogozienski's Claims are Barred as a Result of the Failure to Comply with the Tort Claims Act. | 13 |
| | D. Other Independent Grounds Exist to Sustain the Demurrer. | 13 |

**EXHIBIT 2 PAGE 219**

LOVE00591

95

1        1.      The Eleventh Cause of Action for "Willful Misconduct and Intentional
2                Infliction of Injury" and the Twelfth Cause of Action for Negligence Fail
                 to State a Cause of Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
3                a.      There is No Cause of Action Based Upon an Alleged Violation of
                         the Rules of Professional Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . 14
4
5                b.      Mr. Rogozienski's Claims are Improperly Based upon an Alleged
                         Violation of the Rules of Professional Conduct and Judicial
6                        Canons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
7        2.      The Seventh Cause of Action for Civil Rights Violations is Uncertain. . . . . 15

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 2 PAGE 220

9 6

LOVE00592

1

## TABLE OF AUTHORITIES

2                                                                    Page(s)

3                                    State Cases

4   Baar v. Tigerman (1983)
    140 Cal.App.3d 979 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
5

6   Bistawros v. Greenberg (1987)
    189 Cal.App.3d 189 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7   Blank v. Kirwin (1985)
    39 Cal.3d 311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
8

9   Fisher v. Pickens (1990)
    225 Cal.App.3d 708 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

10  Frost v. Geernaert (1988)
    200 Cal.App.3d 1104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9
11

12  Howard v. Drapkin (1990)
    222 Cal.App.3d 843 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4–6, 9

13  In re Brittany K. (2002)
    96 Cal.App.4th 805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13
14

15  Khoury v. Maly's of California, Inc. (1993)
    14 Cal.App. 4th 612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16  Mazzola v. Feinstein (1984)
    154 Cal.App.3d 305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
17

18  Meester v. Davies (1970)
    11 Cal.App.3d 342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

19  Moore v. Regents of University of California (1990)
    51 Cal.3d 120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9
20

21  Munoz v. State of California (1995)
    33 Cal.App.4th 1767 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22  Neal v. Gatlin (1973)
    35 Cal.App.3d 871 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
23

24  Noble v. Sears, Roebuck & Co. (1973)
    33 Cal.App.3d 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

25  Olney v. Sacramento County Bar Assn. (1989)
    212 Cal.App.3d 807 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
26

27  Pearson v. Reed (1935)
    6 Cal.App.2d 277 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28                                              **EXHIBIT 2 PAGE 221**                    97

Rubin v. Green (1993)
4 Cal.4th 1187 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Silberg v. Anderson (1990)
50 Cal.3d 205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Soliz v. Williams (1999)
74 Cal.App.4th 577 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 12

State v. Superior Court (Bodde) (2004)
32 Cal.4th 1234 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tagliavia v. County of Los Angeles (1980)
112 Cal.App.3d 759 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Taliaferro v. County of Contra Costa (1960)
182 Cal.App.2d 587 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 9

Taylor v. Mitzel (1978)
82 Cal.App.3d 665 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Turpen v. Booth (1880)
56 Cal. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Wilhelm v. Pray, Price, Williams & Russell (1986)
186 Cal.App.3d 1324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

### Federal Cases

Bradley v. Fisher (1871)
80 U.S. 335 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Moore v. Brewster (9th Cir. 1996)
96 F.3d 1240 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Ricotta v. State of California (S.D. Cal. 1998)
4 F.Supp.2d 961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 9

### State Statutes

Civil Code section 47, subdivision (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Civil Code section 47, subdivision (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Civil Code section 47, subdivision (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Code of Civil Procedure section 430.10, subdivision (f) . . . . . . . . . . . . . . . . 4, 15

Code of Civil Procedure section 430.10, subdivision (e) . . . . . . . . . . . . . . . . . 4

Code of Civil Procedure section 430.30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Code of Civil Procedure section 430.30, subdivision (e) . . . . . . . . . . . . . . . . . 3

Elections Code section 327 . . . . . . . . . . . . . . . . . . . **EXHIBIT 2 PAGE 222** . 12 8

LOVE00594

| | | |
|---|---|---|
| 1 | Evidence Code section 452 ................................................................. | 4 |
| 2 | Government Code section 810.2 .......................................................... | 12 |
| 3 | Government Code section 905.2 .......................................................... | 12 |
| 4 | Government Code section 911.2 .......................................................... | 12, 13 |
| 5 | Government Code section 945.4 .......................................................... | 12 |
| 6 | Government Code section 950.2 .......................................................... | 12 |

7                             <u>Rules</u>

| | | |
|---|---|---|
| 8 | Rules of Professional Conduct, Rule 1-100 ......................................... | 14 |
| 9 | Rules of Professional Conduct, Rule 1-710 ......................................... | 14 |

10                        <u>Other Authorities</u>

| | | |
|---|---|---|
| 11 | California Constitution, article VI, section 21 ...................................... | 13 |
| 12 | Judicial Canon 6D(2)(f) ...................................................................... | 14 |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 2 PAGE 223**                    99

LOVE00595

1   Defendant James D. Allen ("Mr. Allen") respectfully submits the following memorandum of

2   points and authorities in support of his demurrer to plaintiff Frank E. Rogozienski's ("Mr. Rogozienski")

3   first amended complaint.

