2.   Mr. Rogozienski's Claims Must be Dismissed as a Matter of Law Because They are Based Upon Privileged Communications.

Each of the nine claims against Mr. Allen are based upon alleged damages caused by Mr. Allen's judgments, rulings, and decisions made during the Rogozienski dissolution, which are absolutely protected under the litigation privilege. Moreover, based upon the Silberg court's ruling that an alleged failure to disclose an advantageous relationship influencing the proceedings is also absolutely privileged, Mr. Rogozienski's claims based upon Mr. Allen's alleged failure to disclose his relationship with Mr. Love and the alleged "gift" are likewise protected and cannot give rise to civil liability.

Despite Mr. Rogozienski's conclusory allegation that the litigation privilege is inapplicable (First Amended Complaint, ¶ 48), the factual allegations demonstrate that all of the claimed damages are caused by Mr. Allen's judgments, rulings, and decisions in the judicial proceeding[8] or the alleged failure to make certain disclosures in the judicial proceeding -- communications which are absolutely protected by the litigation privilege. (First Amended Complaint, ¶¶ 36-40, Exhibit "1" to NOL.) The demurrer as to each of the claims based upon these privileged communications should be sustained, without leave to amend.

C.   Mr. Rogozienski's Claims against Mr. Allen are Barred by the Tort Claims Act.

1.   The Tort Claims Act Requires Timely Presentation of Claims.

Under the Tort Claims Act, the filing of a timely claim against the employing public entity is a condition precedent to filing an action against a public employee.[9] (See Gov. Code § 905.2; Mazzola v. Feinstein (1984) 154 Cal.App.3d 305, 310.) Under Government Code section 950.2, "a cause of action against a public employee or former employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred . . .." Tort claims against a public entity must be brought within six months after the accrual of the cause of action, and contract or other claims are barred one year after the accrual of the cause of action. (Gov. Code § 911.2.) Absent a timely claim under Government Code section 911.2, no action for money or damages may be brought against a public entity. (See Gov. Code § 945.4; Munoz v. State of California (1995) 33 Cal.App.4th 1767, 1777.)

An "employee" includes an "officer" and a "judicial officer" as defined in Elections Code section 327, "whether or not compensated for such office." (See Gov. Code § 810.2, emphasis added.) Elections Code section 327 defines a "judicial officer" to include Superior Court judges. The Tort Claims Act

**EXHIBIT 2 PAGE 235**

---

[8] See First Amended Complaint, paragraphs 37-39, 45-46, 58, 73, 90, 100, 108, 115, 128, 135, 137, Exhibit "1" to NOL. To the extent that Mr. Rogozienski alleges that certain statements to the press caused him harm, the litigation privilege protects those statements as well. (Civ. Code, §§ 47, subd. (c); 47, subd. (d); see also, Soliz, supra, 74 Cal.App.4th at p. 595, fn. 6.)

[9] Under Government Code section 905.2, claims for "money or damages on express contract, or for an injury for which the state is liable" may be presented against a public entity.

11

LOVE00607

1  applies to court-appointed quasi-judicial officers. (See e.g., <u>Fisher v. Pickens</u> (1990) 225 Cal.App.3d

2  708, 711, 718 [claims against court appointed investigator dismissed based upon failure to comply with

   claim presentation requirement under Tort Claims Act and judicial immunity doctrine.])

3      Failure to allege facts demonstrating or excusing compliance with the timely claim presentation

4  requirement under the Tort Claims Act subjects a claim to a demurrer. (<u>State v. Superior Court (Bodde)</u>

5  (2004) 32 Cal.4th 1234, 1237.)

       2.    <u>Mr. Rogozienski's Claims are Barred as a Result of the Failure to Comply with the</u>

6            <u>Tort Claims Act.</u>

7      Mr. Allen, a temporary judge duly appointed by the Superior Court and vested with "full judicial

8  powers," is an "employee" within the meaning of the Tort Claim Act. (See Exhibit "2" to the NOL; RJN

   "2"; <u>In re Brittany K.</u>, <u>supra,</u> 96 Cal.App.4th at p. 812; Cal. Const., art. VI, § 21 [court may order

9  temporary judge to be empowered to act in a cause until its final determination].)    Each of

10 Mr. Rogozienski's nine claims against Mr. Allen is based upon "injury resulting from an act or omission

11 in the scope of [Mr. Allen's] employment" -- rulings and acts done in his capacity as temporary judge.

   As such, Mr. Rogozienski is required to comply with the filing requirements under the Tort Claims Act,

12 and allegations of Mr. Allen's misconduct within the scope of the duties of his appointment does not

13 obviate the filing requirements. (See e.g., <u>Neal v. Gatlin</u> (1973) 35 Cal.App.3d 871, 873 [claims for

14 malicious and libelous statements dismissed on demurrer based upon failure to comply with Tort Claims

   Act]; <u>Meester v. Davies</u> (1970) 11 Cal.App.3d 342, 348 [claims for tortious interference with contract

15 and conspiracy dismissed on demurrer based upon failure to comply with Tort Claims Act].)

16     Mr. Rogozienski alleges that the purported wrongful acts occurred "no later than November or

17 early December of 2001" and continued until March 27, 2002 when he discovered the alleged wrongful

   acts. (First Amended Complaint, ¶¶ 16, 49; Exhibit "i" to NOL.) Thus, under Government Code section

18 911.2, Mr. Rogozienski was required to file his tort claims against Mr. Allen with Mr. Allen's employing

19 public entity (e.g., the San Diego Superior Court) within six months after such claims accrued -- no later

20 than September 2002 -- and his contract claims within one year after such claims accrued -- no later than

   March 27, 2003. As Mr. Rogozienski's first amended complaint is completely void of any allegation that

21 he timely complied with the filing requirement under the Tort Claims Act, the demurrer should be

22 sustained, without leave to amend, as to each of the claims against Mr. Allen.

23 D.   <u>Other Independent Grounds Exist to Sustain the Demurrer.</u>

       Based upon the absolute judicial immunity doctrine, the litigation privilege, and the Tort Claims

24 Act, the demurrer should be sustained, without leave to amend as to every cause of action against

25 Mr. Allen. However, as discussed below, other separate and independent grounds for demurrer also exist

26 as to specific causes of action.

                                    **EXHIBIT 2 PAGE 236**

27

28                                                                          11|2

LOVE00608

1.    The Eleventh Cause of Action for "Willful Misconduct and Intentional Infliction of Injury" and the Twelfth Cause of Action for Negligence Fail to State a Cause of Action.

    a.    There is No Cause of Action Based Upon an Alleged Violation of the Rules of Professional Conduct.

A violation of a Rule of Professional Conduct cannot create liability for damages in a civil action. (See Rules of Professional Conduct, Rule 1-100 ["These rules are not intended to create new civil causes of action . . . ."]; Noble v. Sears, Roebuck & Co. (1973) 33 Cal.App.3d 654, 658-659 ["[There] is no authority for the proposition that a violation of [a Rule of Professional Conduct] subjects an attorney to liability in damages."].)

In Noble, the Court of Appeal affirmed the trial court's order sustaining a demurrer to a complaint without leave to amend as to a claim which was based upon an alleged violation of the Rules of Professional Conduct.[10] The Court of Appeal rejected the plaintiff's contention she had stated an actionable claim based upon an alleged violation of a Rule of Professional Conduct:

> [There] is no authority for the proposition that a lawyer who is subject to disciplinary action by the State Bar is thereby made subject to a civil action for damages, whether or not an established tort has been committed by the lawyer. (Emphasis added.)

(Noble, supra, 33 Cal.App.3d at p. 659; see also Wilhelm v. Pray, Price, Williams & Russell (1986) 186 Cal.App.3d 1324, 1332-1333 [affirmed sustaining of demurrer, without leave to amend, as to claims for fraud, deceit, and negligent misrepresentation based upon a violation of the Rules of Professional Conduct.])

    b.    Mr. Rogozienski's Claims are Improperly Based upon an Alleged Violation of the Rules of Professional Conduct and Judicial Canons.

Both the eleventh cause of action for "Willful Misconduct and Intentional Infliction of Injury" and the twelfth cause of action for negligence are improperly based upon alleged violations of Rule 1-710 of the Rules of Professional Conduct and Judicial Canon 6D(2)(f). (First Amended Complaint, ¶¶ 120-121,124, 126, 130-132; Exhibit "1" to NOL.) These allegations cannot support an actionable claim against Mr. Allen. As California law precludes a civil action for damages based upon an alleged violation of the Rules of Professional Conduct, the eleventh cause of action for "Willful Misconduct and Intentional Infliction of Injury" and the twelfth cause of action for negligence are barred as a matter of law. As such, the demurrer should be sustained, without leave to amend.

///

**EXHIBIT 2 PAGE 237**

---

[10]The demurrer was sustained, without leave to amend as to a cause of action entitled, "invasion of attorney-client relationship." (Noble, supra, 33 Cal.App.3d at pp. 658-659.)

11 3

2.   <u>The Seventh Cause of Action for Civil Rights Violations is Uncertain.</u>

In the seventh cause of action for civil rights violations, Mr. Rogozienski alleges:

> ". . . Defendants interfered or attempted to interfere by coercion with the exercise or enjoyment by Plaintiff of Plaintiff's rights to a fair trial secured by the Constitution and laws of the United States and the State of California. This right to a fair trial includes a trial free from actions and conduct which disqualify the trial judge and a trial where doubts are not raised concerning the trial judge's impartiality."   (First Amended Complaint, ¶ 99; Exhibit "1" to NOL.)

Mr. Rogozienski's allegations are uncertain, ambiguous, and unintelligible and are subject to a special demurrer under Code of Civil Procedure section 430.10, subdivision (f).  (See also <u>Khoury v. Maly's of California, Inc.</u> (1993) 14 Cal.App. 4th 612, 617-619 [demurrer for uncertainty will be sustained where defendant cannot reasonably determine issues to be admitted or denied or the claims being directed against him.])  Mr. Allen cannot reasonably determine what alleged acts of "interfer[ence] by coercion" are, how Mr. Rogozienski was allegedly deprived of a right to a fair trial, or whether Mr. Rogozienski is asserting a claim under federal or state law.  The demurrer should be sustained for uncertainty.

V.

<u>CONCLUSION</u>

Mr. Allen cannot be liable to Mr. Rogozienski for any claim as a matter of law based upon the absolute judicial immunity doctrine, the litigation privilege, and Mr. Rogozienski's failure to comply with the Tort Claims Act.  Each of these well-established defenses defeat each of the nine claims in the first amended complaint alleged against Mr. Allen.  Mr. Allen respectfully requests that the demurrer be sustained, without leave to amend.

Dated: _June 13, 2005_

ENGLISH & GLOVEN
A Professional Corporation


By: _Donald A. English_
       Donald A. English
       Christy I. Yee
       Attorneys for Defendant
       James D. Allen

**EXHIBIT 2 PAGE 238**

11 4

JAMES D. ALLEN'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF DEMURRER

12

**EXHIBIT 2 PAGE 239**

L0VE00611

1   Donald A. English, Esq.        (State Bar No. 115569)
    Christy I. Yee, Esq.           (State Bar No. 166238)
2   ENGLISH & GLOVEN
    A Professional Corporation
3   550 West "C" Street, Suite 1800
    San Diego, California 92101
4   Telephone: (619) 338-6610
    Facsimile:  (619) 338-6657
5

6   Attorneys for Defendant
    James D. Allen
7

RECEIVED
JUN 1 4 2005
BY:_____

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SAN DIEGO

10  FRANK E. ROGOZIENSKI,           )   Case No. GIC 843843
                                    )
11            Plaintiff             )   DEFENDANT JAMES D. ALLEN'S NOTICE
                                    )   OF LODGMENT OF DOCUMENTS IN
12       v.                         )   SUPPORT OF DEMURRER TO PLAINTIFF'S
                                    )   FIRST AMENDED COMPLAINT
13  JAMES D. ALLEN, S. MICHAEL LOVE )
    and DOES 1 through 10, inclusive,)  Date:       July 15, 2005
14                                  )   Time:       11:00 a.m.
              Defendants.           )   Dept:       61
15                                  )   Judge:      John S. Meyer
                                    )
16                                  )
                                    )
17                                  )   Complaint Filed:   March 7, 2005
                                    )   Trial Date:        None set
18  _____ )

19       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20       PLEASE TAKE NOTICE that defendant James D. Allen ("Mr. Allen") hereby lodges the

21  following documents in support of his demurrer to plaintiff Frank E. Rogozienski's First Amended

22  Complaint:

23       Exhibit 1:    First Amended Complaint for Damages in this action, filed March 28, 2005.

24       Exhibit 2:    Order, Stipulation and Oath for Temporary Judge, appointing Mr. Allen as

25                     temporary judge in In re Marriage of Rogozienski, San Diego Superior Court,

26                     Case No. D440154 ("Rogozienski dissolution"), filed August 4, 1998.

27                                              **EXHIBIT 2 PAGE 240**

28                                                                                          15
                                    _____

LOVE00612

| | |
|---|---|
| Exhibit 3: | Statement of Decision issued by Mr. Allen acting in the capacity of temporary judge in the Rogozienski dissolution, dated May 10, 1999. |
| Exhibit 4: | Second Amended Statement of Decision issued by Mr. Allen acting in the capacity of temporary judge in the Rogozienski dissolution, dated November 12, 2002. |
| Exhibit 5: | Judgment in the Rogozienski dissolution, filed November 25, 2002. |
| Exhibit 6: | Frank E. Rogozienski's Notice of Appeal of the November 25, 2002 Judgment of Mr. Allen acting in the capacity of temporary judge in the Rogozienski dissolution, filed December 10, 2002. |
| Exhibit 7: | Shirley L. Rogozienski's Notice of Appeal of the November 25, 2002 Judgment of Mr. Allen acting in the capacity of temporary judge in the Rogozienski dissolution, filed January 23, 2003. |
| Exhibit 8: | Original Complaint for Damages in this action, filed March 7, 2005. |
| Exhibit 9: | Declaration of Anthony C. Joseph, Superior Court Judge, Retired, in Support of Petitioner's Opposition to Respondent's Motion to Set Aside Judgment and Non-Stipulated Interlocutory Rulings of then Temporary Judge James D. Allen in the Rogozienski dissolution, filed April 26, 2004. |

Dated: _June 13, 2005_

ENGLISH & GLOVEN
A Professional Corporation


By: _Donald English_
       Donald A. English
       Christy I. Yee
       Attorneys for Defendant
       James D. Allen


**EXHIBIT 2 PAGE 241**

16

**EXHIBIT 1**

**EXHIBIT 2 PAGE 242**

117

LOVE00614

1

2  FRANK E. ROGOZIENSKI, ESQ., California Bar No. 51445
   FRANK E. ROGOZIENSKI, INC.
3  A Professional Corporation
   Attorneys at Law
4  Coronado Professional Square
   1203 Second Street
5  Coronado, CA 92118
   Telephone: (619)437-1878
6  Facsimile: (619)437-4894

7  Attorneys for Plaintiff, FRANK E. ROGOZIENSKI

8

9

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                 FOR THE COUNTY OF SAN DIEGO

12

13  FRANK E. ROGOZIENSKI,              )
                                       )   Case No. GIC843843
14              Plaintiff,             )
                                       )   FIRST AMENDED COMPLAINT FOR
15        v.                           )   DAMAGES (Interference with
                                       )   Contract, Interference with
16  JAMES D. ALLEN, S. MICHAEL         )   Economic Relations, Civil Rights
    LOVE and DOES 1 through 10,        )   Violations, Deceit-Fraudulent
17  inclusive,                         )   Concealment, Breach of Contract,
                                       )   Unfair Competition, Intentional
18              Defendants.            )   Misconduct, Negligence and
                                       )   Unjust Enrichment)
19  _____   )
                                       )
20

21       Plaintiff alleges:

22                    1.  JURISDICTION AND VENUE

23       1.  The within action is an unlimited civil case for damages
24  in excess of $25,000.00.

25       2.  The within action arose in San Diego, California.

26  / / /

27  / / /

28  / / /

                                                   **EXHIBIT 2 PAGE 243**        118
                              1

LOVE00615

FILED
CIVIL BUSINESS OFFICE 18
CENTRAL DIVISION

2005 MAR 28 P 4 20

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

## 2. PARTIES

3.   At all times herein mentioned, Plaintiff was, and now is, a resident of San Diego County, California.

4.   At all times herein relevant, Defendant, JAMES D. ALLEN [herein "ALLEN"], was, and now is, a resident of San Diego County, California. At all times herein relevant, ALLEN was, and now is, an attorney duly licensed to practice law in the State of California. At all times herein relevant, ALLEN engaged in the practice of law as a sole proprietor under the fictitious name "Allen-Magidson".

5.   At all times herein relevant, Defendant, S. MICHAEL LOVE [herein "LOVE"] was, and now is, a resident of San Diego County, California. At all times herein relevant, LOVE was, and now is, an attorney duly license to practice law in the State of California.

6.   Plaintiff is ignorant of the true names or capacities of Defendants sued herein under the fictitious names DOES 1 through 10, and therefore sues such Defendants pursuant to California Code of Civil Procedure section 474.   Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 are residents and citizens of one of the States of the United States, and participated in the acts herein alleged and are responsible in some manner for the injuries and damages to Plaintiff as herein alleged.

7.   Plaintiff is informed and believe, and thereon alleges, that at times herein relevant, each of the Defendants was the agent and employee of each of the remaining Defendants, and was at times herein mentioned acting within the purpose and scope of said agency

**EXHIBIT 2 PAGE 244**

119

2

LOVE00616

1503 ½ CORONADO STREET, #231
CORONADO, CALIFORNIA 92118-1417
(619) 437-1676

1  and employment, and further that each of the Defendants at times
2  herein mentioned conspired and agreed together and acted in concert
3  in proximately causing the injuries and damages to Plaintiff as
4  herein alleged. Plaintiff is further informed and believes, and
5  thereon alleges, that at other times herein mentioned, each of the
6  Defendants was acting solely in their individual capacities, and
7  that with respect to those acts, each of the other Defendants
8  ratified, affirmed and adopted these actions.
9
10      8.    Plaintiff is in some doubt as to whether he is entitled
11  to redress from all of the Defendants or from one or more of them,
12  and all Defendants have therefore been joined herein with the
13  intent that the question as to whether all the Defendants are, or
14  one or more of them are, liable to Plaintiff, and to what extent;
15  and that the liability may be determined in this action; and that
16  the Court may award judgment to Plaintiff as against the Defendants
17  either jointly, severally or in the alternative.
18
19                      3. FACTUAL BACKGROUND
20                  A. The Underlying Proceeding
21      9.    Plaintiff was married in 1982, and in October, 1997,
22  Plaintiff's then spouse [herein the "Petitioner"] brought a
23  Petition for Dissolution of their marriage [herein the "Underlying
24  Proceeding"].    In the Underlying Proceeding, LOVE represented
25  Petitioner until February, 2005 when he withdrew as Petitioner's
26  attorney of record.
27  / / /
28

**EXHIBIT 2 PAGE 245**

120

3

LOVE00617

B. <u>Agreement to Employ And to Pay ALLEN</u>

10. In or about June 1998, Plaintiff and Petitioner entered into a written agreement in which they agreed (a) to the entry of an order that ALLEN could act as temporary judge in the Underlying Proceeding and (b) that all costs of ALLEN shall be borne by them, with each paying one-half the cost of the services of ALLEN. Although, no hourly rate or fee amount was set expressly forth in the written agreement, the agreement was that Plaintiff would pay one-half of ALLEN's services in the Underlying Proceeding at ALLEN's normal and customary billing rate as an attorney on a fee-for-service basis. Between June 1998 and August 4, 1998, and prior to his appointment as temporary judge, ALLEN performed services and charged fees which were paid under Plaintiff's and Petitioner's agreement one-half by Plaintiff and one-half by Petitioner. ALLEN served as temporary judge from the time of his appointment by the Presiding Judge of the Superior Court on August 4, 1998 until his withdrawal on March 27, 2003 in response to Plaintiff's challenge of him for cause. At all times herein relevant, ALLEN submitted billings to Plaintiff as a lawyer on the letterhead of Allen-Magidson.

C. <u>Harold S. Bottomley</u>

11. At all times herein relevant, Harold S. Bottomley [herein "Bottomley"] was, and now is, an attorney duly licensed to practice law in the State of California. Bottomley had been an associate of ALLEN's former law firm on two occasions for a number of years

JBT OFFICE BOX, #1230
1201 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1470
(619) 437-1070

4

EXHIBIT 2 PAGE 246    121

<u>FIRST AMENDED COMPLAINT FOR DAMAGES</u>

LOVE00618

1  LOVE was Petitioner's lead trial attorney in that trial.

2

3        15.   In about November 2001, Bottomley took his family to

4  Warner Springs Ranch, and as a result of that experience and

5  because it was much closer and considerably less expensive than the

6  Alisol Ranch, became interested in becoming a member.  ALLEN and

7  Bottomley then had discussions about inquiries Bottomley was making

8  concerning acquiring a membership in Warner Springs Ranch, and how

9  it would be very nice if the two of them were members so they could

10  go there together with their respective families.  Bottomley was

11  made aware that Warner Springs Ranch Realty was offering half-

12  interests in Warner Springs Ranch for $2,500.

13          F.  The Conspiracy Between LOVE and ALLEN

14        16.   In or about the Summer of 2001, but no later than

15  November or early December of 2001, ALLEN and LOVE entered into a

16  conspiracy [herein the "CONSPIRACY"] to benefit themselves and

17  others with whom they were associated designed to injure, harm and

18  cause damage to Plaintiff by, among other things, interfering with

19

20  Plaintiff's contractual relations, interfering with Plaintiff's

21  prospective economic advantage, ///// violating Plaintiff's civil

22  rights, defrauding and deceiving Plaintiff, ///// engaging in unfair

23  competition in violation of applicable California law, and engaging

24  in willful and negligent misconduct.  As more fully alleged herein,

25  a purpose of the CONSPIRACY was for LOVE to make a gift to ALLEN of

26  the LOVE's interest in Warner Springs Ranch in violation of ALLEN's

27  and  LOVE's ethical and other obligations, and to conceal the fact

28

1203 SeCOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1976

**EXHIBIT 2 PAGE 247**          122

6

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00619

1  of such gift.

3     17.  In about November or early December 2001, ALLEN had a
4  conversation with LOVE about Warner Springs Ranch.  LOVE told ALLEN
5  he was interested in divesting himself of his membership in Warner
6  Springs Ranch since his children were grown and LOVE and his wife
7  had recently joined the San Diego Country Club and were not using
8  Warner Springs Ranch any longer.  ALLEN told LOVE of Bottomley's
9  interest, called Bottomley, advised him of LOVE's comments, and
10  suggested Bottomley call LOVE.  At the time, the LOVES owned two
11  independent and separate half-interests or memberships in the
12  Ranch, namely Unit 850A and Unit 1546B.  The "A" Unit permitted use
13  of the Ranch and its facilities during odd months of the year and
14  the "B" Unit permitted use during even months of the year.

16     18.  At a Christmas party at ALLEN's residence in December
17  2001, Bottomley spoke with the LOVES about Warner Springs Ranch,
18  the Bottomleys' recent visit there, and the things the Ranch had to
19  offer.  The LOVES discussed their membership, that they weren't
20  using it anymore and would Bottomley and his wife be interested in
21  assuming the LOVES' interest and the monthly membership fees.  On
22  information and belief, ALLEN knew at the time of this discussion
23  that LOVE was talking to Bottomley about the LOVES' interest in
24  Warner Springs Ranch.

25     19.  At the end of the Christmas party, and after the other
26  guests had left, Bottomley stayed behind and spoke with ALLEN about
27  his discussion with LOVE earlier that evening, and that he was

1
2   going to acquire the LOVES' interest in Warner Springs Ranch.
3   Following the Christmas party, Bottomley and ALLEN discussed that
4   if Bottomley acquired the LOVES' interest at no cost, Bottomley
5   would split the cost of whatever it would have cost ALLEN to
6   acquire a full interest in the Ranch, so that each of them would
7   have the same financial investment in their memberships and split
8   it that way. Their idea was that Bottomley and ALLEN would each
9   have full memberships so they could use Warner Springs Ranch
10  together during the same months. In these conversations, Bottomley
11  also learned from ALLEN that ALLEN was acting as a temporary judge
12  in the Underlying Proceeding where LOVE was representing a party
13      20. Within a week or ten days after the Christmas party,
14  Bottomley decided the $260 monthly cost of a full membership or
15  interest in Warner Springs Ranch did not make good financial sense
16  for him and his wife, and decided it would be better for them not
17  to have a full [A and B] membership, but rather to have a B half-
18  membership, and to see whether or not the A-half-membership a part
19  of what the LOVES were going to convey, could be converted into a
20  B half-membership to be given to ALLEN so that ALLEN could use the
21  Ranch at the same time (during the same months) as the Bottomleys.
22  Bottomley then spoke to LOVE about Bottomley and ALLEN each taking
23  one of the LOVES' two half memberships. And although LOVE
24  allegedly told Bottomley at the time that "I really don't want to
25  know any more about [your] business, [and] I can't do anything
26  directly with Mr. ALLEN", he nevertheless wrote the below letter of
27
28

8

**EXHIBIT 2 PAGE 249**                              124

LOVE00621

1903 #1 OFFICE BOX, 1803 SECOND STREET AT "C" AVENUE CORONADO, CALIFORNIA 92118-1417 (619) 437-1878

1    January 11, 2002 to Warner Springs Ranch and continued to work

2    towards the transaction that placed the LOVES' Unit 1546B one-half

3    interest in Bottomleys' names and LOVES' Unit 850A one-half

4    interest in ALLEN's name. ALLEN was aware that both the half-

5    interests were coming from the LOVES.

6    

7        21.  In a letter dated January 11, 2002, LOVE solicited Warner

8    Springs Ranch to be able to convert his A and B half-interests into

9    two A or two B half-interests. LOVE sent a copy of his letter to

10   Bottomley. In his letter LOVE states he "personally know[s] each of

11   the families to whom [he is proposing to sell his half-interests]

12   and each of the male members of the families are attorneys," a

13   reference to ALLEN and Bottomley. At the time of LOVE's letter,

14   ALLEN was separated or divorced, and on information and belief,

15   LOVE intentionally misled and deceived Warner Springs Ranch by

16   characterizing his intended gift to ALLEN of an interest in Warner

17   Springs Ranch as a "sale" to unnamed "families."

18   

19       22.  Following LOVE's letter, Bottomley's contemporaneous

20   handwritten notes reflect a telephone discussion with LOVE on

21   January 18, 2002. In this conversation, LOVE told Bottomley that

22   the Ranch would not allow conversion of the LOVES' two half-

23   interests into either two A's or two B's. Bottomley then asked

24   LOVE if he could find out what it would cost to upgrade the half-

25   interest going to ALLEN to a full interest. Bottomley discussed

26   what LOVE had told him with ALLEN.

27       23.  Bottomley's contemporaneous handwritten notes also

28   

1203 SANDFORD STREET, P.A. 18580
CORONADO, CALIFORNIA 92118-1417
(619) 437-1879

9

**EXHIBIT 2 PAGE 250**    125

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00622

1   reflect a telephone discussion with LOVE on January 23, 2002. In
2   this conversation LOVE told Bottomley of a "trade-up" option which
3   Warner Springs Ranch was offering, whereby an owner of an A or a B
4   half-interest could trade that one half-interest up to a full (A
5   and B) membership for $850. Bottomley then discussed this with
6   ALLEN.
7
8       24.    Before transfer of the LOVES' two half-interests in
9   Warner Springs Ranch, ALLEN agreed with Bottomley that he (ALLEN)
10  would take one of the LOVES' one-half-interests, and use it to
11  "trade-up" (with $850) for a full membership. This would permit
12  ALLEN to use the Ranch during the same months when Bottomley would
13  also be using the facilities. At the time ALLEN agreed with
14  Bottomley to take one of the LOVES' half-interests, ALLEN knew
15  Bottomley was getting both half interests from LOVE, that Bottomley
16  did not intend to keep both half-interests himself, and that
17  Bottomley intended to immediately transfer one of the LOVES' half
18  interests to ALLEN. Both ALLEN and LOVE knew that Bottomley was
19  acting as a strawman in the gift to ALLEN of the LOVES' Unit 850A
20  one-half interest in Warner Springs Ranch.   **EXHIBIT 2 PAGE 251**
21
22      G.  <u>The gift to ALLEN of the LOVES' half-interest in</u>
23              <u>Warner Springs Ranch</u>
24      25.    By Quit Claim Deeds signed February 8, 2002, (a) the
25  LOVES transferred to Bottomley and his wife the LOVES' Unit 1546B
26  one-half interest in Warner Springs Ranch, and (b) the LOVES
27  transferred to Bottomley (and not Mr. Bottomley) the LOVES' Unit
28  850A one-half interest in Warner Springs Ranch. Both Quit Claim

1ST OFFICE BOX J1506
1205 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1878

10

LOVE00623

1    Deeds were recorded by Bottomley on February 22, 2002. As more
2    fully hereinafter alleged, both LOVE and ALLEN knew the reason for
3    the transfer of the LOVES' Unit 850A interest in Warner Springs
4    Ranch to Bottomley, and to only Bottomley, and not to Bottomley and
5    his wife, was that Bottomley was acting as a strawman for the
6    transfer of that interest through to ALLEN, its intended recipient.
7
8        26.    By Quit Claim Deed signed March 15, 2002, Bottomley
9    transferred to ALLEN the LOVES' Unit 850A one-half interest in
10   Warner Springs Ranch. This Quit Claim Deed was recorded March 18,
11   2002.
12       27.    Bottomley did not prepare any of the deeds which
13   transferred the LOVES' half-interests in Warner Springs Ranch.
14   LOVE (or someone on his behalf) prepared the Quitclaim Deed from
15   the LOVES, and ALLEN (or someone on his behalf) prepared the
16   Quitclaim Deed to himself. Bottomley explained to LOVE his
17   intention of transferring the LOVES' Unit 850A half-interest to
18   ALLEN so ALLEN could use that half-interest to upgrade to a full
19   membership. Bottomley further explained to LOVE that because he
20   [Bottomley] was simply passing Unit 850A on to ALLEN, it did not
21   make sense for LOVE to prepare the Quitclaim Deed for that half-
22   interest in Bottomley's and his wife's names, as LOVE was doing for
23   the LOVES' Unit 1546B half-interest which Bottomley and his wife
24   were keeping. Bottomley explained that it would be simpler if only
25   he (and not Bottomley and his wife) had to sign the transfer
26   through to ALLEN. The Quitclaim Deeds transferring the LOVES'
27
28

1505 B 33ND STREET AD CP AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1776

**EXHIBIT 2 PAGE 252**

11                                                                    127

LOVE00624

1    interests in Warner Springs Ranch recite they are "gifts".

2

3      28.  In February, 2002, ALLEN contacted Warner Springs Ranch

4 to ask if it would be possible for him to "upgrade" the half-

5 interest he was going to receive through Bottomley to a full

6 interest (so that he and Bottomley could utilize the Ranch

7 facilities at the same time).

8      29.  On February 27, 2002, after receiving the recorded

9 Quitclaim Deeds from the LOVES back from the San Diego County

10 Recorder's office, Bottomley faxed to ALLEN a copy of the Quitclaim

11 Deed from the LOVES for Unit 850A for ALLEN to prepare the deed

12 conveying this Unit to himself.  On information and belief, neither

13 LOVE, ALLEN nor Bottomley took any steps to cause the records of

14 Warner Springs Ranch to be changed to reflect this transaction

15 because Defendants knew that Bottomley would immediately transfer

16 the LOVES' Unit 850A half-interest to ALLEN, its intended

17 recipient.

18

19      30.  In mid-March, 2002, ALLEN prepared and had Bottomley sign

20 a Quitclaim Deed transferring the LOVES' Unit 850A half-interest

21 to himself.  This deed recites it is a "gift".  ALLEN caused this

22 deed to be recorded on March 18, 2002, however, on information and

23 belief, did not take any steps to cause the records of Warner

24 Springs Ranch to be changed to reflect ALLEN's ownership of the

25 LOVES' Unit 850A.

26      31.  After receiving the recorded deed to Unit 850A from the

27 San Diego County Recorder, in late March, 2002, and prior to May

28

**EXHIBIT 2 PAGE 253**

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00625

20, 2002, ALLEN had communications with the Warner Springs Ranch Owners Association [the "Association"] to trade-up the LOVES' Unit 850A into a new, full membership. ALLEN was informed that the title company had some questions regarding the transfer by the LOVES. To resolve these questions, ALLEN called LOVE to discuss "some recordation problem," and asked that LOVE assist him in resolving a matter involving Unit 850A that had occurred when the LOVES owned that Unit.

32. After the title problems were resolved, ALLEN signed a Grant Deed transferring the LOVES' Unit 850A half interest in the Ranch to the Association. This deed recites it is a "½ interest Owner Trading Up." Sequentially with the recording of this deed on May 20, 2002, a Corporation Grant Deed from the Association was recorded transferring a full interest [new Unit 4257] in the Ranch to ALLEN. On information and belief, at this time the records of the Association were first changed to show ALLEN as a member, owning Unit 4257.

33. The circuitous movements Defendants orchestrated of the LOVES' Unit 850A half interest in Warner Springs Ranch effectively laundered this transaction so as to obscure this gift to ALLEN.

### H.   Disqualification of ALLEN

34. Defendants knew or should have known that making the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch would result in ALLEN being disqualified from acting as temporary judge in the Underlying Proceeding. Defendants further

**EXHIBIT 2 PAGE 254**

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00626

knew or should have known that once made, the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch disqualified ALLEN from acting as temporary judge in the Underlying Proceeding.

35.    ALLEN's acceptance of the gift of the LOVES' Unit 850A half interest in Warner Springs Ranch in March 2002 immediately disqualified him from acting as temporary judge in the Underlying Proceeding. The making, and ALLEN's acceptance, of the gift of the LOVES' Unit 850A half-interest in Warner Springs Ranch was not a judicial act, was not done in the course of the conduct of the Underlying Proceeding and was not done to achieve the legitimate objectives of the Underlying Proceeding.