## I.

### INTRODUCTION

Protecting the judiciary from "vexatious actions prosecuted by disgruntled litigants" serves important public purposes of "the highest importance to the proper administration of justice . . . ." (Howard v. Drapkin (1990) 222 Cal.App.3d 843, 852 [citation omitted from quote]; Bradley v. Fisher (1871) 80 U.S. 335, 347.)

Mr. Rogozienski's first amended complaint contains serious allegations against Mr. Allen for acts allegedly done in his capacity as temporary judge in Mr. Rogozienski's underlying divorce action. Mr. Rogozienski's claims against Mr. Allen seek to undermine established law and public policies protecting the judiciary and those who perform vital judicial functions associated with the administration of justice. Each of Mr. Rogozienki's nine claims against Mr. Allen must be dismissed as a matter of law under the absolute judicial immunity doctrine which bars any claim for damages against a judicial or quasi-judicial officer.

In addition, each of the claims are also precluded as a matter of law under the litigation privilege which prohibits claims based upon communications made in the conduct of judicial proceedings. Moreover, Mr. Rogozienski's claims are similarly barred as a result of Mr. Rogozienski's failure to properly and timely satisfy the pre-filing claim requirements under the Tort Claims Act.

Separate and independent grounds also exist to sustain the demurrer as a matter of law as to specific causes of action, including the eleventh cause of action labeled, "Willful Misconduct and Intentional Infliction of Injury" and the twelfth cause of action for negligence, which are contrary to established California law prohibiting civil causes of action based upon alleged violations of ethical rules. In addition, the allegations in the seventh cause of action for civil rights violations are also subject to a special demurrer, and should be sustained based upon uncertainty.

Simply stated, Mr. Rogozienski's claims against Mr. Allen should be disposed of on demurrer.

## II.

### FACTUAL BACKGROUND      EXHIBIT 2 PAGE 224

A.   The Underlying Marital Dissolution Action.

Mr. Allen is an experienced and highly respected attorney specializing in the area of family law for over 35 years in San Diego. Mr. Allen served as pro tem judge of the San Diego Superior Court on a pro bono basis from 1982 to 1997. From time to time, Mr. Allen has also served as temporary judge in dissolution actions by court appointment and the parties' agreement.

In 1998, Mr. Rogozienski's then family law counsel requested that Mr. Allen serve as the parties' temporary judge in Mr. Rogozienski's dissolution action, In re Marriage of Rogozienski, San Diego

100

JAMES D. ALLEN'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF DEMURRER

LOVE00596

1    Superior Court, Case No. D440154 ("Rogozienski dissolution"). Defendant S. Michael Love

2    ("Mr. Love") was Mrs. Rogozienski's counsel in the Rogozienski dissolution. (First Amended

3    Complaint, ¶ 9; see Request for Judicial Notice ("RJN") "1"; Exhibit "1" to Notice of Lodgment

4    ("NOL").) Both Mr. Rogozienski and Mrs. Rogozienski and their respective family law counsel entered

5    into a written agreement to retain Mr. Allen as temporary judge. (First Amended Complaint, ¶ 10.) On

6    August 4, 1998, the Presiding Judge of the San Diego Superior Court approved the parties' agreement

     and signed an order appointing Mr. Allen as temporary judge in the Rogozienski dissolution. (First

     Amended Complaint, ¶ 10; RJN "2"; Exhibit "2" to NOL.)

7         The Rogozienski dissolution spanned four and a half years of contentious litigation involving

8    complex issues relating to the interpretation of a pre-marital agreement, division of substantial assets and

9    liabilities, spousal support, and numerous other issues. The dissolution proceeding was decided in three

     separate phases. The first phase involved the parties' dispute as to the enforceability of a pre-marital

10   agreement. On May 10, 1999, Mr. Allen issued a statement of decision upholding the validity and

11   enforceability of the pre-marital agreement which was drafted by Mr. Rogozienski. (RJN "3"; Exhibit

12   "3" to NOL.) Both parties have appealed this decision. (RJN "6" and "7"; Exhibits "6" and "7" to NOL.)

          The second phase related to Mrs. Rogozienski's contentions regarding Mr. Rogozienski's duties

13   owed to her during the marriage regarding the management of separate and community funds used in the

14   investment of Qualcomm stock and options. After Mr. Allen issued his intended statement of decision,

15   the second phase was resolved pursuant to a stipulation between the parties filed with the Superior Court

     on December 7, 2000. Because of the parties' stipulation, there have been no appeals of this phase.