    I. Concealment and Failure to disclose the gift.

36.    In a telephone status conference in the Underlying Proceeding on April 30, 2002, ALLEN, acting in his role as then temporary judge in the Underlying Proceeding, stated "... insofar as fees [including for LOVE] are concerned, that's one of the other issues that I'm still struggling with and I'm still looking at some of the pleadings and kind of going through my notes". Although both knew, neither ALLEN nor LOVE made any disclosure of the gift of the LOVES' Unit 850A half-interest in Warner Springs Ranch which had been made to ALLEN in March of 2002. Both LOVE and ALLEN further concealed that ALLEN was at the time disqualified from acting as temporary judge.

37.    On October 11, 2002, ALLEN, acting in his role as then temporary judge in the Underlying Proceeding, reopened trial in the

POST OFFICE BOX 81990
1203 SECOND STREET, AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1976

14

**EXHIBIT 2 PAGE 255**    130

FIRST AMENDED COMPLAINT FOR DAMAGES

LOVE00627

1  Underlying Proceeding to receive evidence on certain issues he had
2
3  reserved from the trial in October - November 2000. The trial on
4  these issues was completed on that date.  At this hearing, ALLEN
5  stated he would order Plaintiff herein to pay $250,000 of
6  Petitioner's attorneys' fees and costs, including fees for LOVE.
7  Although both knew, neither LOVE nor ALLEN made any disclosure of
8  the gift of the LOVES' Unit 850A half-interest in Warner Springs
9  Ranch which had been made to ALLEN in March of 2002. Both LOVE and
10 ALLEN further continued to conceal that ALLEN was at the time
11 disqualified from acting as temporary judge.
12      38.  On October 23, 2002, ALLEN, acting in his role as then
13 temporary judge in the Underlying Proceeding, issued his Amended
14 Statement Of Decision.  On November 12, 2002, ALLEN, acting in his
15 role as then temporary judge in the Underlying Proceeding, signed
16 and issued his Second Amended Statement Of Decision and the final
17 Judgment.  Although both knew, neither LOVE nor ALLEN made any
18 disclosure of the gift of the LOVES' Unit 850A half-interest in
19
20 Warner Springs Ranch which had been made to ALLEN in March of 2002.
21 Both LOVE and ALLEN further continued to conceal that ALLEN was at
22 these times disqualified from acting as temporary judge.
23      39.  On December 17, 2002, LOVE met privately with ALLEN,
24 without notice, and obtained ALLEN's signature on certain orders
25 which permitted the immediate issuance, over the counter, of a writ
26 of execution on Plaintiff's separate and share of the community
27 property, and which  permitted the levy on assets held in
28

**EXHIBIT 2 PAGE 256**    131

15

Plaintiff's Family Trust.  LOVE thereafter aggressively pursued enforcement and collection of the final Judgment ALLEN had entered in the Underlying Proceeding, which Judgement LOVE knew, and continued to conceal and did not disclose had been made and was being enforced with orders made after ALLEN was disqualified from acting as temporary judge in the Underlying Proceeding.  LOVE and ALLEN benefitted from those actions in that, among other things, Plaintiff's separate property and share of community property was used for payment and reimbursement of their fees and expenses. Payments and transfers of assets by Plaintiff were further made through LOVE and those assisting LOVE.  There is no transcript of what ALLEN and LOVE discussed.

40.  On March 7, 2003, during a post-judgment hearing in the Underlying Proceeding attended by LOVE, Plaintiff's counsel objected to ALLEN presiding at the hearing inasmuch as ALLEN had not made a certification (under California Rule 244(b)).  Although both knew, neither ALLEN nor LOVE made any disclosure of the gift of the LOVES' Unit 850A half-interest in Warner Springs Ranch which had been made to ALLEN in March of 2002. Both LOVE and ALLEN further continued to conceal that ALLEN was at these times disqualified from acting as temporary judge.

41.  Prior to ALLEN filing his Statement Of Withdrawal in the Underlying Proceeding on March 23, 2003, neither ALLEN nor LOVE had disclosed the Warner Springs Ranch transactions.  ALLEN has refused to answer why he did not disclose these transactions.

EXHIBIT 2 PAGE 257

132

16

FIRST AMENDED COMPLAINT FOR DAMAGES

42. Since ALLEN was given the LOVES' Unit 850A half-interest in Warner Springs Ranch in March 2002, ALLEN has used the Ranch facilities on multiple occasions.

### J. Setting aside of ALLEN's rulings

43. As a result of the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch, ALLEN was disqualified, and rulings of ALLEN while acting in his role as then temporary judge have been set aside by the Judge of the Superior Court who replaced ALLEN in the Underlying Proceeding, and a new trial has been ordered on these set aside rulings.

### K. ALLEN's Statements to the Press

44. On information and belief, in or about September and October 2003, and after ALLEN filed his Statement of Withdrawal in the Underlying Proceeding, ALLEN and ALLEN's counsel spoke with one or more reporters and made threatening, misleading and disparaging remarks about the truth of ALLEN's involvement in the gift to him of the LOVES' Unit 850B one-half interest in Warner Springs Ranch. On information and belief, ALLEN and ALLEN's counsel made these statements as a part of and in furtherance of the CONSPIRACY, to discredit Plaintiff and coerce Plaintiff into accepting ALLEN's rulings, and to bolster and support actions ALLEN had previously taken in his judicial capacity. In speaking with the press, ALLEN was not acting in his judicial capacity or in the course of the conduct of the Underlying Proceeding, or to achieve the legitimate objectives of the Underlying Proceeding.

**EXHIBIT 2 PAGE 258**

133

1203 EL CAMINO DEL MAR, 18th FLOOR
1203 EL CAMINO DEL MAR, 18th AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1826

LOVE00630

## L. Plaintiff's economic damages

45.  As a result of the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch and of Defendants' concealment and nondisclosure of this transaction and the fact of the disqualification of ALLEN, Plaintiff has lost the fees, costs and expenses paid in the prior trial on the now set-aside rulings, and the depreciation and loss in the value and use of assets which were taken from Plaintiff under the now set-aside rulings. In addition, Plaintiff has incurred and will be required to continue to incur the fees, costs and expenses of having a new trial on these set- aside rulings.

## M. Plaintiff's non-economic injuries

46.  As a further result of the actions and conduct of Defendants as aforesaid, Plaintiff has suffered and continues to suffer serious and severe emotional distress.

## N. No judicial immunity

47.  Except where otherwise expressly stated to the contrary, the actions and conduct of ALLEN alleged herein were not done by ALLEN in his role or capacity as a judicial officer. The actions and conduct on which ALLEN is sued herein are not judicial acts.

## O. No litigation privilege

48.  The actions and conduct on which Defendants are sued herein were not done in the course of the conduct of the Underlying Proceeding and were not done to achieve the legitimate objectives of the Underlying Proceeding.

**EXHIBIT 2 PAGE 259**      134

18

P. Estoppel to rely on statute of limitations

49. Defendants are estopped to rely on all applicable statutes of limitations because, prior to the time such applicable statutes of limitations would have run (a) Defendants fraudulently concealed and failed to disclose the fact of the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch, (b) Defendants fraudulently concealed that Plaintiff had the causes of action alleged herein, (c) Plaintiff reasonably relied upon Defendants' fraudulent concealments, and that Defendants would act in accordance with the disclosure requirements provided by law, (d) Defendants intended their concealments to be acted upon by Plaintiff, and Plaintiff had the right to believe that the fact Defendants made no disclosure was intended to be relied upon that no gifts had been made, and (e) Plaintiff exercised due diligence to ascertain the truth. Plaintiff did not discover prior to March 7, 2003 evidence of the gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch which had been made in March 2002; and prior to March 27, 2002 when ALLEN filed his Statement of Withdrawal in the Underlying Proceeding, did not discover the fact of the gift and fact of ALLEN's disqualification.

50. [Reserved]

### 4. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FOR INTENTIONAL INTERFERENCE WITH
### CONTRACTUAL RELATIONS AGAINST
### ALL DEFENDANTS

1808 SEC. 10 STREET AT "L" AVENUE
CORONADO CALIFORNIA 92118-1417
(619) 437-1878

**EXHIBIT 2 PAGE 260** 135

19

51. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 50 hereinabove set forth.

52.   At times herein relevant, there existed contractual relationships between Plaintiff and Petitioner, including a prenuptial agreement, agreements for the ownership and control of real and personal property, and deposit accounts.

53. At times herein relevant, there existed contractual relationships between Plaintiff and third persons, including with Qualcomm relating to the acquisition of Qualcomm stock and stock options, and loans to Qualcomm.

54. At times herein relevant, there existed a contractual relationship between Plaintiff and Plaintiff's counsel in the Underlying Proceeding for providing legal services to Plaintiff in that proceeding on a fee-for-service basis.

55.   Defendants knew of the existence of each of these contracts.

56.   In engaging in the actions and conduct hereinabove alleged, Defendants either (a) intended to prevent Plaintiff's performance or to cause Plaintiff's performance under the aforementioned contracts to be more expensive and burdensome, or (b) knew that prevention of Plaintiff's performance was certain or substantially certain to occur or that Plaintiff's performance would be more expensive or burdensome as a result of Defendants' actions and conduct.

**EXHIBIT 2 PAGE 261**

136

LOVE00633

57. Defendants engaged in the actions and conduct hereinabove alleged which either (a) prevented Plaintiff's performance of those contracts or (b) caused Plaintiff's performance to be more expensive and burdensome.

58. The actions and conduct of Defendants as hereinabove alleged interfered with Plaintiff's contractual relations and were a cause of injury, damage, loss and harm to Plaintiff in an amount according to proof in excess of $25,000.

59. The actions and conduct of Defendants as hereinabove alleged were willful and oppressive, fraudulent and malicious, entitling Plaintiff to an award of punitive and exemplary damages in an amount according to proof.

SECOND CAUSE OF ACTION
FOR INTENTIONAL INTERFERENCE WITH
CONTRACTUAL RELATIONS AGAINST LOVE

60. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 50 hereinabove set forth.

61. At times herein relevant, there existed an agreement for payment by Plaintiff of one-half of ALLEN's services in the Underlying Proceeding at his normal and customary rate as an attorney on a fee-for-service basis.

62. LOVE knew of the existence of this contract.

63. In engaging in the actions and conduct hereinabove alleged, LOVE either (a) intended to cause Plaintiff's performance under the contract to be more expensive or burdensome, or (b) knew

21

**EXHIBIT 2 PAGE 262**

137

LOVE00634

1    that Plaintiff's performance would be more expensive or burdensome

2    as a result of LOVE's actions and conduct.

3

4    64.    LOVE engaged in the actions and conduct hereinabove

5    alleged which caused Plaintiff's performance of the contract to be

6    more expensive and burdensome.

7    65. The actions and conduct of LOVE as hereinabove alleged

8    interfered with Plaintiff's contractual relations and were a cause

9    of injury, damage, loss and harm to Plaintiff in an amount

10   according to proof in excess of $25,000.

11   66.    The actions and conduct of LOVE as hereinabove alleged

12   were willful and oppressive, fraudulent and malicious, entitling

13   Plaintiff to an award of punitive and exemplary damages in an

14   amount according to proof.

15

16                        THIRD CAUSE OF ACTION
                 FOR INTENTIONAL INTERFERENCE WITH
17               PROSPECTIVE ECONOMIC ADVANTAGE
                        AGAINST ALL DEFENDANTS

18

19   67.    Plaintiff realleges and incorporates herein by reference

20   each and every allegation contained in paragraphs 1 through 50 and

21   paragraphs 52 through 54 hereinabove set forth.

22   68.    At times herein relevant, there existed economic

23   relationships between Plaintiff and Petitioner, between Plaintiff

24   and Plaintiff's counsel in the Underlying Proceeding, and between

25   Plaintiff and Qualcomm and other third persons engaging or

26   proposing to engage in business transactions with Plaintiff,

27   containing a probable future economic benefit or advantage to

28

1208 SEC ND STREET AT "  AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 492-1678

                              22

EXHIBIT 2 PAGE 263

138

LOVE00635

Plaintiff.

69. Defendants knew of the existence of these relationships.

70. Defendants engaged in wrongful conduct as hereinabove alleged designed to interfere with or disrupt these relationships.

71. Defendants engaged in said wrongful conduct either (a) with the intent to interfere with or disrupt these relationships, or (b) with the knowledge that the interference or disruption was certain or substantially certain to occur as a result of Defendants actions.

72. The economic relationships were actually interfered with or disrupted.

73. The wrongful conduct of Defendants which was designed to interfere with or disrupt these relationships caused injury, damage, loss and harm to Plaintiff in an amount according to proof in excess of $25,000.

74. The actions and conduct of Defendants as hereinabove alleged were willful and oppressive, fraudulent and malicious, entitling Plaintiff to an award of punitive and exemplary damages in an amount according to proof

<u>FOURTH CAUSE OF ACTION</u>
<u>FOR INTENTIONAL INTERFERENCE WITH</u>
<u>PROSPECTIVE ECONOMIC ADVANTAGE</u>
<u>AGAINST LOVE</u>

75. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 50 and paragraph 61 hereinabove set forth.

EXHIBIT 2 PAGE 264

139

23

LOVE00636

76.    An economic relationship existed between Plaintiff and ALLEN, containing a probable future economic benefit or advantage to Plaintiff. This economic relationship included the arrangement that ALLEN would serve as a temporary judge in the Underlying Proceeding.    The economic benefit or advantage to Plaintiff included resolution of the Underlying Proceeding in an expeditious and cost-effective manner.

77.    LOVE knew of the existence of this relationship.

78.    LOVE engaged in wrongful conduct as hereinabove alleged designed to interfere with or disrupt this relationship.

79.    LOVE engaged in this wrongful conduct either (a) with the intent to interfere with or disrupt this relationship or (b) with the knowledge that the interference or disruption was certain or substantially certain to occur as a result of LOVE's actions.

80.    The economic relationship was actually interfered with and disrupted.

81.    The within conduct of LOVE which was designed to interfere with or disrupt this relationship caused injury, damage, loss and harm to Plaintiff in an amount according to proof in excess of $25,000.

82.  The actions and conduct of LOVE as hereinabove alleged were willful and oppressive, fraudulent and malicious, entitling Plaintiff to an award of punitive and exemplary damages in an amount according to proof.

**EXHIBIT 2 PAGE 265**

FIFTH CAUSE OF ACTION
FOR NEGLIGENT INTERFERENCE WITH

24

140

LOVE00637

POL
OFFICE BOX 191, 10
1208 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1978

## PROSPECTIVE ECONOMIC ADVANTAGE
## AGAINST ALL DEFENDANTS

83.  Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 50 and paragraphs 52 through 54 as hereinabove set forth.

84.  At times herein relevant, an economic relationship existed between Plaintiff and Petitioner, between Plaintiff and Plaintiff's counsel in the Underlying Proceeding, and between Plaintiff and Qualcomm and other third persons engaging and proposing to engage in business transactions with Plaintiff, containing a probable future economic benefit or advantage to Plaintiff.

85.  Defendants knew of the existence of these economic relationships.

86.  Defendants engaged in wrongful conduct as hereinabove alleged.

87.  It was reasonably foreseeable that Defendants' wrongful conduct would interfere with or disrupt these economic relationships if Defendants failed to exercise due care.

88.  Defendants were negligent in their conduct as hereinabove alleged, in that Defendants failed to exercise due care.

89.  These economic relationships were actually interfered with and disrupted.

90.  Defendants' conduct caused Plaintiff to suffer injury, damage, loss and harm in that, among other things, Plaintiff has been injured and has lost the economic benefit and advantage from

141

25

**EXHIBIT 2 PAGE 266**

L0VE00638

1   these economic relationships in an amount according to proof in
2   excess of $25,000.

3
4                   SIXTH CAUSE OF ACTION
                 FOR NEGLIGENT INTERFERENCE WITH
5                PROSPECT ECONOMIC ADVANTAGE
                        AGAINST LOVE
6

7        91.   Plaintiff realleges and incorporates herein by reference
8   each and every allegation contained in paragraphs 1 through 50 and
9   paragraph 61 as hereinabove set forth.

10       92.   As more fully alleged in the Factual Background, an
11  economic relationship existed between Plaintiff and ALLEN
12  containing a probable future economic benefit or advantage to
13  Plaintiff.   This economic relationship included the arrangement
14  that ALLEN would serve as temporary judge in the Underlying
15  Proceeding.   The economic benefit or advantage to Plaintiff
16  included resolution of the Underlying Proceeding in an expeditious
17  and cost-effective manner.

18       93.   LOVE knew of the existence of this economic relationship.

19       94.   LOVE engaged in wrongful conduct as herein alleged.
20
21       95.   LOVE was negligent in his conduct, in that LOVE failed to
    exercise due care.
22
23       96.   This economic relationship was actually interfered with
24  and disrupted.

25       97.   LOVE's conduct caused Plaintiff to suffer injury, damage,
26  loss and harm in that, among other things, Plaintiff has been
27  injured and has lost the economic benefit or advantage from this

28                                                                    142

**EXHIBIT 2 PAGE 267**

LOVE00639

economic relationship in an amount according to proof in excess of
$25,000.

### SEVENTH CAUSE OF ACTION
### FOR CIVIL RIGHTS VIOLATIONS
### AGAINST ALL DEFENDANTS

98.   Plaintiff realleges and incorporates herein by reference
each and every allegation contained in paragraphs 1 through 50
hereinabove set forth.

99.   As more fully alleged in the FACTUAL BACKGROUND,
Defendants interfered or attempted to interfere by coercion with
the exercise or enjoyment by Plaintiff of Plaintiff's rights to a
fair trial secured by the Constitution and laws of the United
States and of the State of California.  This right to a fair trial
includes a trial free from actions and conduct which disqualify the
trial judge and a trial where doubts are not raised concerning the
trial judge's impartiality.

100.   As more fully alleged in the Factual Background, the
interference or attempted interference in Plaintiff's right to a
fair trial caused Plaintiff to suffer injury, damage, loss and harm
in an amount according to proof in excess of $25,000.

101.   The actions and conduct of Defendants as hereinabove
alleged were willful and oppressive, fraudulent and malicious
entitling Plaintiff to an award of punitive and exemplary damages
in an amount according to proof.

### EIGHTH CAUSE OF ACTION
### FOR DECEIT

27

**EXHIBIT 2 PAGE 268**

143

LOVE00640

1

2          ## FRAUDULENT CONCEALMENT
           ## AGAINST ALL DEFENDANTS

3
           102.  Plaintiff realleges and incorporate herein by reference
4
   each  and  every  allegation  contained  in  paragraphs  1  through  50
5
   hereinabove set forth.
6
           103. As  more  fully  alleged  in  the  Factual  Background,
7
   Defendants did not disclose the fact of the gift to ALLEN of the
8
   LOVES' Unit 850A half-interest in Warner Springs Ranch, which gift
9
   Defendants should have disclosed because, at the time of the gift,
10
   LOVE was attorney for Petitioner in the Underlying Proceeding and
11
   ALLEN was  the  temporary  judge  in  that  proceeding,  and  the  gift
12
   caused  the  immediate  disqualification  of  ALLEN  from  acting  as
13
   temporary judge in the Underlying Proceeding.
14
           104. Defendants knew that they concealed or failed to disclose
15
   the fact of the gift to ALLEN of the LOVE's Unit 850A half-interest
16
   in Warner Springs Ranch.
17
           105. Defendants intended that their concealment of or failure
18
   to disclose said facts would cause Plaintiff to proceed in the
19
   Underlying Proceeding without challenging ALLEN's acting as the
20
   temporary judge; to  continue  to  pay  ALLEN's  invoices  for  his
21
   services, and to continue to pay the invoices of Bruno, Mack and
22
   Barclay and other experts retained by ALLEN and by Plaintiff.
23
           106. Plaintiff relied on the fact that Defendants had not
24
   disclosed that the gift had been made to ALLEN of the LOVES' Unit
25
26
   850A half-interest in Warner Springs Ranch.    **EXHIBIT 2 PAGE 269**
27
           107. Plaintiff was  justified  in  relying  on  the  fact  that    | 144
28
                                 28

Defendants had not disclosed that the gift had been made to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch.

108. As a result of Defendants' deceit and fraudulent concealment, Plaintiff has and will continue to sustain injury, damage, loss and harm in an amount according to proof in excess of $25,000.

109. The actions and conduct of Defendants as hereinabove alleged were willful and oppressive, fraudulent and malicious, entitling Plaintiff to an award of punitive and exemplary damages in an amount according to proof.

### NINTH CAUSE OF ACTION
### FOR BREACH OF CONTRACT AGAINST ALLEN

110. Plaintiff realleges and incorporate herein by reference each and every allegation contained in paragraphs 1 through 50 hereinabove set forth.

111. In submitting each of his invoices to Plaintiff, ALLEN expressly and impliedly represented that he had satisfied all conditions required on his part to be entitled to payment, and was entitled to be paid the amounts billed.

112. As more fully alleged in the Factual Background, ALLEN breached his agreement with Plaintiff in that, among other things, ALLEN continued to invoice and to accept payment from Plaintiff for services allegedly rendered by ALLEN after he had accepted the gift of the LOVES' Unit 850A half-interest in Warner Springs Ranch and knew he was disqualified and thus barred as an attorney from making further charges to Plaintiff.

29

145

**EXHIBIT 2 PAGE 270**

LOVE00642

113.  There is implied in every contract a covenant of good faith and fair dealing to refrain from doing anything which would interfere with the rights of the other party to receive the benefits of the contract.

114.  Plaintiff has performed all terms of his agreement to pay ALLEN required on Plaintiff's part to be performed.

115.  As a result of ALLEN's breach of the implied covenant of good faith and fair dealing and the breach of his agreements with Plaintiff as aforesaid, Plaintiff has and will continue to sustain injury, damage, loss and harm in an amount according to proof in excess of $25,000.

TENTH CAUSE OF ACTION
FOR UNFAIR COMPETITION
AGAINST LOVE

116.  Plaintiff realleges and incorporate herein by reference each and every allegation contained in paragraphs 1 through 50 hereinabove set forth.

117.  As more fully alleged in the Factual Background, LOVE engaged in unfair and fraudulent business acts and practices in violation of Business and Profession Code §§17200, et seq.  The gift to ALLEN of the LOVES' Unit 850A half-interest in Warner Springs Ranch was an unfair and fraudulent business act and practice designed to provide, and which provided LOVE an unfair advantage over Plaintiff and Plaintiff's counsel in the Underlying Proceeding.

118.  As a result of the fraudulent acts and business

30

EXHIBIT 2 PAGE 271

LOVE00643

146

1    practices of LOVE as aforesaid, Plaintiff is entitled to

2    restitution of the amounts Plaintiff paid to ALLEN, to Plaintiff's

3

4    counsel, for the benefit of and indirectly to LOVE, to Bruno, Mack

5    and Barclay and to Plaintiff's experts in the Underlying

6    Proceeding, all in an amount according to proof in excess of

7    $25,000.

8                          ELEVENTH CAUSE OF ACTION
                    FOR WILLFUL MISCONDUCT AND INTENTIONAL
9                           INFLICTION OF INJURY
                          AGAINST ALL DEFENDANTS
10

11         119.  Plaintiff realleges and incorporate herein by reference

12   each and every allegation contained in paragraphs 1 through 50

13   hereinabove set forth.

14         120.  As members of the State Bar of California, Defendants

15   each owed a duty to Plaintiff to refrain from conduct Defendants

16   knew or should have known would cause or was certain or

17   substantially certain to cause injury to Plaintiff, including the

18   gift to ALLEN of the LOVES' Unit 850A half-interest in Warner

19   Springs Ranch and the concealment and failure to disclose this gift

20   and the fact of the disqualification of ALLEN to act as temporary

21   judge in the Underlying Proceeding.

22         121.  These duties are reflected in part in Rule 5-300(A) of

23   the Rules of Professional Conduct which provides that:

24

25              "A member [of the State Bar] shall not
                directly or indirectly give...anything of
26              value to a judge [or] official...of a tribunal
                unless the personal or family relationship
27              between the member and the judge, official or
                employee is such that gifts are customarily

28                                                                        147

                              31          **EXHIBIT 2 PAGE 272**

LOVE00644

1

given and exchanged..."

2

and in Rule 1-710 of the Rules of Professional Conduct which

3

provides that:

4

5          "A member [of the State Bar] who is serving as
           a temporary judge ...and is subject under the
6          Code of Judicial Ethics to Canon 6D, shall
           comply with the terms of that canon."
7

In turn, Canon 6D(2)(f) provides that :

8

9          "A temporary judge...shall...disclose in
           writing or on the record information as
10         required by law, or information the temporary
           judge...believes the parties or their lawyers
11         might consider relevant to the question of
           disqualification, even where it is believed
12         that there is no actual basis for
           disqualification..."

13      122.   These duties are further reflected in Penal Code

14  sections 92, 93, 94 and/or 95 which prohibit bribery and

15  corruption.

16      123.   The aforementioned Rules of Professional Conduct embody

17  the public policy of this State applicable to persons who are

18  licensed to practice law, and the aforementioned Penal Code

19  sections embody the public policy of this state applicable to all

20  persions.   These Rules and Penal Code sections are intended to

21  benefit and protect persons in the circumstances of Plaintiff as

22  hereinabove alleged.

23

24      124.   As more fully set forth in the Factual Background,

25  Defendants willfully breached their respective duties of care and

26  as members of the State Bar of California by making, and then

27  failing to disclose and concealing, the gift to ALLEN of the LOVES'

28

**EXHIBIT 2 PAGE 273**

148

32

Unit 850A half-interest in Warner Springs Ranch and the fact of the disqualification of ALLEN to act as temporary judge in the Underlying Proceeding. On information and belief, the gift of the LOVES' Unit 850 one-half interest in Warner Springs Ranch constituted bribery and corruption under the aforementioned Penal Code Sections.

125. At all times herein relevant, Defendants knew or should have known their actions and conduct were certain or substantially certain to cause injury to Plaintiff.

126. At all times herein relevant, Defendants consciously and intentionally failed to take steps to avoid breaching their aforesaid duties as members of the State Bar of California.

127. As more fully set forth in the Factual Background, Defendants acted intentionally either (a) with knowledge that serious injury to Plaintiff would be the probable result of their actions and conduct, or (b) with wanton and reckless disregard of the consequences of their actions and conduct.

128. As a proximate cause of Defendants' breach of their respective duties, Plaintiff has and will continue to sustain injury, damage, loss and harm in an amount according to proof in excess of $25,000.

129. The actions and conduct of Defendants as hereinabove alleged were willful and oppressive, fraudulent and malicious, entitling Plaintiff to an award of punitive and exemplary damages in an amount according to proof.

**EXHIBIT 2 PAGE 274**

149

LOVE00646

1205 DEL MO STREET AT . ' AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1879

**TWELFTH CAUSE OF ACTION**
**FOR NEGLIGENCE AGAINST**
**ALL DEFENDANTS**

130. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 50 and paragraphs 121 and 124 hereinabove set forth.

131. As members of the State Bar of California, Defendants each owed a duty to care to Plaintiff, to refrain from extrajudicial actions and conduct that would cause or was reasonably foreseeable to cause injury or damage to Plaintiff.

132. As more fully set forth in the Factual Background, Defendants breached their respective duties of care and as members of the State Bar of California and otherwise by making, and then failing to disclose and concealing, the gift to ALLEN of the LOVES' Unit 850A half interest in Warner Springs Ranch and the fact of the disqualification of ALLEN to act as temporary judge in the Underlying Proceeding.

133. It was reasonably foreseeable that Defendants' actions and conduct as hereinabove alleged would cause injury or damage to Plaintiff.

134. Defendants were negligent in their actions and conduct as hereinabove alleged, in that Defendants failed to exercise due care.

135. As a direct and proximate result of Defendants negligence as aforesaid, Plaintiff sustained and will continue to sustain injury, damage, loss and harm in an amount according to

34                    **EXHIBIT 2 PAGE 275**

150

LOVE00647

proof in excess of $25,000.

**THIRTEENTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**FOR UNJUST ENRICHMENT**

136. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 135.

137. As more fully hereinabove alleged, Defendants and others have profited, gained and been unjustly enriched to Plaintiff's detriment by Defendants fraud and deceit, interference with Plaintiff's contractual relations, and economic advantage, and undue influences and other negligent and wrongful acts, by reason of which Plaintiff is entitled to recoupment of, and Defendants hold as constructive trustees for the benefit of Plaintiff, all monies paid by Plaintiff and all of Plaintiff's separate property and share of community property wrongfully acquired or detained by Defendants, including the full value and loss of use of all monies paid and provided by Plaintiff because of Defendants' actions, and the full value and loss of use of all of Plaintiff's separate property and share of community property improperly detained and taken from Plaintiff.

**PRAYER**

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. For general and special injury and damages in an amount according to proof in excess of $25,000.00;

2. For restitution in an amount according to proof in excess

35

**EXHIBIT 2 PAGE 276**

151

LOVE00648

of $25,000;

    3.  For imposition of a constructive trust for the full value and loss of all monies paid by Plaintiff and of Plaintiff's separate property and share of community property wrongfully acquired or detained by Defendants;

    4.  For punitive damages in an amount appropriate to punish or set an example of Defendants;

    5.  For interest at the maximum legal rate permitted by law;

    6.  For attorney fees in an amount according to proof;

    7.  For costs of suit in an amount according to proof; and

    8.  For such other and further relief as the Court deems just and proper.

Dated: March 28, 2005        FRANK E. ROGOZIENSKI, INC.


By: _____
    Frank E. Rogozienski
    Attorney for Plaintiff

**EXHIBIT 2 PAGE 277**

152

36

LOVE00649

**EXHIBIT 2**

153

**EXHIBIT 2 PAGE 278**

L0VE00650

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
☐ CENTRAL COURT, 220 W. BROADWAY, SAN DIEGO, CA 92101-3409
☒ FAMILY COURT BUILDING, 1501-55 SIXTH, SAN DIEGO, CA 92101-1948
☐ NORTH COUNTY BRANCH, 325 S. MELROSE, VISTA, CA 92083-3913
☐ EAST COUNTY COURT, 250 E. MAIN, EL CAJON, CA 92020-3913
☐ SOUTH BAY COURT, 500 THIRD, CHULA VISTA, CA 91910-5694
☐ JUVENILE DIVISION, 2851 MEADOW LARK, SAN DIEGO, CA 92123-2792

☐ PLAINTIFF(S) ☒ PETITIONER(S)

SHIRLEY L. ROGOZIENSKI

☐ DEFENDANT(S) ☒ RESPONDENT(S) ☐ in the matter of

FRANK E. ROGOZIENSKI
                                                    a minor(s)

ORDER, STIPULATION AND OATH FOR TEMPORARY JUDGE
(California Constitution, Article VI, Section 21)

COURT USE ONLY

F I L E D
KENNETH E. MARTONE
Clerk of the Superior Court

AUG 0 4 1998

By: . . . URIE, Deputy

CASE NUMBER

D 440154

Pursuant to California Rules of Court, Rule 244, it is stipulated and agreed between the parties that:

Name: _____ James D. Allen, Esq. _____

Address: _____ 550 West C Street, Suite 2050 _____

_____ San Diego, CA 92101 _____

a member of the State Bar, ☐ and a referee of the Juvenile Court, shall act as temporary judge in the above case ☐ for all purposes ☐ until the final disposition thereof.

DATED: 7/29/98

x _____        x _____
         Plaintiff/Petitioner              Defendant/Respondent

FOR JUVENILE COURT USE ONLY

Attorney for Plaintiff/Petitioner _____        District Attorney/County Counsel _____

Attorney for mother _____        Attorney for father _____        Attorney for minor(s) _____

The above-named member of the State Bar having consented to act, the selection is approved and it is ordered that said person is designated to act as a temporary judge in the above case.

_____
Presiding/Supervising Judge of the Superior Court

OATH

I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; that I will well and faithfully discharge the duties of Judge of the Superior Court, the office upon which I am about to enter.

_____        **EXHIBIT 2 PAGE 279**
(Signature)

SUBSCRIBED AND SWORN/AFFIRMED TO BEFORE ME

THIS _____ AUG 0 4 1998 _____, 19 ____ 154

KENNETH E. MARTONE, CLERK OF THE SUPERIOR COURT

000161

LOVE00651

**EXHIBIT 3**

155

**EXHIBIT 2 PAGE 280**

LOVE00652

1

2                                          F    JOANNE ROYDK

3                                          MAY 1 0 1999

4                                          By: D. JELLISON, Deputy

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SAN DIEGO

10

11    In Re Marriage of              )   Case No. D 440154
                                     )
12    Petitioner: SHIRLEY L. ROGOZIENSKI )
                                     )   STATEMENT OF DECISION
13    and                            )
                                     )
14    Respondent: FRANK E. ROGOZIENSKI )
                                     )
15    _____)

16

17         Ordinarily in a case where the validity of a premarital

18    agreement is at issue, the order for determination would be to rule

19    first on the document's validity, and then, if valid, to rule on its

20    interpretation.  However, for reasons which follow, in this case it

21    is more appropriate to address the second issue first, namely, in

22    what way does the agreement alter the otherwise consequences which

23    would flow from application of California law.

24         There are at least three general purposes for the execution of

25    a premarital agreement:

26         1)   To itemize the property being brought into the marriage

27    by each and to confirm the operation of existing Family Code §770

28    and case law which make the earnings, profits, appreciation, etc.¹⁵⁶

                                          **EXHIBIT 2 PAGE 281**

L0VE00653

1    attributable to such property also separate property;

2          2)    To change the operation of existing Family Code §760 by

3    making the earnings of each party during marriage his or her

4    separate property rather than community property; and

5          3)    To change the result of existing Family Code §760 by

6    making property acquired by each party during marriage, regardless

7    of the source of funds for acquisition, the separate property of the

8    acquiring party rather than community property.

9          The initial issue for determination is whether the Antenuptial

10    Agreement signed by the parties on January 29, 1982, did in fact

11    accomplish the purposes set out in paragraphs 2) and 3) above.    I

12    find that it did not.    Rather, it only accomplished the purpose set

13    out in paragraph 1) above.

14          Taken more specifically, the issues are whether the agreement

15    clearly and unambiguously made all property acquired after marriage

16    the separate property of the acquiring party, and whether it made

17    the earnings of either party after marriage his or her separate

18    property.    In each instance the answer is no.

19          These conclusions are supported by reference to both the

20    Recitals and the Covenants portions of the agreement.

21          The language found in the Recitals section of the agreement

22    refers only to _existing_ property (the operative language refers to

23    the property specifically set out in Schedule "A"; its operative

24    language refers continually to "such property").    It makes no

25    reference to property acquired after marriage.