16        The third phase resolved all remaining reserved issues. The matter was tried over a period 14

17   days from October 24, 2001 to November 19, 2001. (First Amended Complaint, ¶ 14.) Additional

     evidence was received in October 2002. (First Amended Complaint, ¶ 37.) Mr. Allen issued a Second

18   Amended Statement of Decision on November 12, 2002, and a Judgment of Dissolution was entered on

19   November 25, 2002. (First Amended Complaint, ¶ 38; see RJN "4" and "5" and Exhibits "4" and "5"

20   to NOL.) Both parties have appealed Mr. Allen's rulings in the third phase and the Judgment. (RJN "6"

     and "7"; Exhibits "6" and "7" to NOL.)

21        In addition to appealing Mr. Allen's rulings, Mr. Rogozienski sought to challenge Mr. Allen's

22   authority to further serve as temporary judge. (First Amended Complaint, ¶ 40.) On March 27, 2003,

23   Mr. Allen responded to Mr. Rogozienski's challenge and voluntarily withdrew as temporary judge in the

     Rogozienski dissolution. (First Amended Complaint, ¶ 10.)

24   B.   Mr. Rogozienski's Claims against Mr. Allen in this Action.

25        On March 7, 2005, Mr. Rogozienski filed (but did not serve) a complaint against Mr. Allen and

26   Mr. Love alleging a total of nine causes of action (six causes of action against Mr. Allen). (RJN "8";

     Exhibit "8" to NOL.)

27                                      **EXHIBIT 2 PAGE 225**

28                                                                                            10

                    JAMES D. ALLEN'S MEMORANDUM OF POINTS
                    AND AUTHORITIES IN SUPPORT OF DEMURRER

LOVE00597

On March 28, 2005, Mr. Rogozienski filed a first amended complaint against Mr. Allen and Mr. Love alleging a total of 13 causes of action. Nine causes of action are alleged against Mr. Allen:

1.  The First Cause of Action for Intentional Interference with Contractual Relations;

2.  The Third Cause of Action for Intentional Interference with Prospective Economic Relations;

3.  The Fifth Cause of Action for Negligent Interference with Prospective Economic Advantage;

4.  The Seventh Cause of Action for Civil Rights Violations;

5.  The Eighth Cause of Action for Deceit and Fraudulent Concealment;

6.  The Ninth Cause of Action for Breach of Contract;

7.  The Eleventh Cause of Action for "Willful Misconduct and Intentional Infliction of Injury;"

8.  The Twelfth Cause of Action for Negligence; and

9.  The Thirteenth Cause of Action for Unjust Enrichment.

As discussed below, each and every claim in the First Amended Complaint against Mr. Allen alleges damages arising from acts allegedly committed by Mr. Allen in his capacity as temporary judge in the Rogozienski dissolution. Mr. Rogozienski, acknowledging the infirmities in his pleadings, admits that he is "in some doubt as to whether he is entitled to redress from all the defendants or from one or more of them . . ." and requests that this Court determine whether the defendants have any liability to him. (First Amended Complaint, ¶ 8; Exhibit "1" to NOL.) As discussed below, based upon established law and compelling public policies, Mr. Allen has no liability to Mr. Rogozienski for any of the alleged claims as a matter of law.

### III.

### STANDARD FOR DEMURRER

A demurrer challenges the legal sufficiency of a complaint, and must be sustained if it appears from the allegations in the complaint and matters judicially noticed that the complaining party fails to allege the facts necessary to constitute each element of a cause of action. (Code Civ. Proc., § 430.30, subd. (a); Blank v. Kirwin (1985) 39 Cal.3d 311, 318.) Although the court accepts a plaintiff's allegations as true, the court cannot assume the truth of contentions, deductions or conclusions of law. (Moore v. Regents of University of California (1990) 51 Cal.3d 120, 125.) In addition, "[w]hile the allegations of a complaint are deemed true in ruling on demurrers, where an allegation is contrary to law or to a fact of which a court may take judicial notice, it is to be treated as a nullity. [Citation omitted.]" (Taliaferro v. County of Contra Costa (1960) 182 Cal.App.2d 587, 592.)

**EXHIBIT 2 PAGE 226**    102

1    A court may take judicial notice of its own files, files in other courts and public records in

2   deciding a demurrer. (Evid. Code, § 452; Code Civ. Proc., § 430.30; Bistawros v. Greenberg (1987) 189

3   Cal.App.3d 189, 191-192.) While a general demurrer lies for failure to state facts sufficient to constitute

4   a cause of action (Code Civ. Proc., § 430.10, subd. (e)), a special demurrer is proper when the complaint

5   is uncertain in that it cannot be reasonably be determined what issues must be admitted or denied, or what

6   claims are being directed against the defendants. (Code Civ. Proc., § 430.10, subd. (f).)

                        IV.

7                 **MR. ALLEN'S DEMURRER SHOULD BE**
                  **SUSTAINED WITHOUT LEAVE TO AMEND**

8   A.    The Absolute Judicial Immunity Doctrine Precludes Each and Every Claim Alleged Against

         Mr. Allen.

9         1.    The Absolute Judicial Immunity Doctrine.