26          Likewise, the Recitals contain no reference to an intent or

27    purpose to make the earnings or compensation for personal services,

28    labor or efforts of either party his or her separate property.    157

**EXHIBIT 2 PAGE 282**

LOVE00654

1    Frank argues that his income earned as an attorney durin

2    marriage is his separate property because it was actually earned k

3    his professional law corporation, an asset owned by Frank befor

4    marriage. Frank also argues that Shirley could obtain no interes

5    in his law practice because it was listed in Schedule "A" as hi

6    separate property.

7        However, turning to the agreement itself, paragraph 1 (whic

8    confirms to Frank his separate property) refers specifically t

9    Exhibit "A" property . . . . and "all earnings, appreciation and/o:

10   other increases of every kind, nature or description attributabl

11   thereto"[emphasis added]. It does not mention or refer to

12   compensation, income or earnings for Frank's personal services. The

13   fact that the value of Frank's professional practice as of the date

14   of the agreement was his separate property does not transform the

15   earnings created by Frank's personal services into his separate

16   property. The agreement does not contain a paragraph specifically

17   making earnings from personal salaries, etc., during marriage the

18   separate property of the earning party. It certainly could have,

19   but it didn't. Frank obviously knew how to draft such a provision;

20   he had done so earlier when he prepared the Huntoon agreement.

21       The same can be said for a paragraph specifically stating that

22   all property acquired during marriage would be the separate property

23   of the acquiring party.

24       Frank contends that property acquired by either would in fact

25   be the acquiring party's separate property by virtue of the language

26   in Paragraph 1 that Exhibit "A" property would remain his separate

27   property "regardless of any additions to and payments for or on

28   account of such property from any source whatsoever . . ." But 58

X6744                          -3-              **EXHIBIT 2 PAGE 283**

LOVE00655

1    Frank didn't include the same language in Paragraph 2 (Shirley's
2    separate property paragraph). Frank testified that this language
3    was intended to cover debt, and "Shirley didn't have any debt."
4    Therefore, the purpose of this language was simply to confirm the
5    further language in Paragraph 4, i.e., that payment on Frank's
6    separate property encumbrances, taxes, insurance and other expenses
7    relating to his Exhibit "A" property would create no community
8    property interest regardless of the source of payment. It does not
9    act to insulate after-acquired property from a claim of community
10    interest.

11        The Prenuptial Agreement does not transform Frank's earnings
12    and compensation for personal services during marriage to separate
13    property. Further, it does not transform property acquired during
14    the marriage to the separate property of the acquiring party.
15    Finally, any increase in value to his separate property due to his
16    labor and efforts (as opposed to earnings of his separate property
17    (i.e., "passive" income) or appreciation in value of his separate
18    property) creates a claim of interest by the community.

19        Having interpreted the agreement, is it enforceable? The
20    answer is yes. There are no supportable grounds to set it aside.

21        Shirley believed the agreement did nothing more than restate
22    existing law. She testified that Frank told her that the agreement
23    "was the same as California law." [Frank denies telling her that
24    the agreement simply restated California law. Shirley's testimony
25    on the point is more credible. This is consistent with Frank's
26    testimony concerning Shirley's lack of objection to the agreement.
27    He testified that while Shirley never objected, there was some "foot
28    dragging" by Shirley which involved her not wanting their agreements159

**EXHIBIT 2 PAGE 284**

1  to have to be reduced to writing. Shirley said "trust me;" Frank
2  said "I want it in writing." Frank testified that Shirley never
3  said anything against the terms of the agreement, only that she
4  didn't think they needed any writing.] She read the agreement and
5  it appeared to be consistent with her understanding of what the law
6  was, i.e. separate property at time of marriage remains and
7  continues to be separate property.

8      Had Shirley believed she was "waiving important marital
9  rights," she now doesn't know whether she would have signed the
10  agreement. But she did not believe the agreement did that. She
11  believed that it only restated existing California law. Her
12  reluctance was in signing any written agreement. She didn't think
13  it should be necessary.

14      But was she "overborne" by duress or undue influence? No.
15  The consent to a premarital agreement must be free, mutual and
16  communicated by each to the other. Apparent consent is not free if
17  obtained through undue influence. Undue influence consists (1) in
18  the use by one in whom a confidence is reposed by another or who
19  holds a real or apparent authority over him, of such confidence or
20  authority for the purpose of obtaining an unfair advantage over him;
21  (2) in taking an unfair advantage of another's weakness of mind; or
22  (3) in a grossly oppressive and unfair advantage of another's
23  necessities or distress. Cal.Civ.Code. §1575. In determining
24  whether or not undue influence was exercised by one party on the
25  other to procure consent to a premarital contract, it must be
26  determined whether or not equality of bargaining power existed
27  between the parties at the time the contract was executed. In re
28  Marriage of Dawley (1976) 17 C3rd 342, at 355. One of the

160

**EXHIBIT 2 PAGE 285**

LOVE00657

1    circumstances under which courts are more likely to find undue

2    influence is when the parties are in a confidential relationship.

3    Generally, "[p]arties who are not married are not presumed to share

4    a confidential relationship." Handley vs. Handley, 113 Cal.App.2d

5    280, 285, 248 P.2d 59(1952); Dawley at 355, supra. Thus, unmarried

6    parties to a Premarital Agreement do not owe each other a fiduciary

7    duty when contracting. Fernandez vs. Fernandez, 194 Cal.App.2d 782,

8    790, 15 Cal.Rptr. 3974 (1961).

9        However, undue influence may be found even where the parties

10    are not in a confidential relationship if one party takes "a grossly

11    oppressive and unfair advantage of the other's necessity or

12    distress."   Cal.Civ.Code §1575 and Dawley at 355, supra.   Thus,

13    courts have found undue influence used to procure consent to a

14    Premarital Agreement where there are substantial disparities in the

15    age, knowledge, sophistication or business expertise of the parties.

16    Estate of Nelson, 224 Cal.App.2d 138, 36 Cal.Rptr. 352 (1964).

17        The court may also find undue influence in connection with a

18    Premarital Agreement where one party is particularly vulnerable to

19    undue influence at the time of the agreement due to illness,

20    poverty, pregnancy or the like. Dawley, supra.

21        It is undeniable that there were pressures on Shirley to sign

22    the Antenuptial Agreement. However, those pressures did not rise to

23    the level which would justify the invalidation of this agreement.

24    Central to the court's reasoning, and a reason for making

25    determinations in reverse order, is that the agreement did nothing

26    more than Shirley believed that it would; namely, to restate

27    existing California law concerning the separate character of

28    property brought into a marriage by each party. Put another way,[161]

**EXHIBIT 2 PAGE 286**

LOVE00658

1  there was nothing "unconscionable" about this agreement which would,

2  under different circumstances, support its invalidation.

3      Understanding now the legal effect of the agreement, Shirley

4  did in fact enter into it "with her eyes open." She did not believe

5  any writing at all was necessary. However, she acknowledged that

6  she wanted the marriage to go forward. She did not ask for more

7  time to review or ponder the agreement or to take it to an attorney.

8  An important part of this willingness to go forward was her belief

9  as to its legal effect, a belief which, in retrospect, was correct.

10     Shirley is an intelligent woman who in 1982 had some

11  experience in the law in general and in agreements between unmarried

12  parties in particular. Though reluctant, she was not coerced or

13  unduly influenced into signing the agreement nor was her free will

14  to consent to its terms overborne.

15                        Conclusion

16     The Prenuptial Agreement dated January 29, 1982 is valid and

17  enforceable. It does not, however, do more than to itemize the

18  separate property brought into the marriage by each party and to

19  confirm that the earnings, profits, appreciation, etc., attributable

20  to such property shall also be that party's separate property.

21

22  Dated: April 8, 1999

23                                      JAMES D. ALLEN
                                        Judge Pro Tempore

24

25

26

27

28

**EXHIBIT 2 PAGE 287**                                            162

EXHIBIT  4

LOVE00660

1

2

3      NOV 1 9 2002

4      By: M. MARTINEZ, Deputy

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SAN DIEGO

10

11   In Re Marriage of                )    Case No. D 440154
                                       )
12   Petitioner:  SHIRLEY L. ROGOZIENSKI )   SECOND AMENDED
                                       )    STATEMENT OF DECISION
13   and                               )
                                       )
14   Respondent:  FRANK E. ROGOZIENSKI )
                                       )
15   ──────────────────────────────── )

16        The reserved issues in the above-entitled action came on

17   regularly for trial on October 24, 2001 in the offices of James D.

18   Allen, Judge Pro Tempore, located at 401 West "A" Street, Suite

19   2050, San Diego, California 92101.  The matter was tried from time

20   to time and consumed 14 trial days.  The transcript of this trial

21   on these reserved issues alone consumes 2,506 pages, and

22   approximately 270 Exhibits were received in evidence. Petitioner,

23   SHIRLEY ROGOZIENSKI (hereinafter "Shirley"), appeared in person

24   and was represented by S. Michael Love, Esq., of McDougal, Love,

25   Eckis, Smith & Bohmer, and Lynne R. Lasry, Esq., of Sandler,

26   Lasry, Laube, Byer & Valdez.  Respondent, FRANK E. ROGOZIENSKI

27   (hereinafter "Frank"), appeared in person and was represented by

28   Gerald L. McMahon, Esq., of Seltzer Caplan McMahon Vitek, as well

H:\Rogozienski\Court Orders\Second Amended SOD

**EXHIBIT 2 PAGE 289**

164

LOVE00661

1  as himself in his capacity as associated counsel.  Both oral and

2  documentary evidence was received on all issues, the matter was

3  argued and submitted for decision, and the Court now makes the

4  following Statement of Decision.

5        THE COURT FINDS THAT:

6        1.    The parties were married on January 30, 1982, and

7  separated on October 27, 1997.  The jurisdictional requirements

8  have been satisfied and the parties are entitled to have their

9  marriage dissolved.

10        2.    The 12,000 shares of Qualcomm stock issued in 1985 and

11  the 4,000 shares of Qualcomm stock issued in 1986 (often referred

12  to for ease of reference as "Founders Stock") were community

13  property.  The fact that most of the stock was not titled as

14  community property is not dispositive, and the presumption that

15  property acquired during the marriage is community property

16  overcomes any presumption that stock not titled as community

17  property was Frank's separate property.  The decision as to how to

18  title the various share certificates was made by Frank alone.

19  Throughout their marriage, Shirley was not an active participant

20  in the decision making process regarding acquisition of assets,

21  what funds were to be used in acquiring assets, which assets were

22  to be acquired and how title was to be taken to the assets so

23  acquired.  Frank acted alone in determining how the initial 16,000

24  shares of Qualcomm stock was to be titled, and while Shirley at

25  some point became aware of the various designations (as between

26  Frank's separate property trust, their son's trust, and as

27  community property), she was not a part of the decision-making

28  process.  Shirley's silence in the face of Frank's decisions did

LOVE00662

1  not amount to participation, even tacit participation. While it

2  is clear that Shirley acquired knowledge after the fact since she

3  in many instances typed or prepared documents at Frank's

4  direction, the choices and decisions were made by Frank acting

5  alone.

6      3.   The $12,000 used to acquired the initial 12,000 shares

7  of Qualcomm stock was Frank's separate property, and accordingly,

8  he has a claim for reimbursement under Family Code Section 2640 in

9  the amount of $12,000.

10     4.   The right and opportunity to purchase Qualcomm Founders

11  Stock was earned by Frank during marriage, i.e., it was a benefit

12  extended to Frank by virtue of his past, current, and ongoing

13  services rendered to Qualcomm as an attorney and corporate

14  officer.  In 1985 and 1986, when these initial shares were issued,

15  stock was not being offered to members of the general public, not

16  even by private placement.  The stock was being offered only to

17  "officers, employees and consultants" of the fledgling

18  corporation, because these "officers, employees and consultants

19  are necessary to the company's growth and success." [The language

20  quoted is from the Minutes of Qualcomm's Board of Directors

21  meeting of November 27, 1985.]  In other words, the opportunity to

22  acquire stock was a benefit arising directly out of Frank's

23  employment by and service to Qualcomm.  The stock was offered in

24  part as an incentive for the issuees to remain at Qualcomm and to

25  continue the provision of their efforts and services to the

26  corporation.

27     5.   Frank's argument that the initial stock repurchase and

28  right of first refusal agreements did not apply to him because he

H:\Rogozienski\Court Orders\Second Amended SOD                -3-                **EXHIBIT 2 PAGE 291**

1  was not an employee is not persuasive. Frank himself drafted the
2  Stock Purchase Agreement, the Agreement Option to Repurchase and
3  Right of First Refusal. The same form documents were executed by
4  all of the initial issuees, including Frank. Moreover, when Frank
5  subsequently decided to transfer an additional portion of the
6  initial Founders Stock to the parties' son's trust, Frank drafted
7  the documentation necessary to do so. That documentation included
8  the right of repurchase and right of first refusal language
9  contained in the initial agreement, and this additional
10  documentation was signed by Frank.

11      6.   The argument that Frank was paid for his services as an
12  attorney at his normal hourly rate, and therefore the issuance of
13  stock was not compensation for services, is not persuasive. The
14  right and opportunity to buy the Founders Stock was an initial and
15  additional benefit arising out of Frank's service to the
16  corporation.

17      7.   The right and opportunity to purchase Founders Stock was
18  an incident of Frank's service to Qualcomm, not because he had a
19  prior personal and business relationship with some of the other
20  founding members of the corporation.

21      8.   The argument that the Stock Purchase Agreement referred
22  to "employees" and is conditioned upon 390 hours of service during
23  each calendar quarter is not persuasive. Frank drafted the
24  agreement himself and enjoyed the benefits of the agreement.
25  While the initial corporate resolutions made on June 27, 1985
26  (which resulted in the subsequent issuance of the initial 12,000
27  shares) referred only to "officers and employees," the minutes
28  from the November 27, 1985 meeting (which resulted in the

1  subsequent issuance of the additional 4,000 shares) referred to

2  "officers/employees/consultants." Frank acted as the

3  corporation's secretary at these meetings and drafted the

4  resolutions and the minutes. It is disingenuous of Frank to claim

5  that the agreements did not apply to him and that therefore the

6  issuance of stock was not in exchange for employment by the

7  corporation. All of the founding issuees signed the same

8  agreement. Frank was similarly situated with all of these other

9  issuees who were involved with Qualcomm at that time and who were

10  able to purchase stock as part of their employment benefit.

11     9.    Frank executed an election under Internal Revenue Code

12  Section 83(b). In executing the election form, Frank stated that

13  the stock was issued as "compensation for services." He also was

14  required to provide a copy of the election form to the "person"

15  for whom the services were performed. While Frank argues that

16  this was an election routinely made by persons under similar

17  circumstances to take advantage of certain income tax regulations,

18  it is nevertheless another indicium that the stock acquired was an

19  employment benefit arising out of Frank's services to Qualcomm.

20     10.   The $4,000 used to acquire the remaining 4,000 shares of

21  Qualcomm stock which made up the initial 16,000 shares acquired by

22  Frank pursuant to corporate resolutions in June and November of

23  1985 came from a community bank account. There is no credible

24  evidence to support the proposition that Shirley intentionally

25  withdrew community property funds rather than funds from one of

26  Frank's separate property accounts to pay for the stock. There is

27  no credible evidence that Shirley either intentionally or

28  negligently countermanded Frank's instructions regarding from

**EXHIBIT 2 PAGE 293**    168

LOVE00665

1  which bank account the $4,000 should be drawn. [There is no

2  evidence of wrongdoing on Shirley's part or that she had a hidden

3  agenda to deprive Frank of a separate property investment.]

4  Frank's belief that the $4,000 had come from one of his separate

5  accounts does not alter the fact that the funds unquestionably

6  came from a community account.

7      11.  The stock received by the parties or their designees

8  which was issued by Leap Wireless was a direct result of the

9  "spin-off" of Leap Wireless from Qualcomm.  The characterization

10  and division of Leap Wireless stock should be in the same

11  proportions as the Court's ruling on the characterization and

12  division of the Qualcomm stock.

13      12.  In late December of 1988, $320,000 was loaned by Frank

14  to Qualcomm in exchange for promissory notes and warrants to

15  purchase stock.  $270,000 of the total loaned came from the Frank

16  E. Rogozienski, Inc. Profit-Sharing Plan Trust and $50,000 from a

17  bank account.  The funds advanced from the profit-sharing plan

18  were from Frank's segregated account, which, as more fully set

19  forth hereinafter, consisted mostly of Frank's separate property

20  but which also contained a small community interest.  The

21  characterization of the additional $50,000 is in dispute, Frank

22  claiming that the amount loaned can be traced to a separate

23  property bank account, and Shirley claiming that because the funds

24  were commingled in a community account the ultimate

25  characterization must be as community property.

26      13.  Frank deposited $50,000 (the Cheng Note proceeds, a

27  separate property asset) into an account in his own name.  He

28  subsequently deposited substantial joint funds into this same

M:\Rogozienski\Court Orders\Second Amended SOD       -6-       **EXHIBIT 2 PAGE 294**   169

1   account.  On June 28, 1988, he transferred the entire account,

2   some $246,468.96, into a joint account in his and Shirley's names.

3   On the same day, funds from two other joint accounts were

4   transferred into this same joint account.  Some twenty days later

5   on July 18, 1988, Frank realized that the $50,000 resulting from

6   the Cheng Note had been included in the deposit to the resulting

7   account which was in joint names.  Recognizing this "error," he

8   directed that the $50,000 plus interest be withdrawn from the

9   joint account and placed in an account in his own name.  This was

10  done, although the amount transferred included $19,955.71 of

11  interest as well as the $50,000 principal.  This amount of

12  interest actually included interest earned by the community funds

13  in the joint account, as well as the interest earned by the

14  $50,000.  In December of 1988, $50,000 from this separate account

15  was used to fund the balance of the loan to Qualcomm.

16      14.  The presumption that the funds transferred into the

17  joint account were therefore community property is overcome by the

18  tracing of the $50,000 to Frank's separate property.  While not

19  dispositive, the Court is mindful of California Probate Code

20  Section 5305.  Frank remedied the "error" immediately after

21  discovering it and only a short period of time after the $50,000

22  was included in the funds transferred into the joint account.  The

23  $50,000 loaned to Qualcomm as part of the $320,000 transaction was

24  Frank's separate property.  The shares of stock subsequently

25  issued when the promissory notes were canceled and converted to

26  stock were likewise Frank's separate property.

27      15.  At about the same time the $320,000 promissory note was

28  being negotiated with Qualcomm, Frank and Shirley were attempting

**EXHIBIT 2 PAGE 295**    170

K:\Rogozienski\Court Orders\Second Amended SOD

LOVE00667

1   to purchase a residence in Rancho Santa Fe.  In December of 1988,
2   they did jointly purchase a home for approximately $900,000.
3   Title was taken in joint names.  A down payment from joint funds
4   was made in the amount of $569,000.  In other words, at about the
5   same time Frank was making a unilateral decision to loan Qualcomm
6   $320,000, most, but not all of which was traceable to his separate
7   property, sufficient community funds existed such that the loan
8   could have been made with community property.  However, the
9   current state of the law appears to be that Frank was under no
10  affirmative obligation to offer the loan opportunity to the
11  community before electing to use his separate funds for the
12  transaction.  Moreover, Frank believed that the loan to Qualcomm
13  was riskier than the investment in real property in Rancho Santa
14  Fe. [When the loan was originally made there were no conversion
15  rights attached to the promissory notes; these arose many months
16  later after further action by the Qualcomm Board of Directors.]
17  It is only speculation that a down payment on the Rancho Santa Fe
18  residence could have been made in the amount of $249,000, thereby
19  leaving the community with $320,000 which could have been loaned
20  to Qualcomm.

21      16.  As part of the $320,000 loan transaction, Frank received
22  40,000 warrants to purchase shares of Qualcomm stock at $8.00 per
23  share.  He subsequently exercised these warrants in 1993 in a
24  "cashless exercise."  Since the stock had by that time increased
25  in value, he was able to sell enough of the 40,000 shares (to
26  raise $320,000) to net 31,172 shares.  However, when Frank
27  originally received the warrants he improperly assigned all of
28  them to his separate property trust and none to the profit-sharing

W:\Rogozienski\Court Orders\Second Amended SOD          -8-

**EXHIBIT 2 PAGE 296**          171

LOVE00668

1    plan, whereas the proper allocation should have been 33,750

2    warrants to the profit-sharing plan ($270,000 ÷ 320,000 x 40,000)

3    and 6,250 warrants to his separate property trust ($50,000 ÷

4    320,000 x 40,000). Upon the cashless exercise of the warrants,

5    Frank received 31,172 shares of stock.  26,301 shares should have

6    been put in the name of the profit-sharing plan (270,000 ÷ 320,000

7    x 31,172) and only 4,871 should have been put in the name of

8    Frank's trust (50,000 ÷ 320,000 x 31,172).  Since there is a

9    community element to the investments held in the profit-sharing

10   plan, the improper allocation of the warrants and the stock

11   subsequently received therefor had the effect of depriving the

12   community of an interest.  [There was no improper motive on

13   Frank's part in making the assignment (he believed he was doing

14   tax planning), but the assignment was improper nevertheless.]  The

15   appropriate number of shares held by Frank's trust should be

16   transferred to the profit-sharing plan.

17        17.  The Frank E. Rogozienski, Inc. Pension Plan has both a

18   portion which is Frank's separate property due to contributions

19   made before marriage and a community portion due to contributions

20   made during marriage.  Pursuant to Exhibit "Y" of Mr. Christopher

21   Barclay's report (Court's Exhibit No. 1), the community property

22   portion as of June 30, 2001, was $165,893 and Frank's separate

23   portion was $34,261.

24        18.  The Frank E. Rogozienski, Inc. Profit-Sharing Plan has

25   both a portion which is Frank's separate property due to

26   contributions made before marriage and a community portion due to

27   contributions made during marriage.  However, Frank maintained a

28   segregated account in the profit-sharing plan (most, but not all

W:\Rogozienski\Court Orders\Second Amended SOD          -9-          **EXHIBIT 2 PAGE 297**    172

LOVE00669

1   of which was his separate property) and, as set forth above, made
2   specific investments in that account in Qualcomm stock.  There is
3   an issue regarding the correct method of allocating the very
4   substantial appreciation in the value of the Profit Sharing Plan
5   between Frank's separate property interest and the community
6   property interest.  The appropriate method is the direct tracing
7   method set forth in Exhibit "V" in Mr. Christopher Barclay's
8   report (Court's Exhibit No. 1).  Accordingly, 528,390 of the
9   Qualcomm shares and 16,512 shares of the Leap Wireless shares held
10  by the Plan as of June 30, 2001 were Frank's separate property and
11  11,610 of the Qualcomm shares and 363 of the Leap Wireless shares
12  held by the Plan as of June 30, 2001 were community property.
13  Further, and in addition, after properly re-allocating the shares
14  received by Frank upon exercise of the warrants between his Family
15  Trust and the Profit Sharing Plan as set forth hereinabove, there
16  should have been an additional 411,774 of the Qualcomm shares and
17  12,868 of the Leap Wireless shares which should have been taken in
18  the name of and held in the Profit Sharing Plan which were Frank's
19  separate property, and 9,048 of the Qualcomm shares and 283 of the
20  Leap Wireless shares in the Plan which were community property.
21  Further, and in addition, the Plan had as of that date $158,468.00
22  in community property cash or cash equivalents.
23      19.  As of June 30, 2001, due to significant stock splits and
24  stock dividends, the amount of Qualcomm stock had increased in
25  remarkable proportions.  As of that date, excluding shares which
26  were or should have been held in the Profit Sharing Plan, and
27  further excluding other shares of Qualcomm and Leap Wireless which
28  were divided between the parties upon stipulation, 8,000 shares

H:\Rogozienski\Court Orders\Second Amended SOD          -10-            **EXHIBIT 2 PAGE 298**

173

LOVE00670

1  were held in the parties' names jointly; and 1,081,930 shares were
2  held in the name of Frank's trust.  Pursuant to the findings made
3  above, it appears to the Court that the 8,000 shares were
4  community property and of the shares held in the name of Frank's
5  trust, 904,000 were community property and 177,930 were Frank's
6  separate property.  Similarly, with respect to the Leap Wireless
7  stock, 250 shares were held in the parties' names jointly, and
8  36,310 shares were held in the name of Frank's trust.  Pursuant to
9  the findings made above, it appears to the Court that the 250
10 shares were community property and of the shares held in the name
11 of Frank's trust, 30,750 were community property and 5,560 were
12 Frank's separate property.  These allocations result from the
13 follow-up report of Christopher Barclay dated August 18, 2002, and
14 the letter report of Christopher Barclay dated October 10, 2002
15 (Court's Exhibit No. 7).

16      20.  Pursuant to a Stipulation and Order filed January 22,
17 1998, each party received a pre-distribution of community
18 property.  The amount received by Shirley ($600,000) exceeded the
19 amount received by Frank ($510,000) by $90,000.  Shirley shall be
20 charged with this difference in the division of community property
21 and Frank is entitled to an additional award of community property
22 without offset in the amount of $90,000.

23      21.  Frank's law practice, Frank E. Rogozienski, Inc., was in
24 existence at the date of marriage and was Frank's separate
25 property.  However, by virtue of Frank's efforts during the
26 marriage, the community acquired an interest in the law practice.
27 The appropriate method of allocating the separate versus community
28 interest is the application of the *Pereira* case.  The most

M:\Rogozienski\Court Orders\Second Amended SOD          -11-          **EXHIBIT 2 PAGE 299**          174

LOVE00671

1  credible witness regarding the valuation of the community interest

2  was Christopher Summers, and the Court adopts the conclusions

3  reached in Mr. Summers' August 7, 2001 report (Court's Exhibit No.

4  5) as amended by his testimony at trial which increased the

5  accounts receivable at the date of marriage by $44,000.

6  Accordingly, the community's interest in Frank E. Rogozienski,

7  Inc., as of December 31, 1997 was $1,221,000.  This interest will

8  be awarded to Frank with an equal amount of community property to

9  be awarded to Shirley as an offset. The December 31, 1997 balance

10  sheet assets included an "Account Receivable - Officer" in the

11  amount of $382,293.  This obligation was incurred during the

12  marriage, and absent evidence that the debt was incurred by Frank

13  for his separate account or purposes, it is presumed to be a

14  community obligation.  The only testimony on the characterization

15  of this obligation was Frank's, which asserted that the monies

16  advanced were spent for community purposes.  Therefore, the court

17  finds this to be a community debt, and there should be an offset

18  against the community value of Frank's law practice in a like

19  amount, namely, $382,293.  This debt is assigned to Frank without

20  offset.  The community interest in the law firm is $1,221,000 less

21  the receivable from officer in the amount of $382,293, or

22  $838,818.

23      22.  In valuing the law practice at the date of marriage, it

24  was appropriate for Mr. Summers to include accounts receivable and

25  to use them in the *Pereira* analysis.

26      23.  In valuing the law practice at the date of separation

27  (October 27, 1997), Mr. Summers used information made available to

28  him for the period ending December 31, 1997.  At trial, Frank

LOVE00672

1    presented evidence that between October 27, 1997 and December 31,
2    1997, his law firm generated billings of $174,125.60, and now
3    argues that these post-separation "earnings" are separate property
4    and should be deducted from the receivables included in the
5    December 31, 1997 balance sheet used by Mr. Summers in his
6    valuation. However, to do so without examining and accounting for
7    expenses of the law firm for the same period would result in an
8    inaccurate picture of the law firm's balance sheet as of October
9    27th. In other words, if the post-separation billings are to be
10   subtracted from the year-end balance sheet to give a more accurate
11   picture of accounts receivable as of October 27th, then all
12   expenses paid by the law firm from October 27th through December
13   31st should be added back to the December 31st balance sheet figure
14   in order to accurately assess the community value as of October
15   27th. The court declines to speculate on these adjustments, and
16   will accept Mr. Summers' valuation without further adjustments.
17       24. The balance sheet of Frank E. Rogozienski, Inc. as of
18   December 31, 1997, included cash assets in the amount of
19   $1,592,162. These funds had already been taxed to the parties
20   since the corporation had elected to be treated as an
21   S Corporation since 1987. Frank had the exclusive use and control
22   of his law practice which included these funds after the parties'
23   separation on November 1, 1997, and therefore should be charged
24   with the use of the community's interest. Accordingly, he will be
25   charged with the use value of the community's interest in the
26   amount of $838,818 at the rate of 5% percent per annum from
27   December 31, 1997 to the date of the distribution of the community
28   assets.

M:\Rogozienski\Court Orders\Second Amended SOD                    -13-                    **EXHIBIT 2 PAGE 301**        176

LOVE00673

25. In April of 1999, in violation of existing restraining orders, Frank sold 10,000 shares of Qualcomm stock held in his own name. After taxes were paid, most of the proceeds were deposited to the Alex Brown account. Due to the significant decline in the value of Qualcomm stock subsequent to April of 1999, Frank's violation of the restraining orders was a "foul without harm." However, even though the Court has now found the shares sold to have been community property, Frank treated the sale as involving his separate property and may have paid some of the income taxes with separate property. However, based upon the analysis contained in Mr. Barclay's October 10, 2002 letter (Court's Exhibit No. 7), the court finds that tax payments traceable to community sources were substantially equal to the community tax liability, and therefore no reimbursement is due in either direction.

26. As of June 30, 2001, there were accounts in Frank's name at Alex Brown & Sons totaling $2,301,165 which consisted of cash or securities (other than Qualcomm or Leap Wireless). The balances in the accounts were traceable to the sale by Frank on April 10, 1999 of 10,000 shares of Qualcomm stock which were community property. From that date until June 30, 2001, Frank expended $221,589 from two of these accounts for separate purposes, and therefore owes reimbursement to the community in that amount.

27. During the marriage, Frank's law practice took as payment for fees two timeshare units. Title to these two timeshares is held in the name of the corporation. However, they were not included in the valuation of Frank E. Rogozienski, Inc.

**EXHIBIT 2 PAGE 302**

1    Further, since the corporation was an S Corporation, the parties

2    individually have already paid the income tax associated with

3    their receipt as fees.  The only evidence presented indicates

4    these two timeshares are of equal value.  One should be awarded to

5    Shirley in the division of community property and the other to

6    Frank.  Frank should be reimbursed by the community in the amount

7    of $5160 for post-separation expenses of the timeshares paid by

8    Frank with his separate property.

9        28.  Based upon the stipulations of the parties, the coin

10    collection should be awarded to Frank without offset, the air

11    miles should be awarded to Frank without offset, the vehicles in

12    the parties' respective possessions should be awarded to each

13    without offset, and the household furniture and furnishings in the

14    parties' respective possessions should be awarded to each without

15    offset.

16        29.  With respect to spousal support, the court notes that

17    Frank's Income and Expense Declaration submitted prior to trial

18    lists his current net income as in excess of $26,000 per month

19    (which is less than his income in several prior years).  Shirley's

20    Income and Expense Declaration submitted prior to trial lists her

21    current gross income as approximately $2,000 per month and that

22    her stated needs are $13,700 per month.  Inasmuch as the parties

23    were married in excess of seventeen years, the marriage was long-

24    term as defined by the Family Code.  During the early years of the

25    marriage, the parties enjoyed a comfortable standard of living, in

26    that Frank had a well-established law practice by the time the

27    parties married as well as several real estate investments.

28    During the last ten or so years of the marriage, the parties lived

LOVE00675

1   in Rancho Santa Fe and enjoyed a very comfortable, albeit not
2   opulent, lifestyle.  The parties' standard of living was clearly
3   very high.  Frank's income from his law practice was in several
4   years in excess of One Million Dollars per year.  Shirley's only
5   employment after the first year or so of marriage was doing some
6   clerical and administrative work in Frank's office, although this
7   stopped entirely in 1992.  While Shirley has now obtained a formal
8   education (a B.S. degree in Psychology), it is clear to the court
9   that her earning capacity, much less her earnings, will never even
10  distantly approach Frank's.  While she has purchased a new
11  residence, it is in a significantly less expensive neighborhood
12  than she enjoyed during the marriage (and now enjoyed by Frank).
13  Her stated needs are reasonable.  The court finds that Frank
14  should pay Shirley, as and for spousal support, the sum of $12,250
15  per month, effective November 1, 2002, and payable on the first
16  day of each month thereafter.  In making this order, the court is
17  also ruling on Frank's Order to Show Cause for "Allocation of
18  Support" filed July 6, 2001.  Pursuant to Frank's request, the
19  unallocated support previously ordered by stipulation of the
20  parties shall be allocated as follows: as of June 16, 2001, child
21  support shall be terminated; from June 16, 2001 to November 1,
22  2002, the $7,000 per month non-taxable support ordered to be paid
23  by Frank to Shirley shall be as and for spousal support.  The
24  ongoing order for spousal support effective November 1, 2002
25  should continue until the death of either party, Shirley's
26  remarriage, or further order of the court.
27      30.  This finding and order is based on the recognition that
28  Frank has retained control over all of the undivided Qualcomm and

LOVE00676

1 Leap Wireless stock.  Once the Judgment is executed and Shirley
2 receives the stock and other assets to which she is entitled,
3 there may be a (very) substantial change in her circumstances
4 which would justify modification or termination of spousal
5 support.  However, that is only speculation at this point, and the
6 Court is mindful that an appeal may be taken from the Judgment
7 which might delay or undo the award of stock to Shirley.  Pending
8 her receipt of assets which would be sufficient to provide income
9 which would meet her needs, it is appropriate for Shirley to
10 receive the spousal support ordered herein.

11     31.  Based upon the great disparity in their incomes and the
12 assets available to each, it is appropriate for Frank to pay to
13 Shirley's attorneys the sum of $250,000 as a contribution towards
14 Shirley's attorneys fees and costs.  Costs already incurred and
15 not paid by the community shall be borne by the party incurring
16 the costs.