10       The doctrine of judicial immunity is "longstanding and absolute . . . . It bars civil actions against

11  judges for acts performed in the exercise of their judicial functions and it applies to all judicial

12  determinations, including those rendered in excess of the judge's jurisdiction, no matter how erroneous

13  or even malicious or corrupt they may be. [Citations omitted.]" (Howard v. Drapkin (1990) 222

14  Cal.App.3d 843, 851.) Judicial immunity is absolute and precludes all civil actions against judicial

    officer or persons other than judges acting in a judicial or quasi-judicial capacity. (Id. at pp. 852-853.)

15       As summarized in Howard v. Drapkin, California courts have extended absolute judicial

16  immunity to protect quasi-judicial officers from civil suits for their acts performed in their official

17  capacity, including court commissioners acting as temporary judges (Tagliavia v. County of Los Angeles

    (1980) 112 Cal.App.3d 759, 763); grand jurors (Turpen v. Booth (1880) 56 Cal. 65, 69); administrative

18  law hearing officers (Taylor v. Mitzel (1978) 82 Cal.App.3d 665, 670-671); arbitrators (Baar v. Tigerman

19  (1983) 140 Cal.App.3d 979, 985); organizations sponsoring an arbitrator (Olney v. Sacramento County

20  Bar Assn. (1989) 212 Cal.App.3d 807, 814-815); and prosecutors (Pearson v. Reed (1935) 6 Cal.App.2d

    277, 286-288). (Howard, supra, 222 Cal.App.3d at pp. 852-853.)

21       Federal courts have similarly extended absolute judicial immunity to judicial and quasi-judicial

22  officers.[1] (See e.g., Ricotta v. State of Califomia (S.D. Cal. 1998) 4 F.Supp.2d 961, 973 [judicial

23  immunity applies to sitting Superior Court judges and pro tem judges]; Moore v. Brewster (9th Cir. 1996)

    96 F.3d 1240, 1244-1245 [claims against federal District Court Judge Brewster, the law clerk, and court

24  clerk dismissed under judicial immunity doctrine].)

25       The absolute judicial immunity doctrine effectuates important public policies deeply rooted in our

    system of justice:

26                                                              **EXHIBIT 2 PAGE 227**

27       [1]California courts rely on federal court decisions in determining the application of the absolute

28  judicial immunity doctrine in civil suits. (Soliz v. Williams (1999) 74 Cal.App.4th 577, 591.)

                                                                              103

LOVE00599

1   The rationale behind the doctrine is twofold. First, it 'protect[s] the
    finality of judgments [and] discourag[es] inappropriate collateral attacks.
2   [Citation omitted.] Second, it protect[s] judicial independence by
    insulating judges from vexatious actions prosecuted by disgruntled
3   litigants. [Citation omitted.]  With respect to the latter reason, the
    immunity is necessary in order to have an independent and impartial
4   judiciary. The public is best served when its judicial officers are free from
    fear of consequences for acts performed in their judicial capacity.
5   [Citation omitted.]

6   (Howard, supra, 222 Cal.App.3d at p. 852.)

7       "[T]he protection must be absolute, even to the malicious or corrupt judge. The effect of judicial

8   immunity is that the action against the judicial officer must be dismissed. [Citation omitted.]" (Emphasis
    added.) (Id. at p. 852.)

9       2.    Claims Precluded by the Judicial Immunity Doctrine Must be Dismissed on
10            Demurrer as a Matter of Law.

11      Claims against judicial or quasi-judicial officers are properly dismissed at the pleading stage on

12  demurrer based upon the absolute judicial immunity doctrine. (See e.g., Howard, supra, 222 Cal.App.3d

    at p. 848 [demurrer sustained without leave to amend under judicial immunity doctrine for claims against
13  court approved psychologist for negligence, fraud, intentional and negligent infliction of emotional

14  distress]; Frost v. Geernaert (1988) 200 Cal.App.3d 1104, 1107 [demurrer sustained without leave to

15  amend under judicial immunity doctrine for claims against Superior Court judges for fraud, corruption,
    conspiracy, and infliction of emotional distress]; Taliaferro v. County of Contra Costa (1960) 182

16  Cal.App.2d 587, 592-594 [claims for damages against justice of the peace dismissed on demurrer under

17  absolute judicial immunity even though justice of peace had no jurisdiction to issue warrant against
    plaintiff].)

18      To effectuate the important public policies underlying the judicial immunity doctrine, claims

19  against judicial or quasi-judicial officers must be dismissed at the earliest stage in the proceedings:

20          Such doctrines are not mere defenses to liability. [Citations omitted.] If
            such protection is to be meaningful it must be effective to prevent suits
21          such as this one from going beyond demurrer. Avoiding the expense and
            burden of having to defend an action such as this one is precisely the goal
22          which the principles of absolute immunity and privilege were intended to
            achieve. In order to best protect the ability of neutral third parties to
23          aggressively mediate or resolve disputes, a dismissal at the very earliest
            stage of the proceedings is critical to the proper functioning and continued
24          availability of these services. (Emphasis added.)