17

18 Dated: November 12, 2002

19
20
21                    _____
                      JAMES D. ALLEN, JUDGE PRO TEM
22
23
24
25
26
27
28

**EXHIBIT 2 PAGE 305**

M:\Rogozienski\Court Orders\Second Amended SOD          -17-                    180

LOVE00677

EXHIBIT 5

**EXHIBIT 2 PAGE 306**    181

LOVE00678

1287

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*<br><br>S. MICHAEL LOVE<br>McDOUGAL, LOVE, ECKIS, SMITH & BOEHMER<br>460 NORTH MAGNOLIA<br>DRAWER 1466<br>EL CAJON, CA 92022-1466<br>   TELEPHONE NO.: 619-440-4444    FAX NO.: | FOR COURT USE ONLY<br><br>F I L E D<br>STEPHEN THUNBERG<br>Clerk of the Superior Court<br><br>NOV 25 2002<br><br>By: M. MARTINEZ, Deputy |

ATTORNEY FOR *(Name):* SHIRLEY L. ROGOZIENSKI

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
   STREET ADDRESS: 1555 SIXTH AVENUE
   MAILING ADDRESS:
   CITY AND ZIP CODE: SAN DIEGO, CA 92101
   BRANCH NAME: FAMILY LAW COURT

MARRIAGE OF
  PETITIONER:  SHIRLEY L. ROGOZIENSKI

  RESPONDENT:  FRANK E. ROGOZIENSKI

| JUDGMENT | CASE NUMBER: |
|---|---|
| [X] Dissolution    [ ] Legal separation    [ ] Nullity<br>    [ ] Status only<br>    [ ] Reserving jurisdiction over termination of marital status<br>    [ ] Judgment on reserved issues<br>Date marital status ends: NOV 25 2002 | D440154 |

[ ] This judgment  [ ] contains personal conduct restraining orders    [ ] modifies existing restraining orders.
The restraining orders are contained on page(s)    of attachment. They expire on *(date):*

This proceeding was heard as follows:  [ ] default or uncontested  [ ] by declaration under Fam. Code, § 2336
[X] contested    & 10-11-02
a. Date: 10-24-01 TO 11-19 -01   Dept:    Rm.:
b. Judicial officer *(name):* HON. JAMES D. ALLEN   [X] Temporary judge
c. [X] Petitioner present in court    [X] Attorney present in court *(name):* G. McMAHON & F. ROGOZIENSKI
d. [X] Respondent present in court    [X] Attorney present in court *(name):* S. MICHAEL LOVE & LYNNE LASRY
e. [ ] Claimant present in court *(name):*
f. [ ] Other *(specify name):*    [ ] Attorney present in court *(name):*

The court acquired jurisdiction of the respondent on *(date):* 10-30-97
[X] Respondent was served with process  [ ] Respondent appeared

THE COURT ORDERS, GOOD CAUSE APPEARING:
a. [X] Judgment of dissolution be entered.  Marital status is terminated and the parties are restored to the status of unmarried persons
    (1) [X] on the following date *(specify):* NOV 25 2002
    (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
b. [ ] Judgment of legal separation be entered.
c. [ ] Judgment of nullity be entered.  The parties are declared to be unmarried persons on the ground of *(specify):*

e. [ ] This judgment shall be entered nunc pro tunc as of *(date):*    **EXHIBIT 2 PAGE 307**
f. [ ] Judgment on reserved issues.
g. [ ] Wife's [ ] Husband's  former name be restored *(specify):*
h. [ ] Jurisdiction is reserved over all other issues and all present orders remain in effect except as provided below.
[ ] This judgment contains provisions for child support or family support. Both parties shall complete and file with the court a
  *Child Support Case Registry Form* (form 1285.92) within 10 days of the date of this judgment. The parents shall notify the
  court of any change in the information submitted within 10 days of the change by filing an updated form. The forms *Notice*  182
  *of Rights and Responsibilities* (form 1285.78) and *Information Sheet on Changing a Child Support Order* (form 1285.79)
  are attached.
*(Continued on reverse)*    *Family Code*

LOVE00679

| MARRIAGE OF (last name, first name of parties): OGOZIENSKI, SHIRLEY & FRANK | CASE NUMBER: J154 |
|---|---|

4.    l. ☐ A marital settlement agreement between the parties is attached.

  j. ☐ A written stipulation for judgment between the parties is attached.

  k. ☐ Child custody and visitation is ordered as set forth in the attached

          ☐ Marital settlement agreement, stipulation for judgment, or other written agreement.

          ☐ Child Custody and Visitation Order Attachment (form 1296.31A)

          ☐ Other (specify):

  l. ☐ Child support is ordered as set forth in the attached

          ☐ Marital settlement agreement, stipulation for judgment, or other written agreement.

          ☐ Child Support Information and Order Attachment (form 1296.31B)

          ☐ Non-Guideline Child Support Findings Attachment (form 1296.31B(1))

          ☐ Stipulation to Establish or Modify Child Support Order (form 1285.27)

          ☐ Other (specify):

  m. ☒ Spousal support is ordered as set forth in the attached

          ☐ Marital settlement agreement, stipulation for judgment, or other written agreement.

          ☐ Spousal or Family Support Order Attachment (form 1296.31C)

          ☒ Other (specify):    JUDGMENT

    ☐ NOTICE: It is the goal of this state that each party shall make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320. The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating spousal support.

  n. ☐ Parentage is established for children of this relationship born prior to the marriage.

  o. ☐ Other (specify):

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions.

Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date:

       **7**

                       JUDGE OF THE SUPERIOR COURT

5.    Number of pages attached: ~~FOUR~~    ☒ SIGNATURE FOLLOWS LAST ATTACHMENT

**NOTICE**

Please review your will, insurance policies, retirement benefit plans, credit cards, other credit accounts and credit reports, and other matters that you may want to change in view of the dissolution or annulment of your marriage, or your legal separation. Dissolution or annulment of your marriage may automatically change a disposition made by your will to your former spouse. A debt or obligation may be assigned to one party as part of the division of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment will automatically be issued if child support, family support, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

JUDGMENT
(Family Law)

**EXHIBIT 2 PAGE 308**

LOVE00680

1  In re Marriage of: ROGOZIENSKI, Shirley & Frank
   Superior Court Case No. D440154
2

3                    ATTACHMENT TO JUDGMENT

4       A hearing on bifurcated issues was held on September 16 and

5  17, 1998, to determine the validity and interpretation of an

6  antenuptial agreement.  Petitioner Shirley L. Rogozienski

7  ("Shirley") was represented by S. Michael Love.  Respondent

8  Frank E. Rogozienski ("Frank") was represented by James A.

9  Hennenhoeffer.  The Court filed its Statement of Decision on

10 these issues on May 10, 1999.

11      A further hearing on bifurcated issues was held on March 27

12 and 28, 2000, to determine the characterization and division of

13 certain stock options.  Shirley was represented by S. Michael

14 Love.  Frank was represented by Gerald L. McMahon.  Following

15 the Court's tentative decision dated September 30, 2000, the

16 parties entered into a stipulation that was approved by Court

17 order.  A Stipulation and Order re: Stock Options was filed on

18 December 7, 2000.

19      Trial on all remaining unresolved issues commenced October

20 24, 2001, and continued through November 19, 2001.  The Court

21 reopened the trial on October 11, 2002, to receive evidence on

22 certain reserved issues.  After evidence was received and

23 reviewed by the Court, the trial was completed on October 11,

24 2002.  Shirley was represented by S. Michael Love and Lynne R.

25 Lasry.  Frank was represented by Gerald L. McMahon and Frank E.

26 Rogozienski, as associated counsel.  The Court issued a Second

27 Amended Statement of Decision on November 12, 2002.

28                                **EXHIBIT 2 PAGE 309**
                        -1-                              184
                  ATTACHMENT TO JUDGMENT

LOVE00681

1.    The parties married on January 30, 1982, and separated on October 27, 1997.  The parties' marriage is hereby dissolved.

2.    The 12,000 shares of Qualcomm, Inc. ("Qualcomm") stock issued in 1985 and the 4,000 shares of Qualcomm stock issued in 1986 (collectively "Founders Stock") are community property. Because $12,000.00 of the initial $16,000.00 used to purchase this Founders Stock came from Frank's separate property, Frank is entitled to reimbursement from the community in the sum of $12,000.00.  See Fam. Code § 2640(b).

3.    The parties were issued shares of Leap Wireless International, Inc. ("Leap Wireless") common stock as a result of their ownership of the Qualcomm Founders Stock.  Therefore, the characterization and division of Leap Wireless stock received by the parties as a result of their ownership of Founders Stock shall be in the same proportion as the Court's division of Founders Stock to the parties.

4.    As of June 30, 2001, the Qualcomm stock attributable to the community property Founders Stock totaled 912,000 shares. Each party is awarded 456,000 shares as his or her respective sole and separate property.  As of June 30, 2001, the Leap Wireless stock attributable to the community property Founders Stock totaled 31,000 shares.  Each party is awarded 15,500 shares as his or her respective sole and separate property. Frank has control of the Qualcomm and Leap Wireless stock described in this paragraph and shall transfer to Shirley 456,000 shares of Qualcomm stock and 15,500 shares of Leap Wireless stock.

**EXHIBIT 2 PAGE 310**

-2-

185

ATTACHMENT TO JUDGMENT

LOVE00682

 5.    In addition to the Qualcomm and Leap Wireless shares described in paragraph 4 above, and in addition to shares previously divided by the parties pursuant to stipulation, Frank has in his possession an additional 177,930 shares of Qualcomm stock and an additional 5,560 shares of Leap Wireless stock that are confirmed as Frank's sole and separate property.

 6.    As of June 30, 2001, the Frank E. Rogozienski, Inc. Profit-Sharing Plan Trust held, or should have been holding, an additional 960,822 shares of Qualcomm stock and an additional 30,026 shares of Leap Wireless stock.  The allocation of these shares is:  2.15% to the community and 97.85% to Frank as his sole and separate property.  Thus, 20,657-2/3 shares of the Qualcomm stock and 645-1/2 shares of the Leap Wireless stock are community property; and 940,164-1/3 shares of the Qualcomm stock and 29,380-1/2 shares of the Leap Wireless stock are Frank's separate property.  In addition, the Frank E. Rogozienski, Inc. Profit-Sharing Plan Trust had as of that date $158,468.00 in community property cash or cash equivalents.  Frank has control of the assets described in this paragraph and shall transfer, by Qualified Domestic Relations Order, to Shirley (i) 10,329 shares of Qualcomm stock, and (ii) 323 shares of Leap Wireless stock, and (iii) $79,234.00 adjusted to current value.  The balance remaining in Frank's segregated account is confirmed as Frank's sole and separate property.  The court shall reserve jurisdiction to supervise the transfer of Shirley's share of plan assets to her.

/ / /

**EXHIBIT 2 PAGE 311**

3—

186

ATTACHMENT TO JUDGMENT

L0VE00683

1      7.   The community property share of the Frank E.

2   Rogozienski, Inc. Pension Plan is $165,893.00 as of June 30,

3   2001.  Shirley shall receive, by Qualified Domestic Relations

4   Order, $82,946.50 adjusted to current value.  The balance

5   remaining in Frank's segregated account is confirmed as Frank's

6   sole and separate property.  The court shall reserve

7   jurisdiction to supervise the transfer of Shirley's share of the

8   plan assets to her.

9      8.   The Court finds that, as of December 31, 1997, the

10  community's interest in Frank's law practice, Frank E.

11  Rogozienski, Inc., was $1,221,000.  The court also finds that

12  part of this value included an account receivable from Frank in

13  the amount of $382,293.  The court finds this to be a community

14  obligation and it is assigned to Frank without offset.

15  Therefore, the net value of the community interest in the law

16  practice is $838,818.  The law practice is awarded to Frank as

17  his sole and separate property, and to equalize the division of

18  community property Frank shall pay to Shirley $419,409 from

19  either Frank's separate property funds or from Frank's share of

20  the marital assets.  Because Frank has had the exclusive use and

21  control of this community asset since the parties' separation on

22  November 1, 1997, he shall be charged with the use value, at an

23  annual rate of five percent (5%), of the community's interest

24  through the date of distribution of the community assets.  Thus,

25  in addition to the $419,409 Shirley is to recover from Frank's

26  separate property $20,970 ($838,818 x ½ x 5% = $20,970) per year

27  from December 31, 1997, until the date the community assets are

28

**EXHIBIT 2 PAGE 312**    187

-4-

ATTACHMENT TO JUDGMENT

LOVE00684

1  distributed.

2     9.   In April 1999, in violation of existing restraining

3  orders, Frank sold 10,000 community property shares of Qualcomm

4  stock.  The after-tax proceeds from this sale were traced to

5  cash or securities (other than Qualcomm or Leap Wireless) in

6  various accounts in Frank's name at Alex Brown & Sons.  This

7  account was community property, and as of June 30, 2001 it

8  contained cash or securities (other that Qualcomm or Leap

9  Wireless) valued at $2,301,165.  Because, prior to June 30,

10  2001, Frank withdrew $221,589 of community funds from this

11  account and used them for his separate property purposes, Frank

12  must reimburse the community $221,589 from his separate property

13  funds.  This $221,589 and the $2,301,165 still remaining in the

14  various Alex Brown & Sons accounts as of June 30, 2001 were

15  community property.  Thus, Shirley is entitled to one half of

16  this $2,522,754 in community funds for a total award of

17  $1,261,377, plus or minus actual gains or losses on this amount

18  from the Alex Brown & Sons accounts.

19     10.  Frank E. Rogozienski, Inc. holds title to two

20  identical timeshare units, which the Court finds to be community

21  property.  The two timeshares are of equal value, and each party

22  shall receive one of these timeshares.  Shirley is awarded unit

23  no. 460-A-06 and Frank is awarded unit no. 376-A-23.  Frank

24  shall be reimbursed $5159 from the community for post-separation

25  expenses of the timeshares paid by him with separate property.

26     11.  Frank shall receive the coin collection, the air

27  miles, the vehicle, and the household furniture and furnishings

28

                                    5—          **EXHIBIT 2 PAGE 313**          88

LOVE00685

1   in his possession as of the date of separation, without offset
2   for value.  Shirley shall receive the vehicle and the household
3   furniture and furnishings in her possession as of the date of
4   separation without any offset as to value.
5        12.  The Court has considered Frank's Order to Show Cause
6   for "Allocation of Support" filed July 6, 2001, and makes the
7   following orders: The unallocated support previously ordered by
8   stipulation of the parties shall be allocated as follows: child
9   support shall be terminated effective June 16, 2001;  effective
10  June 16, 2001, the $7,000 per month non-taxable support shall
11  remain in effect until November 1, 2002, and shall be payable as
12  spousal support.
13       13.  The Court has reviewed those factors set forth in
14  Family Code §4320 and has considered the circumstances with
15  regard to the parties herein.  Based upon the parties' Income
16  and Expense Declarations, the evidence presented during trial as
17  to the parties' present income, investments, separate property
18  and marital standard of living, Frank shall pay Shirley, as and
19  for spousal support, the sum of $12,250.00 per month, effective
20  November 1, 2002.  This monthly payment shall continue until the
21  death of Frank or Shirley, Shirley's remarriage, or further
22  Court Order.
23       14.  For all the reasons set forth with regard to spousal
24  support, Frank shall pay to Shirley $250,000.00 as and for
25  / / /
26  / / /
27  / / /
28

**EXHIBIT 2 PAGE 314**

6—

ATTACHMENT TO JUDGMENT

L0VE00686

1    attorneys' fees and costs.  Costs already incurred and not paid

2    by the community shall be borne by the party incurring said

3    costs.

4

5                           **IT IS SO ORDERED**

6    DATED: *11-12-02.*

7

8

9    JAMES D. ALLEN
     Judge Pro Tem of the Superior
10   Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                        **EXHIBIT 2 PAGE 315**

                                    7–                                   190

                            ATTACHMENT TO JUDGMENT

LOVE00687

**EXHIBIT 6**

**EXHIBIT 2 PAGE 316**         191

LOVE00688

DEC 12 2002

STEPHEN THUNBERG
Clerk of the Superior Court

DEC 1 0 2002

1  Gerald L. McMahon, Esq. (#036050)
   SELTZER CAPLAN McMAHON VITEK
2  A Law Corporation
3  750 B Street, 2100 Symphony Towers
   San Diego, California 92101
4  Telephone: (619) 685-3003

5
   Frank E. Rogoziensk, Esq. (#51445)
6  FRANK E. ROGOZIENSKI, INC.
   A Professional Corporation
7  Attorneys at Law
8  Coronado Professional Square
   1203 Second Street
9  Coronado, California 92118
10 Telephone: (619) 437-1878

11 Attorneys for Respondent FRANK E. ROGOZIENSKI

12          SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
13                        FAMILY LAW DIVISION
14

15 In re the marriage of              )   CASE NO. D 440154
                                      )
16 Petitioner:   SHIRLEY L. ROGOZIENSKI )  NOTICE OF APPEAL
                                      )
17        and                         )
                                      )
18                                    )
   Respondent: FRANK E. ROGOZIENSKI   )
19                                    )
                                      )
20                                    )
                                      )
21 _____  )

22

23

24 TO THE CLERK OF THE ABOVE ENTITLED COURT:

25      NOTICE IS HEREBY GIVEN that Respondent, FRANK E. ROGOZIENSKI, appeals

26 to the Court of Appeal for the State of California, Fourth Appellate District, Division One,

27 from the Superior Court's Judgment of Dissolution of Marriage rendered on November 12,

28

**EXHIBIT 2 PAGE 317**                              192

L0VE00689

1    2002, and filed on or about November 25, 2002, and from the whole thereof, *excepting* only
2    those portions identified below:

3        (1)    The portion of the Judgment reflecting the Statement of Decision determining
4    that the parties' Prenuptial Agreement dated January 29, 1982, is valid and enforceable.

5        (2)    The Stipulation and Order re: Stock Options.  (See Attachment to Judgment,
6    page 1, lines 17-18.)

7        (3)    The dissolution of the parties' marriage. (Id., page 1, line 2.)

8        (4)    The confirmation in paragraph 5, as Respondent's sole and separate property, of
9    (at least) 177,930 shares of Qualcomm stock and of (at least) an additional 5,560 shares of
10   Leap Wireless stock. (Id., page 3, lines 3-6.)

11       (5)    The allocation in paragraph 6, to Respondent as his sole and separate property, of
12   at least:

13       (a)    950,493 shares of Qualcomm stock (940,164-1/3 shares plus 10,328-2/3
14       shares = 950,493 shares); and

15       (b)    29,703 shares of Leap Wireless stock (29,380-1/2 shares plus 322-1/2
16       shares = 29,703 shares). (Id., page 3, lines 7-26.)

17       (This exception (5) to this Notice of Appeal is not intended to waive
18   Respondent's appellate rights with respect to his contention that additional shares should have
19   been allocated or confirmed as his sole and separate property. Moreover, this exception is not
20   intended to impair Respondent's appellate rights with respect to the Court's interpretation
21   limiting the effect of the Prenuptial Agreement.)

22       (6)    The provisions of paragraph 7. (Id., page 4, lines 1-8.) (This exception to the
23   Notice of Appeal is not intended to impair Respondent's appellate rights with respect to the
24   Court's interpretation limiting the effect of the Prenuptial Agreement.)

25       (7)    The conclusion in paragraph 8 that any community interest in Respondent's law
26   practice, as of December 31, 1997, was not more than $1,221,000; and the conclusion that part
27   of this value included an account receivable from Respondent in the amount of $382,293,
28   which the Court found to be a community obligation. (Id., page 4, lines 9-14.) Nor does

193

**EXHIBIT 2 PAGE 318**

LOVE00690

1  Respondent appeal from the Court's award of the law practice to Respondent as his sole and
2  separate property. (Id., page 4, lines 16-17.) (These exceptions to this Notice of Appeal are
3  not intended to impair Respondent's appellate rights with respect to the Court's interpretation
4  limiting the effect of the Prenuptial Agreement.)

5          (8)    The provisions of paragraph 10. (Id., page 5, lines 19-25.)

6          (9)    The provisions of paragraph 11. (Id., page 5, line 26 – page 6, line 4.)

7          (10)   The second sentence of paragraph 14 (at Id., page 7, line 1), beginning with the
8  word "Costs," and ending on page 7, line 3, also with the word "costs."

9

10  Dated: December 10, 2002            LAW OFFICES OF FRANK E. ROGOZIENSKI
11                                      A Professional Corporation
12                                      1203 Second Street at "C" Avenue
13                                      Coronado, California 92118-0970
                                        Telephone: 619-437-1878
14

15                                              and

16                                      SELTZER CAPLAN McMAHON VITEK
17                                      A Law Corporation

18                                      By:    _____
19                                             Gerald L. McMahon, Esq.
20                                      Attorneys for Respondent Frank E. Rogozienski

21

22

23

24

25

26

27

28

**EXHIBIT 2 PAGE 319**                    194

LOVE00691

| Gerald L. McMahon, Esq.<br>SELTZER CAPLAN WILKINS & McMAHON<br>2100 Symphony Towers, 750 "B" Street<br>San Diego, CA 92101 | TELEPHONE NO.<br>(619) 685-3114 | COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR Respondent FRANK E.<br>ROGOZIENSKI | BAR # 036050 | F I L E D<br>STEPHEN THUNBERG<br>Clerk of the Superior Court<br><br>DEC 1 0 2002 |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| [ ] 330 W. Broadway<br>San Diego, CA<br>92101 | [X] 1501-55 Sixth<br>San Diego, CA<br>92101-1946 | [ ] 325 S. Melrose<br>Vista, CA<br>92083-6627 |
|---|---|---|
| [ ] 220 W. Broadway<br>San Diego, CA<br>92101-3409 | [ ] 250 E. Main<br>El Cajon, CA<br>92020-3913 | [ ] 500 Third<br>Chula Vista, CA<br>91910-5694 |

| PLAINTIFF(S) / PETITIONER(S)<br><br>SHIRLEY L. ROGOZIENSKI | JUDGE: Hon. Jacqueline M. Stern<br>DEPT: F-5 |
|---|---|
| DEFENDANT(S) / RESPONDENT(S)<br><br>FRANK E. ROGOZIENSKI | DATE:<br>TIME: |

| PROOF OF SERVICE BY MAIL<br>(C.C.P. 1013a(1) and (3) & C.C.P. 2015.5(b)) | CASE NUMBER<br><br>D440154 |
|---|---|

## DECLARATION OF SERVICE BY MAIL

I, Christina Peralta, declare: That I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; and I am employed in the County of San Diego, California, within which county the subject mailing occurred. My business address is 2100 Symphony Towers, 750 B Street, San Diego, CA 92101: I served the following document(s): **Notice of Appeal**; and by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed to each addressee respectively as follows:

Michael Love, Esq.
McDougal, Love, Eckis, Smith & Boehmer
460 N. Magnolia, Drawer 1466
El Cajon, CA 92020-1466
Phone:(619) 440-4444; Fax: (619) 440-4907

Edward I. Silverman, Esq.
Procopio, Cory, Hargreaves & Savitch LLP
530 B Street, Suite 2100
San Diego, CA 92101
Phone: (619) 515-3200; Fax: (619) 235-0398

Frank E. Rogozienski, Esq.
403 Second Street
Coronado, CA 92118
Phone: (619) 437-1878; Fax: (619) 437-4894

I then sealed the envelope and placed it for mailing in accord with our business' practice on December 10, 2002. I am readily familiar with our business' practice for collecting, processing and mailing correspondence and pleadings. Such correspondence and pleadings are deposited on the same day with the U. S. Postal Service in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 10, 2002

_Christina Peralta_
Christina Peralta

PROOF OF SERVICE BY MAIL
(C.C.P. 1013a(1) and (3) & C.C.P. 2015.5(b))

**EXHIBIT 2 PAGE 320**    195

LOVE00692

**EXHIBIT 7**

**EXHIBIT 2 PAGE 321**    196

1  Edward I. Silverman (Bar No. 078152)
   PROCOPIO, CORY, HARGREAVES
2      & SAVITCH LLP
   530 B Street, Suite 2100
3  San Diego, California 92101
   Telephone:    (619) 238-1900
4  Facsimile:    (619) 235-0398

5  S. Michael Love (Bar No. 54004)
   McDOUGAL, LOVE, ECKIS, SMITH
6      & BOEHMER
   460 North Magnolia
7  P.O. Drawer 1466
   El Cajon, CA 92022
8  Telephone:    (619) 440-4444
   Facsimile:    (619) 440-4907
9
   Attorneys for Petitioner,
10 SHIRLEY L. ROGOZIENSKI

11

12                SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                        COUNTY OF SAN DIEGO

14  In re Marriage of

15  Petitioner:   SHIRLEY L. ROGOZIENSKI,          Case No. D 440154

16  and                                            NOTICE OF APPEAL

17  Respondent:   FRANK E. ROGOZIENSKI             [Code Civ. Proc., § 904.1]

18

19      Petitioner SHIRLEY L. ROGOZIENSKI, hereby appeals to the Court of Appeal of

20  the State of California, Fourth Appellate District, Division One from the Judgment filed

21  November 25, 2002.

22  DATED:  January 23, 2003

23                                       PROCOPIO CORY HARGREAVES
                                              & SAVITCH LLP
24

25

26                             By: _____
                                       Edward I. Silverman
27                                     Attorneys For Petitioner,
                                       SHIRLEY L. ROGOZIENSKI
28

                                                        **EXHIBIT 2 PAGE 322**      197

NOTICE OF APPEAL

LOVE00694

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is PROCOPIO, CORY, HARGREAVES & SAVITCH LLP, 530 "B" Street, Suite 2100, San Diego, California 92101. On January 24, 2003, I served the within documents:

### NOTICE OF APPEAL

☐ by transmitting via facsimile number (619) 235-0398 the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

☐ by causing personal delivery by Knox Attorney Service of the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| Gerald L. McMahon, Esq.<br>Seltzer Caplan McMahon & Vitek<br>750 B Street, Suite 2100<br>San Diego, CA 92101<br>(619) 685-3003<br>(619) 702-6803 – fax | Attorneys for Respondent<br>Frank E. Rogozienski |
| Frank E. Rogozienski, Esq.<br>Frank E. Rogozienski, Inc.<br>1203 Second Street<br>Coronado, CA 92118<br>(619) 437-1878 | Attorneys for Respondent<br>Frank E. Rogozienski |

☒ *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ *(Federal)* I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on ___January 24, 2003___, at San Diego, California.

_Vicki L. Goldsmith_
Vicki L. Goldsmith

198

**EXHIBIT 2 PAGE 323**

LOVE00695

EXHIBIT 8

EXHIBIT 2 PAGE 324    199

LOVE00696

1    FRANK E. ROGOZIENSKI, ESQ., California Bar No. 51445
2    FRANK E. ROGOZIENSKI, INC.
     A Professional Corporation
3    Attorneys at Law
     Coronado Professional Square
4    1203 Second Street
     Coronado, CA 92118
5    Telephone: (619)437-1878
6    Facsimile: (619)437-4894

7    Attorneys for Plaintiff, FRANK E. ROGOZIENSKI

8

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                    FOR THE COUNTY OF SAN DIEGO

12

13   FRANK E. ROGOZIENSKI,          )    Case No. GIC 843843
                                    )
14              Plaintiff,          )    COMPLAINT    FOR    DAMAGES
                                    )    (Interference   with   Contract,
15        v.                        )    Interference   with   Economic
                                    )    Relations,    Civil    Rights
16   JAMES D. ALLEN, S. MICHAEL     )    Violations,   Deceit-Fraudulent
     LOVE and DOES 1 through 10,    )    Concealment, Breach of Contract
17   inclusive,                     )    and Unfair Competition)
                                    )
18              Defendants.         )
                                    )
19   _____)

20

21        Plaintiff alleges:

22                    JURISDICTION AND VENUE

23        1.    The within action is an unlimited civil case for damages

24   in excess of $25,000.00.

25        2.    The within action arose in San Diego, California.

26

27                           PARTIES

28                                        **EXHIBIT 2 PAGE 325**

                              1                                    200
     _____
                   COMPLAINT FOR DAMAGES

LOVE00697

3.   At all times herein mentioned,, Plaintiff was, and now is, a resident of San Diego County, California.

4.   At all times herein relevant, Defendant, JAMES D. ALLEN [herein "ALLEN"], was, and now is, a resident of San Diego County, California. At all times herein relevant, ALLEN was, and now is, an attorney duly licensed to practice law in the State of California.

5.   At all times herein relevant, Defendant, S. MICHAEL LOVE [herein "LOVE"] was, and now is, a resident of San Diego County, California. At all times herein relevant, ALLEN was, and now is, an attorney duly license to practice law in the State of California.

6.   Plaintiff is ignorant of the true names or capacities of Defendants sued herein under the fictitious names DOES 1 through 10, and therefore sues such Defendants pursuant to California Code of Civil Procedure section 474.   Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 are residents and citizens of one of the States of the United States, and participated in the acts herein alleged and are responsible in some manner for the injuries and damages to Plaintiff as herein alleged.

7.   Plaintiff is informed and believe, and thereon alleges, that at times herein relevant, each of the Defendants was the agent and employee of each of the remaining Defendants, and was at times herein mentioned acting within the purpose and scope of said agency and employment, and further that each of the Defendants at times herein mentioned conspired and agreed together and acted in concert in proximately causing the injuries and damages to Plaintiff as

PROFESSIONAL CO., DALTON
CORONADO PROFESSIONAL CARE
POST OFFICE BOX 181920
1203 SECOND STREET "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1876

2

COMPLAINT FOR DAMAGES

**EXHIBIT 2 PAGE 326**

201

LOVE00698

1    herein alleged.   Plaintiff is further informed and believes, and

2    thereon alleges, that at other times herein mentioned, each of the

3    Defendants was acting solely in their individual capacities, and

4    that with respect to those acts, each of the other Defendants

5    ratified, affirmed and adopted these actions.

6

7        8.   Plaintiff is in some doubt as to whether he is entitled

8    to redress from all of the Defendants or from one or more of them,

9    and all Defendants have therefore been joined herein with the

10    intent that the question as to whether all the Defendants are, or

11    one or more of them are, liable to Plaintiff, and to what extent;

12    and that the liability may be determined in this action; and that

13    the Court may award judgment to Plaintiff as against the Defendants

14    either jointly, severally or in the alternative.

15                   **FACTUAL BACKGROUND**

16

17            **A. The Underlying Proceeding**

18        9.   In 1982,, Plaintiff was married and in October, 1997,

19    Plaintiff's then spouse [herein the "Petitioner"], brought a

20    Petition for Dissolution of their marriage [herein the "Underlying

21    Proceeding"].    In the Underlying Proceeding, LOVE represented

22    Petitioner until February, 2005 when he withdrew as Petitioner's

23    attorney of record.

24    **B. Allen is selected and agrees to act as temporary judge.**

25        10.   By agreement of Plaintiff and Petitioners, ALLEN was

26    selected and agreed to act as a temporary judge in the Underlying

27    Proceeding.  ALLEN served as temporary judge from the time of his

28

PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181930
1203 SECOND STREET, "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1070

**EXHIBIT 2 PAGE 327**  202

COMPLAINT FOR DAMAGES

LOVE00699

appointment on August 4, 1998 until his withdrawal on March 27, 2003 in response to Plaintiff's challenge of him for cause. Plaintiff agreed to pay one-half of ALLEN's services in the Underlying Proceeding on a fee-for-service basis.

C. Harold S. Bottomley

11. At all times herein relevant, Harold S. Bottomley [herein "Bottomley"] was, and now is, an attorney duly licensed to practice law in the State of California. ALLEN and Bottomley have been attorneys in the same law firm. At all times herein relevant, ALLEN and Bottomley were good friends, and together with their respective families, regularly socialized together. At times herein relevant, ALLEN and Bottomley shared Charger tickets.

D. Relationships between LOVE and ALLEN

12. At all times herein relevant, ALLEN and LOVE were well acquainted, had a social relationship, and at times were officers and members of the same professional associations. At all times herein relevant, they were on a first name basis. At times herein relevant, LOVE had been to ALLEN's home. Neither LOVE nor ALLEN made any disclosure of these relationships prior to ALLEN's withdrawal as temporary judge in March 2003.

E. The gift to ALLEN of the LOVE's half interest in Warner Springs Ranch

13. In the Spring or Summer of 2001, ALLEN learned from LOVE that LOVE was interested in divesting himself of his interest in Warner Springs Ranch, and in this same time period, Bottomley

CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 180880
1203 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1978

4

COMPLAINT FOR DAMAGES

EXHIBIT 2 PAGE 328

203

LOVE00700

1    expressed to ALLEN how much he had enjoyed a visit to play golf at

2    the Ranch

3        14.    Between October 24, 2001 and November 19, 2001, ALLEN

4    presided as temporary judge over element of the trial in the

5    Underlying Proceeding.    LOVE was Petitioner's lead trial attorney

6    in that trial.

7

8        15.    In about November 2001, Mr. Bottomley took his family to

9    Warner Springs Ranch, and as a result of that experience, became

10   interested in becoming a member.    ALLEN and Bottomley then had

11   discussions about inquiries Bottomley was making concerning

12   acquiring membership in Warner Springs Ranch, and how it would be

13   very nice if both of them were members so they could go there

14   together with their respective families.    Bottomley was made aware

15   that Warner Springs Ranch Realty was offering half interests for

16   $2,500.

17       16.    In about November or early December 2001, ALLEN had a

18   conversation with LOVE about Warner Springs Ranch.    LOVE told ALLEN

19   he was interested in divesting himself of his membership in Warner

20   Springs Ranch since his children were grown and LOVE and his wife

21   had recently joined San Diego Country Club and were not using

22   Warner Springs Ranch any longer.    ALLEN told LOVE of Bottomley's

23   interest, called Bottomley, advised him of LOVE's comments, and

24   suggested Bottomley call LOVE.