25  (Howard, supra, 222 Cal.App.3d at p. 864.)

26      In Howard v. Drapkin, the Court of Appeal affirmed the trial court's order sustaining the

    defendant court-approved psychologist's demurrer without leave to amend on the grounds of judicial
27

28                                              **EXHIBIT 2 PAGE 228**
                                                                                    104
                                    JAMES D. ALLEN'S MEMORANDUM OF POINTS
                                    AND AUTHORITIES IN SUPPORT OF DEMURRER

LOVE00600

1   immunity.[2] The plaintiff, a litigant in an underlying family law action, entered into a stipulation with her
2   former husband for the defendant to perform a psychological evaluation and issue non-binding findings
3   and recommendations to the Superior Court. The stipulation was approved by the Superior Court. (Id.
4   at p. 848.) The plaintiff later brought a civil suit against the defendant psychologist alleging claims for
5   negligence, emotional distress, and fraud based upon, among other things, the defendant's alleged failure
6   to disclose certain conflicts of interest involving the defendant's prior professional relationship with the
7   plaintiff's former husband and her personal relationship with the spouse of one of the partners in the law
8   firm representing the former husband. (Id. at pp. 848-850.)

Despite the plaintiff's allegations of misconduct and wrongdoing, the Court of Appeal agreed with
the trial court that the plaintiff's claim should be dismissed on demurrer as the defendant was entitled to
protection from liability under the absolute judicial immunity doctrine. (Id. at p. 860.)

    3.   **The Judicial Immunity Doctrine Applies to All Claims Alleging Judicial Misconduct
       in the Performance of Judicial Acts, including Bribery and Corruption.**

California and federal courts have consistently applied the judicial immunity doctrine to protect
judicial and quasi-judicial officers from liability for myriad claims alleging serious judicial misconduct
in the performance of judicial acts, including intentional, malicious torts such as intentional infliction of
emotional distress, violation of civil rights, and bribery and corruption.

In Soliz v. Williams (1999) 74 Cal.App.4th 577, 589, the Court of Appeal summarized several
California decisions applying the absolute judicial immunity doctrine despite the severity of the alleged
judicial misconduct:

> [T]he immunity from a suit for damages at issue is not dependent on the
> severity of the misconduct. In this case, judicial immunity from a lawsuit
> for monetary relief depends on whether the defendant engaged in the
> misconduct while involved in the exercise of a judicial function, even if
> he acted in excess of jurisdiction. [Citations omitted.] Moreover, we have
> previously cited a number of cases that involve allegations, which because
> they were challenged at the demurrer stage were presumed to be true, of
> extremely serious judicial misconduct . . . . Those cases also involved
> allegations of extremely serious judicial misconduct that violated the
> litigants' statutory and constitutional rights, and in all of those scenarios,
> the absolute immunity from a suit for damages was found to apply as a
> matter of law. (Emphasis added.)

**EXHIBIT 2 PAGE 229**

Even when the alleged judicial misconduct is bribery and corruption, courts have uniformly
dismissed civil suits under the absolute judicial immunity doctrine. For example, in Riccotta v. State of

---

[2] The Court of Appeal also sustained the demurrer based upon the litigation privilege, which is
discussed herein and an alternative ground for Mr. Allen's demurrer. The Court ruled that the litigation
privilege barred liability for any of defendants' statements and "alleged nondisclosures." (Howard, supra,
222 Cal.App.3d at pp. 849-850.)

1    California (S.D. Cal. 1998) 4 F.Supp.2d 961, the plaintiff sued numerous state court judges (San Diego

2    Superior Court Judge William Howatt Jr., Judge Thomas R. Murphy, Judge Marguerite L. Wagner, Judge

3    Gerald L. Barry, Jr., Judge Ruston Maino), judge pro tems (Judge Pro Tem Paul E. Gavin and Judge Pro

4    Tem Gordon Meyer) and others for violations of civil rights, RICO, conspiracy, and claims for equitable,
     injunctive, declaratory relief and restitution.

5         Each of the claims were based upon, among other things, allegations that the judges and judge

6    pro tems had accepted bribes, made rulings against the plaintiff in his underlying marital dissolution

7    proceedings as a result of undue influence, deprived the plaintiff of a fair trial, and had violated their
     duties under the Judicial Canons and other laws. (Id. at pp. 970-971.) The plaintiff sought damages for

8    the amount of the judgments entered against him in the underlying dissolution proceedings, damages for

9    alleged loss of business reputation and ability to earn a livelihood, attorneys' fees incurred in the "corrupt
     trials," punitive damages, and other damages and relief. (Id. at p. 971.)

10        In granting the defendant judges' motion to dismiss each of the claims alleged against them, with

11   prejudice, the District Court stated:

12            [A]llegations that a conspiracy produced a certain decision should no more
             pierce the actors' immunity than allegations of bad faith, personal interest
13           or outright malevolence. [Citations omitted.] The public policy that
             underlies judicial immunity is the furtherance of independent and
14           disinterested judicial decision making. [Citation omitted.] To effectuate
             this policy the Ninth Circuit broadly construes the scope of judicial
15           immunity which applies even if there are allegations that a judicial
             decision resulted from a bribe or a conspiracy. [Citation omitted.]
16           (Emphasis added.)