25       17.    At a Christmas party at ALLEN's residence in December

26   2001, Bottomley spoke with the LOVEs about Warner Springs Ranch,

27

28

                                5                EXHIBIT 2 PAGE 329 ___204
                        COMPLAINT FOR DAMAGES

                                                        LOVE00701

the Bottomleys recent visit there, and the things the Ranch had to offer.   The LOVEs discussed their membership, that they weren't using it anymore and would Bottomley and his wife be interested in assuming the LOVE's membership and the monthly fees.   On information and belief ALLEN knew at the time that LOVE was talking to Bottomley about the LOVEs' membership

18.   At the end of the Christmas party and after the other guests had left, Bottomley stayed behind and told ALLEN of his discussion with LOVE earlier that evening, and that he was going to acquire the LOVEs' membership. Following the Christmas party, Bottomley and ALLEN discussed that if Bottomley acquired the LOVEs' interest at no cost, Bottomley would split the cost of whatever it would have cost ALLEN to acquire a full membership in the Ranch, so that each of them would have the same financial investment into the memberships and split it that way.   The idea was that Bottomley and ALLEN would each have full memberships so they could use Warner Springs Ranch together.   In these conversations, Bottomley also learned from ALLEN that ALLEN was acting as a temporary judge in the Underlying Proceeding where LOVE was representing a party

19.   Within a week or ten days after the Christmas party, Bottomley decided the $260 monthly cost of a full membership in Warner Springs Ranch did not make good financial sense for he and his wife, and decided it would be better for them not to have a full A and B membership, but rather to have a B half-membership, and to see whether or not the A half-membership a part of what the

6

**EXHIBIT 2 PAGE 330** ___

205

LOVE00702

1   LOVEs were going to convey, could be converted to a B half-
2   membership to be given to ALLEN so that ALLEN could use the Ranch
3   at the same time as the Bottomleys. Bottomley then spoke to LOVE
4   about Bottomley and ALLEN each taking one of the two LOVE half
5   memberships. And although LOVE told Bottomley at the time that "I
6   really don't want to know any more about [your] business, but I
7   can't do anything directly with Mr. ALLEN", he nevertheless wrote
8   the below letter of January 11, 2002 to Warner Springs Ranch and
9   continued to work towards the transaction that placed one-half of
10  the LOVE's Warner Springs Ranch interest in Bottomley's name and
11  the other one-half in ALLEN's name. ALLEN was aware that both the
12  half interests were coming from LOVE.

13      20.  By letter dated January 11, 2002, LOVE solicited Warner
14  Springs Ranch to be able to convert his A and B half interests into
15  two A or two B half interests. LOVE sent a copy of his letter to
16  Bottomley. LOVE's letter states he "personally know[s] each of the
17  families to whom [he is proposing to sell his half interests] and
18  each of the male members of the families are attorneys," namely
19  Bottomley and ALLEN.

20      21.  Bottomley's handwritten notes reflect a telephone
21  conversation with LOVE on January 18, 2002. LOVE told Bottomley
22  that the Ranch would not allow conversion of the LOVEs' half
23  interests into either two A's or to B's. Bottomley then asked
24  LOVE if he could find out what it would cost to upgrade the half-
25  membership going to ALLEN to a full membership. Bottomley

CORONADO PROFESSIONAL SQUARE
1203 SECOND STREET AT "C" AVENUE
POST OFFICE BOX 180830
CORONADO, CALIFORNIA 92118-1417
(619) 437-1078
A PROFESSIONAL CO. STATION

7
COMPLAINT FOR DAMAGES

**EXHIBIT 2 PAGE 331**   206

1    discussed what LOVE had told him with ALLEN.

2    22.   Bottomley's handwritten notes also reflect a telephone

3    conversation with LOVE on January 23, 2002.  LOVE told Bottomley of

4    the "trade-up" option, whereby an owner of an A or a B half

5    membership could trade up to a full membership for $850.  Bottomley

6    

7    then discussed this with ALLEN

8    23.  Before transfer of the LOVEs' interests in Warner Springs

9    Ranch, ALLEN agreed with Bottomley that he would take one of the

10    one-half interests from the LOVEs, and use it to "trade-up" (with

11    $850) for a full membership.  This would permit ALLEN to use the

12    Ranch at the times when Bottomley would also be using the

13    facilities.  At the time ALLEN agreed with Bottomley to take one of

14    the LOVEs' half interests, ALLEN knew Bottomley was getting these

15    interests from LOVE, that Bottomley intended to then transfer one

16    of these interests to ALLEN, and that Bottomley did not intend to

17    keep both interests himself.

18    24.   Bottomley did not prepare any of the deeds which

19    

20    transferred the LOVEs' two half interests in Warner Springs Ranch.

21    LOVE (or someone on his behalf) prepared the Quitclaim Deed from

22    the LOVEs, and  ALLEN (or someone on his behalf) prepared the

23    Quitclaim Deed on to himself.  Bottomley explained to LOVE his

24    intention of transferring the 850A half-interest to ALLEN so ALLEN

25    could upgrade to a full membership.  Bottomley further explained

26    that because he was passing Unit 850A on to ALLEN, it did not make

27    sense for LOVE to prepare the Quitclaim Deed in Bottomley's and his

28

CORONADO PROFESSIONAL CORP. "BATON
ROUGE" POST OFFICE BOX 181152 AVENUE
1203 SECOND STREET AT 4TH AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-7978

8                          **EXHIBIT 2 PAGE 332** __ 207

LOVE00704

1   wife's names, as LOVE did with the 850B half-interest, which
2   Bottomley and his wife were keeping. Bottomley explained that all
3   he intended to do with the LOVES' 850A interest was to record the
4   Quitclaim Deed and then turn around and reconvey it to ALLEN so
5   they could begin to use the Ranch together as soon as possible.
6   The Quitclaim Deeds transferring the LOVE's interests in Warner
7   Springs Ranch recite they are "gifts".
8
9       25.  In February, 2002, ALLEN contacted Warner Springs Ranch
10  to ask if it would be possible for him to "upgrade" the half
11  interest he was going to receive through Bottomley to a full
12  interest (so that he and Bottomley could utilize the Ranch
13  facilities at the same time).
14      26.  On February 27, 2002, after receiving the recorded deeds
15  back from the San Diego County Recorder's office, Bottomley faxed
16  a copy of the Quitclaim Deed from the LOVEs for Unit 850A to ALLEN
17  for ALLEN to prepare the deed conveying this Unit on to himself.
18      27.  In mid-March, 2002, ALLEN prepared and had Bottomley sign
19  the deed gifting Unit 850A on to himself. This deeds recites it is
20  a "gift". ALLEN caused this deed to be recorded on March 18, 2002.
21      28.  After receiving the recorded deed to Unit 850A back from
22  the San Diego County Recorder, in late March, 2002, and prior to
23  May 20, 2002, ALLEN had communications with Warner Springs Ranch to
24  trade-up Unit 850A into a new, full membership. ALLEN was informed
25  that the title company had some questions regarding the transfer by
26  the LOVEs.
27
28

**EXHIBIT 2 PAGE 333**

9

COMPLAINT FOR DAMAGES

LOVE00705

29.   To resolve these questions, ALLEN called LOVE to discuss "some recordation problem," and asked Mr. LOVE's assistance in resolving a matter involving Unit 850A that had occurred when the LOVES owned the Unit.

### F. Concealment and Failure to disclose the gift.

30.   In a telephone status conference in the Underlying Proceeding, on April 30, 2002, ALLEN acting in his role as then temporary judge in the Underlying Proceeding, stated "... insofar as fees are concerned, that's one of the other issues that I'm still struggling with and I'm still looking at some of the pleadings and kind of going through my notes". Neither LOVE nor ALLEN made any disclosure of the gift of the LOVE's unit 850A to ALLEN in March of 2002.

31.   On October 11, 2002, ALLEN, acting in his role as then temporary judge in the Underlying Proceeding, reopened trial in the Underlying Proceeding to receive evidence on certain reserved issues, and trial was completed on that date.   At this hearing, ALLEN stated he would order Plaintiff herein to pay $250,000 of Petitioner's attorneys' fees and costs, including fees for LOVE

32.   On October 23, 2002, ALLEN, acting in his role as then temporary judge in the Underlying Proceeding, issued his Amended Statement Of Decision in the Underlying Proceeding.   On November 12, 2002, ALLEN, acting in his role as then temporary judge in the Underlying Proceeding, signed and issued his Second Amended Statement Of Decision and the final Judgment.

**EXHIBIT 2 PAGE 334**   209

10

COMPLAINT FOR DAMAGES

LOVE00706

33. On March 7, 2003, during a post-judgment hearing in the Underlying Proceeding attended by LOVE, Plaintiff's counsel objected to ALLEN presiding at the hearing inasmuch as ALLEN had not made a certification (under California Rule 244(b)). Although both knew, neither ALLEN nor LOVE disclosed the gift of the LOVE's Unit 850A which had been made to ALLEN in March of 2002.

34. Prior to filing his Statement Of Withdrawal in the Underlying Proceeding, ALLEN did not disclose the Warner Springs Ranch transactions. ALLEN has refused to answer why he did not disclose these transactions.

35. Since he acquired his interest in Warner Springs Ranch, ALLEN has used the Ranch facilities on multiple occasions.

### G. Setting aside of ALLEN's rulings

36. Defendants knew that the gift to ALLEN of the LOVES interest in Warner Springs Ranch would result in ALLEN being disqualified from acting as the temporary judge in the Underlying Proceeding.

37. As a result of the gift to ALLEN of the LOVES' half interest in Warner Springs Ranch, ALLEN was disqualified, and rulings of ALLEN while acting as his role as then temporary judge, have been set aside, and a new trial ordered on these set aside rulings. As a result, Plaintiff has lost the fees costs and expenses spent in the prior trial on the now set aside rulings, and will be required to incur the fees, costs and expenses in a new trial on these set aside rulings.

**EXHIBIT 2 PAGE 335**

COMPLAINT FOR DAMAGES

210

LOVE00707

CORC ADO PROFESSIO. AL SQUARE
POST OFFICE BOX 181593
1205 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-7978

1

2

### H. No judicial immunity

3    38.    Except where otherwise expressly stated to the contrary,

4   the actions and conduct of ALLEN alleged herein were not done by

5   him in his role or capacity as a judicial officer. The actions and

6   conduct on which ALLEN is sued herein are not judicial acts.

7    ### I. No litigation privilege

8    39.    the actions and conduct on which Defendants are sued

9   herein were done in the conduct of the Underlying Proceeding.

10    ### J. Estoppel to rely on statute of limitations

11    40.    Defendants are estopped to rely on all applicable statute

12   of limitations because, prior to the time such applicable statute

13   of limitations would have run (a) Defendants fraudulently concealed

14   and failed to disclose the fact of the gift to ALLEN of the LOVES'

15   half interest in Warner Springs Ranch, (b) Defendants fraudulently

16   concealed that Plaintiff had the causes of action alleged herein,

17   (c) Plaintiff reasonably relied upon Defendants fraudulent

18   concealments, and that Defendants would act in accordance with the

19   disclosure requirements provided by law, (d) Defendants intended

20   their concealments to be acted upon by Plaintiff, and Plaintiff had

21   the right to believe that the fact Defendants made no disclosure

22   was intended to be relied upon that no gifts had been made, and

23   (e) Plaintiff exercised due diligence to ascertain the truth, and

24   did not disclose the gift to ALLEN of the LOVES' half interest in

25   Warner Springs Ranch prior to March 7, 2003.

26

27   / / /

28

**EXHIBIT 2 PAGE 336**

12

COMPLAINT FOR DAMAGES

## FIRST CAUSE OF ACTION
## FOR INTENTIONAL INTERFERENCE WITH
## CONTRACTUAL RELATIONS AGAINST
## ALL DEFENDANTS

41. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 40 hereinabove set forth.

42. At times herein relevant, there existed contracts between Plaintiff and Petitioner, including a prenuptial agreement, agreements for the ownership and control of real and personal property, and deposit accounts.

43. At times herein relevant, there existed contracts between Plaintiff and third persons, including with Qualcomm relating to the acquisition of Qualcomm stock and stock options, and loans to Qualcomm.

44. At times herein relevant, there existed a contract between Plaintiff and Plaintiff's counsel in the Underlying Proceeding for providing legal services to Plaintiff in that proceeding on a fee-for service basis.

45. Defendants knew of the existence of each of these contracts.

46. In engaged in the actions and conduct herein above alleged in the Factual Background, Defendants either (a) intended to prevent Plaintiff's performance or to cause Plaintiff's performance under the aforementioned contracts to be more expensive and burdensome, or (b) knew that prevention of Plaintiff's

A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
1203 SECOND STREET AT C AVENUE
POST OFFICE BOX 181930
CORONADO, CALIFORNIA 92118-1917
(619) 437-1878

**EXHIBIT 2 PAGE 337**

13

COMPLAINT FOR DAMAGES

1    performance was certain or substantially certain to occur or that

2    Plaintiff's performance would be more expensive or burdensome as a

3    result of Defendants' actions and conduct.

4        47. Defendants engaged in the actions and conduct hereinabove

5    alleged in the Factual Background which either (a) prevented

6    Plaintiff's performance of those contracts or (b) caused

7    Plaintiff's performance to be more expensive and burdensome.

8

9        48. The actions and conduct of Defendants and hereinabove

10    alleged in the Factual Background interfered with Plaintiff's

11    contractual relations and were a cause of damage to Plaintiff in an

12    amount according to proof in excess of $25,000.

13        49.  The actions and conduct of Defendants as hereinabove

14    alleged were willful and oppressive, fraudulent and malicious,

15    entitling Plaintiff to an award of punitive and exemplary damages

16    in an amount according to proof.

17

18                    SECOND CAUSE OF ACTION
               FOR INTENTIONAL INTERFERENCE WITH
19             CONTRACTUAL RELATIONS AGAINST LOVE

20        50.  Plaintiff reallege and incorporate herein by reference

21    each and every allegation contained in paragraphs 1 through 40

22    hereinabove set forth.

23        51.  At times herein relevant, there existed an agreement for

24    payment by Plaintiff of ALLEN's services in the Underlying

25    Proceeding on a fee-for-service basis.

26        52.  LOVE knew of the existence of the contract.

27        53.   In engaging in the actions and conduct hereinabove

28

A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181530
1205 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92178-1417
(619) 437-1878

                              14

**EXHIBIT 2 PAGE 338** ___    213

LOVE00710

1    alleged in the Factual Background, LOVE either (a) intended to

2    cause Plaintiff's performance under the contract to be more

3    expensive or burdensome, or (b) knew that Plaintiff's performance

4    would be more expensive or burdensome as a result of LOVE's actions

5

6    and conduct.

7         54.   LOVE engaged in the actions and conduct hereinabove

8    alleged in the Factual Background which caused Plaintiff's

9    performance of the contract to be more expensive and burdensome.

10        55. The actions and conduct of LOVE as hereinabove alleged in

11   the Factual Background interfered with Plaintiff's contractual

12   relations and were a cause of damages to Plaintiff in an amount

13   according to proof in excess of $25,000.

14        56.   The actions and conduct of LOVE as hereinabove alleged

15   were willful and oppressive, fraudulent and malicious, entitling

16   Plaintiff to an award of punitive and exemplary damages in an

17   amount according to proof.

18

19                    THIRD CAUSE OF ACTION
                 FOR INTENTIONAL INTERFERENCE WITH
20              PROSPECTIVE ECONOMIC ADVANTAGE
                     AGAINST ALL DEFENDANTS
21

22        57.   Plaintiff realleges and incorporates herein by reference

23   each and every allegation contained in paragraphs 1 through 40

     hereinabove set forth.
24

25        58.   At times herein relevant and as more fully alleged in the

26   Factual Background, there existed economic relationships between

27   Plaintiff and Petitioner, between Plaintiff and Plaintiff's counsel

28

                              15          **EXHIBIT 2 PAGE 339** 214
                      COMPLAINT FOR DAMAGES

                                                        LOVE00711

1  in the Underlying Proceeding, and between Plaintiff and Qualcomm

2  and other third persons engaging or proposing to engage in business

3  transactions with Plaintiff, containing a probably future economic

4  benefit or advantage to Plaintiff.

5  59. Defendants knew of the existence of these relationships.

6  60. Defendants engaged in wrongful conduct as hereinabove

7  alleged in the Factual Background designed to interfere with or

8  disrupt these relationships.

9  61. Defendants engaged in said wrongful conduct either (a)

10  with the intent to interfere with or disrupt these relationships,

11  or (b) with the knowledge that the interference or disruption was

12  certain or substantially certain to occur as a result of Defendants

13  actions.

14  62. The economic relationships were actually interfered with

15  or disrupted.

16  63. The wrongful conduct of Defendants which was designed to

17  interfere with or disrupt these relationships caused damage to

18  Plaintiff in an amount according to proof in excess of $25,000.

19  64. The actions and conduct of Defendants as hereinabove

20  alleged were willful and oppressive, fraudulent and malicious,

21  entitling Plaintiff to an award of punitive and exemplary damages

22  in an amount according to proof

23
24

25               FOURTH CAUSE OF ACTION
           FOR INTENTIONAL INTERFERENCE WITH
26          PROSPECTIVE ECONOMIC ADVANTAGE
                   AGAINST LOVE
27

28

A [PROFESSIONAL CORPORATION]
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 180898
1203 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1873

**EXHIBIT 2 PAGE 340**  215

LOVE00712

65.  Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 40 hereinabove set forth.

66.  An economic relationship existed between Plaintiff and Allen, containing a probable future economic benefit or advantage to Plaintiff.

67.  LOVE knew of the existence of this relationship.

68.  LOVE engaged in wrongful conduct as hereinabove alleged in the Factual Background designed to interfere with or disrupt this relationship.

69.  LOVE engaged in this wrongful conduct either (a) with the intent to interfere with or disrupt this relationship or (b) with the knowledge that the interference or disruption was certain or substantially certain to occur as a result of LOVE's actions.

70.  The economic relationship was actually interfered with or disrupted.

71.  The within conduct of LOVE which was designed to interfere with or disrupt this relationship caused damage to Plaintiff in an amount according to proof in excess of $25,000.

72.  The actions and conduct of LOVE as hereinabove alleged were willful and oppressive, fraudulent and malicious, entitling Plaintiff to an award of punitive and exemplary damages in an amount according to proof.

FIFTH CAUSE OF ACTION
FOR NEGLIGENT INTERFERENCE WITH
PROSPECTIVE ECONOMIC ADVANTAGE

<u>AGAINST ALL DEFENDANTS</u>

73.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraph 1 through 40 as hereinabove set forth.

74.   At times herein relevant and as more fully alleged in the Factual Background, an economic relationship existed between Plaintiff and Petitioner, between Plaintiff and Plaintiff's counsel in the Underlying Proceeding, and between Plaintiff and Qualcomm and other third persons engaging and proposing to engage in business transactions with Plaintiff, containing a probably future economic benefit of advantage to Plaintiff.

75.  Defendants knew of the existence of these relationships.

76.   Defendant engaged in the within conduct as hereinabove alleged in the Factual Background.

77.   It was reasonably foreseeable that Defendants wrongful conduct would interfere with or disrupt these economic relationships if Defendants failed to exercise due care.

78.   These economic relationships were actually interfered with and disrupted as a proximate result of Defendants' conduct.

79.   Defendants' conduct caused Plaintiff damage in that Plaintiff lost in whole or in part the economic benefit or advantage from these economic relationships in an amount according to proof in excess of $25,000.

<u>SIXTH CAUSE OF ACTION</u>
<u>FOR CIVIL RIGHTS VIOLATIONS</u>
<u>AGAINST ALL DEFENDANTS</u>

CORAL "REGIONAL CORPC TION
LAW PROFESSIONAL SQUARE
POST OFFICE BOX 180
1203 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1873

18
COMPLAINT FOR DAMAGES

**EXHIBIT 2 PAGE 342**   217

80.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraph 1 through 40 hereinabove set forth.

81.   As more fully alleged in the FACTUAL BACKGROUND, Defendants interfered or attempted to interfere by coercion with the exercise or enjoyment by Plaintiff of rights to a fair trial secured by the Constitution and laws of the United States and of the State of California.

82.   As more fully alleged in the Factual Background, the interference or attempted interference in Plaintiff's right to a fair trial caused Plaintiff to suffer injury, damage, loss and harm in an amount according to proof in excess of $25,000.

83.   The actions and conduct of Defendants as hereinabove alleged were willful and oppressive, fraudulent and malicious entitling Plaintiff to an award of punitive and exemplary damages in an amount according to proof.

<u>SEVENTH CAUSE OF ACTION</u>
<u>FOR DECEIT</u>
<u>FRAUDULENT CONCEALMENT</u>
<u>AGAINST ALL DEFENDANTS</u>

84.   Plaintiff realleges and incorporate herein by reference each and every allegation contained in paragraph 1 through 40 hereinabove set forth.

85.   As more fully alleged in the Factual Background, Defendants did not disclose the fact of the gift to ALLEN of the

A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181830
1203 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1978

**EXHIBIT 2 PAGE 343**    218

COMPLAINT FOR DAMAGES

L0VE00715

1   LOVE's interest in Warner Springs Ranch, which gift Defendants
2   should have disclosed because, at the time of the gift LOVE was
3   attorney for Petitioner in the Underlying Proceeding and ALLEN was
4   the temporary judge in that proceeding, and the gift resulted in
5   the immediate disqualification of ALLEN from acting as temporary
6   judge in the Underlying Proceeding.
7

8        86.  Defendants knew that they concealed or failed to disclose
9   the fact of the gift to ALLEN of the LOVE's interest in Warner
10  Springs Ranch.

11       87.  Defendants intended that their concealment of or failure
12  to disclose said facts would cause Plaintiff to proceed in the
13  Underlying Proceeding without challenging ALLEN's acting as the
14  temporary judge, to continue to pay ALLEN's invoices for his
15  services, and to continue to pay the invoices of Bruno, Mack and
16  Barclay and other experts retained by ALLEN and by Plaintiff.
17

18       88.  Plaintiff relied on the fact that Defendants had not
19  disclosed the gift to ALLEN of the LOVE's interest in Warner
20  Springs Ranch.

21       89.  Plaintiffs was justified in relying on the fact that
22  Defendants had not disclosed the gift to ALLEN of the LOVE's
23  interest in Warner Springs Ranch.

24       90.  As a result of Defendants' deceit and fraudulent
25  concealment, Plaintiff has and will continue to sustain damages in
26  an amount according to proof in excess of $25,000.

27       91.  The actions and conduct of Defendants as hereinabove
28

CORONADO, CALIFORNIA 92118-1417
1203 SECOND STREET AT "C" AVENUE
A LAW CORPORATION
CORONADO PROFESSIONAL SQUARE
"PROFESSIONAL COR..."RATION
(619) 437-1079

**EXHIBIT 2 PAGE 344___** 219

LOVE00716

1   alleged were willful and oppressive, fraudulent and malicious,

2   entitling Plaintiff to an award of punitive and exemplary damages

3   in an amount according to proof.

4

5
            **EIGHTH CAUSE OF ACTION**
6
        **FOR BREACH OF CONTRACT AGAINST ALLEN**
7
        92.  Plaintiff realleges and incorporate herein by reference
8
    each and every allegation contained in paragraph 1 through 40
9
    hereinabove set forth.
10
        93.  As more fully alleged in the Factual Background, ALLEN
11
    breached his agreement with Plaintiff in, among other things, ALLEN
12
    continued to invoice and to accept payment from Plaintiff for
13
    services allegedly rendered by ALLEN after he had accepted the gift
14
    of the LOVES' half interest in Warner Springs Ranch and knew he was
15
    disqualified and thus barred as an attorney from making further
16
    charges to Plaintiff.  In submitting each invoice to Plaintiff,
17
    ALLEN represented he was entitled to payment of the amounts billed.
18
        94.  There is implied in every contract a covenant of good
19
    faith and fair dealing to refrain from doing anything which would
20
    interfere with the rights of the other party to receive the
21
    benefits of the contract.
22
        95.  Plaintiff has performed all terms of his agreement to pay
23
    ALLEN required on Plaintiff's part to be performed.
24
        96.  As a result of ALLEN's breach of the implied covenant of
25
    good faith and fair dealing and breach of his agreements with
26
    Plaintiff as aforesaid, Plaintiff has and will continue to sustain
27

28

OFESSIONAL CORP., INT'ON
CORONADO PROFESSIONAL SQUARE
1203 SECOND STREET AT FIRST AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1278

                          21                                    220
            COMPLAINT FOR DAMAGES  **EXHIBIT 2 PAGE 345**

damages according to proof in excess of $25,000.

### NINTH CAUSE OF ACTION
### FOR UNFAIR COMPETITION
### AGAINST LOVE

97.  Plaintiff realleges and incorporate herein by reference each and every allegation contained in paragraph 1 through 40 hereinabove set forth.

98.  As more fully alleged in the Factual Background, LOVE engaged in unfair and fraudulent business acts and practices in violation of Business and Profession Code §17200, et seq.  LOVE's gift to ALLEN of his half interest in the Warner Springs Ranch was an unfair and fraudulent business act and practice designed to provide, and which provided LOVE, an unfair advantage over Plaintiff in the Underlying Proceeding.

99.  As a result of the fraudulent acts and business practices of LOVE as aforesaid, Plaintiff is entitled to restitution in an amount according to proof in excess of $25,000.

### PRAYER

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1.  For general and special damages in an amount in excess of $25,000.00 according to proof;

2.  For punitive damages in an amount appropriate to punish or set an example of Defendants;

3.  For interest at the maximum legal rate permitted by law;

4.  For attorney fees in an amount according to proof;

22

COMPLAINT FOR DAMAGES

EXHIBIT 2 PAGE 346

221

LOVE00718

1    5.    For costs of suit in an amount according to proof; and

2    7.    For such other and further relief as the Court deems just

3   and proper.

4   Dated: March 7, 2005

5                                    FRANK E. ROGOZIENSKI, INC.

6

7

8                            By: _____

9                                    Frank E. Rogozienski
                                     Attorney for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              23
                    COMPLAINT FOR DAMAGES          **EXHIBIT 2 PAGE 347 —**     222

LOVE00719

EXHIBIT 9

LOVE00720

1  Douglas M. Butz, Esq. (SBN 060722)
   BUTZ DUNN DESANTIS & BINGHAM
2  A Professional Corporation
   Attorneys At Law
3  101 West Broadway, Suite 1700
   San Diego, California 92101-8289
4  (619) 233-4777 / Facsimile (619) 231-0341

5  S. Michael Love, Esq. (SBN 54004)
   McDOUGAL, LOVE, ECKIS, SMITH & BOEHMER
6  460 North Magnolia
   P.O. Drawer 1466
7  El Cajon, California 92022
   (619) 440-4444 / Facsimile (619) 440-4907

8

9  Attorneys for Petitioner, SHIRLEY LONG ROGOZIENSKI

10

F  I  L  E  D
STEPHEN V. LOVE
Clerk of the Superior Court

APR 2 6 2004

N. MARRACCINI, Deputy

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                     FOR THE COUNTY OF SAN DIEGO

13  In Re The Marriage Of:

14  Petitioner: SHIRLEY L. ROGOZIENSKI                No. D 440154

15       and                                         DECLARATION OF ANTHONY C.
                                                     JOSEPH, SUPERIOR COURT JUDGE,
16  Respondent: FRANK E. ROGOZIENSKI                 RETIRED IN SUPPORT OF PETITIONER'S
                                                     OPPOSITION TO RESPONDENT'S
17                                                   MOTION TO SET ASIDE JUDGMENT AND
                                                     NON-STIPULATED INTERLOCUTORY
18                                                   RULINGS OF THEN TEMPORARY JUDGE
                                                     JAMES D. ALLEN
19
                                                     DATE: 5/20/04
20                                                   TIME: 1:30 p.m.
                                                     DEPT.: F-1
21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                                                     **EXHIBIT 2 PAGE 349**    224

DECLARATION OF ANTHONY C. JOSEPH, SUPERIOR COURT JUDGE, RETIRED IN SUPPORT OF...
RESPONDENTS MOTION...

LOVE00721

1

2

### EXPERT OPINION OF ANTHONY C. JOSEPH,
### SUPERIOR COURT JUDGE, RETIRED

3      1.    I have been engaged by counsel for Shirley Rogozienski to review and provide

4 expert opinions as to the reasonableness and propriety of certain rulings issued by temporary Judge

5 James D. Allen in connection with the dissolution action entitled <u>Rogozienski v. Rogozienski</u> San

6 Diego Superior Court Case No. D440154.

7

8                                    BACKGROUND

9      2.    From October 24, 1979 through November 1, 1999, I served as a Judge on the San

10 Diego County Superior Court. From October 1979 through 1984, I was a Family Law Judge in

11 both the North County and Downtown Divisions of the San Diego Superior Court.  For the time

12 period 1984-1985, I was the supervising Family Law Judge for the San Diego Superior Court.

13 From 1985 through my retirement on November 1, 1999, I continued to receive family law

14 assignments.

15      From 1987 through 1990 I served as Chair of the California Judicial Council Advisory

16 Committee on Family Law.  This committee was responsible for making recommendations to the

17 Judicial Council on issues relating to family law.  I also served on the faculty for the California

18 Judicial College (1984-1987) and the sole instructor for all Superior Court Judge's Orientation

19 Program (1984-1990) where I taught family law to newly appointed judges.

20

21      In 1985, I was the first recipient of the California State Bar's Family Law Judicial Officer

22 of the Year Award.  A true and correct copy of my current resume is attached as Exhibit "A" to this

23 expert report.

24

25                                    <u>INTRODUCTION</u>

26      3.    In connection with my assignment in this matter, I have been provided access to a

27 substantial volume of materials.  In forming the opinions expressed herein, I have reviewed and

28 relied on the documents identified in Exhibit "B" to this report.

(IN)
SAN DIEGO, CALIFORNIA 92101
(619) 233-4777

2

225

**EXHIBIT 2 PAGE 350**

LOVE00722

4.   This marital dissolution proceeding was decided in three phases.  The first phase was in regard to the "Prenuptial Agreement and Its Effect Between the Rogozienskis."

The second phase related to the duty of Frank Rogozienski toward Shirley Rogozienski during their marriage in regard to the use of separate funds when community funds were available to invest in Qualcomm stock and options.  As to the second phase, upon completion of a statement of decision by Judge Allen, the parties arrived at a stipulation and order regarding stock options which resolved all issues presented in the second phase.  It is my understanding that Mr. Rogozienski is not seeking to set aside the stipulated judgment arrived at in regard to the second phase. This stipulation was filed with the Court on December 7, 2000.

The third phase resolved all remaining issues as set forth in pretrial memoranda by the parties and their Counsel. The third phase of the trial began October 24, 2001. The case was tried for 13 days and thereafter, in October of 2002, there was a one day hearing relating to previously agreed upon limited issues.  The Court's SECOND AMENDED STATEMENT OF DECISION was signed by Judge Allen on November 12, 2002.  Thereafter, a judgment was issued, signed and date-stamped on November 25, 2002.

5.   My review of Judge Allen's rulings focused primarily on three documents: (1) STATEMENT OF DECISION date-stamped May 10, 1999 (regarding the Prenuptial Agreement); (2) the SECOND AMENDED STATEMENT OF DECISION signed by Judge Allen on November 12, 2002; and (3) the Judgment date-stamped November 25, 2002.

### OPINION

6.   Based on my judicial training and experience, knowledge of family law principles and a review of the materials identified in Exhibit "B", it is my opinion that the relevant rulings issued by Judge Allen are reasonable and appropriate under California law and the facts of the underlying dissolution proceeding.  In my opinion, Judge Allen's rulings do not exhibit bias or prejudice against either party and do not appear to be the result of undue or inappropriate influence. In my opinion, Judge Allen's rulings are consistent with rulings I would expect to be made by

L. WEST BROADWAY, SUITE 1700
SAN DIEGO, CALIFORNIA 92101
(619) 233-4777

DECLARATION OF ANTHONY C. JOSEPH, SUPERIOR COURT JUDGE

3

**EXHIBIT 2 PAGE 351**

226

LOVE00723

1  experienced family law judges deciding an identical case upon a factually similar record as

2  presented here.

3      It is significant to note that several of the rulings issued by Judge Allen were in favor of

4  Frank Rogozienski. I have briefly noted those rulings in this report but have not evaluated or

5  formed any opinion as to the reasonableness of those rulings. Nevertheless, the existence of

6  various rulings in favor of Frank Rogozienski is certainly a part of the evidence I considered in

7  reaching my opinion that Judge Allen's rulings do not appear to be the result of bias or any undue

8  or inappropriate influence.

9      In addition to the overall opinion, I have also formed a number of specific opinions which

10  are set forth hereafter.

11

12  ## PHASE 1: PRENUPTIAL AGREEMENT

13      7.    Judge Allen ruled that: "the prenuptial agreement, dated January 29, 1982, is valid

13  and enforceable. It does not, however, do more than itemize the separate property brought into the

14  marriage by each party and to confirm that the earnings, profits, appreciation, etc. attributable to

15  such property shall also be that party's separate property." This ruling is reasonable, appropriate

16  and supported by the testimony, the parties' documentary evidence, and the briefs submitted in

17  regard to the prenuptial agreement.

**EXHIBIT 2 PAGE 352**

18      I have reviewed the prenuptial agreement at issue. Judge Allen's legal interpretation of the

19  writing is reasonable and appropriate. A reasonable and unbiased jurist could conclude that as a

20  matter of law, the agreement does nothing more than state and apply California general community

21  property law to the pending marriage of Frank Rogozienski and Shirley Long (later Shirley

22  Rogozienski): separate property, and increases in the value of separate property based on

23  "passive" benefits, would remain the separate property of the parties to the prenuptial agreement;

24  otherwise, earnings during marriage were community property.

25      Moreover, to the extent extrinsic evidence was considered, I believe Judge Allen's ruling is

26  supported by the trial exhibit referred to as "the Huntoon Agreement." This document, drafted by

27  Mr. Rogozienski years prior to his drafting of the agreement at issue, demonstrates that Mr.

28  Rogozienski is able to clearly and expressly draft language by which the earnings of the persons

227

4

1421-1431 BROADWAY, SUITE 1700
SAN DIEGO, CALIFORNIA 92101
(619) 233-4777

LOVE00724

1   involved would be the separate property of the earning party despite their living together as a

2   community. Significantly, the agreement Mr. Rogozienski drafted for himself and Shirley (later

3   Mrs. Rogozienski) does not contain this or any similar language. As Judge Allen noted, Mr.

4   Rogozienski knew how to, but did not, draft language "stating that all property acquired during

5   marriage would be the separate property of the acquiring party."

6          8.    Additionally, it is my understanding Mrs. Rogozienski sought to invalidate the

7   prenuptial agreement based on a claim of duress. In this regard, Mrs. Rogozienski testified she was

8   presented with the prenuptial agreement just prior to the wedding ceremony and as a condition to

9   Mr. Rogozienski proceeding with the wedding. Mrs. Rogozienski testified at the time she was

10  three and one-half months pregnant with the couple's child and had been experiencing regular and

11  debilitating bouts of morning sickness.

12          Judge Allen declined to find duress. However, it is my opinion a finding of duress

13  could be supported by the evidence and appropriate legal authorities. A finding of duress would

14  have provided a basis to render the prenuptial agreement unenforceable.