17   (Id. at p. 972.)

         4.    **Mr. Allen is a Judicial or Quasi-Judicial Officer Entitled to Protection from Civil**
18            **Liability Under the Absolute Judicial Immunity Doctrine.**

19        Under the controlling legal authorities discussed herein, the application of the judicial immunity

20   doctrine is dependent on two fundamental threshold determinations: (1) whether the defendant is a

21   judicial or quasi-judicial officer, and (2) whether the alleged acts giving rise to the claims are "judicial
     acts."

22        As to the first threshold determination, Mr. Rogozienski admits Mr. Allen was acting as a

23   temporary judge in the Rogozienski dissolution and, thus, was a judicial or quasi-judicial officer within
     the scope of the judicial immunity doctrine:

24        •    "In or about June 1998, Plaintiff and Petitioner entered into a written
25            agreement in which they agreed (a) to an entry of the order that ALLEN
             could act as temporary judge in the Underlying Proceeding . . . ." (First
26            Amended Complaint, ¶ 10; Exhibit "1" to NOL.);

27        •    "ALLEN served as temporary judge from the time of his appointment by
             the Presiding Judge of the Superior Court on August 4, 1998 until his

28
                                                                                        106
         **EXHIBIT 2 PAGE 230**    JAMES D. ALLEN'S MEMORANDUM OF POINTS
                                    AND AUTHORITIES IN SUPPORT OF DEMURRER

L0VE00602

1    withdrawal on March 27, 2003 in response to Plaintiff's challenge of him
2    for cause." (First Amended Complaint, ¶ 10; Exhibit "1" to NOL.);

3    "Between October 24, 2001 and November 19, 2001, ALLEN, acting in
     his role as then temporary judge in the Underlying Proceeding, presided
4    over elements of the trial in that proceeding." (First Amended Complaint,
     ¶ 14; Exhibit "1" to NOL.);

5    "On October 11, 2002, ALLEN, acting in his role as then temporary judge
     in the Underlying Proceeding, reopened trial in the Underlying Proceeding
6    to receive evidence on certain issues he had reserved from the trial in
     October - November 2000." (First Amended Complaint, ¶ 37; Exhibit "1"
7    to NOL.);

8    "On October 23, 2002, ALLEN, acting in his role as then temporary judge
     in the Underlying Proceeding, issued his Amended Statement of Decision.
9    On November 12, 2002, ALLEN, acting in his role as then temporary
     judge in the Underlying Proceeding, signed and issued his Second
10   Amended Statement of Decision and the final Judgment." (First Amended
     Complaint, ¶ 38; Exhibit "1" to NOL).

11

12        In addition to the factual admissions on the face of the First Amended Complaint that Mr. Allen
13   was a temporary judge acting within the scope of his authority conferred upon him by the Superior Court,
14   this Court may also take judicial notice of the order signed by the Presiding Judge of the Superior Court
     on August 4, 1998 approving and ordering that Mr. Allen act as temporary judge in the Rogozienski
15   dissolution. (See Order, Stipulation and Oath for Temporary Judge attached as Exhibit "2" to the NOL;
16   RJN "2".)  In the order appointing Mr. Allen as temporary judge, the Superior Court conferred upon
     Mr. Allen the authority to perform "duties of the Judge of the Superior Court . . ." (See Ibid.)  A duly
17   appointed temporary judge "has full judicial powers, and his orders are as final and nonreviewable as
18   those of a permanent judge."  (In re Brittany K. (2002) 96 Cal.App.4th 805, 812.)  Thus, the first
19   requirement of the defendant's status as a judicial or quasi-judicial officer for the applicability of the
20   judicial immunity doctrine is established.

21        5.    Mr. Allen's Alleged Acts Giving Rise to Each of Mr. Rogozienski's Nine Claims are
              Judicial Acts Protected by the Absolute Judicial Immunity Doctrine.

22        The second threshold determination for the application of the judicial immunity doctrine --
23   whether the alleged acts giving rise to Mr. Rogozienski's claims are "judicial acts" -- are likewise
24   admitted on the face of the First Amended Complaint. Mr. Rogozienski alleges that while acting in his
     capacity as temporary judge, Mr. Allen allegedly accepted a "gift" from Mr. Love, failed to disclose such
25   "gift," and made unfair and incorrect rulings as a result of the alleged acceptance of the "gift." (See First
     Amended Complaint, paras. 14-41; Exhibit "1" to NOL .)

26        Mr. Rogozienski alleges that while Mr. Allen was acting in his capacity as temporary judge in the
27   Rogozienski dissolution, he engaged in an alleged conspiracy with Mr. Love to cause damage to

28

LOVE00603

1    Mr. Rogozienski. (First Amended Complaint, ¶ 16; Exhibit "1" to NOL.) In paragraphs 17 through 33

2    of the First Amended Complaint, Mr. Rogozienski claims that part of this alleged conspiracy involved

3    an alleged improper transfer of Mr. Love's interest in the Warner Springs Ranch to non-party Harold S.