15              PHASE 2: DUTY OF A SPOUSE REGARDING INVESTMENT

16         OPPORTUNITY TO THE COMMUNITY WHERE SEPARATE FUNDS EXIST

17          9.    After much briefing a careful opinion was provided on this issue. However, on

18  December 7, 2000 the parties entered into a stipulation and order regarding stock options. This

19  stipulation was signed by the parties and their counsel, and resolved all issues involved in the

20  second phase. Since Mr. Rogozienski is not seeking to set aside stipulated orders, there is no

21  further need for an expert opinion as to whether these issues were appropriately decided.

22              PHASE 3: REMAINING ISSUES AT TRIAL

23          10.   The judgment in the Rogozienski dissolution matter is date-stamped November 25,

24  2002. Attached as part of and incorporated in the judgment is a document entitled

25  "ATTACHMENT TO JUDGMENT." The decisions set forth in the ATTACHMENT TO

26  JUDGMENT parallel the "SECOND AMENDED STATEMENT OF DECISION" signed by Judge

27  Allen on November 12, 2002.

28

**EXHIBIT 2 PAGE 353**

228

5

L0VE00725

1    The first page of the ATTACHMENT TO JUDGMENT sets forth preliminary matters,

2  including prior rulings made. The rulings on the issues presented in the third phase begin at the top

3  of page two. These rulings follow the SECOND AMENDED STATEMENT OF DECISION,

4  wherein the issues are discussed in greater detail. Reviewing the numbered paragraphs beginning

5  at the top of page two of the ATTACHMENT TO THE JUDGMENT, the following opinions are

6  expressed:

7      a.  Judge Allen sets forth the date of marriage and date of separation, and orders the marriage

8  dissolved. Although there was an issue regarding the date of separation, Judge Allen accepted the

9  date provided by Mr. Rogozienski. There are no legal issues involved in this paragraph.

10      b.  Judge Allen's ruling that the 16,000 shares of Qualcomm "Founders' Stock" are

11  community property is reasonable and appropriate under California law and the relevant facts.

12  There can be no dispute that the stock was acquired while the parties were married because

13  Qualcomm stock was first issued after the Rogozienskis' marriage. Moreover, Mr. Rogozienski

14  contends he was not an employee and thus not similarly situated to the other recipients of

15  Founders' Stock. This assertion is not reasonable given the history and background of the issuance

16  of the Founder's stock and Mr. Rogozienski's role with Qualcomm.

17

18      Although Mr. Rogozienski was not receiving a paycheck from Qualcomm other than for his

19  services as an attorney, it is clear that the shares he received were based on his relationship as a

20  Founder and Officer of Qualcomm. Mr. Rogozienski prepared the stock agreements for all of the

21  recipients of Qualcomm Founders' Stock, including himself. Mr. Rogozienski's Internal Revenue

22  Code Section 83b election supports the conclusion the Founders' Stock was provided to Mr.

23  Rogozienski as a person closely connected with the initial years of Qualcomm, and he was

24  similarly situated with the other recipients of Qualcomm Founders' Stock. Moreover, in 1985 and

25  1986, when the initial shares were issued, stock was not being offered to members of the general

26  public, even by private placement. The stock was being offered only to "officers, employees and

27  consultants" of the fledgling corporation, because these "officers, employees and consultants are

28  necessary to the company's growth and success.".

229

**EXHIBIT 2 PAGE 354**

-6-

1   Finally, although not a ruling favorable to Mrs. Rogozienski, I agree with Judge Allen's

2   ruling that the community was required to reimburse Mr. Rogozienski for the $12,000 of his

3   separate property that he spent on 12,000 shares of the Founders' Stock in 1985.

4   c.  I am unaware of any dispute as to the determination that the Leap Wireless International,

5   Inc. stock should be divided similarly to the Qualcomm stock received by the parties.

6   d.  Judge Allen's decision that the Qualcomm and related Leap Wireless stock attributable to

7   the Founders' Stock was community property, and that such stock should be equally divided, was

8   reasonable and appropriate and follows from the conclusions and rulings set forth in paragraph b.

9   e.  The ruling that the remaining shares of Qualcomm and related Leap Wireless stock are the

10  separate property of Mr. Rogozienski is favorable to Mr. Rogozienski and I express no opinion on

11  this portion of the ruling.

12

13  f.  Judge Allen next divided the shares of Qualcomm stock that resulted from a $320,000 loan

14  in December 1988 to the corporation.  The analysis and discussion that form the basis for this

15  decision are located in paragraphs 12-16 and 18 of the SECOND AMENDED STATEMENT OF

16  DECISION.

17  The $320,000 loaned to Qualcomm was composed of $270,000 from the Frank E.

18  Rogozienski, Inc. Profit-Sharing Plan Trust and $50,000 from a bank account. The separate

19  property characterization of the stock associated with the $50,000 is favorable to Mr. Rogozienski.

20  The rulings related to the characterization of the remaining $270,000 are reasonable and

21  appropriate under California law and the evidence presented. The application of the law as it

22  existed at the time of the judgment and SECOND AMENDED STATEMENT OF DECISION to

23  these findings appears correct.

24

25  g.  Judge Allen's determination as to the community interest in the Frank E. Rogozienski, Inc.

26  Pension Plan is favorable to Mr. Rogozienski.  However, other evidence was presented that could

27  have resulted in a different community property determination (and one more favorable to Mrs.

28  Rogozienski).

7

**EXHIBIT 2 PAGE 355**

230

LOVE00727

h. The analysis and discussion that form the basis for Judge Allen's determination of the community interest in Mr. Rogozienski's law practice are located at paragraphs 21 through 24 of the SECOND AMENDED STATEMENT OF DECISION. Judge Allen's ruling determining the community interest in Mr. Rogozienski's law practice is favorable to Mr. Rogozienski. Once again, other evidence was presented that could have resulted in a different community property determination (and one more favorable to Mrs. Rogozienski).

11. With regard to the Alex Brown & Sons account and Mr. Rogozienski's sale of 10,000 shares of Qualcomm stock owned by the community, Judge Allen reasonably ruled there would be an equal division of the value of the purchased securities. Mr. Rogozienski's personal use of community funds from the Alex Brown & Sons account was appropriately ordered to be reimbursed from Mr. Rogozienski's separate funds. The support for this ruling is in paragraphs 25 and 26 of the SECOND AMENDED STATEMENT OF DECISION.

12. It was reasonable and appropriate for Judge Allen to rule the two timeshares received into the Frank E. Rogozienski law firm as payment of obligations during the Rogozienski marriage are community property.

13. There is no dispute as to the distribution of the coin collection, the air miles, the vehicle, and household furniture and furnishings in Mr. Rogozienski's possession, or as to Mrs. Rogozienski receiving the vehicle, household furniture and furnishings in her possession as of the date of separation (see paragraph 27 and 28 of the SECOND AMENDED STATEMENT OF DECISION).

**EXHIBIT 2 PAGE 356**

14. Judge Allen's rulings regarding ongoing spousal support and reallocation of support based on Mr. Rogozienski's Order to Show Cause of July 6, 2001 are reasonable and appropriate and in conformance with California law. The stated analysis, including the income and wealth of each party, the stated needs of Mrs. Rogozienski, the length of the marriage, the standard of living of the Rogozienskis, the success of Mr. Rogozienski's law firm, Mrs. Rogozienski's present circumstances, and the other Family Code Section 4320 factors are all appropriate. Judge Allen properly established the basis for ongoing support. Judge Allen's rulings on the Order to Show

8

231

1   Cause Re: Allocation of Support terminating the "stipulated $7,000 a month unallocated support as
2   of June 16, 2001 and continuing such support as spousal support from that date until November
3   2002, when the $12,250 monthly support is ordered," is reasonable and appropriate in light of the
4   facts regarding the prior entitlement to child support of the parties' son and the effect of child
5   support termination (see paragraph 29 of SECOND AMENDED STATEMENT OF DECISION).

6       15.    In light of the ability of the parties, the disparity of their assets, and the amount paid
7   by Mrs. Rogozienski for counsel, experts, and other associated costs (see Declaration of Shirley
8   Rogozienski, page 2, ¶3 filed July 12, 2002 and Exhibit 10 to Frank Rogozienski's Notice of
9   Lodgment), the grant of $250,000 for attorneys' fees to be paid by Mr. Rogozienski on behalf of
10  Mrs. Rogozienski is again reasonable and appropriate under the facts and circumstances of this
11  particular proceeding. Further, Judge Allen ruled that costs incurred but not paid by the parties
12  from community property shall be borne by the party incurring said costs from the date of the order
13  (see paragraph 31 of the SECOND AMENDED STATEMENT OF DECISION).

14      Dated this 26th day of April 2004.

15

16                                              Anthony C. Joseph

17                          Anthony C. Joseph, Superior Court Judge, Retired

18

19

20

21

22

23

24

25

26

27                                              **EXHIBIT 2 PAGE 357**

28
                                                                                    232

                                    9
DECLARATION OF ANTHONY C. JOSEPH, SUPERIOR COURT JUDGE, RETIRED IN SUPPORT OF PETITIONERS OPPOSITION TO

L0VE00729

**EXHIBIT 2 PAGE 358**

233

## ANTHONY C. JOSEPH

University of California, Boalt School of Law, LL.B., 1961

**PRIVATE DISPUTE RESOLUTION**
        From February, 2000 to present, offering Alternative Dispute Resolution services in filed and pre-filed matters.  Services include acting as a neutral in arbitration, mediation and settlement conferences in all types of civil proceedings; working on a wide variety of cases, including business, real estate, anti-trust, torts, malpractice, family and trust matters.

**JUDGE, SUPERIOR COURT, SAN DIEGO COUNTY, Oct. 24, 1979 - Nov. 1, 1999**
        Supervising Judge, Family Law, 1984-85
        Supervising Judge, North County Superior Court, 1988-89
        Independant Calendar Judge, 1991-99
                Chair, Superior Court ADR Committee, 1993; 1995-99
                Member, Superior Court ADR Committee, 1992; 1994
                Member, Executive Committee, 1984-85; 1988-89

**CALIFORNIA JUDICIAL COUNCIL**
        Chair, Advisory Committee on Family Law, 1987-90
        Member, Access and Fairness Standing Advisory Committee, 1994-96

**CALIFORNIA JUDGES ASSOCIATION**
        Executive Board, 1986-88
        Education Committee, 1986-90

**FACULTY**
        California Judges Association Mid-Year Conference, 1987; 1988; 1990-92;
                1999; Conference Chair, 1987; 1992
        Superior Court Judges Orientation Program Family Law, 1984-90.
        California Continuing Judicial Studies Program, 1984-88; 1998;
                1999 (Complex Litigation)
        California Judicial College, 1984-87 (Family Law, Civil Overview)
        CJER Institutes: Family Law, 1982-87
                Chair, Planning Committee for Family Law Institute, 1985
        Rutter Group, U.S.D. Law School, San Diego Bar Family Law Section, C.E.B.

**AWARDS**
        California Bar, Family Law Section
                Family Law Judge of the Year, 1985 (First Recipient)
        Lawyers Club San Diego
                Belva Lockwood Service Award, 1986
        Lawyers Club San Diego, North County Chapter
                Advancing the Status of Women in the Law, 1990
                Madge Bradley Award, 1994
        San Diego Consumer Attorneys
                Superior Court Judge of the Year, 1998

**EXHIBIT 2 PAGE 359**    234

L0VE00731

### Hon. Anthony C. Joseph, Retired

Following his retirement in November, 1999 after 20 years of service as a Superior Court Judge in San Diego County, the Hon. Anthony C. Joseph is available for Private Dispute Resolution, including Mediation, Arbitration, Case Management, and as a Special Master in pre-filed and filed Civil and Family Law matters.

Throughout his tenure on the bench, Judge Joseph has remained strongly committed to alternative resolution of disputes. He chaired the Alternative Dispute Resolution Committee of the San Diego Superior Court from 1995 through 1999. Recently he helped to obtain a $1.2 million four year grant which authorizes San Diego Superior Court Judges to order mediation in virtually all civil cases filed. He completed training as a Mediator at the San Diego Mediation Center and has served on the Center's Board of Directors. Since retirement Judge Joseph has been a member of the Court's Bench-Bar Mediation and Alternative Dispute Resolution Committee. He has served as a volunteer mediator for the Court.

Judge Joseph twice served by assignment on the Court of Appeal, Division 1, District IV. As an assigned trial court judge, he was involved in settling appeals, in addition to participation in assigned appeals.

He served as a Family Law judge in both North San Diego County and San Diego Courts, including Supervising Family Law Judge in San Diego. He was the first recipient of the California State Bar's Family Law Judicial Officer of the Year.

For eight years, Judge Joseph managed an Independent Calendar Civil Department in San Diego, handling approximately 500 active civil cases on an ongoing basis. He tried a wide variety of matters, including complex class action, antitrust and unfair trade practices cases, as well as employment, malpractice, personal injury, real estate and business matters. With assistance from the Bar, 90 to 95% of active cases were resolved pretrial.

While serving as Deputy and Assistant Attorney General for the State of California, Judge Joseph handled complex business law cases for the California Divisions of Real Estate, Corporations, Banking, and Savings and Loan. He was primarily responsible for Antitrust and Charitable Trust matters statewide, including representation of the State and all governmental entities in nationwide multi-district litigation antitrust cases.

Currently Judge Joseph is an Alumni Master of the Lewis M. Welsh Inn of Court for San Diego Bench and Bar, and an Alumni Master of the Oliver Wendell Holmes Inn of Court for the North San Diego County Bench and Bar. He is a recognized instructor statewide of Family, Civil, Ethics and Mediation Law to attorneys and judges. He has received awards from Lawyer's Club of San Diego and as the Consumer Law Attorneys' Judge of the Year.

Judge Joseph is a graduate of the University of California at Santa Barbara and Boalt Hall Law School, University of California at Berkeley.

**EXHIBIT 2 PAGE 360**            235

JOSEPH, Anthony Charles
JUDGE, SUPERIOR COURT, San Diego County

**Appointment/Election:** Appointed [succeeding Judge Robert W. Conyers, retired] by Governor Brown, Jr. Oct. 19, 1979 (oath Oct. 24, 1979), elected in 1980 (unopposed), and reelected in 1986 and 1992 (both times unopposed), and 1998 with an opponent. **Previous Judicial Office:** Supervising Judge, North County, 1988. Presiding Judge, Family Law, 1984-85.

**Past Employment:** Private law practice, Carlsbad, Calif., Sept.-Oct. 1979. Deputy Attorney General, Calif. State Dept. of Justice, San Diego, Calif., Oct. 1974 to Sept. 1979. Assistant Attorney General (Oct. 1972 to Oct. 1974) and Deputy Attorney General (June 1962 to Oct. 1972), Calif. State Dept. of Justice, Los Angeles, Calif. (served in public resources unit, business law section, investment fraud unit, and anti-trust section). Counsel, Calif. State Assembly Finance and Insurance Committee, Sacramento, Calif., June 1961 to June 1962.

**Memberships/Awards:** Member: Calif. Judges Assn., 1979— (Executive Board, 1986-88; Chair, 1992 and 1986 Mid Year Conference); San Diego County Judges Assn., 1980—; Lawyers Club of San Diego, 1980—; National Assn. of Women Judges, 1989—; National Women's Fund for Justice, Bioethics Committee, 1993-96; American Political Items Collectors Assn., 1964—; U.S. Masters Swimming Assn., 1979—; and Old Globe Theatre, San Diego, 1979—. Member and Chair, Calif. Judicial Council's Advisory Family Law Committee, 1988-91. Member, Calif. Judicial Council Fairness and Access Committee, 1994 —; Chair, Crest Canyon Park Advisory Committee, San Diego Del Mar, Oct. 1978 to Oct. 1979 (appointed by Mayor of San Diego). Chair, National Assn. of Attorneys General (NAAG) Parens Patriae Subcommittee, 1973-74. Served as Calif. Representative to NAAG Antitrust Committee, 1973-74. Calif. Attorney General's Representative to Board of Investment, 1968-70. Former member: Calif. Continuing Judicial Studies Program Judicial Planning Committee (CJER), 1988-91; Calif. Assn. of Deputy Attorneys General, 1969-70 (President, 1969); San Diego County Bar Assn., 1974-79; Coalition for Responsible Planning, San Diego, 1976-79; Del Mar Union School District Board of Trustees, March 1977 to Oct. 1979; Recipient, "Belva Lockwood Award" (June 1986) from Lawyers Club of San Diego; recipient, Madge Bradley Award, North County Lawyers' Club, 1994. Named first Family Law "Judicial Officer of the Year" by Calif. State Bar's Family Law Section, in Sept. 1985.

**Teaching, Lectures, and Panels:** Faculty: Calif. Judicial College (CJER), Berkeley, 1984-87 ("Family Law"; "Civil Overview"); and Calif. Continuing Judicial Studies Program ("CJSP") (Mid Career Judges College) (CJER), 1984-88 ("Family Law and Procedure"). Adjunct Professor ("Family Law"), Univ. of San Diego School of Law, 1986. Participant, CEB programs: "Family Law Litigation & Enforcement of Orders," 1984 (moderator); and "Family Law Litigation," 1981 (moderator). Author of chapter, "Loan Regulations Under the Proposed Uniform Consumer Code," Consumer Viewpoints: Critique of the UCC (1971), published by Consumer Research Foundation. Drafted 1970 and 1969 revisions to West's California Financial Code Forms.

**Education:** LL.B. (June 1961), Univ. of Calif., Berkeley, Boalt Hall School of Law; B.A. (Jan. 1958), Univ. of Calif., Santa Barbara; Graduate: Beverly Hills High School (1954) and Beverly Vista Elementary School (1949), both in Beverly Hills, Calif.

**Born:** Oct. 17, 1936; San Francisco, Calif.; Married. Two children.

**Interests:** Enjoys surfing, rough water swimming, collecting political items, and theater.

**EXHIBIT 2 PAGE 361**       236

LOVE00733

**Admission:** Admitted to Calif. Bar, to U.S. Court of Appeals, Ninth Circuit, and to U.S. Dist. Court, Northern Dist. of Calif., Jan. 9, 1962; and to U.S. Dist. Court, Southern Dist. of Calif., in 1967 (appeared in numerous federal district courts as part of multi-district anti-trust cases).
**Political Affiliation/Religion:** Democrat.
**Office Address:**      Hall of Justice, Dept. 44
                         330 W. Broadway
                         San Diego, CA 92101
**Office Phone:**        (619) 685-6144 (subject to change) or (619) 831-3141 (general number)

**EXHIBIT 2 PAGE 362**       237

**EXHIBIT 2 PAGE 363**    238

L0VE00735

## EXHIBIT B

1. 08/07/01 Frank Rogozienski, Inc. Appraisal Report at January 30, 1982 and December 31, 1997, prepared by Brinig & Company

2. 10/31/01 Supplemental Trial Brief of Petitioner Shirley Long Rogozienski regarding community property presumption as to the $50,000 used to purchase the convertible note and related warrants

3. 07/18/02 Intended Decision

4. 08/13/02 Petitioner's Proposed Statement of Decision

5. 09/04/02 Petitioner's Objections to Proposed Statement of Decision

6. 08/28/02 Respondent Frank E. Rogozienski's Objections to Petitioner's Proposed Statement of Decision; Proposed Alternative Findings

7. 09/03/02 Respondent's Objections to and Motion to Strike Petitioner's "Objections" to Her Own Proposed Statement of Decision

8. 09/14/02 Petitioner's (i) Response to Respondent's Objections to Petitioner's Objections to Proposed Statement of Decision, and (ii) Opposition to Respondent's Motion to Strike Petitioner's Objections to Proposed Statement of Decision

9. 09/09/02 Petitioner's Reply to Respondent's Objections to Proposed Statement of Decision and Proposed Alternative Findings

10. 09/23/02 Statement of Decision

11. 10/08/02 Letter from Respondent Requesting for Correction of Statement of Decision

12. 10/22/02 Court's Amended Statement of Decision

13. 10/29/02 Petitioner's Proposed Judgment

14. 10/31/02 Petitioner's Revised Proposed Judgment

15. Objections of Respondent to Judgment after Trial by Court

16. 11/06/02 Petitioner's Response to Objections of Respondent to Judgment after Trial by Court

17. Petitioner's Proposed Judgment

18. 11/11/02 Respondent's Reply to Petitioner's Response to Objections of Respondent to Judgment after Trial by Court

19. 11/12/02 Court's Second Amended Statement of Decision    **EXHIBIT 2 PAGE 364**

289

L0VE00736

| | | |
|---|---|---|
| 1 | 20. | 11/25/02 Judgment and Proof of Service |
| 2 | 21. | 07/12/02 Declaration of Petitioner, Shirley L. Rogozienski in Opposition to Respondent's |
| 3 | | Motion to Withdraw Stipulation for Appointment of Temporary Judge |
| 4 | 22. | Wife's Trial Exhibit 1 (pp. 1-1 -- 1-10) |
| 5 | 23. | Frank E. Rogozienski's Trial Exhibit A (pp. A-1 -- A-7) |
| 6 | 24. | Frank E. Rogozienski's Trial Exhibit B (pp. B-1 -- B-27) |
| 7 | 25. | Wife's 09/14/98 Trial Brief |
| 8 | 26. | Frank E. Rogozienski's 09/14/98 Trial Brief |
| 9 | | |
| 10 | 27. | Frank E. Rogozienski's 09/14/98 Points and Authorities |
| 11 | 28. | Wife's Final Argument |
| 12 | 29. | Frank E. Rogozienski's Statement of Facts Adduced at Trial and Closing Argument |
| 13 | 30. | August 20, 2001 Report of Court-Appointed Tracing Expert, prepared by Bruno, Mack & |
| 14 | | Barclay |
| 15 | 31. | Master Index to Reporters' Transcripts, volumes 1 - 31A |
| 16 | 32. | 05/10/99 Statement of Decision |
| 17 | | |
| 18 | 33. | 9/30/00 Statement of Decision |
| 19 | 34. | 12/07/00 Stipulation and Order re: Stock Options |
| 20 | 35. | 10/15/01 Petitioner's Trial Brief |
| 21 | 36. | 10/17/01 Respondent's Trial Brief |
| 22 | 37. | 05/23/03 Frank E. Rogozienski's Petition for Writ of Error *Coram Vobis* |
| 23 | 38. | 06/05/03 Frank E. Rogozienski's supplement to writ petition |
| 24 | 39. | 06/13/03 Frank E. Rogozienski's Second Supplement to Writ Petition |
| 25 | | |
| 26 | 40. | 07/02/03 Shirley L. Rogozienski's Informal Response to Writ Petition |
| 27 | 41. | Court of Appeal's Decision Issuing Writ of error *Coram Vobis* |
| 28 | 42. | Frank E. Rogozienski's Application to Set Aside Motion |

101 W. *F* BROADWAY, SUITE 1, *P*
SAN DIEGO, CALIFORNIA 92101
(619) 233-4777

240

**EXHIBIT 2 PAGE 365**

LOVE00737

1    43.    Frank E. Rogozienski's Points and Authorities in Support of Set Aside Motion

2    44.    Declaration of Frank E. Rogozienski in Support of Set Aside Motion

3    45.    Separate Statement in support of Frank E. Rogozienski's Set Aside Motion

4
5    46.    Notice of Lodgment & 33 exhibits in support of Frank E. Rogozienski's Set Aside Motion

6    47.    11/16/01 Declaration of Petitioner Shirley Long Rogozienski

7

8

9

10

11

**EXHIBIT 2 PAGE 366**                                                        241

L0VE00738

13

EXHIBIT 2 PAGE 367

1   Donald A. English, Esq.      (State Bar No. 115569)
    Christy I. Yee, Esq.         (State Bar No. 166238)
2   ENGLISH & GLOVEN
    A Professional Corporation
3   550 West "C" Street, Suite 1800
    San Diego, California 92101
4   Telephone: (619) 338-6610
    Facsimile:  (619) 338-6657
5

6   Attorneys for Defendant
    James D. Allen
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF SAN DIEGO

10  FRANK E. ROGOZIENSKI,          )    Case No. GIC 843843
                                    )
11              Plaintiff           )    DEFENDANT JAMES D. ALLEN'S
                                    )    REQUEST FOR JUDICIAL NOTICE IN
12       v.                         )    SUPPORT OF DEMURRER TO PLAINTIFF'S
                                    )    FIRST AMENDED COMPLAINT
13  JAMES D. ALLEN, S. MICHAEL LOVE )
    and DOES 1 through 10, inclusive, )
14                                  )    Date:      July 15, 2005
                                    )    Time:      11:00 a.m.
15              Defendants.         )    Dept:      61
                                    )    Judge:     John S. Meyer
16                                  )
                                    )
17                                  )    Complaint Filed:   March 7, 2005
                                    )    Trial Date:        None set
18  _____)

19       Defendant James D. Allen ("Mr. Allen"") respectfully submits the following Request for Judicial

20  Notice pursuant to Evidence Code sections 452(d) and 453. Mr. Allen respectfully requests the Court

21  take judicial notice of the following facts and documents:

22       1.    The allegations contained in the First Amended Complaint in this action filed on

23       March 28, 2005, attached as Exhibit "1" to the Notice of Lodgment.    **EXHIBIT 2 PAGE 368**

24       2.    The appointment of Mr. Allen as temporary judge in In re Marriage of Rogozienski,

25       San Diego Superior Court, Case No. D440154 ("Rogozienski dissolution") conferring the

26       powers and "duties of the Judge of the Superior Court" pursuant to Article VI, Section 21

27       of the California Constitution, as contained in the Order, Stipulation and Oath for

28                                                                        242

                                        _____
                                        JAMES D. ALLEN'S REQUEST FOR JUDICIAL
                                        NOTICE IN SUPPORT OF DEMURRER TO

1    Temporary Judge dated August 4, 1998, attached as Exhibit "2" to the Notice of
2    Lodgment.

3    3.   The findings, decisions and orders of Mr. Allen acting in the capacity of temporary judge
4        in the Rogozienski dissolution, contained in the May 10, 1999 Statement of Decision,
5        attached as Exhibit "3" to the Notice of Lodgment.

6    4.   The findings, decisions and orders of Mr. Allen acting in the capacity of temporary judge
7        in the Rogozienski dissolution, contained in the Second Amended Statement of Decision,
8        issued November 12, 2002, attached as Exhibit "4" to the Notice of Lodgment.

9    5.   The judgment of Mr. Allen acting in the capacity of temporary judge in the Rogozienski
10       dissolution, entered on November 25, 2002, attached as Exhibit "5" to the Notice of
11       Lodgment.

12   6.   Frank E. Rogozienski's Notice of Appeal of the November 25, 2002 judgment (including
13       the incorporated orders) of Mr. Allen acting in the capacity of temporary judge in the
14       Rogozienski dissolution, filed December 10, 2002, attached as Exhibit "6" to the Notice
15       of Lodgment.

16   7.   Shirley L. Rogozienski's Notice of Appeal of the November 25, 2002 judgment
17       (including the incorporated orders) of Mr. Allen acting in the capacity of temporary judge
18       in the Rogozienski dissolution, filed January 27, 2003, attached as Exhibit "7" to the
19       Notice of Lodgment.

20   8.   The allegations contained in the original complaint in this action, filed on March 7, 2005,
21       attached as Exhibit "8" to the Notice of Lodgment.

22   ///
23   ///
24   ///
25
26                                                      **EXHIBIT 2 PAGE 369**
27
28                                                      2̶4̶3

LOVE00741

9.    The findings of Anthony C. Joseph, Superior Court Judge in the Declaration of Anthony C. Joseph, Superior Court Judge, Retired, in Support of Petitioner's Opposition to Respondent's Motion to Set Aside Judgment and Non-Stipulated Interlocutory Rulings of then Temporary Judge James D. Allen, filed April 26, 2004 in the Rogozienski dissolution, attached as Exhibit "9" to the Notice of Lodgment.

Dated: *June 13, 2005*

ENGLISH & GLOVEN
A Professional Corporation

By: *Donald English,*
       Donald A. English
       Christy I. Yee
     Attorneys for Defendant
     James D. Allen

**EXHIBIT 2 PAGE 370**

244

LOVE00742

14

**EXHIBIT 2 PAGE 371**

LOVE00743

1   FRANK E. ROGOZIENSKI, ESQ., California Bar No. 51445
    FRANK E. ROGOZIENSKI, INC.
2   A Professional Corporation
    Coronado Professional Square
3   1203 Second Street
    Coronado, CA 92118
4   Telephone: (619)437-1878
    Facsimile: (619)437-4894
5

6

7   Attorneys for Plaintiff, FRANK E. ROGOZIENSKI

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF SAN DIEGO

10

11

12  FRANK E. ROGOZIENSKI,          )    Case No. GIC843843
                                   )
13              Plaintiff,         )    MEMORANDUM OF POINTS AND
                                   )    AUTHORITIES IN OPPOSITION TO
14        v.                       )    DEMURRER OF DEFENDANT, S.
                                   )    MICHAEL LOVE, TO FIRST AMENDED
15  JAMES D. ALLEN, S. MICHAEL LOVE)    COMPLAINT
    and DOES 1 through 10, inclusive,)
16                                 )
                                   )
17              Defendants.        )
                                   )
18  _____)    Date: 07/15/05
                                        Time: 11:00 a.m.
19                                      Dept: 61

20

21                                      DEPT. 61
                                        HON. John S. Meyer
22

23

24

25

26

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
    TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST      **EXHIBIT 2 PAGE 372**
    AMENDED COMPLAINT

                                                            245

FILED
Clerk of the Superior Court

JUL 1 - 2005

By: BARBARA JARRATT, Deputy

LOVE00744

## TABLE OF CONTENTS

I. RELEVANT FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. OPPOSITION TO LOVE'S DEMURRERS . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    1. Love Owed A Duty To Plaintiff In The Underlying Proceeding . . . . . . . . . . . 4

    2. Plaintiff's Claims Are Not Based Solely On Love's Violation
       Of Rule Of Professional Conduct 5-300(A) . . . . . . . . . . . . . . . . . . . . . 5

    3. The First And Second Causes Of Action Sufficiently State
       Claims For Intentional Interference With Contractual
       Relations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    4. The Third, Fourth, Fifth And Sixth Causes Of Action Sufficiently
       State Claims For Interference With Prospective Economic
       Advantage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    5. State Action Is Not Required For A Claim Under Civil Code
       §52.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    6. The Eighth Cause Of Action Sufficiently States A Claim For
       Deceit Fraudulent Concealment . . . . . . . . . . . . . . . . . . . . . . . . . 9

    7. The Tenth Cause Of Action Sufficiently States A Claim Against
       Love . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    8. The Eleventh And Twelfth Causes Of Action Sufficiently State
       Claims For Willful/Negligent Infliction Of Injury . . . . . . . . . . . . . . 13

    9. The Thirteenth Cause Of Action Sufficiently States A Claim For
       Unjust Enrichment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
AMENDED COMPLAINT

EXHIBIT 2 PAGE 373

LOVE00745

246

## TABLE OF AUTHORITIES

### California Cases

Page

Calistoga Civic Club v. City of Calistoga (1983) 143 Cal.App.3d 111 . . . . . . . . . . . . . . 14

Cortez v. Purolator Air Filtration Products Co. (2000) 23 Cal.4th 163 . . . . . . . . . . . . . 12

Elliot v. Elliot (1964) 231 Cal.App.2d 205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fletcher v. Security Pacifici Nat'l. Bank (1979) 23 Cal.3d 442 . . . . . . . . . . . . . . . . 12

GHK Associates v. Mayer Group, Inc. (1990) 24 Cal.App.3d 856 . . . . . . . . . . . . . . . 14

Heliotis v. Schuman (1986) 181 Cal.App.3d 646 . . . . . . . . . . . . . . . . . . . . . . . . 9

LiMandri v. Judkins (1997) 52 Cal.App.4th 326 . . . . . . . . . . . . . . . . 7,8,9,10,11

Neet v. Holmes (1944) 25 Cal.2d 447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v. Beaumont Investments (2003) 111 Cal.App.4th 102 . . . . . . . . . . . . . . . . . 12

Roberts v. Ball, Hunt, Hart, Brown & Baerwitz (1976) 57 Cal.App.3d 104 . . . . . . 4,6,13

Stop Youth Addiction v. Lucky Stores (1998) 17 Cal.4th 553 . . . . . . . . . . . . . . . . . 11

Tatum v. Southern Pacific (1967) 250 Cal.App.2d 40 . . . . . . . . . . . . . . . . . . . . . . 5

Weiss v. Marcus (1975) 51 Cal.App.3d 590 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Willard v. Caterpillar, Inc. (1995) 40 Cal.App.4th 892 . . . . . . . . . . . . . . . . . . . . . 6

### Federal Cases

Dennis v. Sparks (1980) 449 U.S. 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Reynolds v. County of San Diego (9th Cir.) (1996) 84 F.3d 1162 . . . . . . . . . . . . . . . . 9

ii

F.ANK E. RO OZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 1630
1203 SECOND STREET AT "C" AVENUE
CORONADO CALIFORNIA 92118-1417

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
AMENDED COMPLAINT

**EXHIBIT 2 PAGE 374**

247

LOVE00746

## California Statute, Rules of Court,
### Rules of Professional Conduct and Code of Judicial Ethics

Business & Professions Code §6128 ..................................... 6,8,10
Business & Professions Code §17200 ................................... 11,12
Business & Professions Code §17203 ...................................... 11
Civil Code §52.1(b) ........................................................ 9
Civil Code §1709 ...................................................... 10,11
Civil Code §2223 ..................................................... 13,14
Civil Code §2224 ..................................................... 13,14
Penal Code §§92-95 ........................................................ 8

Cal. Rule of Court 244 .................................................... 10

Rule of Prof. Conduct 5-220 .............................................. 10
Rule of Prof. Conduct 5-300(4) ........................................... 10
Rule of Prof. Conduct 5-300(A) ...................................... 5,6,8,13

Cal. Code of Judicial Ethics, Canon 6D(2)(f) ............................. 10

### Federal Statute

42 U.S.C. §1983 ........................................................... 9

### Treatise

Witkin, Cal. Summary 11, Equity, §93 ..................................... 11

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181230
1203 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92178-1417
(619) 427-5079

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
AMENDED COMPLAINT

248

**EXHIBIT 2 PAGE 375**

LOVE00747

1     Plaintiff offers the following in opposition to the demurrer of Defendant, James D.

2  Allen:

3              I. RELEVANT FACTUAL BACKGROUND

4     Plaintiff was married in 1982, and in October, 1997, Plaintiff's then spouse

5  ["Petitioner"] brought a Petition for Dissolution of their marriage [herein the "Underlying

6  Proceeding"]. In the Underlying Proceeding, Love represented Petitioner [Compl. ¶ 9].

7     In or about June 1998, Plaintiff and Petitioner entered into a written agreement in

8  which they agreed (a) to the entry of an order that Allen could act as temporary judge in the

9  Underlying Proceeding and (b) that all costs of Allen shall be borne by them, with each

10  paying one-half the cost of the services of Allen. Although, no hourly rate or fee amount was

11  set expressly forth in the written agreement, the agreement was that Plaintiff would pay one-

12  half of Allen's services in the Underlying Proceeding at Allen's normal and customary

13  billing rate as an attorney on a fee-for-service basis. Allen served as temporary judge in the

14  Underlying Proceeding from the time of his appointment by the Presiding Judge of the

15  Superior Court on August 4, 1998 until his withdrawal on March 27, 2003 in response to

16  Plaintiff's challenge of him for cause.

17     In or about the Summer of 2001, but no later than November or early December of

18  2001, Allen and Love entered into a conspiracy [herein the "Conspiracy"] to benefit

19  themselves and others with whom they were associated designed to injure, harm and cause

20  damage to Plaintiff by, among other things, interfering with Plaintiff's contractual relations,

21  interfering with Plaintiff's prospective economic advantage, by violating Plaintiff's civil

22  rights, defrauding and deceiving Plaintiff, by engaging in unfair competition in violation of

23  applicable California law, and engaging in willful and negligent misconduct. A purpose of

24  the Conspiracy was for Love to make a gift to Allen of the Loves' interest in Warner Springs

25  Ranch in violation of Allen's and Love's ethical and other obligations, and to conceal the

26  fact of such gift [Compl. ¶ 16]. Allen and Love arranged a gift to Allen of the Loves' Unit

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
    TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
    AMENDED COMPLAINT

FRANK E. ROGOZIENSKI<br>A PROFESSIONAL CORPORATION<br>CORONADO PROFESSIONAL SQUARE<br>POST OFFICE BOX 181830<br>1205 SECOND STREET AT B AVENUE<br>CORONADO, CALIFORNIA 92118-1417<br>CORONADO (619) 437-1675

1

249

**EXHIBIT 2 PAGE 376**

LOVE00748

1   850A interest in Warner Springs Ranch [see, e.g., Compl. ¶¶ 21, 22 and 23]. By Quitclaim

2   Deed signed February 8, 2002, the Loves transferred to Bottomley the Loves' Unit 850A

3   interest in Warner Springs Ranch. Both Love and Allen knew that Bottomley was acting as

4   a strawman for the transfer of the Loves' Unit 850A through to Allen, the intended recipient

5   [Compl. ¶ 25]. By Quitclaim Deed signed March 15, 2002, Bottomley transferred to Allen

6   the Loves' Unit 850A interest in Warner Springs Ranch. This Quit Claim Deed was recorded

7   March 18, 2002 [Compl. ¶ 26].

8        Bottomley did not prepare any of the deeds which transferred the Loves' interests in

9   Warner Springs Ranch. Love (or someone on his behalf) prepared the Quitclaim Deed from

10  the Loves, and Allen (or someone on his behalf) prepared the Quitclaim Deed to himself.