     Bottomley, who subsequently transferred the interest he received from Mr. Love to Mr. Allen at a time

4    when Mr. Allen was acting as temporary judge in the Rogozienski dissolution.

5        Although Mr. Rogozienski makes a conclusory allegation that Mr. Allen's acts are not "judicial

6    acts" protected by the judicial immunity doctrine (First Amended Complaint, ¶ 47), the factual allegations

     in the First Amended Complaint demonstrate otherwise.[3] The factual allegations (paragraphs 1 through

7    50) which are incorporated into each of the nine causes of action against Mr. Allen are premised upon

8    precisely the type of alleged misconduct which are judicial acts absolutely protected by the judicial

9    immunity -- the alleged acceptance of a "bribe," "corruption," failure to disclose alleged conflicts of

     interest, and improper rulings as a result of alleged undue influence which have purportedly caused

10   Mr. Rogozienski damages.[4] (See e.g., Ricotta, supra, 4 F.Supp.2d at p. 970 [claims based upon alleged

11   bribery and corruption dismissed under judicial immunity doctrine]; Frost, supra, 200 Cal.App.3d at p.

12   1107 [claims for corruption and conspiracy dismissed under judicial immunity doctrine]; Howard, supra,

13   222 Cal.App.3d at p. 848 [various claims based upon alleged failure to disclosed conflicts of interest

     dismissed under judicial immunity doctrine].) For example, Mr. Rogozienski alleges that after Mr. Allen

14

15

16   [3] Such conclusory allegations may be properly disregarded on demurrer. (See Taliaferro, supra,
     182 Cal.App.2d at p. 592; Moore, supra, 51 Cal.3d at p. 125.)

17   [4] The first cause of action for intentional interference with contractual relations, the third cause
     of action for intentional interference with prospective economic relations, and the fifth cause of action

18   for negligent interference with economic advantage all allege that Mr. Allen's improper rulings made in

19   his capacity as temporary judge wrongfully interfered with Mr. Rogozienski's purported contractual or
     economic relationships with his former wife, his employer, and his family law counsel.

20       The seventh cause of action for civil rights violations alleges that Mr. Allen's improper acts while
     acting in his capacity as temporary judge deprived Mr. Rogozienski of his right to a fair trial.

21       The eighth cause of action for deceit/fraudulent concealment alleges that in his capacity as

22   temporary judge, Mr. Allen failed to disclose the alleged "gift" to Mr. Rogozienski.
         The ninth cause of action for breach of contract alleges that in his capacity as temporary judge,

23   Mr. Allen breached his contract with Mr. Rogozienski to serve as temporary judge by accepting the
     alleged "gift" and continuing to accept payment for services from Mr. Rogozienski.

24       The eleventh cause of action entitled, "Willful Misconduct and Intentional Infliction of Injury"
     and the twelfth cause of action for negligence allege that in his capacity as temporary judge, Mr. Allen's

25   alleged acceptance of the "gift" and his failure to disclose the "gift" constitute violations of ethical rules.
         The thirteenth cause of action for unjust enrichment alleges that all of Mr. Allen's allegedly

26   improper acts done in his capacity as temporary judgment -- accepting the "gift," failing to disclose the

27   "gift," and making improper rulings -- constitute unjust enrichment.

28                                                                                              108
              **EXHIBIT 2 PAGE 232**    JAMES D. ALLEN'S MEMORANDUM OF POINTS
                                        AND AUTHORITIES IN SUPPORT OF DEMURRER

LOVE00604

1  allegedly accepted the improper "gift" from Mr. Love, Mr. Allen engaged in the following allegedly

2  improper acts while acting in his capacity as temporary judge:[5]

3  • "On October 11, 2002, ALLEN, acting in his role as then temporary judge
   in the Underlying Proceeding, reopened trial in the Underlying Proceeding

4  to receive evidence on certain issues he had reserved from the trial in
   October - November 2000. The trial on these issues was completed on

5  that date. At this hearing, ALLEN stated he would order Plaintiff herein
   to pay $250,000 of Petitioner's attorneys' fees and costs, including fees for

6  LOVE." (Emphasis added.) (First Amended Complaint, ¶ 37; Exhibit "1"
   to NOL.);

7  • "Although both knew, neither LOVE nor ALLEN made any disclosure of
   the gift of the LOVES' Unit 850A half-interest in Warner Springs Ranch

8  which had been made to ALLEN in March of 2002 . . . .." (First Amended
   Complaint, ¶ 37; Exhibit "1" to NOL.);

9
   • "On December 17, 2002, LOVE met privately with ALLEN, without

10  notice, and obtained ALLEN's signature on certain orders which permitted
    the immediate issuance, over the counter, of a writ of execution on