11  Bottomley explained to Love his intention of transferring the Loves' Unit 850A to Allen so

12  Allen could use that half-interest to upgrade to a full membership. Bottomley further

13  explained to Love that because he [Bottomley] was simply passing Unit 850A on to Allen,

14  it did not make sense for Love to prepare the Quitclaim Deed for that interest in Bottomley's

15  and Bottomley's wife's names, as Love was doing for the Loves' Unit 1546B interest which

16  Bottomley and his wife were keeping. Bottomley explained that it would be simpler if only

17  he (and not Bottomley and his wife) had to sign the transfer through to Allen. The Quitclaim

18  Deeds transferring the Loves' interests in Warner Springs Ranch recite they are "gifts"

19  [Compl. ¶ 27].

20       In mid-March, 2002, Allen prepared and had Bottomley sign a Quitclaim Deed

21  transferring the Loves' Unit 850A interest to himself. This deed recites it is a "gift". Allen

22  caused this deed to be recorded on March 18, 2002 [Compl. ¶ 30]. Love spoke to Allen to

23  assist him in clearing up title problems that had arisen in the transfer from the Loves [Compl.

24  ¶ 31]. After the title problems were resolved, Allen transferred the Loves' Unit 850A interest

25  in the Ranch to the Warner Springs Owners Association, and received back a Grant Deed

26  from the Association giving him Unit 4257 [Compl. ¶ 32]. The circuitous movements

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
    TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
    AMENDED COMPLAINT

                                        2

M. LANK E. ROLOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181190
1203 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417

250

**EXHIBIT 2 PAGE 377**

LOVE00749

1   Defendants orchestrated of the Loves' Unit 850A interest in Warner Springs Ranch

2   effectively laundered this transaction so as to obscure this gift to Allen [Compl. ¶ 33].

3        Defendants knew or should have known that making the gift to Allen of the Loves'

4   Unit 850A interest in Warner Springs Ranch would result in Allen being disqualified from

5   acting as temporary judge in the Underlying Proceeding. Defendants further knew or should

6   have known that once made, the gift to Allen of the Loves' Unit 850A interest in Warner

7   Springs Ranch disqualified Allen from acting as temporary judge in the Underlying

8   Proceeding [Compl. ¶ 34]. Allen's acceptance of the gift of the Loves' Unit 850A interest

9   in Warner Springs Ranch in March 2002 immediately disqualified him from acting as

10  temporary judge in the Underlying Proceeding. The making, and Allen's acceptance, of the

11  gift of the Loves' Unit 850A interest in Warner Springs Ranch was not done to achieve the

12  legitimate objectives of the Underlying Proceeding [Compl. ¶ 35].

13       Love concealed and did not disclose the fact of the gift to Allen, and continued to seek

14  rulings from Allen knowing Allen was disqualified from acting as the temporary judge in the

15  Underlying Proceeding [Compl. ¶¶ 36, 37, 38, 39 and 40].

16       After accepting the gift of the Loves' interest in Unit 850A, Allen, resuming again his

17  role as a temporary judge, made rulings in the Underlying Proceeding [Compl. ¶¶ 36-40].

18  Because Allen was disqualified by reason of the gift when he made those rulings they have

19  been set aside by the Judge of the Superior Court who replaced Allen [Compl. ¶ 43].

20       In or about September and October 2003, and after Allen filed his Statement of

21  Withdrawal in the Underlying Proceeding, Allen and Allen's counsel spoke with one or more

22  reporters and made threatening, misleading and disparaging remarks about the truth of

23  Allen's involvement in the gift to him of the Loves' Unit 850B interest in Warner Springs

24  Ranch. On information and belief, Allen and Allen's counsel made these statements as a part

25  of and in furtherance of the Conspiracy, to discredit Plaintiff and coerce Plaintiff into

26  accepting Allen's rulings, and to bolster and support actions Allen had previously taken in

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
    TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
    AMENDED COMPLAINT
                                    3                                              25

FLANK E. ROLOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181040
1203 SECOND STREET AT "B" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1675

EXHIBIT 2 PAGE 378

LOVE00750

1    his judicial capacity. In speaking with the press, Allen was not acting in his judicial capacity

2    or in the course of the conduct of the Underlying Proceeding, or to achieve the legitimate

3    objectives of the Underlying Proceeding [Compl. 44].

4    **II. OPPOSITION TO LOVE'S DEMURRERS**

5    Plaintiff opposes each of the specific demurrers raised by Love on each of the

6    following grounds:

7    1. Love Owed A Duty To Plaintiff In The Underlying Proceeding.

8    Love contends that because he was the attorney for petitioner in the Underlying

9    Proceeding, he owed no duty to third persons, including Plaintiff (respondent in the

10   Underlying Proceeding). Love is mistaken in his assertions.

11   "California has long adopted the view that an attorney may not, with impunity, either

12   conspire with a client to defraud or injure a third person or engage in intentional tortious

13   conduct toward a third person (citations)" [Roberts v. Ball, Hunt, Hart, Brown & Baerwitz

14   (1976) 57 Cal.App.3d 104, 109].

15       "'[A]n attorney is not liable to third persons for acts committed
16        in good faith in performance of professional activities as an
         attorney for his client. If, however, an attorney is actuated by
17       malicious motives, or shares the illegal motives of his client, he
         may be personally liable with the client for damage suffered by
18       a third person as the result of the attorney's actions' (Fns.
19        Omitted.) (Citation)" [Id at 109].

20       "Under present California law, an attorney may owe a duty to a
21        third person, and may be liable if the third person who was
         intended to be benefited (sic) by his performance is injured by
22       his negligent execution of that duty. 'An attorney may be liable
         for damage caused by his negligence to a person intended to be
23       benefited (sic) by his performance irrespective of any lack of
         privity of contract between the attorney and the party to be
24       benefited (sic). [Citation.] The liability sounds in tort [Citation.]
25       The determination of whether the duty undertaken by an
26       attorney extends to a third party not in privity 'involves the
27

28   MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
     TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
     AMENDED COMPLAINT
                                  4

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 180130
1202 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 487-1076

252

**EXHIBIT 2 PAGE 379**

LOVE00751

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 1806
1203 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-4010

balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.' [Citations.]' (Citations)." [*Id* at 110-111].

Here, the gift to Allen of the Loves' Unit 850A interest in Warner Springs Ranch was a voluntary and intended act by Love which immediately disqualified Allen from thereafter acting as the temporary judge in the Underlying Proceeding [Tatum v. Southern Pacific (1967) 250 Cal.App.2d 40, 43]. As further discussed *infra*, this disqualification resulted in immediate injury and damage to Plaintiff in that Allen, at the time of the gift, had not reached a decision on matters which had been tried before him, and was disqualified by reason of the gift from ever deciding those matters. Thus, the fees, costs and expenses incurred in more than fourteen days of trial were lost and rendered valueless, as a replacement judge must now retry these same matters. In addition, Love's silence and keeping secret the fact of the gift allowed further injury and damage to Plaintiff in that Allen, although disqualified from doing so, continued to make rulings, with Love's encouragement and at Love's request. Love's actions in continuing to pursue rulings from Allen when he knew Allen was disqualified from making such rulings (and particularly since Love was an active participant in Allen's disqualification) caused additional injury and damage to Plaintiff in that these subsequent rulings, made while Allen was disqualified, have been set aside by the Superior Court Judge who replaced Allen, and the fees, costs and expenses incurred by Plaintiff in those proceedings have been lost and rendered valueless. In addition, Plaintiff has lost the value and use of property taken from Plaintiff in those rulings, now set aside.

2. **Plaintiff's Claims Are Not Based Solely On Love's Violation Of Rule Of Professional Conduct 5-300(A).**

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST AMENDED COMPLAINT

5

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
1202 SECOND STREET, 3RD AVENUE
POST OFFICE BOX 180840
CORONADO, CALIFORNIA 92118-1417
(619) 437-1878

1    Love further contends Plaintiff's claims are based solely on Love's violation of Rule

2    5-300(A) of the Rules of Professional Conduct. Love is again mistaken in his assertions.

3    Plaintiff's claims are not dependent upon Allen's misconduct being a violation of the Rules

4    of Professional Conduct. Rather, these claims and Love's liability arise from the

5    intentional/negligent actions and conduct of Love which caused injury and damage to

6    Plaintiff. That certain Rules of Professional Conduct also prohibit this conduct does not

7    insulate Love from liability. Reference is made to the Rules of Professional Conduct because

8    the cited rules embody and restate what is otherwise the public policy of this State. Plaintiff's

9    causes of action are based upon Love's willful/negligent breach of his duty of care[1] as a

10   professional engaged in the practice of law in this State (see, e.g., Roberts v. Ball, Hunt, Hart,

11   Brown & Baerwitz, supra at 109-111, and Business & Professions Code §6128 (that "[e]very

12   attorney is guilty of a misdemeanor who ... [i]s guilty of any deceit or collusion, or consents

13   to any deceit or collusion, with intent to deceive the court or any party")]. Irrespective of the

14   Rules of Professional Conduct, Love is liable for his intentional/negligent actions, and for

15   his misconduct in the gift to Allen of the Loves' Unit 850A interest in Warner Springs Ranch

16   knowing Allen's acceptance of that gift would cause immediate injury and damage to

17   Plaintiff, including the loss of fees, costs and expenses Plaintiff had paid in the prior trial

18   (which must now be retried because Allen was disqualified), and the fees, costs and expenses

19   Plaintiff will be required to continue to incur in having the retrial. Love clearly should not

20   be permitted to profit from his own wrongs.[2]

21        3.    **The First And Second Causes Of Action Sufficiently State Claims For**

22   **Intentional Interference With Contractual Relations.**

23   _____

24        [1]It is axiomatic that a duty exists to refrain from intentionally committing tortious conduct.

25        [2]See e.g., Willard v. Caterpillar, Inc. (1995) 40 Cal.App.4th 892, 920 (citing the Restatement
26   of Torts that "conduct which is 'illegal or unfair or immoral according to the common understanding
     of society' may subject one to tort liability").

27

28   MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
     TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
     AMENDED COMPLAINT                                                    254
                                    6
                                                        **EXHIBIT 2 PAGE 381**

LOVE00753

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
1202 SECOND STREET, 181 B&U
FIRST FLOOR P.O. BOX 181830
1205 SECOND AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1979

1    Plaintiff has alleged the elements Love contends are missing to state a cause of action

2    for intentional interference with contractual relations. Plaintiff's Complaint alleges the

3    existence of contractual relationships [Compl. ¶¶ 52, 53, 54 and 61], that Love knew of the

4    existence of these contractual relationships [Compl. ¶¶ 55 and 62], that Love engaged in

5    intentional acts designed to induce a breach or disruption of the these contractual

6    relationships [Compl. ¶¶ 56 and 63], the actual breach or disruption of these relationships

7    [Compl. ¶¶ 57 and 64], and damages [Compl. ¶¶ 58 and 65] [see, e.g., LiMandri v. Judkins

8    (1997) 52 Cal.App.4th 326, 343-344 (overruling the attorney defendant's demurrer to

9    plaintiff's cause of action for intentional interference with an existing contractual

10   relationship, and further holding this cause of action was not barred by the litigation

11   privilege)]. Plaintiff's Complaint further alleges, among other things, that Plaintiff has been

12   damaged in the loss of any value of the fees, costs and expenses paid in the trial before Allen

13   which must now be retried because the gift to Allen of the Loves' Unit 850A interest in

14   Warner Springs Ranch caused Allen's disqualification, and the loss in value and use of assets

15   which were taken from Plaintiff under rulings made by Allen which have been set aside

16   because of the Loves' gift and resultant disqualification of Allen. Love knew or should have

17   known that all rulings Allen thereafter made would be set aside because Allen was

18   disqualified to thereafter make rulings after his acceptance of the gift. Moreover, Love has

19   no judicial immunity and is obligated for the damages caused by Allen by virtue of his own

20   role in the conspiracy regardless of whether Allen is deemed immune.[3]

21       4.   The Third, Fourth, Fifth And Sixth Causes Of Action Sufficiently State

22

23   _____

24   [3]While a judge may have judicial immunity for wrongful actions and improperly making
     rulings in a judicial capacity, a co-conspirator with the judge has no such judicial immunity [Dennis
25   v. Sparks (1980) 449 U.S. 24, affirming the Fifth Circuit's *en-banc* decision that "there is no good
     reason in law, logic or policy for conferring immunity on private persons who persuaded the immune
26   judge to exercise his jurisdiction corruptly"). Many cases have cited Dennis over the past 25 years,
     and none have overruled it. Dennis remains good law.

27

28   MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
     TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
     AMENDED COMPLAINT

                                      7                                              255

                              **EXHIBIT 2 PAGE 382**

LOVE00754

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 1417
1205 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
CORONADO, (619) 437-1878

<u>Claims For Interference With Prospective Economic Advantage</u>.

Plaintiff has alleged the elements Love contends are missing to state a cause of action for intentional/negligent interference with prospective economic advantage. Plaintiff's Complaint alleges the existence of economic relationships between Plaintiff and Petitioner, between Plaintiff and Plaintiff's counsel in the Underlying Proceeding, between Plaintiff and Qualcomm and other third persons engaging or proposing to engage in business transactions with Plaintiff [Compl. ¶¶ 68 and 84], between Plaintiff and Allen [Compl. ¶¶ 76 and 92], that Love knew of the existence of these economic relationships [Compl. ¶¶ 69, 77, 85 and 93], that Love engaged in wrongful conduct (the gift to Allen) designed to interfere with or disrupt these relationships [Compl. ¶¶ 70, 78, 86 and 94], that Love's conduct was either intentional [Compl. ¶¶ 71 and 79] or negligent [Compl. ¶¶ 88 and 95], that the economic relationships were actually interfered with and disrupted [Compl. ¶¶ 72, 80, 89 and 96] and that Plaintiff was damaged [Compl. ¶¶ 73, 81, 90 and 97] [see, e.g., <u>LiMandri v. Judkins</u>, 52 Cal.App.4th, *supra* at 339].[4] Plaintiff's Complaint further alleges, among other things, that Plaintiff has been damaged in the loss of any value of the fees, costs and expenses paid in the trial before Allen which must now be retried because the gift to Allen of the Loves' unit 850A interest in Warner Springs Ranch and the loss in value and use of assets which were taken from Plaintiff under rulings made by Allen which have been set aside because of the Loves' gift and resultant disqualification of Allen. Love knew or should have known that all rulings Allen thereafter made would be set aside because Allen was disqualified to thereafter

---

[4]Plaintiff has further satisfied the additional requirement for <u>negligent</u> (as distinguished from intentional) interference with prospective economic advantage that defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." Here, Love's conduct was a violation of the Rule of Professional Conduct 5-300(A), Penal Code §§ 92, 93, 94 and/or 95, and Business & Professions Code § 6128 (that "[e]very attorney is guilty of a misdemeanor who ... [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party"). Love's conduct is also deceit under Civil Code §1709 (see *infra*).

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
AMENDED COMPLAINT

8

256

**EXHIBIT 2 PAGE 383**

LOVE00755

1    make rulings after his acceptance of the gift. Moreover, Love has no judicial immunity and

2    is obligated of the damages caused by Allen by virtue of his own role in the conspiracy,

3    regardless of whether Allen is deemed immune.[5]

4        5. <u>State Action Is Not Required For A Claim Under Civil Code §52.1(b)</u>.

5        Plaintiff's Seventh Cause of Action is for violation of Plaintiff's civil rights under

6    Civil Code §52.1(b). Under that statute:

7            "Any individual whose exercise or enjoyment of rights secured
             by the Constitution or laws of the United States, or of rights
8            secured by the Constitution or laws of this state, has been
             interfered with, or attempted to be interfered with, as described
9            in subdivision (a), may institute and prosecute in his or her own
             name and on his or her own behalf a civil action for damages,
10           including but not limited to, damages ..." [Civil Code §52.1(b);
             see also <u>Reynolds v. County of San Diego</u> (9th Cir.) (1996) 84
11           F.3d 1162].

12

13   Civil Code §51.2(b) applies "whether or not acting under color of law," and does not require

14   state action. The authorities cited by Love are not applicable as they relate to actions under

15   42 U.S.C. §1983, which is not the basis of Plaintiff's claims herein.

16       6.  <u>The Eighth Cause Of Action Sufficiently States A Claim For Deceit</u>

17   <u>Fraudulent Concealment</u>.

18       There are "four circumstances in which nondisclosure or concealment may constitute

19   actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2)

20   when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3)

21   when the defendant actively conceals a material fact from the plaintiff; and (4) when the

22   defendant makes partial representations but also suppresses some material facts [Citation]"

23   [<u>Heliotis v. Schuman</u> (1986) 181 Cal.App.3d 646, 651; and <u>LiMandri v. Judkins</u> (1997) 52

24   Cal.App.4th, <i>supra</i> at 336]. Each of the (nonfiduciary) circumstances in which nondisclosure

25

26       [5]See footnote 3 <i>supra</i>.

27

28   MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
     TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
     AMENDED COMPLAINT
                                        9                    257

EXHIBIT 2 PAGE 384

LOVE00756

FRANK E. ROLOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181830
1203 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-2570

1  may be actionable presupposes the existence of some other (nonfiduciary) relationship

2  between the plaintiff and defendant in which a duty to disclose can rise. As set forth in BAJI

3  No. 12.36 (8th ed. 1994), "where material facts are known to one party and not to the other,

4  failure to disclose them is not actionable fraud unless there is *some relationship* between the

5  parties which gives rise to a duty to disclose such known facts" (Italics added in original) [*Id*

6  at 336-337]. In LiMandri, the Court looked to "some sort of transaction between the parties"

7  in order for a "relationship" to come into being. The Court in LiMandri found "[t]he

8  fundamental problem with LiMandri's nondisclosure causes of action is that he alleges no

9  such transaction **or relationship** (emphasis added) with Judkins" [*Id* at 337]. In LiMandri,

10  there was only a single telephone conversation between LiMandri and Judkins [*Id* at 337] and

11  LiMandri could not state a claim for deceit under Civil Code §1709 based on this single

12  conversation [*Id* at 337-338 f/n 5].

13  ⋅ Here, however, although not fiduciary in nature, (a) Love has obligations because he

14  is an attorney, and (b) there is a "relationship" between counsel for one party and the

15  opposing party. As an attorney, Love has a duty of disclosure reflected in part in certain

16  Rules of Professional Conduct and Business & Professions Code §6128. These Rules of

17  Professional Conduct and Business & Professions Code §6128 embody and restate what is

18  otherwise the public policy of this State. It is the height of arrogance for Love to claim that

19  he had no duty to disclose the gift to Allen knowing (a) the gift was prohibited by Rules of

20  Professional Conduct 5-300(4) and 5-220, (b) was a violation by Allen of Rule of

21  Professional Conduct 5-220, the California Code of Judicial Ethics, Canon 6D(2)(f) and

22  California Rule of Court 244, (c) had resulted in Allen's disqualification and (d) was a

23  material fact affecting the judicial integrity of the Underlying Proceeding not known to

24  Plaintiff. Moreover, when Love then encouraged and sought rulings from Allen (entered into

25  "transactions") and acted (entered into further "transactions") on rulings made by Allen at

26  times when Love knew or should have known that whatever rulings made by Allen after he

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
   TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
   AMENDED COMPLAINT

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
1202 SECOND STREET, SUITE B
POST OFFICE BOX 16130
CORONADO, CALIFORNIA 92118-1417
(619) 437-1878

10

258

**EXHIBIT 2 PAGE 385**

LOVE00757

1   accepted the gift would be set aside because Allen had been disqualified to make such

2   rulings, Love clearly had a duty of disclosure.  To hold there is no duty to disclose in these

3   circumstances would condone the untenable result that it is acceptable for an attorney to keep

4   secret misconduct which has resulted in the undisclosed disqualification of the judge all

5   parties are continuing to appear before and to continue to seek rulings from that undisclosed

6   disqualified judge.  Love, an attorney, essentially argues for a rule that would encourage

7   corruption of the judicial process.

8        Also, unlike in LiMandri, Plaintiff's Complaint sufficiently alleges a cause of action

9   for deceit.  Under Civil Code §1709, "[o]ne who willfully deceives another with intent to

10  induce him to alter his position to his injury or risk, is liable for any damage which he thereby

11  suffers."  In LiMandri, plaintiff did "not allege he was induced to alter his position as a result

12  of Judkins' failure to disclose" [Id at 337, f/n 5]; whereas here, Plaintiff's Complaint alleges

13  such inducement [Compl. ¶¶ 105, 106 and 107].  In LiMandri, the failure to disclose merely

14  delayed challenging Security's lien (it did not change Security's actions), whereas here,

15  Love's nondisclosure permitted the judicial process to continue.  Unlike here, the delay in

16  challenging (as opposed to stopping or changing) Security's lien did not qualify as a change

17  in position to LiMandri's injury or risk within the meaning of Civil Code ¶1709.

18       7. The Tenth Cause Of Action Sufficiently States A Claim Against Love.

19       Business & Professions Code §17200, et seq. is known as the Unfair Competition Law

20  [see Witkin, Cal. Summary 11, Equity, §93], and prohibits "any unlawful, unfair, fraudulent

21  Business at or practice ...." [Business & Professions Code §17200].  A single unfair or

22  fraudulent act is enough to support liability [see Witkin, Cal. Summary 11, Equity, §93; Stop

23  Youth Addiction v. Lucky Stores (1998) 17 Cal.4th 553, 570].

24       Business & Professions Code §17203 authorizes courts to make:

25         "... such orders or judgments as may be necessary ... to prevent

26         the use or employment by any person of any practice which

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
    TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
    AMENDED COMPLAINT

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
1205 POST OFFICE BOX 180180
CORONADO, CALIFORNIA 92118-1417
(619) 437-1878

11

259

EXHIBIT 2 PAGE 386

LOVE00758

1  |  constitutes unfair competition, as defined in this chapter, or as
2  |  may be necessary to restore to any person ... any money or
3  |  property, which has been acquired by means of such unfair
     |  competition."
4
5  Courts have given a "liberal reading" to the remedial provision of Business & Professions
6  Code §17200, consistent with the "cleansing power" purposes of the statute [see Rutter
7  Guide, ¶8:6, citing Fletcher v. Security Pacific National Bank (1979) 23 Cal.3d 442, 449].
8       Here, the gift to Allen of the Loves' Unit 850A interest in Warner Springs Ranch was
9  an unfair and fraudulent business act and practice designed to provide, and which provided,
10 Love an unfair advantage over Plaintiff and Plaintiff's counsel in the Underlying Proceeding
11 [Compl. ¶117]. As a result of these fraudulent acts and business practices of Love, Plaintiff
12 seeks restitution of amounts Plaintiff was required to pay to Allen, to Plaintiff's counsel, for
13 the benefit of and indirectly to Love, to Bruno, Mack & Barclay and to Plaintiff's experts in
14 the Underlying Proceeding [Compl. ¶118]. All of these fees and costs, paid by Plaintiff
15 directly or taken from community property in which Plaintiff has an interest, would not have
16 been paid but for the unfair Business practice of Love in the gift to Allen of Loves' Unit
17 850A interest in Warner Springs Ranch. That this restitution may be more than the monies
18 Love actually received is not a defense to Plaintiff's claims. When a court orders restitution
19 to redress a statutory violation, "it is not concerned with restoring the violator to the status
20 quo ante. The focus is instead on the victim. The status quo ante to be achieved by the
21 restitution order was to again place the victim in possession of that money" [People v.
22 Beaumont Investments (2003) 111 Cal.App.4th 102, 134, quoting Cortez v. Purolator Air
23 Filtration Products Co. (2000) 23 Cal.4th 163, 177]. "In contrast to contract restitution,
24 statutory restitution is not solely intended to benefit the victims by the return of money, but
25 instead is designed to penalize a defendant for past unlawful conduct and thereby defer future
26 violations" [Beaumont Investments, supra, 111 Cal.App.4th at 135].
27
28 MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
   TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
   AMENDED COMPLAINT

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
1200 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1674

12

**EXHIBIT 2 PAGE 387**

260

8. **The Eleventh And Twelfth Causes Of Action Sufficiently State Claims For Willful/Negligent Infliction Of Injury.**

Love mistakenly contends the Eleventh and Twelfth Causes of Action are for Love's breach of the Rules of Professional Conduct. See discussion under paragraph 2 above "Plaintiff's Claims Are Not Based Solely On Love's Violation Of Rule Of Professional Conduct 5-300(A)".

The Eleventh Cause of Action is for intentional misconduct (the gift and subsequent concealment of that gift) which Love knew would cause or was certain to cause injury to Plaintiff. There is a general duty from committing intentionally tortious conduct [LiMandri v. Judkins, *supra* at 348], and this duty exists irrespective of the Rules of Professional Conduct. Love further owed a duty of care to Plaintiff in the circumstances alleged in the Complaint, where Love knew his actions would or were certain or substantially certain to cause injury to Plaintiff [see, e.g., Roberts v. Ball, etc., *supra* at 110-111] and he is not immune from liability because this duty of care is also reflected in the Rules of Professional Conduct. The Complaint alleges that "Defendants willfully breached their respective duties of care" [Compl. ¶ 124] and "Defendants breached their respective duties of care [Compl. ¶ 132], and does not allege as a basis for liability a breach of the Rules of Professional Conduct. Accordingly, the Eleventh and Twelfth Causes of Action sufficiently state claims for willful/negligent infliction of injury.

9. **The Thirteenth Cause Of Action Sufficiently States A Claim For Unjust Enrichment.**

The Thirteenth Cause of Action sufficiently states a claim for unjust enrichment and imposition of a constructive trust. Under a constructive trust theory, Love holds property he wrongfully obtained from Plaintiff as constructive trustee [see Civil Code §§2223, 2224]. In Elliot v. Elliot (1964) 231 Cal.App.2d 205, the court held that a constructive trustee may be charged with the value of the "unconscionable loss he has caused the beneficiary" even

FrANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 1831
1203 SECOND STREET AT "c" AVENUE
CORONADO, (619) 437-1879    92118-4117

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
AMENDED COMPLAINT

13

261

**EXHIBIT 2 PAGE 388**

1   though the constructive trustee received no monetary benefit at all [*Id* at 211].   Other courts

2   have similarly found that the pecuniary benefit to the defendant personally should not be the

3   test in a case for restitution based on a constructive trust [see <u>GHK Associates v. Mayer</u>

4   <u>Group, Inc.</u> (1990) 24 Cal.App.3d 856 ("Statutes providing for imposition of involuntary

5   trust do not require that involuntary trustee acquire trust res directly from its rightful owner

6   as prerequisite for imposition of constructive trust. West's Ann. Cal. Civil Code §§2223,

7   2224")].    As in <u>Elliot</u>, the court in <u>GHK</u> discussed the civil code sections regarding

8   constructive trusts and stated "[f]raud or intentional misrepresentation is not required for a

9   constructive trust to be imposed" (*Id* at 890, citing <u>Calistoga Civic Club v. City of Calistoga</u>

10  (1983) 143 Cal.App.3d 111, 116).   "A breach of contract or intentional interference with

11  contract can make the offending party a constructive trustee" [*Ibid* citing <u>Neet v. Holmes</u>

12  (1944) 25 Cal.2d 447, 464, 466; <u>Weiss v. Marcus</u> (1975) 51 Cal.App.3d 590, 600].

### III. CONCLUSION

    For each of the reasons hereinabove set forth, the demurrers of Defendant, S. Michael
Love, should each be denied, and in the alternative, Plaintiff respectfully requests leave to
amend.

                                    Respectfully submitted,
                                    FRANK E. ROGOZIENSKI, INC.


                                    By: _____
                                        Frank E. Rogozienski
                                        Attorney for Plaintiff

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEMURRER OF DEFENDANT, S. MICHAEL LOVE, TO FIRST
AMENDED COMPLAINT
                                    14
                        **EXHIBIT 2 PAGE 389**

                                                              262

                                        L0VE00761

15

**EXHIBIT 2 PAGE 390**

LOVE00762

1    FRANK E. ROGOZIENSKI, ESQ., California Bar No. 51445.
     FRANK E. ROGOZIENSKI, INC.
2    A Professional Corporation
     Attorneys at Law
3    Coronado Professional Square
     1203 Second Street
4    Coronado, CA 92118
5    Telephone: (619)437-1878
     Facsimile: (619)437-4894
6

7    Attorneys for Plaintiff, FRANK E. ROGOZIENSKI

8

9

10           SUPERIOR COURT OF THE STATE OF CALIFORNIA

11               FOR THE COUNTY OF SAN DIEGO

12

13    FRANK E. ROGOZIENSKI,      )     Case No. GIC843843
                         )
14                          )
          Plaintiff,        )     MEMORANDUM OF POINTS AND
15                          )     AUTHORITIES IN OPPOSITION TO
         v.              )     DEMURRER OF DEFENDANT, JAMES D.
16                          )     ALLEN, TO FIRST AMENDED
   JAMES D. ALLEN, S. MICHAEL LOVE)     COMPLAINT, AND MOTION TO STRIKE
17    and DOES 1 through 10, inclusive,    )
18                          )
         Defendants.      )     Date: 07/15/05
19                          )     Time: 11:00 a.m.
                         )     Dept: 61
20  —————————————————— )

21                               DEPT. 61
22                               HON. John S. Meyer

23

24

25

26

27    MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
     TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST
28    AMENDED COMPLAINT, AND MOTION TO STRIKE

F I L E D
Clerk of the Superior Court

JUL 1 – 2005

By: BARBARA JARRATT, Deputy

**EXHIBIT 2 PAGE 391**

LOVE00763

## TABLE OF CONTENTS

I. RELEVANT FACTUAL BACKGROUND .................................. 1

II. MOTION TO STRIKE AND DISREGARD ............................... 4
    1.  Allen's failure to lodge copies of non-California cases cited ........... 4
    2.  Allen's Memorandum is in excess of the maximum permitted
        page length ..................................................... 4

III. OPPOSITION TO ALLEN'S DEMURRERS ............................. 5
    1.  Judicial Immunity Is Not Applicable To Allen's Misconduct ........... 5
    2.  The Litigation Privilege Is Not Applicable To Allen's Misconduct ...... 7
    3.  The Tort Claims Act Is Not Applicable To Allen's Misconduct ........ 8
    4.  Plaintiff's Claims Are Not Based Upon A Violation Of The
        Rules Of Professional Conduct ................................... 8
    5.  Plaintiff's Seventh Cause Of Action Is Not Uncertain ............... 9

IV. CONCLUSION ............................................... 10

FRANK E. ROZZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181530
1205 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1878

i

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST
AMENDED COMPLAINT, AND MOTION TO STRIKE

EXHIBIT 2 PAGE 392

LOVE00764

264

## TABLE OF AUTHORITIES

                                                                      Page

### California Cases

Greene v. Zank (1984) 158 Cal.App.3d 497 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Navellier v. Sletton (2003) 106 Cal.App.4th 763 . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Roberts v. Ball, Hunt, Hart, Brown & Baerwitz (1976) 57 Cal.App.3d 104 . . . . . . . . . . . 9

Silberg v. Anderson (1990) 50 Cal.3d 205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tatum v. Southern Pacific (1967) 250 Cal.App.2d 40 . . . . . . . . . . . . . . . . . . . . . . . . 6

Willard v. Caterpillar, Inc. (1995) 40 Cal.App.4th 892 . . . . . . . . . . . . . . . . . . . . . . . 9

### Federal Cases

Butz v. Economou (1978) 438 U.S. 478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Reynolds v. County of San Diego (9th Cir.) (1996) 84 F.3d 1162 . . . . . . . . . . . . . . . . 9

Stump v. Sparkman (1978) 435 U.S. 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

### Statute and Rules of Court

Business & Professions Code §6128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Civil Code §52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

California Rule of Court 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
California Rule of Court 311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
California Rule of Court 313 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST
AMENDED COMPLAINT, AND MOTION TO STRIKE

**EXHIBIT 2 PAGE 393**

265

F ANK E. RO OZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
1203 POST OFFICE BOX 181030
1202 SECOND STREET "C" AVENUE
CORONADO, CALIFORNIA 92118-4417
(619) 437-1878

LOVE00765

1    Plaintiff offers the following in opposition to the demurrer of Defendant, James D.

2  Allen:

3                    I.  RELEVANT FACTUAL BACKGROUND

4    Allen is an attorney engaged in the practice of law as a sole proprietor [Compl. ¶ 4].

5  Plaintiff was married in 1982, and in October, 1997, Plaintiff's then spouse ["Petitioner"]

6  brought a Petition for Dissolution of their marriage [herein the "Underlying Proceeding"].