11  Plaintiff's separate and share of the community property within which
    permitted the levy on assets held in Plaintiff's Family Trust." (Emphasis

12  added.) (First Amended Complaint, ¶ 39; Exhibit "1" to NOL.)[6]

13      Although Mr. Rogozienski attempts to avert the application of the judicial immunity doctrine by

14  carefully avoiding use of the terms "bribery" or "corruption" on the labels he attaches to his causes of

15  action and in his factual allegations -- the same allegations which courts have held are absolutely

16  protected by the judicial immunity doctrine – Mr. Rogozienski alleges in the eleventh cause of action

17  entitled, "Willful Misconduct and Intentional Infliction of Injury" that Mr. Allen's alleged breach of his

    duties in his capacity as temporary judge constitute "bribery and corruption." (First Amended Complaint,

    ¶ 122; Exhibit "1" to NOL.) In addition, Mr. Rogozienski alleges:

18      "On information and belief, the gift of the LOVES' unit 850 one-half
        interest in Warner Springs Ranch constituted bribery and corruption . . . ."

19      (First Amended Complaint, ¶ 124; Exhibit "1" to NOL.)

20      In short, the factual allegations in the First Amended Complaint, which are incorporated in each

21  of the nine claims asserted against Mr. Allen, demonstrate on their face that the alleged wrongful acts

22  causing Mr. Rogozienski's alleged damages are judicial acts absolutely protected by the judicial

23                                                  **EXHIBIT 2 PAGE 233**

24  _____

25  [5]Although the truth of allegations are assumed on demurrer, Mr. Allen does not concede the truth
    of Mr. Rogozienski's allegations of wrongdoing or misconduct.

26
    [6]Mr. Allen disputes Mr. Rogozienski's allegations of undue influence and improper rulings. This
27  is consistent with Retired Superior Court Judge Anthony Joseph's findings submitted to the court in the
    Rogozienski dissolution. (See RJN "9"; Exhibit "9" to NOL.)

28                                                                                          10[9]

LOVE00605

1   immunity doctrine.[7] Mr. Rogozienski's claims against Mr. Allen – regardless of the severity of the

2   alleged misconduct – are precluded as a matter of law under established law protecting judicial and

3   quasi-judicial officers from civil liability for acts performed within the scope of judicial duties. For this

4   reason alone, the demurrer as to each of the claims against Mr. Allen should be sustained, without leave

    to amend.

5   B.    The Litigation Privilege Precludes Each and Every Claim Alleged Against Mr. Allen.

6       1.    The Litigation Privilege.

         Under established California law, even fraudulent and malicious communications are absolutely

7   immune from civil liability if they are made in a judicial or quasi-judicial proceeding to further the

8   objects of the litigation. (Civ. Code, § 47, subd. (b); Silberg v. Anderson (1990) 50 Cal.3d 205, 212; see

9   also Rubin v. Green (1993) 4 Cal.4th 1187, 1193-1194 ["[F]or well over a century, communications with

    'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege

10   codified as section 47(b)."]) In Silberg, the parties in the marital dissolution proceeding selected a

11   psychologist (recommended by the wife's attorney) to make recommendations to the court regarding child

12   custody. (Id. at p. 210.) Dissatisfied with the custody ruling, the husband sued the wife's attorney for

    breach of contract, negligence and "intentional tort." (Id. at p. 211.). The husband alleged that the

13   attorney had an undisclosed relationship with the court appointed psychologist which influenced the

14   recommendation and, ultimately, the court's ruling. (Id. at p. 210.)

       The California Supreme Court upheld the trial court's order sustaining the defendant's demurrer

15   without leave to amend because the defendant's failure to disclose a preexisting relationship that

16   allegedly influenced the psychologist's neutrality and independence was absolutely privileged under Civil

17   Code section 47, subd. (b). (Id. at p. 220.) The Silberg court broadly construed the privilege, stating that

    the litigation privilege "was never intended as a test of a participant's motives, morals, ethics or intent."

18   (Id. at p. 220.) The strict immunization to liability for torts arising from communications in judicial

19   proceedings enhances "the finality of judgments" and avoids "an unending round delay of litigation, an evil

20   far worse than an occasional unfair result." (Id. at p. 214.) Even though an unfair result may occasionally

    occur, "the salutary policy reasons for an absolute privilege supersede individual litigants' interests in

21   recovering damages for injurious publications made during the course of judicial proceedings." (Id. at

22   pp. 213-214, 218.)

23

24                         **EXHIBIT 2 PAGE 234**

25      [7] Mr. Rogozienski's single paragraph allegation in the first amended complaint regarding

26   Mr. Allen's alleged statements to the press does not appear to be the basis of any of the nine claim alleged

    against Mr. Allen. (See First Amended Complaint, ¶ 44; Exhibit "1" to NOL.) The allegation is

27   uncertain and at a minimum, is subject to a special demurrer. To the extent that the allegation is a basis

28   for any claim against Mr. Allen, such claims are barred by the defenses raised by this demurrer.

                                      110