7  In the Underlying Proceeding, Love represented Petitioner [Compl. ¶ 9], and Allen from

8  time-to-time devoted some small fration of his working time to periodically acting as a

9  temporary judge.  The substantially greater balance of Allen's working time was as a lawyer

10  in the practice of law.

11    In or about June 1998, Plaintiff and Petitioner entered into a written agreement in

12  which they agreed (a) to the entry of an order that Allen could act as temporary judge in the

13  Underlying Proceeding and (b) that all costs of Allen shall be borne by them, with each

14  paying one-half the cost of the services of Allen. Although, no hourly rate or fee amount was

15  set expressly forth in the written agreement, the agreement was that Plaintiff would pay one-

16  half of Allen's services in the Underlying Proceeding at Allen's  normal and customary

17  billing rate as an attorney on a fee-for-service basis.  Between June 1998 and August 4, 1998,

18  and prior to his appointment as temporary judge, Allen performed services and charged fees

19  which were paid under Plaintiff's and Petitioner's agreement one-half by Plaintiff and one-

20  half by Petitioner.  Allen served as temporary judge in the Underlying Proceeding from the

21  time of his appointment by the Presiding Judge of the Superior Court on August 4, 1998 until

22  his withdrawal on March 27, 2003 in response to Plaintiff's challenge of him for cause.

23  Allen submitted billings to Plaintiff as a lawyer on the letterhead of Allen-Magidson [Compl.

24  ¶ 10].

25    In or about the Summer of 2001, but no later than November or early December of

26

27  _____

    MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
28  TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST
    AMENDED COMPLAINT, ETC.

FRANK E. ROLOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
P.O. BOX 181189
1203 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1978

1

**EXHIBIT 2 PAGE 394**

266

1  2001, Allen and Love entered into a conspiracy [herein the "Conspiracy"] to benefit

2  themselves and others with whom they were associated designed to injure, harm and cause

3  damage to Plaintiff by, among other things, interfering with Plaintiff's contractual relations,

4  interfering with Plaintiff's prospective economic advantage, by violating Plaintiff's civil

5  rights, defrauding and deceiving Plaintiff, by engaging in unfair competition in violation of

6  applicable California law, and engaging in willful and negligent misconduct. A purpose of

7  the Conspiracy was for Love to make a gift to Allen of the Loves' interest in Warner Springs

8  Ranch in violation of Allen's and Love's ethical and other obligations, and to conceal the

9  fact of such gift [Compl. ¶ 16]. Allen and Love arranged a gift to Allen of the Loves' Unit

10  850A interest in Warner Springs Ranch. By Quitclaim Deed signed February 8, 2002, the

11  Loves transferred to Bottomley the Loves' Unit 850A interest in Warner Springs Ranch.

12  Both Love and Allen knew that Bottomley was acting as a strawman for the transfer of the

13  Loves' Unit 850A through to Allen, the intended recipient [Compl. ¶ 25]. By Quitclaim

14  Deed signed March 15, 2002, Bottomley transferred to Allen the Loves' Unit 850A interest

15  in Warner Springs Ranch. This Quit Claim Deed was recorded March 18, 2002 [Compl. ¶

16  26].

17        Bottomley did not prepare any of the deeds which transferred the Loves' interests in

18  Warner Springs Ranch. Love (or someone on his behalf) prepared the Quitclaim Deed from

19  the Loves, and Allen (or someone on his behalf) prepared the Quitclaim Deed to himself.

20  Bottomley explained to Love his intention of transferring the Loves' Unit 850A to Allen so

21  Allen could use that half-interest to upgrade to a full membership. Bottomley further

22  explained to Love that because he [Bottomley] was simply passing Unit 850A on to Allen,

23  it did not make sense for Love to prepare the Quitclaim Deed for that interest in Bottomley's

24  and Bottomley's wife's names, as Love was doing for the Loves' Unit 1546B interest which

25  Bottomley and his wife were keeping. Bottomley explained that it would be simpler if only

26

27  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
    TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST

28  AMENDED COMPLAINT, ETC.

FRANK E. ROCHZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 180505
1203 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 435-1300

2       **EXHIBIT 2 PAGE 395**

267

1  he (and not Bottomley and his wife) had to sign the transfer through to Allen. The Quitclaim

2  Deeds transferring the Loves' interests in Warner Springs Ranch recite they are "gifts"

3  [Compl. ¶ 27].

4      In mid-March, 2002, Allen prepared and had Bottomley sign a Quitclaim Deed

5  transferring the Loves' Unit 850A interest to himself. This deed recites it is a "gift". Allen

6  caused this deed to be recorded on March 18, 2002 [Compl. ¶ 30]. Allen then transferred the

7  Loves' Unit 850A interest in the Ranch to the Warner Springs Owners Association, and

8  received back a Grant Deed from the Association giving him Unit 4257 [Compl. ¶ 32]. The

9  circuitous movements Defendants orchestrated of the Loves' Unit 850A interest in Warner

10  Springs Ranch effectively laundered this transaction so as to obscure this gift to Allen

11  [Compl. ¶ 33].

12      Defendants knew or should have known that making the gift to Allen of the Loves'

13  Unit 850A interest in Warner Springs Ranch would result in Allen being disqualified from

14  acting as temporary judge in the Underlying Proceeding. Defendants further knew or should

15  have known that once made, the gift to Allen of the Loves' Unit 850A interest in Warner

16  Springs Ranch disqualified Allen from acting as temporary judge in the Underlying

17  Proceeding [Compl. ¶ 34]. Allen's acceptance of the gift of the Loves' Unit 850A interest

18  in Warner Springs Ranch in March 2002 immediately disqualified him from acting as

19  temporary judge in the Underlying Proceeding. The making, and Allen's acceptance, of the

20  gift of the Loves' Unit 850A interest in Warner Springs Ranch was not a judicial act, was not

21  done in the course of the conduct of the Underlying Proceeding and was not done to achieve

22  the legitimate objectives of the Underlying Proceeding [Compl. ¶ 35].

23      After accepting the gift of the Loves' interest in Unit 850A, Allen, resuming again his

24  role as a temporary judge, made rulings in the Underlying Proceeding [Compl. ¶¶ 36-40].

25  Plaintiff's claims herein against Allen do not contest the propriety of those post-gift rulings;

26

27  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST
28  AMENDED COMPLAINT, ETC.

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 180339
1205 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1876

3    **EXHIBIT 2 PAGE 396**

FRANK E. ROLOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181630
1820 SECOND STREET, "C" AVENUE
CORONADO, CALIFORNIA 92118-4417
(619) 437-1978

1    which have been set aside by the Judge of the Superior Court who replaced Allen [Compl.

2    ¶ 43].

3        In or about September and October 2003, and after Allen filed his Statement of

4    Withdrawal in the Underlying Proceeding, Allen and Allen's counsel spoke with one or more

5    reporters and made threatening, misleading and disparaging remarks about the truth of

6    Allen's involvement in the gift to him of the Loves' Unit 850B interest in Warner Springs

7    Ranch. On information and belief, Allen and Allen's counsel made these statements as a part

8    of and in furtherance of the Conspriacy, to discredit Plaintiff and coerce Plaintiff into

9    accepting Allen's rulings, and to bolster and support actions Allen had previously taken in

10   his judicial capacity. In speaking with the press, Allen was not acting in his judicial capacity

11   or in the course of the conduct of the Underlying Proceeding, or to achieve the legitimate

12   objectives of the Underlying Proceeding [Compl. 44].

13   ## II. MOTION TO STRIKE AND DISREGARD

14       Allen's Memorandum Of Points And Authorities [herein "Memorandum"] should be

15   stricken and/or disregarded by the Court for the following reasons:

16       1.   Allen's failure to lodge copies of non-California cases cited.

17       Allen's Memorandum cites to and relies upon non-California cases, none of

18   which have been lodged with the Court. California Rule of Court 313(h) provides:

19           "If any authority other than California cases ... is cited, a copy
             of the authority **must be lodged** (emphasis added) with the
20           papers that cite the authority and tabbed as exhibits as required
             by rule 311(e). ..."
21

22   Allen's Memorandum should be stricken or the portion referring to non-California cases

23   should be disregarded for failure to comply with the foregoing Rule of Court.

24       2.   Allen's Memorandum is in excess of the maximum permitted page length.

25       Allen's Memorandum has been printed on 28 line paper. For evan a cursory

26

27   MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
     TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST
28   AMENDED COMPLAINT, ETC.

1  review of this pleading, it is clear that Allen's fifteen page Memorandum contains an

2  undersized font size that is quite small and there are in excess of 28 lines of type on each

3  page. None of the lines of print match the numbers in the left margin. Allen's "artful"

4  formatting of the Memorandum provides him with abundant "extra" verbiage.[1]  California

5  Rule of Court 313(d) provides "... no opening or responding memorandum may exceed 15

6  pages," and California Rule of Court 201(d)(4) provides that "[e]ach line number must be

7  aligned with a line of type ..." Allen's Memorandum should be stricken or disregarded for

8  failure to comply with the foregoing Rules of Court.

9  ## III. OPPOSITION TO ALLEN'S DEMURRERS

10      Plaintiff opposes each of the specific demurrers raised by Allen on each of the

11  following grounds:

12  ### 1. Judicial Immunity Is Not Applicable To Allen's Misconduct.

13      Allen is not shielded from liability for damages caused by his misconduct because the

14  wrongful acts giving rise to Allen's liability were not done while he was acting in a judicial

15  capacity. For the doctrine of judicial immunity to apply, Allen's acts must have been

16  performed in his judicial capacity. Immunity depends not on the status of the defendant, but

17  rather, on the specific work or function being performed [see Greene v. Zank (1984) 158

18  Cal.App.3d 497, 508, citing Butz v. Economou (1978) 438 U.S. 478, 511-512]. The factors

19  applied in determining whether an act (by a judge) is a "judicial one" for purposes of

20  conferring judicial immunity relate to the nature of the act itself, i.e., whether it is a function

21  normally performed by a judge, and (b) the expectations of the parties, i.e., whether they

22

23      [1]Had Allen required more than 15 pages to present his Memorandum, an application stating
24  the reasons why his argument could not be made within the state limit must have been made to the
    Court at least 24 hours before the Memorandum was due [California Rule of Court 313(e)]. No such
25  application was made.

26

27  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
    TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST
28  AMENDED COMPLAINT, ETC.

5

**EXHIBIT 2 PAGE 398**

270

L0VE00770

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181850
1201 SECOND STREET "C" AVENUE
CORONADO, CALIFORNIA 92178-1417
(619) 437-1079

1    dealt with the judge in his judicial capacity [Stump v. Sparkman (1978) 435 U.S. 349, 350].

2    Here, both of these factors indicate that Allen's acceptance of the gift was not a judicial act.

3    Here, Allen accepted a gift of the Love's Unit 850A interest in Warner Springs Ranch

4    knowing that Love was an attorney who had appeared before him in the Underlying

5    Proceeding (during which earlier time in that proceeding Allen had been acting in his

6    capacity as a temporary judge) and knowing that he (Allen) would be obligated in the future

7    (with Allen again assuming the capacity as a temporary judge) to make rulings in the

8    Underlying Proceeding unencumbered by any appearance of or actual bias, including any

9    award of fees and costs of attorney Love. Allen's acceptance of the gift and active

10   participation in the conveyance of the gift to himself were not acts done in Allen's capacity

11   as a judicial officer. He was not performing any judicial function, and he was not on judicial

12   duty when he accepted the gift and made the transfer to himself.[2]

13   In addition, a judge's actions are not immune where he has acted in the clear absence

14   of all jurisdiction [Stump v. Sparkman, supra 43 U.S. at 356-357]. Allen's acceptance of the

15   gift was a voluntary and intentional act which immediately disqualified him from thereafter

16   acting again as the temporary judge in the Underlying Proceeding [Tatum v. Southern Pacific

17   (1967) 250 Cal.App.2d 40, 43]. In spite of this undisclosed disqualification, Allen thereafter

18

19

20   [2] In footnote 4 and elsewhere in his Memorandum of Points and Authorities, Allen repeatedly

21   misstates the allegations of Plaintiff's Complaint that the core of Plaintiff's action is "that Mr. Allen's
     improper rulings made in his capacity as a temporary judge" are the acts which resulted in Plaintiff's

22   damages. To reach this distortion, Allen ignores the actual allegations of Plaintiff's Complaint
     (which do not set forth any claim against Allen for "improper rulings", or even mention that term)

23   and further ignores the allegations that "[e]xcept where otherwise expressly stated to the contrary,
     the actions and conduct of Allen alleged herein were not done by Allen in his role or capacity as a

24   judicial officer. The actions and conduct on which Allen is sued herein are not judicial acts" [Compl.
     ¶ 47]. The allegations and claims Allen creates and argues in his demurrer are not the allegations

25   and claims of Plaintiff's Complaint.

26

27   MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
     TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST

28   AMENDED COMPLAINT, ETC.

                                                                                    271

                                             6

EXHIBIT 2 PAGE 399

LOVE00771

FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 1619SQ
1201 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1617
(619) 437-1878

1    rendered rulings. It is only **if** Allen had jurisdiction to make those subsequent rulings, that

2    the making of those rulings would be a judicial act. In addition, and even if Allen were

3    protected by judicial immunity in those subsequent rulings, here Plaintiff's claims are **not**

4    because Allen's rulings were erroneous (i.e., Plaintiff's claims against Allen are **not** a

5    challenge to Allen's judicial acts), but rather because Allen's **non**-judicial act in accepting the

6    gift disqualified him and will require that Plaintiff re-litigate the Underlying Proceeding.

7    This is because Allen's non-judicial acceptance of the gift both: (a) disqualified him (Allen)

8    from thereafter rendering a decision on the matters he (Allen) had not as yet decided under

9    submission from the in excess of fourteen days of trial in the Underlying Proceeding; **and**

10   (b) disqualified him (Allen) from conducting further proceedings and making further rulings

11   in the Underlying Proceeding. As a result of Allen's non-judicial acceptance of the gift, the

12   Superior Court Judge who replaced him has set aside Allen's post-gift rulings [Compl. ¶ 43],

13   and Plaintiff has been damaged (among other things) in the loss of any value from the fees,

14   costs and expenses spent in litigating the matters which remained undecided by Allen when

15   he accepted the gift and which now must be re-litigated before the Superior Court Judge who

16   replaced Allen. These amounts include (but are not limited to) fees and costs Plaintiff paid

17   to Allen and others which Allen's voluntary acceptance of the gift rendered of no value.

18       Accordingly, judicial immunity is not applicable to the misconduct of Allen which is

19   alleged herein.

20       2. <u>The Litigation Privilege Is Not Applicable To Allen's Misconduct</u>.

21       "The litigation privilege immunizes litigants from liability for torts, other than

22   malicious prosecution, which arise from communications in judicial proceedings (<u>Silberg v.</u>

23   <u>Anderson</u> (1990) 50 Cal.3d 205, 212). The privilege generally applies to any communication

24   by a litigant in a judicial proceeding that is made 'to achieve the objects of the litigation' and

25   has 'some connection or logical relation to the action' (Id at p. 212)" [Navellier v. Sletton

26

27   MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
     TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST
28   AMENDED COMPLAINT, ETC.

7                           **EXHIBIT 2 PAGE 400**

LOVE00772

FRANK L. KU OZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
1203 SECOND STREET AT A AVENUE
POST OFFICE BOX 181830
CORONADO, CALIFORNIA 92118-1417
(619) 437-7878

(2003) 106 Cal.App.4th 763, 770]. Here, the statements to the press attributable to Allen (the only "communications" Allen is sued on in the Complaint) were made <u>after</u> he (Allen) had withdrawn and was no longer a temporary judge in the Underlying Proceeding [Compl. ¶¶ 44 and 48]. These statements were further not made to achieve the objects of the Underlying Proceeding [Compl. ¶¶ 44 and 48]. Accordingly, the litigation privilege has no application herein.

   3.  <u>The Tort Claims Act Is Not Applicable To Allen's Misconduct</u>.

     The Tort Claims Act is not applicable to Allen's misconduct because (a) he was not a public employee; and (b) the acts sued on herein were not within the scope of any employment as a public employee. Although a judge of the Superior Court is a public employee (his salary being paid from public funds), an attorney in private practice serving as a temporary judge is not, especially where, as here, he is paid by the parties and not from public funds. Moreover, and even assuming *arguendo* that Allen was somehow a public employee, none of the acts Allen is sued on herein (e.g., accepting the gift and statements to the press) were done by him in the scope of any employment as a public employee. Moreover, Plaintiff does not contend that any public employer of Allen is liable for the actions of Allen, and thus the Tort Claims Act has no application.

   4.  <u>Plaintiff's Claims Are Not Based Upon A Violation Of The Rules Of Professional Conduct</u>

     Plaintiff's claims alleged in the Eleventh and Twelfth causes of action are not dependent upon Allen's misconduct being a violation of the Rules of Professional Conduct. Rather, these causes of action arise from the intentional/negligent breach of the duty of care owed by Allen to Plaintiff. That these duties are reflected in part in certain Rules of Professional Conduct does not insulate Allen from his breach of those duties. Reference is made to the Rules of Professional Conduct because the cited rules embody and restate what

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST
AMENDED COMPLAINT, ETC.

8

**EXHIBIT 2 PAGE 401**

278

L0VE00773

F. JANK E. ROJOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181890
1200 SECOND STREET AT "C" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1870

F. FRANK E. ROJOZIENSKI
A PROFESSIONAL CORPORATION
CORONADO PROFESSIONAL SQUARE
POST OFFICE BOX 181830
1208 SECOND STREET AT "B" AVENUE
CORONADO, CALIFORNIA 92118-1417
(619) 437-1876

1    is otherwise the public policy of this State. Plaintiff's Eleventh and Twelfth causes of action

2    are based upon Allen's willful/negligent breach of his duty of care[3] as a professional engaged

3    in the practice of law in this State (see, e.g., Roberts v. Ball, Hunt, Hart, Brown & Baerwitz

4    (1976) 57 Cal.App.3d 104, 109-111, and Business & Professions Code §6128 (that "[e]very

5    attorney is guilty of a misdemeanor who ... [i]s guilty of any deceit or collusion, or consents

6    to any deceit or collusion, with intent to deceive the court or any party")]. Irrespective of the

7    Rules of Professional Conduct, Allen breached his duty of care owed to Plaintiff and is liable

8    for his misconduct in accepting the gift of the Loves' Unit 850A interest in Warner Springs

9    Ranch knowing his acceptance of that gift would cause immediate injury and damage to

10   Plaintiff, including the loss of fees, costs and expenses Plaintiff had paid in the prior trial

11   (which must now be retried because Allen disqualified himself), and the fees, costs and

12   expenses Plaintiff will be required to continue to incur in having the retrial. These lost

13   amounts include monies paid to Allen, who clearly should not be permitted to profit from his

14   own wrongs.[4]

15       5. **Plaintiff's Seventh Cause Of Action Is Not Uncertain**

16       "Any individual whose exercise or enjoyment of rights secured by the Constitution or

17   laws of the United States, or of rights secured by the Constitution or laws of this state, has

18   been interfered with, or attempted to be interfered with, as described in subdivision (a), may

19   institute and prosecute in his or her own name and on his or her own behalf a civil action for

20   damages, including but not limited to, damages ..." [Civil Code §52.1(b); see also Reynolds

21   v. County of San Diego (9th Cir.) (1996) 84 F.3d 1162]. Civil Code §52.1 applies "whether

22

23       [3]It is axiomatic that a duty exists to refrain from intentionally committing tortious conduct.

24       [4]See e.g., Willard v. Caterpillar, Inc. (1995) 40 Cal.App.4th 892, 920 (citing the Restatement

25   of Torts that "conduct which is illegal or unfair or immoral according to the common understanding
     of society" may subject one to tort liability").

26

27   MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
     TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST

28   AMENDED COMPLAINT, ETC.

9        **EXHIBIT 2 PAGE 402**

274

1  or not acting under color of law." It is axiomatic that individuals have the right to a fair trial,

2  free from actions and conduct which disqualify the trial judge and a trial where doubts are

3  not raised concerning the trial judge's impartiality. Here, Allen's taking of the gift of the

4  Loves' Unit 850A interest in Warner Springs Ranch was an act of coercion which

5  immediately disqualified him from further or thereafter acting as a temporary judge in the

6  Underlying Proceeding and raised serious and obvious concerns regarding his impartiality.

7  As such, Plaintiff has alleged the requisite elements for damages under Civil Code §52.1.

8                               IV.  CONCLUSION

9      For each of the reasons hereinabove set forth, the demurrers of Defendant, James D.

10  Allen, should each be denied, and in the alternative, Plaintiff respectfully requests leave to

11  amend.

12                                          Respectfully submitted,
                                            FRANK E. ROGOZIENSKI, INC.
13

14

15                                          By:_____

16                                             Frank E. Rogozienski
17                                             Attorney for Plaintiff

18

19

20

21

22

23

24

25

26

27  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
    TO DEMURRER OF DEFENDANT, JAMES D. ALLEN, TO FIRST
28  AMENDED COMPLAINT, ETC.

L0VE00775

LOVE00776

COURT OF APPEAL FOR THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRANK E. ROGOZIENSKI, | ) CASE NO. D047858 |
| | ) |
| Plaintiff and Appellant, | ) San Diego County |
| | ) Superior Court |
| v. | ) Case No. GIC843843 |
| | ) |
| JAMES D. ALLEN and S. MICHAEL | ) |
| LOVE, | ) |
| | ) |
| Defendants and Respondents | ) |

APPELLANT'S IN SUPPORT OF
APPELLANT'S OPENING BRIEF
VOLUME II OF II
Pages 276-484

On Appeal From The Superior Court
County of San Diego
The Honorable Joan M. Lewis

FRANK E. ROGOZIENSKI, INC.
FRANK E. ROGOZIENSKI, ESQ., BAR NO. 51445
A Professional Corporation
Attorneys At Law
1660 Union Street, Third Floor
San Diego, CA 92101
Telephone: (619) 237-1878
Facsimile: (619) 237-1870
Attorneys for Plaintiff and Appellant

**EXHIBIT 2 PAGE 404**

LOVE00777

COURT OF APPEAL FOR THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRANK E. ROGOZIENSKI, | CASE NO. D047858 |
| Plaintiff and Appellant, | San Diego County |
| v. | Superior Court<br>Case No. GIC843843 |
| JAMES D. ALLEN and S. MICHAEL<br>LOVE, | |
| Defendants and Respondents. | |

APPELLANT'S IN SUPPORT OF
APPELLANT'S OPENING BRIEF
**VOLUME II OF II**
**Pages 276-484**

On Appeal From The Superior Court
County of San Diego
The Honorable Joan M. Lewis

FRANK E. ROGOZIENSKI, INC.
FRANK E. ROGOZIENSKI, ESQ., BAR NO. 51445
A Professional Corporation
Attorneys At Law
1660 Union Street, Third Floor
San Diego, CA 92101
Telephone:  (619) 237-1878
Facsimile:  (619) 237-1870
Attorneys for Plaintiff and Appellant

**EXHIBIT 2 PAGE 405**

<u>ROGOZIENSKI v. ALLEN, LOVE, et al.</u>

<u>APPENDIX</u>

<u>CHRONOLOGICAL INDEX</u>

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|---|---|---|---|
| 1 | 03/07/03 03/10/03 07/03/03 | Request For Disclosure; Corrected Request For Disclosure; Findings And Order After Hearing | I;1-3 I;5-7 I;9-11 |
| 2 | 03/28/05 | First Amended Complaint For Damages, etc. | I;12-47 |
| 3 | 03/30/05 | Notice Of Correction Of Typographical Error In First Amended Complaint | I;48-49 |
| 4 | 05/23/05 | Peremptory Challenge | I;50 |
| 5 | 05/25/05 | Notice Of Demurrer and Demurrer to First Amended Complaint by Defendant S. Michael Love | I;51-54 |
| 6 | 05/25/05 | Memorandum of Points and Authorities in Support of Demurrer of Defendant S. Michael Love to First Amended Complaint | I;55-69 |
| 7 | 05/25/05 | Request for Judicial Notice | I;70-83 |
| 8 | 05/26/05 | Notice Of Case Reassignment | I;84 |
| 9 | 06/13/05 | Notice of Hearing on Defendant, James D. Allen's Demurrer to Plaintiff's First Amended Complaint | I;85-86 |

i

**EXHIBIT 2 PAGE 406**

LOVE00779

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|-----|------|-------------|--------------------|
| 10 | 06/13/05 | Defendant, James D. Allen's Demurrer to Plaintiff's First Amended Complaint | I;87-93 |
| 11 | 06/13/05 | Defendant James D. Allen's Memorandum of Points and Authorities in Support of Demurrer to First Amended Complaint | I;94-114 |
| 12 | 06/13/05 | Defendant James D. Allen's Notice Of Lodgment Of Documents In Support Of Demurrer to Plaintiff's First Amended Complaint | I;115-241 |
| 13 | 06/13/05 | Defendant James D. Allen's Request For Judicial Notice In Support Of Demurrer To Plaintiff's First Amended Complaint | I;242-244 |
| 14 | 07/01/05 | Memorandum Of Points And Authorities In Opposition To Demurrer Of Defendant, S. Michael Love, To First Amended Complaint | I;245-262 |
| 15 | 07/01/05 | Memorandum Of Points And Authorities In Opposition To Demurrer Of Defendant, James D. Allen, To First Amended Complaint | I;263-275 |
| 16 | 07/01/05 | Notice Of Lodgment Of Non-California Cases [CRC 313(h)] (Plaintiff) | II;276-337 |

ii

EXHIBIT 2 PAGE 407

LOVE00780

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|-----|------|-------------|--------------------|
| 17 | 07/08/05 | Reply In Support Of Demurrer Of Defendant S. Michael Love To First Amended Complaint | II;338-348 |
| 18 | 07/08/05 | Defendant James D. Allen's Reply Memorandum Of Points And Authorities In Support Of Demurrer To Plaintiff's First Amended Complaint | II;349-359 |
| 19 | 07/08/05 | Defendant James D. Allen's Notice Of Lodgment Of Federal Authorities In Support Of Demurrer To Plaintiff's First Amended Complaint | II;360-438 |
| 20 | 07/13/05 | Minute Order Re: Court's Recusal | II;439 |
| 21 | 07/15/05 | Notice Of Case Reassignment Due To Challenge, Recusal Or Special Assignment | II;440 |
| 22 | 07/15/05 | Amended Notice Of Demurrer Hearing To First Amended Complaint By Defendant S. Michael Love | II;441 |
| 23 | 07/20/05 | Amended Notice Of Hearing On Defendant James D. Allen's Demurrer To Plaintiff's First Amended Complaint | II;442-443 |

iii

**EXHIBIT 2 PAGE 408**

LOVE00781

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|---|---|---|---|
| 24 | 07/20/05 | Second Amended Notice Of Demurrer Hearing To First Amended Complaint By Defendant S. Michael Love | II;444 |
| 25 | 07/25/05 | Notice Of Case Assignment And Case Management Conference | II;445 |
| 26 | 09/01/05 | Tentative Ruling | II;446-447 |
| 27 | 10/19/05 | Order Sustaining Defendants' James D. Allen And S. Michael Love's Demurrers To First Amended Complaint, And Each Cause Of Action, Without Leave To Amend | II;448-454 |
| 28 | 10/19/05 | Judgment Of Dismissal | II;455-458 |
| 29 | 11/09/05 | Proof Of Service By Mail (serving Nos. 26 and 27) | II;459-460 |
| 30 | 11/14/05 | Notice Of Ruling And Notice Of Order | II;461-469 |
| 31 | 11/14/05 | Notice Of Entry Of Judgment | II;470-476 |
| 32 | 11/14/05 | Proof Of Service By Mail (serving Nos. 29 and 30) | II;477-478 |
| 33 | 01/03/06 | Notice Of Appeal | II;479-480 |
| 34 | 01/06/06 | Notice Designating Record On Appeal | II;481-484 |

iv

**EXHIBIT 2 PAGE 409**

LOVE00783

ROGOZIENSKI v. ALLEN, LOVE, et al.

APPENDIX

ALPHABETICAL INDEX

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|-----|------|-------------|--------------------|
| 22 | 07/15/05 | Amended Notice Of Demurrer Hearing To First Amended Complaint By Defendant S. Michael Love | II;441 |
| 23 | 07/20/05 | Amended Notice Of Hearing On Defendant James D. Allen's Demurrer To Plaintiff's First Amended Complaint | II;442-443 |
| 10 | 06/13/05 | Defendant, James D. Allen's Demurrer to Plaintiff's First Amended Complaint | I;87-93 |
| 11 | 06/13/05 | Defendant James D. Allen's Memorandum of Points and Authorities in Support of Demurrer to First Amended Complaint | I;94-114 |
| 12 | 06/13/05 | Defendant James D. Allen's Notice Of Lodgment Of Documents In Support Of Demurrer to Plaintiff's First Amended Complaint | I;115-241 |
| 19 | 07/08/05 | Defendant James D. Allen's Notice Of Lodgment Of Federal Authorities In Support Of Demurrer To Plaintiff's First Amended Complaint | II;360-438 |

v

**EXHIBIT 2 PAGE 410**

LOVE00784

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|-----|------|-------------|---------------------|
| 18 | 07/08/05 | Defendant James D. Allen's Reply Memorandum Of Points And Authorities In Support Of Demurrer To Plaintiff's First Amended Complaint | II;349-359 |
| 13 | 06/13/05 | Defendant James D. Allen's Request For Judicial Notice In Support Of Demurrer To Plaintiff's First Amended Complaint | I;242-244 |
| 2 | 03/28/05 | First Amended Complaint For Damages, etc. | I;12-47 |
| 28 | 10/19/05 | Judgment Of Dismissal | II;455-458 |
| 15 | 07/01/05 | Memorandum Of Points And Authorities In Opposition To Demurrer Of Defendant, James D. Allen, To First Amended Complaint | I;263-275 |
| 14 | 07/01/05 | Memorandum Of Points And Authorities In Opposition To Demurrer Of Defendant, S. Michael Love, To First Amended Complaint | I;245-262 |
| 6 | 05/25/05 | Memorandum of Points and Authorities in Support of Demurrer of Defendant S. Michael Love to First Amended Complaint | I;55-69 |
| 20 | 07/13/05 | Minute Order Re: Court's Recusal | II;439 |
| 34 | 01/06/06 | Notice Designating Record On Appeal | II;481-484 |

vi

**EXHIBIT 2 PAGE 411**

LOVE00785

| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|-----|------|-------------|--------------------|
| 33 | 01/03/06 | Notice Of Appeal | II;479-480 |
| 25 | 07/25/05 | Notice Of Case Assignment And Case Management Conference | II;445 |
| 8 | 05/26/05 | Notice Of Case Reassignment | I;84 |
| 21 | 07/15/05 | Notice Of Case Reassignment Due To Challenge, Recusal Or Special Assignment | II;440 |
| 3 | 03/30/05 | Notice Of Correction Of Typographical Error In First Amended Complaint | I;48-49 |
| 5 | 05/25/05 | Notice Of Demurrer and Demurrer to First Amended Complaint by Defendant S. Michael Love | I;51-54 |
| 31 | 11/14/05 | Notice Of Entry Of Judgment | II;470-476 |
| 9 | 06/13/05 | Notice of Hearing on Defendant, James D. Allen's Demurrer to Plaintiff's First Amended Complaint | I;85-86 |
| 16 | 07/01/05 | Notice Of Lodgment Of Non-California Cases [CRC 313(h)] (Plaintiff) | II;276-337 |
| 30 | 11/14/05 | Notice Of Ruling And Notice Of Order | II;461-469 |

**EXHIBIT 2 PAGE 412**

LOVE00786



| TAB | DATE | DESCRIPTION | VOL. NO./ PAGE NO. |
|---|---|---|---|
| 27 | 10/19/05 | Order Sustaining Defendants' James D. Allen And S. Michael Love's Demurrers To First Amended Complaint, And Each Cause Of Action, Without Leave To Amend | II;448-454 |
| 4 | 05/23/05 | Peremptory Challenge | I;50 |
| 29 | 11/09/05 | Proof Of Service By Mail (serving Nos. 26 and 27) | II;459-460 |
| 32 | 11/14/05 | Proof Of Service By Mail (serving Nos. 29 and 30) | II;477-478 |
| 17 | 07/08/05 | Reply In Support Of Demurrer Of Defendant S. Michael Love To First Amended Complaint | II;338-348 |
| 1 | 03/07/03 03/10/03 07/03/03 | Request For Disclosure; Corrected Request For Disclosure; Findings And Order After Hearing | I;1-3 I;5-7 I;9-11 |
| 7 | 05/25/05 | Request for Judicial Notice | I;70-83 |
| 24 | 07/20/05 | Second Amended Notice Of Demurrer Hearing To First Amended Complaint By Defendant S. Michael Love | II;444 |
| 26 | 09/01/05 | Tentative Ruling | II;446-447 |

viii

**EXHIBIT 2 PAGE 413**

LOVE00787

**16**

**EXHIBIT 2 PAGE 414**

LOVE00788