4 F.Supp.2d 961                                                     Page 22

4 F.Supp.2d 961

(Cite as: 4 F.Supp.2d 961)

modification of the decree. *Id.* at 690-91. The Fifth Circuit held that the Plaintiff's claims were barred by *Feldman* and explained that "litigants may not obtain review of the state court's actions by filing complaints about those actions in lower federal courts in the form of civil rights suits." *Id.* at 691. The facts in the instant case are strikingly similar. As the Fifth Circuit concluded in *Hale,* this Court finds that it does not have jurisdiction to declare all state judgments void and may not award restitution, attorneys' fees, and costs. Thus, Plaintiff's fourth cause of action must be dismissed as to all Defendants with prejudice. [FN13]

> FN12. *Hale* was cited with approval by the Ninth Circuit in *Worldwide Church of God,* 805 F.2d at 893, n. 3 & 4.

> FN13. While not mentioned by any Defendants, arguably the *Rooker-Feldman* doctrine bars Plaintiff's complaint in its entirety. A court could conclude that each of Plaintiff's four causes of action are inextricably intertwined with the state court decree because much of the relief Plaintiff seeks requires a modification of various judgments entered against him by the state courts.

**C. The Statute Of Limitations Bars Plaintiff's First And Third Causes Of Action**

[50] In Plaintiff's first cause of action he claims that the Defendants violated his rights under the First, Fourth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments of the United States Constitution. Plaintiff's third cause of action is brought under 18 U.S.C. §§ 1985 & 1986. All of these claims are barred by the statute of limitations. Because §§ 1983 & 1985 do not contain their own limitations period, federal courts look to the forum state's statute of limitations for personal injury torts. *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In California, the applicable statute provides for a limitations period of one year from the date the cause of action accrues. CAL. CIV. P. CODE § 340(3). Therefore, the one year statute of limitations

governs claims brought under §§ 1983 & 1985. *McDougal v. County of Imperial,* 942 F.2d 668, 672-74 (9th Cir.1991). The statute of limitations for § 1986 is also one year. *Burnett v. Grattan,* 468 U.S. 42, 48, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984).

*981 [51][52] Federal law determines when a cause of action accrues. *Compton v. Ide,* 732 F.2d 1429, 1432 (9th Cir.1984). A cause of action generally accrues when a Plaintiff "knows or has reason to know of the injury which is the basis of his action." *McCoy v. San Francisco, City & County,* 14 F.3d 28, 29 (9th Cir.1994) (internal citations and quotations omitted).

The County's argument, in which all other Defendants join, is that Plaintiff's initial Complaint was filed on October 15, 1997, and that even with the most generous determination as to when his claims accrued the action is untimely. The County asserts that the last act of misconduct allegedly occurred on September 13, 1996. The Court has carefully reviewed the docket and the Amended Complaint. The County is incorrect in several respects. First, Plaintiff filed this Complaint on September 15, 1997, and not October 15, 1997. While Plaintiff filed a RICO case statement on October 15, 1997, this is considered an amendment to the original pleadings. LOCAL RULE 11.1. This amendment relates back to the date of the original because the information in the RICO case statement arose out of the same conduct, transaction and occurrence as set forth in the original pleading. Fed. R. Civ. P. 15(c). Plaintiff then filed a first Amended Complaint on November 5, 1997, to add Etta C. Gillivan as a defendant. Assuming arguendo that the Amended Complaint would relate back to the original for all defendants, even newly added Etta C. Gillivan, the most favorable date for Plaintiff in the statute of limitations analysis is September 15, 1996. This is the date Plaintiff filed his original complaint.

[53] After reviewing the Amended Complaint the Court concludes that the only act that supposedly occurred after September 15, 1996, happened on September 30, 1996. On September, 30, 1996, Judge Murphy signed an order that he explained

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 555**    413

LOVE00929

4 F.Supp.2d 961

4 F.Supp.2d 961

(Cite as: 4 F.Supp.2d 961)

and gave orally on September 13, 1996. But, at this hearing on September 13, 1996, Plaintiff objected to the Order that Judge Murphy instructed attorney Garrett to submit confirming his verbal instructions. In fact, Plaintiff contends that at the September 13, 1996, hearing Judge Murphy admitted both his bias and that the Order was wrong and illegal. (Am.Compl.¶ 78). As of September 13, 1996, Plaintiff was aware of all the alleged acts that he claims violated his constitutional rights and his causes of action began to accrue. Therefore, Plaintiff's first and third causes of action brought pursuant to §§ 1983, 1985, and 1986 are barred by the statute of limitations and must be dismissed with prejudice as to all defendants.

[54] This Court is comfortable dismissing these claims with prejudice because it cannot conceive of any circumstance under which Plaintiff would be entitled to toll the statute of limitations, or request equitable tolling. The doctrine of equitable tolling only applies "occasionally and in special circumstances." *Addison v. State of California*, 21 Cal.3d 313, 316, 146 Cal.Rptr. 224, 578 P.2d 941 (1978). In general the application of the doctrine requires timely notice, lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff. *Addison*, 21 Cal.3d at 316, 146 Cal.Rptr. 224, 578 P.2d 941. While Plaintiff fails to plead any grounds for tolling or equitable tolling the Court suspects that he would raise two arguments to support such a claim.

[55] First, as to tolling, Plaintiff asserts in his Amended Complaint that he exhausted his state court remedies. The Court interprets this to mean that Plaintiff filed various complaints, appeals, and other actions in state court relating to the matter. In his Amended Complaint Plaintiff describes how he filed four appeals, wrote the presiding judge of San Diego Court, filed complaints with the California State Bar and went, "finally to the California Supreme Court with a verification of accusation about attorney Gavin. After two years he got a letter stating his request was denied." (Am.Compl.¶ 27). Plaintiff filed an action with the Supreme Court of California who refused to hear the case. He then filed for writ of certiorari to the

United States Supreme Court which the Court denied on March 26, 1997. (Am.Compl.¶¶ 82-84). There is no exhaustion requirement for § 1983 complaints brought by non-prisoners thus tolling on such grounds would not be appropriate.

*982 Moreover, affording Plaintiff leave to file a Second Amended Complaint to assert such facts as a basis for equitable tolling would be futile. First, Plaintiff has filed appeal after appeal, he has approached various agencies, administrative bodies, and courts to argue for relief. He obviously has an understanding of the legal system, and appreciates that various courts and agencies may be able to afford him relief. However, Plaintiff failed to file a claim in federal court in the midst of all the claims made to the United States Supreme Court, State Appellate Court, Supreme Court of California, the presiding judge of the San Diego Court, the Commission on Judicial performance, and the California State Bar. Plaintiff's own actions show he was capable of pursuing simultaneous remedies for alleged wrongs in various legal arenas. His failure to bring such claims at an earlier date in federal court is unreasonable and in bad faith. The Plaintiff is dangerously close if not an actual vexatious litigant, at least with respect to his dissolution of marriage. The Court does not understand what good reason he could have for failing to file his complaint in federal court in a timely fashion. The various individuals named in Plaintiff's Amended Complaint have been forced to defend themselves over and over again in various forums, to require them to do so yet again in federal court at this late hour would be highly prejudicial.

Second, Plaintiff could argue he is entitled to tolling with a claim that he did not discover his rights were violated until after September 15, 1996. The Court would not find this position persuasive. Distilled to its essence, Plaintiff's complaint is that he was mistreated and discriminated against during his divorce proceedings. In his Amended Complaint Plaintiff alleges the acts that violated his rights were open and obvious. For example, Plaintiff makes references to "the obvious conspiracies," (Am.Compl.¶ 71). He explains that the Judges were openly biased, for example he

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 2 PAGE 556   414

L0VE00930

4 F.Supp.2d 961                                                                          Page 24

4 F.Supp.2d 961

(Cite as: 4 F.Supp.2d 961)

states that, "Judge Maino admitted on the record that he had biased himself.". (Am.Compl.¶ 8). Plaintiff asserts that the attorneys allegedly involved in the conspiracy mistreated him because they cursed at him, lied to him, and did not provide him with needed information. (Am.Compl.¶ 12). Plaintiff also argues that Judges would not enforce orders, (Am.Compl.¶ 14) and that Court personnel engaged in misconduct such as rewriting the transcript. (Am.Compl.¶ 38). The Court does not see how Plaintiff could not reasonably know of the facts that support his complaint. Tolling on these grounds would also be improper. Accordingly, this Court finds that Plaintiff's first and third causes of action are barred by the statute of limitations and must be dismissed with prejudice as to all defendants.

### VI. Even If Plaintiff Can Allege Facts To Support Tolling Or Equitable Tolling He Cannot State A Claim Against The County Of San Diego And Various Individuals Under §§ 1983, 1985, & 1986
#### A. The County of San Diego

[56][57] Even if Plaintiff could plead facts for equitable tolling, his Amended Complaint would have to be dismissed for the remaining Defendants (the County and the Individuals) for a failure to state a claim on which relief could be granted. Under §§ 1983, 1985, and 1986, "[e]very person" who acts under color of state law may be sued. To state a claim against the County of San Diego he must first establish that the County is a person. In certain circumstances the term "person" has been interpreted broadly, even to include cities, counties, and other local government entities. See *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities, their agencies and their supervisory personnel cannot be held liable under § 1983 on any theory of respondeat superior or vicarious liability. Thus, to the extent that Plaintiff's theory of relief is that County employees or agents violated his rights, his claim fails as a matter of law.

In his Opposition Plaintiff asserts his theory of recovery against the County is outlined in

paragraphs 103 and 104 of his Amended Complaint which state in relevant part that:

(103)....

All persons stand equal before the law, and are to be dealt with as equal in a court of justice. Every person has a right under *983 the Constitution; for the access to the court system, equal protection, right to be heard, to file papers, impartial trial, etc., with or without an attorney. A person or Class of persons should not be discriminated against because they can not afford an attorney or as in the plaintiff's case not allowed to have an attorney by the court and must act in propria persona against an attorney that is a friend of the court and before the judge every day. This is not equal access or equal protection of the court. This is bias and negligence by the court is invidiously discriminatory animus and violation of the Constitution and the laws of the United States. When a court of law neglects or refuses to prevent the wrong, and acts are done under the color of law of a state, and when State officials act within the limits of their lawful authority. But acts are also done "under color of law" when State Officials act outside the limits of their lawful authority while pretending to act in the performance of their official duties; it is a unlawful act for an official to abuse or misuse their powers. (104) There is an unwritten policy in the San Diego Superior Court of discrimination against any person filing a court action in propria persona. Thomas observed this when he was a bailiff. The clerks would reject pleadings without reading them and than [sic] say there got to be something wrong with them, because it was written by propria persona.

(Am.Compl.¶ 104).

[58] The essence of Plaintiff's charge is that the County has an unwritten custom of discriminating against pro per parties. Municipalities can be held liable for deprivations of constitutional rights resulting from their policies or customs. *Monell*, 436 U.S. at 691-93, 98 S.Ct. 2018; *Shaw v. California Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir.1986). See also *Meyers v. Contra Costa County Dept. of Social Services*,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 557**     415

LOVE00931

4 F.Supp.2d 961    Page 25

4 F.Supp.2d 961

(Cite as: 4 F.Supp.2d 961)

812 F.2d 1154 (9th Cir.), *cert. denied,* 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987). Locating a "policy" ensures that a municipality "is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may be fairly said to be those of the municipality." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Moreover, given Plaintiff's allegations that there is an unwritten unofficial policy of discrimination pursuant to a "custom," to subject the County to liability he must show that the relevant practice is so widespread as to have the force of law. *Id.* at 691, 98 S.Ct. 2018 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

In addition, Plaintiff must demonstrate an affirmative link between his deprivation and "the adoption of [a] plan or policy by [the supervisors]—express or otherwise—showing their authorization or approval of such misconduct." *Bergquist v. County of Cochise,* 806 F.2d 1364, 1369-70 (9th Cir.1986) (quoting *Rizzo v. Goode,* 423 U.S. 362, 370-71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). More specifically:

It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality ... [t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights.

*Board of the County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

As currently drafted, Plaintiff's Amended Complaint is completely devoid of any facts supporting his conclusion that there is a widespread custom that the San Diego Superior Court discriminates against pro per Plaintiffs. Nor has Plaintiff clearly and concisely plead facts to show that the municipality acted deliberately resulting in harm. Therefore, even if not barred by the statute of limitations, Plaintiff's Amended Complaint

against the County for violations of his civil rights would be dismissed for failure to state a claim upon which relief can be granted.

*984 B. The Individuals

[59] Individuals and private entities are not normally liable for violations of most rights secured by the United States Constitution. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). To maintain a cause of action based on an allegation of constitutional violations, a Plaintiff must show that the actions complained of are "fairly attributable" to the government. *Rendell-Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *see also Vincent v. Trend Western Technical Corp.,* 828 F.2d 563, 567 (9th Cir.1987).

[60] "Action taken by private Individuals may be 'under color of state law' where there is 'significant' state involvement in the action." *Howerton v. Gabica,* 708 F.2d 380, 382 (9th Cir.1983). Although § 1983's under-color-of-state-law requirement is technically separate from the Fourteenth Amendment's state-action requirement, the two inquiries are closely related. *Collins v. Womancare,* 878 F.2d 1145, 1148 (9th Cir.1989), *cert. denied,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990). The Supreme Court has articulated four distinct tests for determining whether the actions of a private individual amount to state action, these are: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Id.* at 1148-49; *see also George v. Pacific-CSC Work Furlough,* 91 F.3d 1227, 1231 (9th Cir.1996), *cert. denied,* 519 U.S. 1081, 117 S.Ct. 746, 136 L.Ed.2d 684 (1997). The joint action and governmental nexus test are relevant in the instant case.

[61][62][63] The theory behind the joint action test is that private persons act together with state officials under the color of law. *Dennis v. Sparks,* 449 U.S. 24, 27-28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Under this test "courts examine whether state officials and private parties have acted in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 558**    416

4 F.Supp.2d 961                                                  Page 26

4 F.Supp.2d 961

(Cite as: 4 F.Supp.2d 961)

concert in effecting a particular deprivation of constitutional rights." *Collins*, 878 F.2d 1145, 1150 (9th Cir.1989). Courts find that individuals act in concert if there is a "substantial degree of cooperative action" between the state and private actor that results in the deprivation of rights. *Id.* Additionally, private parties are found liable under § 1983 if the state and private actors "share a common, unconstitutional goal." *Id.* (citing *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir.1991)). Joint action can be demonstrated by the existence of a conspiracy. *Collins*, 878 F.2d at 1154; *see also Dennis*, 449 U.S. at 27- 28, 101 S.Ct. 183 (finding that private actors who successfully conspired to bribe judges were liable as state actors under § 1983 despite judicial immunity). "The core question is 'whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity.' " *National Coalition Government of the Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329 (C.D.Cal.1997) (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). Indeed "merely resorting to the courts and being on the winning side of lawsuit does not make a [private] party a joint actor with the judge." *Dennis*, 449 U.S. at 27-29, 101 S.Ct. 183.

[64] While Plaintiff makes general allegations of bribery and conspiracy they are conclusory and fall far short of stating a cause of action. Plaintiff does not delineate for the Court how each Defendant was directly involved and participated in the conspiracy. Such specificity is necessary for Plaintiff to show that each individual so cooperated with the Judges as to come under the color of state law. The only individuals (other than Judges) that Plaintiff even directly mentions are attorneys Gavin and Guillotti. Plaintiff does not explain how his ex-wife Ellen Ricotta and Roy Garrett were involved in the conspiracies, bribery, and other alleged wrongs.

Under the governmental nexus test the Court considers whether there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter

may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Again, as Plaintiff makes only conclusory *985 accusations and fails to specifically delineate how each individual was involved in the alleged conspiracy, if not barred by the statute of limitations this cause of action would be dismissed for a failure to state a claim upon which relief can be granted.

## VII. The Individual Defendants' Request For A Finding Of Contempt

### A. Background

Defense counsel for the Individuals filed an ex parte application for an order to show cause why Plaintiff and his suspected ghost-writing attorney should not be held in contempt of court. This Court issued an order to show cause and has received memorandums of points and authorities and declarations from defense counsel, Plaintiff, and the alleged ghost-writing attorney Lois Brown Kelly.

Defense counsel asserts that when it reviewed Plaintiff's opposition to the Defendant's motion to dismiss it became apparent that he had received the assistance of counsel. Defense counsel based this suspicion, "on the glaring difference in writing style and content as between the "Statement of Facts" and the legal arguments and analysis set forth in the oppositions." (Decl. Murphy ¶ 3). Defense counsel explains that "the 'Statement of Facts' contained the same disjointed and somewhat histrionic writing style of Mr. Ricotta's various complaints. Conversely, the legal arguments appeared cogent, cohesive and displayed a comprehension of legal issues and theory endemic to experienced attorneys." (Decl. Murphy ¶ 4). As a result, Defense counsel contacted Lois Brown Kelly who immediately responded that she was familiar with the case. She admitted that she assisted Plaintiff in researching and writing his memorandums. She denied writing either the entire opposition or the Amended Complaint. (Decl. Murphy ¶ 3).

Ms. Kelly submitted a declaration explaining that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 559**   417

LOVE00933

4 F.Supp.2d 961                                                        Page 27

4 F.Supp.2d 961

(Cite as: 4 F.Supp.2d 961)

she is an active member of the California State Bar. She admitted that while she did not author any pleadings in the lawsuit,

> I had, with regard to the motion to dismiss only, done some legal research and prepared a rough draft a portion of the memorandum of points and authorities in opposition to the motion. In so doing I acted in the capacity of a law clerk only, performing a personal favor at the request of Mr. Ricotta. At the time I submitted my work to Ricotta I told him it was a rough draft only, and that I was not willing to edit nor even to review his final product.

(Decl. Kelly ¶ 4).

Ms. Kelly explained that she played no role in drafting the Complaint, and summarized her involvement as, "other than my very limited research and draftsmanship on a portion of the memorandum of points and authorities in opposition to the motion to dismiss I have had no involvement whatsoever in the instant action. Mr. Ricotta has neither sought nor have I given any advice or counsel with regard to the action." (Decl. Kelly ¶ 6). Ms. Kelly said that she had no intention to either mislead counsel or this Court, or violate any rules governing the activities of attorneys. (Decl. Kelly ¶ 6). At oral argument Defense counsel for the Individuals offered his estimate that Mrs. Kelly drafted all of the legal research and argument sections in Plaintiff's various motions in opposition to the Defendants' motions to dismiss.

## B. The History Of Ghost-Writing

The issue of whether an attorney who ghost-writes for a Plaintiff can be held in contempt is one of first impression in the Ninth Circuit. In fact, there are only three reported cases in which courts have directly tackled this question. *Ellis v. State of Maine*, 448 F.2d 1325 (1st Cir.1971); *Johnson v. Board of County Comm'rs for County of Fremont*, 868 F.Supp. 1226 (D.Colo.1994); *aff'd in part and disapproved in part*, 85 F.3d 489 (10th Cir.1996), *cert. denied sub nom, Greer v. Kane*, 519 U.S. 1042, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996); *Laremont-Lopez v. Southeastern Tidewater Opportunity Center*, 968 F.Supp. 1075, 1077

(E.D.Va.1997).

Beginning in 1971, the First Circuit with "an eye on the future," explained its concern about the problems of pro se Plaintiffs appearing before courts asserting compete ignorance *986 of the law and then presenting a brief that was "manifestly written by someone with some legal knowledge." *Ellis*, 448 F.2d at 1328. The court explained its fear, "that in some cases actual members of the bar represent petitioners, informally or otherwise, and prepare briefs for them which the assisting lawyers do not sign, and thus escape the obligation imposed on members of the bar, typified by F.R.C.P. 11 ...." *Id.* The court went on to state that "we cannot approve of such a practice. If a brief is prepared in any substantial part by a member of the bar, it must be signed by him [her]." *Id.* (emphasis added).

In 1994, a District Court in Colorado addressed this issue and concluded that even if it found it inappropriate conduct for an attorney to ghost-write for a pro se party, the lack of clearly defined rules prohibiting such a practice rendered sanctions inappropriate. *Johnson*, 868 F.Supp. at 1232. In *Johnson* the Plaintiff admitted that documents he filed with the court, although signed by him, were drafted by an attorney. The court explained that ghost-writing raised three areas of concern. First, the court described the standard practice of federal courts is to interpret filings by pro se litigants liberally and to afford greater latitude as a matter of judicial discretion. The court felt that allowing a pro se litigant to receive such latitude in addition to assistance from an attorney would disadvantage the nonoffending party. *Id.* at 1231. Second, the court explained that ghost-writing is a deliberate evasion of the responsibilities imposed on counsel by Fed. R. Civ. P. 11. Rule 11 obligates members of the bar to sign all documents submitted to the court, to personally represent that there are grounds to support the assertions made in each filing. *Id.*

Third, the court explained that such behavior implicated the Rules of Professional Responsibility, specifically the ABA's Model Code of Responsibility DR I-102(A)(4), providing that an attorney should not engage in conduct involving

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 560**      418

L0VE00934

4 F.Supp.2d 961                                                                Page 28

4 F.Supp.2d 961

(Cite as: 4 F.Supp.2d 961)

dishonesty, fraud, deceit, or misrepresentation. Additionally, the court asserted that "[h]aving a litigant appear to be pro se when in truth an attorney is authoring pleadings and necessarily guiding the course of the litigation with an unseen hand is ingenuous to say the least; it is far below the level of candor which must be met by members of the bar." *Id.* at 1231.

Finally the court articulated that "[a] Judge is constrained by Canon 3 of the Code of Conduct for the United States Judges to initiate appropriate action when he or she becomes aware of the likelihood of unprofessional conduct by lawyers." *Id.* at 1232. The Judge held that publishing a memorandum was sufficiently appropriate action since:

> I am confident that none of the offending conduct referred to was thought of as such by the lawyer or lawyers involved. Further the rules of Professional Conduct adopted by the Colorado Supreme Court and perforce [sic] by this court as well as existing ethics opinions of the Colorado Bar Association have not given adequate attention to the ethical considerations implicit in the practice of ghost-writing.

*Id.* at 1232.

In 1997, a District Court in Virginia was faced with a plaintiff appearing pro se who had an attorney ghost-write his complaint. Similar to the reasoning in *Johnson*, the court held that ghost-writing unfairly exploits the mandate that pleadings of pro se litigants be held to a less stringent standard than pleadings drafted by lawyers, as well as nullified the certification requirement of Fed. R. Civ. P. 11, and circumvented the local rules concerning the withdrawal of attorneys. *Laremont-Lopez,* 968 F.Supp. at 1077. The court recognized, however, that there was no specific rule prohibiting ghost-writing and concluded that:

> [w]hile the Court believes that the attorneys should have known that this practice was improper, there is no specific rule which deals with such ghost writing. Therefore the Court FINDS that there is insufficient evidence to find that the Attorneys knowingly and intentionally violated its Rules. In the absence of such

intentional wrongdoing, the Court FINDS that disciplinary proceedings and contempt sanctions are unwarranted.
*Id.* at 1079.

**C. Analysis**

[65] The threshold issue that this Court must address is what amount of aid constitutes *987 ghost-writing. Ms. Kelly contends that she acted as a "law-clerk" and provided a draft of sections of the memorandum and assisted Plaintiff in research. Implicit in the three opinions addressing the issue of ghost-writing, is the observation that an attorney must play a substantial role in the litigation. For example, in *Ellis*, the Court stated that its concern was directed at petitions that were "manifestly written" by someone with some legal knowledge and briefs that were prepared in "any substantial way" by a member of the Bar. 448 F.2d at 1328.

In *Johnson*, the ghost-writing attorney in question drafted the documents entirely. The Court asserted that it was concerned with attorneys who "authored pleadings and necessarily guided the course of the litigation with an unseen hand." 868 F.Supp. at 1231. Finally, in *Laremont* the allegations were that the Plaintiff actually paid attorneys who secretly drafted the complaints, tried to resolve the dispute, and paid the court filing fees out of their law firm's account. *Id.*

[66][67] In light of these opinions, in addition to this Court's basic common sense, it is this Court's opinion that a licensed attorney does not violate procedural, substantive, and professional rules of a federal court by lending some assistance to friends, family members, and others with whom he or she may want to share specialized knowledge. Otherwise, virtually every attorney licensed to practice would be eligible for contempt proceedings. Attorneys cross the line, however, when they gather and anonymously present legal arguments, with the actual or constructive knowledge that the work will be presented in some similar form in a motion before the Court. With such participation the attorney guides the course of litigation while standing in the shadows of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 561**      419

LOVE00935

4 F.Supp.2d 961                                                                              Page 29

4 F.Supp.2d 961

(Cite as: 4 F.Supp.2d 961)

Courthouse door. This conclusion is further supported by the ABA Informal Opinion of 1978 that "extensive undisclosed participation by a lawyer ... that permits the litigant falsely to appear as being without substantial professional assistance is improper." ABA Informal Opinion (1978) (quoted in Elizabeth, J. Cohen, *Afraid of Ghosts: Lawyers May Face Real Trouble When they 'Sort of' Represent Someone,* 80 ABA JOURNAL (Dec.1997)).

In the instant case it appears to the Court that Ms. Kelly was involved in drafting seventy-five to one hundred percent of Plaintiff's legal arguments in his oppositions to the Defendants' motions to dismiss. The Court believes that this assistance is more than informal advice to a friend or family member and amounts to unprofessional conduct.

[68] However, even though Ms. Kelly's behavior was improper this Court is not comfortable with the conclusion that holding her and/or Plaintiff in contempt is appropriate. The courts in *Johnson* and *Laremont* explained that because there were no specific rules dealing with ghost-writing, and given that it was only recently addressed by various courts and bar associations, there was insufficient evidence to find intentional wrongdoing that warranted contempt sanctions.

This Court is persuaded by such reasoning and finds that the circumstances justifying such a conclusion have yet to change. The parties were unable to point the Court to any local, state or national rule addressing ghost-writing. By no means does this Court condone unprofessional conduct. This Court strongly believes that professional rules of conduct are extremely necessary, and are often both too lenient in substance and under enforced. But, the facts of this case are not nearly egregious enough for this Court to take the unprecedented step of holding an attorney and a pro se party in contempt for giving and receiving assistance in the drafting of documents. There is nothing in the record to indicate that Ms. Kelly thought her behavior was offensive and improper, and it is clear that she had no intention to mislead or harm this Court and the other parties involved. Quite the

contrary she was quick to admit the nature and extent of her involvement.

Further, like the Court in *Johnson* this Court believes that per the requirement of the Code of Judicial Ethics, this Opinion is sufficient because it admonishes the attorney that her behavior is questionable, despite the failure of the professional rules of conduct and local court rules to provide clear guidelines on the subject. This case illustrates the *988 need for local courts and professional bar associations to directly address the issue of ghost-writing and delineate what behavior is and is not appropriate. The issue is not only interesting and complex, but surely touches and concerns all attorneys currently practicing law in this Country.

Thus, for the foregoing reasons this Court denies the Individual Defendants' motion for holding the Plaintiff and/or Lois Brown Kelly in contempt of court.

### VIII. Weedon's Request To Set Aside The Entry Of Default

[69][70][71][72] On January 5, 1998, the Clerk of the Court entered default against Defendant Weedon. Weedon moves to set aside this default on the grounds of a good faith mistake, and the existence of a meritorious defense. Federal Rule of Civil Procedure 55 provides that a court may set aside entry of default for "good cause shown." The "good cause" that must be shown is essentially the same as that for setting aside a default judgment under Fed. R. Civ. P. 60(b). *Hawaii Carpenters' Trust Funds v. Stone,* 794 F.2d 508, 513 (9th Cir.1986) ("when considering a motion to set aside a default entry, the parallels between granting relief from a default entry and a default judgment encourage utilizing the list of grounds for relief provided in Rule 60(b)"). The Court considers the following factors in determining whether to set aside an entry of default: (1) whether the moving party was willful or culpable in the default; (2) whether the non-moving party would be prejudiced if entry of default is set aside; and (3) whether the moving party has a meritorious defense. *See Meadows v. Dominican Republic,* 817 F.2d 517,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 562**          420

4 F.Supp.2d 961                                                                 Page 30

4 F.Supp.2d 961

(Cite as: 4 F.Supp.2d 961)

521 (9th Cir.), *cert. denied*, 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987); *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir.1994), *cert. denied*, 514 U.S. 1021, 115 S.Ct. 1367, 131 L.Ed.2d 223 (1995). The standards for setting aside an entry of default, however, are less rigorous than those for setting aside default judgment. *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945-46 (9th Cir.1986) ("Where timely relief is sought from a default ... and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits."). "The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." *Id.* at 945.

The Court finds that Weedon has timely sought relief from the default, has not acted willfully or with any culpable intent, and has several meritorious defenses. This Court also finds that Plaintiff will not be prejudiced by an Order setting aside the entry of default. First, as set forth in the Declaration submitted by Matthew Murphy, counsel for Weedon, Murphy contacted the Clerk's Office the first working day after Weedon received a copy of the entry of default. At this time Murphy believed that Weedon had filed a timely notice of appearance. As soon as the Clerk's Office informed Mr. Murphy that Weedon's notice of appearance was three days late, and that the entry of default was correct, Murphy immediately scheduled a motion to set aside default. (Murphy Decl. ¶¶ 3-9). Thus, Weedon has filed a timely request to set aside the entry of default.

Moreover, there is no evidence of any evil intent or bad faith. There are a number of defendants involved in this case, and each were served on various dates. Several of these Defendants are represented by Murphy. As Murphy sets forth in his declaration, he was referred to Weedon by another client and some confusion resulted as to the proper date to answer the Amended Complaint. Therefore, there is good cause for the miscommunications and resulting mistake in filing a notice of appearance. Second, given Weedon's good faith efforts to answer the complaint in a

timely fashion, and Weedon's immediate attempts to clarify and set aside the entry of default, Plaintiff was promptly notified of Weedon's intent to defend this action. Accordingly Plaintiff will not suffer prejudice by an Order setting aside the entry default which allows the Court to consider the Complaint on the merits.

Third, Weedon has meritorious defenses which necessitate a dismissal of all causes of actions in which he is named as a Defendant. As discussed extensively *supra* at *989 980-982, Plaintiff's first and third causes of action are barred by the statute of limitations. Plaintiff's second cause of action for RICO violations must also be dismissed because he cannot establish a pattern of racketeering activity. *See* discussion *supra* at 977-979. Finally, this Court does not have jurisdiction to afford Plaintiff the relief he seeks in his fourth cause of action. As discussed *supra* at 968, n. 6 and 979, this Court can raise and consider these arguments for Weedon sua sponte. Thus, Weedon can successfully defend himself against this suit. Therefore, as required by the Ninth Circuit this Court resolves any doubt in favor of Weedon and GRANTS his request to set aside the entry of default. *Mendoza*, 783 F.2d at 945.

### VIX. Conclusion

For the reasons set forth above this Court:

1) DISMISSES with PREJUDICE Plaintiff's first and third causes of action as to all Defendants for lack of subject matter jurisdiction.

2) DISMISSES with PREJUDICE Plaintiff's second cause of action for RICO violations as to all Defendants for failure to state a claim.

3) DISMISSES with PREJUDICE Plaintiff's fourth cause of action for equitable relief as to all Defendants, because the requested relief is beyond this Court's subject matter jurisdiction.

4) GRANTS Defendant Weedon's request to set aside the entry of default.

5) DENIES the Individual Defendants' request for finding Plaintiff and Lois Brown Kelly in contempt

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 563**      421

4 F.Supp.2d 961

4 F.Supp.2d 961

(Cite as: 4 F.Supp.2d 961)

Page 31

of court.

6) DIRECTS the Clerk of the Court to close this case file in its entirety.

IT IS SO ORDERED.

4 F.Supp.2d 961

   Motions, Pleadings and Filings (Back to top)

• 3:97CV01667 (Docket)

             (Sep. 15, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 564**   422

Westlaw

4 F.Supp.2d 961

4 F.Supp.2d 961

(Cite as: 4 F.Supp.2d 961)

Page 1

**H**

Motions, Pleadings and Filings

United States District Court,
S.D. California.
Thomas Daniel RICOTTA, Plaintiff,
v.
STATE OF CALIFORNIA et al., Defendant.
No. 97CV1667-J (CGA).

April 15, 1998.

Pro se plaintiff filed a civil rights, racketeering, and conspiracy suit alleging that the state, a county, numerous attorneys and state judges, the state bar, the state commission on judicial performance, a court commissioner, and plaintiff's former wife had acted together to deprive him of a fair marriage dissolution proceeding. On various motions, including motions to dismiss, the District Court, Jones, J., held that: (1) the judges and court commissioner were immune from suit; (2) the Eleventh Amendment barred suit against the court commissioner, the state bar, and the state commission on judicial performance; (3) plaintiff did not adequately allege a pattern of racketeering activity; (4) the *Rooker-Feldman* doctrine barred plaintiff's request to invalidate judgments entered against him in the dissolution proceeding; (5) the civil rights claims were time-barred; (6) plaintiff did not adequately allege civil rights claims against the county or against the individual defendants; (7) an attorney's "ghost-writing" of plaintiff's legal arguments was unprofessional conduct, but did not warrant contempt sanctions; and (8) a default that had been entered against one defendant would be set aside.

Motions granted in part and denied in part.

West Headnotes

[1] Federal Civil Procedure ⟶1824
170Ak1824 Most Cited Cases
Court may dismiss matters sua sponte over which it does not have jurisdiction. Fed.Rules Civ.Proc.Rule 12(h), 28 U.S.C.A.

[2] Federal Civil Procedure ⟶1824
170Ak1824 Most Cited Cases

[2] Federal Civil Procedure ⟶1826
170Ak1826 Most Cited Cases
Court can, sua sponte and without notice, dismiss a claim against a defendant who has not filed a motion to dismiss, where the claimant cannot possibly win relief. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[3] Federal Civil Procedure ⟶1772
170Ak1772 Most Cited Cases
Although there need not be an elaborate recitation of every fact plaintiff may rely upon at trial in order to withstand a motion to dismiss, there must be a finding that the complaint gives defendant fair notice of what plaintiff's claim is and the grounds upon which it rests. Fed.Rules Civ.Proc.Rules 8(a), 12(b)(6), 28 U.S.C.A.

[4] Federal Civil Procedure ⟶1773
170Ak1773 Most Cited Cases
Dismissal is warranted where it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief. Fed.Rules Civ.Proc.Rules 8(a), 12(b)(6), 28 U.S.C.A.

[5] Federal Civil Procedure ⟶1829
170Ak1829 Most Cited Cases

[5] Federal Civil Procedure ⟶1835
170Ak1835 Most Cited Cases
On a motion to dismiss, the complaint should be liberally construed in favor of plaintiff, and its factual allegations taken as true. Fed.Rules Civ.Proc.Rules 8(a), 12(b)(6), 28 U.S.C.A.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 565**     423

· **EXHIBIT 2 PAGE 566**

424

EXHIBIT E

L0VE00940

Westlaw.

98 S.Ct. 1099

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

▷

Briefs and Other Related Documents

Supreme Court of the United States
Harold D. STUMP et al., Petitioners,
v.
Linda Kay SPARKMAN and Leo Sparkman.
No. 76-1750.

Argued Jan. 10, 1978.
Decided March 28, 1978.
Rehearing Denied June 5, 1978.
See 436 U.S. 951, 98 S.Ct. 2862.

Woman, who had been sterilized by order of Indiana circuit court when she was 15 years old, and her husband brought civil rights action against her mother, her mother's attorney, the medical practitioners who performed the sterilization and judge who ordered it. The United States District Court for the Northern District of Indiana dismissed the federal claims, holding that the Indiana judge, the only state agent, was absolutely immune from suit. The Court of Appeals, 552 F.2d 172, reversed, and certiorari was granted. The Supreme Court, Mr. Justice White, held that: (1) under the Indiana statute granting a broad general jurisdiction, the circuit court had jurisdiction to consider the petition; (2) neither the procedural errors the judge may have committed nor the lack of a specific statute authorizing his approval of the petition in question rendered him liable in damages, and (3) because the judge who performed the type of act normally performed only by judges and because he did so in his capacity as a circuit court judge, the informality with which he proceeded did not render his action "nonjudicial" for purposes of depriving him of his absolute immunity.

Reversed and remanded.

Opinion on remand, 601 F.2d 261.

Mr. Justice Stewart filed a dissenting opinion in which Mr. Justice Marshall and Mr. Justice Powell joined.

Mr. Justice Powell filed a dissenting opinion.

West Headnotes

[1] Judges ⬤=36
227k36 Most Cited Cases
Judge will not be deprived of immunity because action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in clear absence of all jurisdiction.

[2] Mental Health ⬤=57
257Ak57 Most Cited Cases
In view of broad jurisdictional grant given Indiana circuit court, and in view of absence of either statute or case law foreclosing such consideration, Indiana circuit court judge had jurisdiction to consider mother's petition for authority to have her "somewhat retarded" 15-year-old daughter sterilized. IC 1971, 16-13-13-1 to 16-13-13-4; IC 16-8-4-2, 33-4-4-3 (1976 Ed.).

[3] Judges ⬤=36
227k36 Most Cited Cases
Because Indiana circuit court is court of general jurisdiction, neither procedural errors circuit court judge may have committed in considering sterilization petition, nor lack of specific statute authorizing his approval of petition, rendered him liable in damages for consequences of his actions. IC 1971, 16-13-13-1 to 16-13-13-4; IC 16-8-4-2, 33-4-4-3 (1976 Ed.).

[4] Judges ⬤=36
227k36 Most Cited Cases
Factors determining whether act by judge is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 567**     425

98 S.Ct. 1099

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

"judicial one", for purposes of conferring judicial immunity, relate to nature of act itself, i. e., whether it is function normally performed by judge, and to expectations of parties, i. e., whether they dealt with judge in his judicial capacity.

**[5] Judges** ⬅➡**36**
227k36 Most Cited Cases
Because Indiana circuit court judge, in approving mother's ex parte petition to have her "somewhat retarded" 15-year-old daughter sterilized, acted in his capacity as circuit court judge, and performed type of act normally performed only by judges, lack of formality with which he proceeded did not render his action "nonjudicial" for purposes of depriving him of absolute immunity from damages liability. IC 1971, 16-13-13-1 to 16-13-13-4; IC 16-8-4-2, 33-4-4-3 (1976 Ed.).

**[6] Judges** ⬅➡**36**
227k36 Most Cited Cases
Disagreement with action taken by judge does not justify depriving that judge of his immunity; fact that issue before judge is controversial one is all the more reason why he should be able to act without fear of suit.

**\*\*1100 Syllabus [FN\*]**

FN\* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed.2d 499.

\*349 A mother filed a petition in affidavit form in an Indiana Circuit Court, a court of general jurisdiction under an Indiana statute, for authority to have her "somewhat retarded" 15-year-old daughter (a respondent here) sterilized, and petitioner Circuit \*\*1101 Judge approved the petition the same day in an *ex parte* proceeding without a hearing and without notice to the daughter or appointment of a guardian *ad litem*. The operation was performed shortly thereafter, the daughter having been told that she was to have her appendix removed. About two years later she was married, and her inability to become pregnant led her to discover that she had

been sterilized. As a result she and her husband (also a respondent here) filed suit in Federal District Court pursuant to 42 U.S.C. § 1983 against her mother, the mother's attorney, the Circuit Judge, the doctors who performed or assisted in the sterilization, and the hospital where it was performed, seeking damages for the alleged violation of her constitutional rights. Holding that the constitutional claims required a showing of state action and that the only state action alleged was the Circuit Judge's approval of the sterilization petition, the District Court held that no federal action would lie against any of the defendants because the Circuit Judge, the only state agent, was absolutely immune from suit under the doctrine of judicial immunity. The Court of Appeals reversed, holding that the "crucial issue" was whether the Circuit Judge acted within his jurisdiction, that he had not, that accordingly he was not immune from damages liability, and that in any event he had forfeited his immunity "because of his failure to comply with elementary principles of procedural due process." *Held:* The Indiana law vested in the Circuit Judge the power to entertain and act upon the petition for sterilization, and he is, therefore, immune from damages liability even if his approval of the petition was in error. Pp. 1104-1109.

(a) A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather he will be subject to liability only when he has acted in the "clear absence of all jurisdiction," *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646. Pp. 1104-1105.

\*350 b) Here there was not "clear absence of all jurisdiction" in the Circuit Court to consider the sterilization petition. That court had jurisdiction under the Indiana statute granting it broad general jurisdiction, it appearing that neither by statute nor by case law had such jurisdiction been circumscribed to foreclose consideration of the petition. P. 1105.

(c) Because the Circuit Court is a court of general jurisdiction, neither the procedural errors the Circuit Judge may have committed nor the lack of a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 568**    426

98 S.Ct. 1099                                                                    Page 3

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

specific statute authorizing his approval of the petition in question rendered him liable in damages for the consequences of his actions. P. 1106.

(d) The factors determining whether an act by a judge is "judicial" relate to the nature of the act itself (whether it is a function normally performed by a judge) and the expectation of the parties (whether they dealt with the judge in his judicial capacity), and here both of these elements indicate that the Circuit Judge's approval of the sterilization petition was a judicial act, even though he may have proceeded with informality. Pp. 1106-1108.

(e) Disagreement with the action taken by a judge does not justify depriving him of his immunity, and thus the fact that in this case tragic consequences ensued from the judge's action does not deprive him of his immunity; moreover, the fact that the issue before the judge is a controversial one, as here, is all the more reason that he should be able to act without fear of suit. Pp. 1108-1109.

552 F.2d 172, reversed and remanded.

George E. Fruechtenicht, Fort Wayne, Ind., for petitioners.

Richard H. Finley, Kendallville, Ind., for respondents.

*351 Mr. Justice WHITE delivered the opinion of the Court.

This case requires us to consider the scope of a judge's immunity from damages liability when sued under 42 U.S.C. § 1983.

**1102 I

The relevant facts underlying respondents' suit are not in dispute. On July 9, 1971, Ora Spitler McFarlin, the mother of respondent Linda Kay Spitler Sparkman, presented to Judge Harold D. Stump of the Circuit Court of DeKalb County, Ind., a document captioned "Petition To Have Tubal Ligation Performed On Minor and Indemnity Agreement." The document had been drafted by her attorney, a petitioner here. In this petition Mrs.

McFarlin stated under oath that her daughter was 15 years of age and was "somewhat retarded," although she attended public school and had been promoted each year with her class. The petition further stated that Linda had been associating with "older youth or young men" and had stayed out overnight with them on several occasions. As a result of this behavior and Linda's mental capabilities, it was stated that it would be in the daughter's best interest if she underwent a tubal ligation in order "to prevent unfortunate circumstances . . . ." In the same document Mrs. McFarlin also undertook to indemnify and hold harmless Dr. John Hines, who was to perform the operation, and the DeKalb Memorial Hospital, where the operation was to take place, against all causes of action that might arise as a result of the performance of the tubal ligation. [FN1]

FN1. The full text of the petition presented to Judge Stump read as follows:

"STATE OF INDIANA) ss:
COUNTY OF DEKALB)

"PETITION TO HAVE TUBAL LIGATION
PERFORMED ON
MINOR AND INDEMNITY AGREEMENT:
"Ora Spitler McFarlin, being duly sworn upon her oath states that she is the natural mother of and has custody of her daughter, Linda Spitler, age fifteen (15) being born January 24, 1956 and said daughter resides with her at 108 Iowa Street, Auburn, DeKalb County, Indiana:
"Affiant states that her daughter's mentality is such that she is considered to be somewhat retarded although she is attending or has attended the public schools in DeKalb Central School System and has been passed along with other children in her age level even though she does not have what is considered normal mental capabilities and intelligence. Further, that said affiant has had problems in the home of said child as a result of said daughter leaving the home on several occasions to associate with older youth or young men and as a matter of fact having stayed overnight with said youth or men and about which incidents said affiant did

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 2 PAGE 569          427

L0VE00943

98 S.Ct. 1099

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

not become aware of until after such incidents occurred. As a result of this behavior and the mental capabilities of said daughter, affiant believes that it is to the best interest of said child that a Tubal Ligation be performed on said minor daughter to prevent unfortunate circumstances to occur and since it is impossible for the affiant as mother of said minor child to maintain and control a continuous observation of the activities of said daughter each and every day.

"Said affiant does hereby in consideration of the Court of DeKalb Circuit Court approving the Tubal Ligation being performed upon her minor daughter does hereby [sic] covenant and agree to indemnify and keep indemnified and hold Dr. John Hines, Auburn, Indiana, who said affiant is requesting to perform said operation and the DeKalb Memorial Hospital, Auburn, Indiana, whereas [sic] said operation will be performed, harmless from and against all or any matters or causes of action that could or might arise as a result of the performing of said Tubal Ligation.

"IN WITNESS WHEREOF, said affiant, Ora Spitler McFarlin, has hereunto subscribed her name this 9th day of July, 1971.

"/s/ ORA SPITLER MCFARLIN

Ora Spitler McFarlin

Petitioner
"Subscribed and sworn to before me this 9th day of July, 1971.

"/s/ WARREN G. SUNDAY

Warren G. Sunday

Notary Public
"My commission expires January 4, 1975.
"I, Harold D. Stump, Judge of the DeKalb Circuit Court, do hereby approve the above Petition by affidavit form on behalf of Ora Spitler McFarlin, to have Tubal Ligation performed upon her minor daughter, Linda Spitler, subject to said Ora Spitler McFarlin

covenanting and agreeing to indemnify and keep indemnified Dr. John Hines and the DeKalb Memorial Hospital from any matters or causes of action arising therefrom.

"/s/ HAROLD D. STUMP

Judge, DeKalb Circuit Court
"Dated July 9, 1971"

*352 **1103 The petition was approved by Judge Stump on the same day. He affixed his signature as "Judge, DeKalb Circuit Court," to the statement that he did "hereby approve the *353 above Petition by affidavit form on behalf of Ora Spitler McFarlin, to have Tubal Ligation performed upon her minor daughter, Linda Spitler, subject to said Ora Spitler McFarlin covenanting and agreeing to indemnify and keep indemnified Dr. John Hines and the DeKalb Memorial Hospital from any matters or causes of action arising therefrom."

On July 15, 1971, Linda Spitler entered the DeKalb Memorial Hospital, having been told that she was to have her appendix removed. The following day a tubal ligation was performed upon her. She was released several days later, unaware of the true nature of her surgery.

Approximately two years after the operation, Linda Spitler was married to respondent Leo Sparkman. Her inability to become pregnant led her to discover that she had been sterilized during the 1971 operation. As a result of this revelation, the Sparkmans filed suit in the United States District Court for the Northern District of Indiana against Mrs. McFarlin, her attorney, Judge Stump, the doctors who had performed and assisted in the tubal ligation, and the DeKalb Memorial Hospital. Respondents sought damages for the alleged violation of Linda Sparkman's constitutional rights; [FN2] also asserted were pendent state claims for assault *354 and battery, medical malpractice, and loss of potential fatherhood.

FN2. The District Court gave the following summary of the constitutional claims asserted by the Sparkmans:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 570**    428

LOVE00944

98 S.Ct. 1099                                                    Page 5

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

"Whether laid under section 1331 or 1343(3) and whether asserted directly or via section 1983 and 1985, plaintiffs' grounds for recovery are asserted to rest on the violation of constitutional rights. Plaintiffs urge that defendants violated the following constitutional guarantees:

"1. that the actions were arbitrary and thus in violation of the due process clause of the Fourteenth Amendment;

"2. that Linda was denied procedural safeguards required by the Fourteenth Amendment;

"3. that the sterilization was permitted without the promulgation of standards;

"4. that the sterilization was an invasion of privacy;

"5. that the sterilization violated Linda's right to procreate;

"6. that the sterilization was cruel and unusual punishment;

"7. that the use of sterilization as punishment for her alleged retardation or lack of self-discipline violated various constitutional guarantees;

"8. that the defendants failed to follow certain Indiana statutes, thus depriving Linda of due process of law; and

"9. that defendants violated the equal protection clause, because of the differential treatment accorded Linda on account of her sex, marital status, and allegedly low mental capacity." *Sparkman v. McFarlin*, Civ. No. F 75-129 (ND Ind., May 13, 1976).

Ruling upon the defendants' various motions to dismiss the complaint, the District Court concluded that each of the constitutional claims asserted by respondents required a showing of state action and that the only state action alleged in the complaint was the approval by Judge Stump, acting as Circuit Court Judge, of the petition presented to him by Mrs. McFarlin. **1104 The Sparkmans sought to hold the private defendants liable on a theory that they had conspired with Judge Stump to bring about the allegedly unconstitutional acts. The District Court, however, held that no federal action would

lie against any of the defendants because Judge Stump, the only state agent, was absolutely immune from suit under the doctrine of judicial immunity. The court stated that "whether or not Judge Stump's 'approval' of the petition may in retrospect appear to have been premised on an erroneous *355 view of the law, Judge Stump surely had jurisdiction to consider the petition and to act thereon." *Sparkman v. McFarlin*, Civ. No. F 75-129 (ND Ind., May 13, 1976). Accordingly, under *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646 (1872), Judge Stump was entitled to judicial immunity. [FN3]

FN3. The District Court granted the defendants' motion to dismiss the federal claims for that reason and dismissed the remaining pendent state claims for lack of subject-matter jurisdiction.

On appeal, the Court of Appeals for the Seventh Circuit reversed the judgment of the District Court, [FN4] holding that the "crucial issue" was "whether Judge Stump acted within his jurisdiction" and concluding that he had not. 552 F.2d, at 174. He was accordingly not immune from damages liability under the controlling authorities. The Court of Appeals also held that the judge had forfeited his immunity "because of his failure to comply with elementary principles of procedural due process." *Id.*, at 176.

FN4. *Sparkman v. McFarlin*, 552 F.2d 172 (CA7 1977).

We granted certiorari, 434 U.S. 815, 98 S.Ct. 51, 54 L.Ed.2d 70 (1977), to consider the correctness of this ruling. We reverse.

II

The governing principle of law is well established and is not questioned by the parties. As early as 1872, the Court recognized that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher, supra*, at 347. [FN5] For that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 2 PAGE 571    429

L0VE00945

98 S.Ct. 1099

Page 6

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

reason the Court held that "judges *356 of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." [FN6] 13 Wall., at 351. Later we held that this doctrine of judicial immunity was applicable in suits under § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, for the legislative record gave no indication that Congress intended to abolish this long-established principle. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

FN5. Even earlier, in *Randall v. Brigham*, 7 Wall. 523, 19 L.Ed. 285 (1869), the Court stated that judges are not responsible "to private parties in civil actions for their judicial acts, however injurious may be those acts, and however much they may deserve condemnation, unless perhaps where the acts are palpably in excess of the jurisdiction of the judges, and are done maliciously or corruptly." *Id.*, at 537. In *Bradley* the Court reconsidered that earlier statement and concluded that "the qualifying words used were not necessary to a correct statement of the law . . . ." 13 Wall., at 351.

FN6. In holding that a judge was immune for his judicial acts, even when such acts were performed in excess of his jurisdiction, the Court in *Bradley* stated: "A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other

questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend." *Id.*, at 351-352.

[1] The Court of Appeals correctly recognized that the necessary inquiry in determining **1105 whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him. Because "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction . . . ," *Bradley, supra*, at 352, the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only *357 when he has acted in the "clear absence of all jurisdiction." [FN7] 13 Wall., at 351.

FN7. In *Bradley*, the Court illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune. *Id.*, at 352.

[2] We cannot agree that there was a "clear absence of all jurisdiction" in the DeKalb County Circuit Court to consider the petition presented by Mrs. McFarlin. As an Indiana Circuit Court Judge, Judge Stump had "original exclusive jurisdiction in all cases at law and in equity whatsoever . . . ," jurisdiction over the settlement of estates and over guardianships, appellate jurisdiction as conferred by law, and jurisdiction over "all other causes, matters and proceedings where exclusive jurisdiction thereof is not conferred by law upon some other

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 572**    430

LOVE00946

98 S.Ct. 1099

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

court, board or officer." Ind.Code § 33-4-4-3 (1975). [FN8] This is indeed a broad jurisdictional grant; yet the Court of Appeals concluded that Judge Stump did not have jurisdiction over the petition authorizing Linda Sparkman's sterilization.

> FN8. Indiana Code § 33-4-4-3 (1975) states as follows:
> "Jurisdiction.—Said court shall have original exclusive jurisdiction in all cases at law and in equity whatsoever, and in criminal cases and actions for divorce, except where exclusive or concurrent jurisdiction is, or may be conferred by law upon justices of the peace. It shall also have exclusive jurisdiction of the settlement of decedents' estates and of guardianships: Provided, however, That in counties in which criminal or superior courts exist or may be organized, nothing in this section shall be construed to deprive such courts of the jurisdiction conferred upon them by laws, and it shall have such appellate jurisdiction as may be conferred by law, and it shall have jurisdiction of all other causes, matters and proceedings where exclusive jurisdiction thereof is not conferred by law upon some other court, board or officer."

*358 In so doing, the Court of Appeals noted that the Indiana statutes provided for the sterilization of institutionalized persons under certain circumstances, see Ind.Code §§ 16-13-13-1 through 16-13-13-4 (1973), but otherwise contained no express authority for judicial approval of tubal ligations. It is true that the statutory grant of general jurisdiction to the Indiana circuit courts does not itemize types of cases those courts may hear and hence does not expressly mention sterilization petitions presented by the parents of a minor. But in our view, it is more significant that there was no Indiana statute and no case law in 1971 prohibiting a circuit court, a court of general jurisdiction, from considering a petition of the type presented to Judge Stump. The statutory authority for the sterilization of institutionalized persons in the custody of the State does not warrant the

inference that a court of general jurisdiction has no power to act on a petition for sterilization of a minor in the custody of her parents, particularly where the parents have authority under the Indiana statutes to "consent to and contract for medical or hospital care or treatment of [the minor] including surgery." Ind.Code § 16-8-4-2 (1973). The District Court concluded that Judge Stump had jurisdiction under § 33-4-4-3 to entertain and act upon Mrs. McFarlin's petition. We agree with the District Court, it appearing that neither by statute nor by case law has the broad jurisdiction granted to the **1106 circuit courts of Indiana been circumscribed to foreclose consideration of a petition for authorization of a minor's sterilization.

The Court of Appeals also concluded that support for Judge Stump's actions could not be found in the common law of Indiana, relying in particular on the Indiana Court of Appeals' intervening decision in *A. L. v. G. R. H.,* 163 Ind.App. 636, 325 N.E.2d 501 (1975). In that case the Indiana court held that a parent does not have a common-law right to have a minor child sterilized, even though the parent might "sincerely believe the child's adulthood would benefit therefrom." *Id.,* at 638, 325 N.E.2d, at 502. The opinion, however, *359 speaks only of the rights of the parents to consent to the sterilization of their child and does not question the *jurisdiction* of a circuit judge who is presented with such a petition from a parent. Although under that case a circuit judge would err as a matter of law if he were to approve a parent's petition seeking the sterilization of a child, the opinion in *A. L. v. G. R. H.* does not indicate that a circuit judge is without jurisdiction to entertain the petition. Indeed, the clear implication of the opinion is that, when presented with such a petition, the circuit judge should deny it on its merits rather than dismiss it for lack of jurisdiction.

Perhaps realizing the broad scope of Judge Stump's jurisdiction, the Court of Appeals stated that, even if the action taken by him was not foreclosed under the Indiana statutory scheme, it would still be "an illegitimate exercise of his common law power because of his failure to comply with elementary principles of procedural due process." 552 F.2d, at 176. This misconceives the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 573**        431

LOVE00947

98 S.Ct. 1099

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

doctrine of judicial immunity. A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors. The Court made this point clear in *Bradley*, 13 Wall., at 357, where it stated: "[T]his erroneous manner in which . [the court's] jurisdiction was exercised, however it may have affected the validity of the act, did not make the act any less a judicial act; nor did it render the defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction whatever . . . ."

[3] We conclude that the Court of Appeals, employing an unduly restrictive view of the scope of Judge Stump's jurisdiction, erred in holding that he was not entitled to judicial immunity. Because the court over which Judge Stump presides is one of general jurisdiction, neither the procedural errors he may have committed nor the lack of a specific statute authorizing his approval of the petition in question rendered *360 him liable in damages for the consequences of his actions.

The respondents argue that even if Judge Stump had jurisdiction to consider the petition presented to him by Mrs. McFarlin, he is still not entitled to judicial immunity because his approval of the petition did not constitute a "judicial" act. It is only for acts performed in his "judicial" capacity that a judge is absolutely immune, they say. We do not disagree with this statement of the law, but we cannot characterize the approval of the petition as a nonjudicial act.

Respondents themselves stated in their pleadings before the District Court that Judge Stump was "clothed with the authority of the state" at the time that he approved the petition and that "he was acting as a county circuit court judge." Plaintiffs' Reply Brief to Memorandum Filed on Behalf of Harold D. Stump in Support of his Motion to Dismiss in Civ. No. F 75-129, p. 6. They nevertheless now argue that Judge Stump's approval of the petition was not a judicial act because the petition was not given a docket number, was not placed on file in the clerk's office, and was

approved in an *ex parte* proceeding without notice to the minor, without a hearing, and without the appointment of a guardian *ad litem*.

This Court has not had occasion to consider, for purposes of the judicial immunity doctrine, the necessary attributes of a judicial act; but it has previously rejected the **1107 argument, somewhat similar to the one raised here, that the lack of formality involved in the Illinois Supreme Court's consideration of a petitioner's application for admission to the state bar prevented it from being a "judicial proceeding" and from presenting a case or controversy that could be reviewed by this Court. *In re Summers*, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945). Of particular significance to the present case, the Court in *Summers* noted the following: "The record does not show that any process issued or that any appearance was made. . . . While no entry was placed by the Clerk in the file, on a docket, or in a judgment roll, the Court took cognizance of the petition and *361 passed an order which is validated by the signature of the presiding officer." *Id.*, at 567, 65 S.Ct., at 1311. Because the Illinois court took cognizance of the petition for admission and acted upon it, the Court held that a case or controversy was presented.

Similarly, the Court of Appeals for the Fifth Circuit has held that a state district judge was entitled to judicial immunity, even though "at the time of the altercation [giving rise to the suit] Judge Brown was not in his judge's robes, he was not in the courtroom itself, and he may well have violated state and/or federal procedural requirements regarding contempt citations." *McAlester v. Brown*, 469 F.2d 1280, 1282 (1972). [FN9] Among the factors relied upon by the Court of Appeals in deciding that the judge was acting within his judicial capacity was the fact that "the confrontation arose directly and immediately out of a visit to the judge in his official capacity." *Ibid.* [FN10]

FN9. In *McAlester*%i *the plaintiffs alleged that they had gone to the courthouse where their son was to be tried by the defendant in order to give the son a fresh set of clothes. When they went into the*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 574**        432

LOVE00948

98 S.Ct. 1099

Page 9

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

*defendant judge's office, he allegedly ordered them out and had a deputy arrest one of them and place him in jail for the rest of the day. Several months later, the judge issued an order holding the plaintiff in contempt of court, nunc pro tunc.*

FN10. Other Courts of Appeals, presented with different fact situations, have concluded that the challenged actions of defendant judges were not performed as part of the judicial function and that the judges were thus not entitled to rely upon the doctrine of judicial immunity. The Court of Appeals for the Ninth Circuit, for example, has held that a justice of the peace who was accused of forcibly removing a man from his courtroom and physically assaulting him was not absolutely immune. *Gregory v. Thompson,* 500 F.2d 59 (1974). While the court recognized that a judge has the duty to maintain order in his courtroom, it concluded that the actual eviction of someone from the courtroom by use of physical force, a task normally performed by a sheriff or bailiff, was "simply not an act of a judicial nature." *Id.,* at 64. And the Court of Appeals for the Sixth Circuit held in *Lynch v. Johnson,* 420 F.2d 818 (1970), that the county judge sued in that case was not entitled to judicial immunity because his service on a board with only legislative and administrative powers did not constitute a judicial act.

[4][5] *362 The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i. e., whether it is a function normally performed by a judge, and to the expectations of the parties, i. e., whether they dealt with the judge in his judicial capacity. Here, both factors indicate that Judge Stump's approval of the sterilization petition was a judicial act. [FN11] **1108 State judges with general jurisdiction not infrequently are called upon in their official capacity to approve petitions relating to the affairs of minors, as for example, a

petition to settle a minor's claim. Furthermore, as even respondents have admitted, at the time he approved the petition presented to him by Mrs. McFarlin, Judge Stump was "acting as a county circuit court judge." See *supra,* at 1106. We may infer from the record that it was only because Judge Stump served in that position that Mrs. McFarlin, on the advice of counsel, submitted the petition to him for his approval. Because Judge Stump performed the type of act normally performed only by judges and because he did so in his capacity as a Circuit Court Judge, we find no *363 merit to respondents' argument that the informality with which he proceeded rendered his action nonjudicial and deprived him of his absolute immunity. [FN12]

FN11. Mr. Justice STEWART, in dissent, complains that this statement is inaccurate because it nowhere appears that judges are normally asked to approve parents' decisions either with respect to surgical treatment in general or with respect to sterilizations in particular. Of course, the opinion makes neither assertion. Rather, it is said that Judge Stump was performing a "function" normally performed by judges and that he was taking "the type of action" judges normally perform. The dissent makes no effort to demonstrate that Judge Stump was without jurisdiction to entertain and act upon the specific petition presented to him. Nor does it dispute that judges normally entertain petitions with respect to the affairs of minors. Even if it is assumed that in a lifetime of judging, a judge has acted on only one petition of a particular kind, this would not indicate that his function in entertaining and acting on it is not the kind of function that a judge normally performs. If this is the case, it is also untenable to claim that in entertaining the petition and exercising the jurisdiction with which the statutes invested him, Judge Stump was nevertheless not performing a judicial act or was engaging in the kind of conduct not expected of a judge under the Indiana statutes governing the jurisdiction of its courts.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2 PAGE 575**

433

LOVE00949

98 S.Ct. 1099                                                                              Page 10

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

FN12. Mr. Justice STEWART'S dissent, *post*, at 1111, suggests that Judge Stump's approval of Mrs. McFarlin's petition was not a judicial act because of the absence of what it considers the "normal attributes of a judicial proceeding." These attributes are said to include a "case," with litigants and the opportunity to appeal, in which there is "principled decisionmaking." But under Indiana law, Judge Stump had jurisdiction to act as he did; the proceeding instituted by the petition placed before him was sufficiently a "case" under Indiana law to warrant the exercise of his jurisdiction, whether or not he then proceeded to act erroneously. That there were not two contending litigants did not make Judge Stump's act any less judicial. Courts and judges often act *ex parte*. They issue search warrants in this manner, for example, often without any "case" having been instituted, without any "case" ever being instituted, and without the issuance of the warrant being subject to appeal. Yet it would not destroy a judge's immunity if it is alleged and offer of proof is made that in issuing a warrant he acted erroneously and without principle.

[6] Both the Court of Appeals and the respondents seem to suggest that, because of the tragic consequences of Judge Stump's actions, he should not be immune. For example, the Court of Appeals noted that "[t]here are actions of purported judicial character that a judge, even when exercising general jurisdiction, is not empowered to take," 552 F.2d, at 176, and respondents argue that Judge Stump's action was "so unfair" and "so totally devoid of judicial concern for the interests and well-being of the young girl involved" as to disqualify it as a judicial act. Brief for Respondents 18. Disagreement with the action taken by the judge, however, does not justify depriving that judge of his immunity. Despite the unfairness to litigants that sometimes results, the doctrine of judicial immunity is thought to be in the best interests of "the proper administration of justice . . . [, for it allows] a judicial officer, in exercising the authority vested in

him [to] be free to act upon his own convictions, without apprehension of personal consequences to himself." *364Bradley v. Fisher*, 13 Wall., at 347. The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit. As the Court pointed out in *Bradley* :

"Controversies involving not merely great pecuniary interests, but the liberty and character of the parties, and consequently exciting the deepest feelings, are being constantly determined in those courts, in which there is great conflict in the evidence and great doubt as to the law which should govern their decision. It is this class of cases which impose upon the judge the severest labor, and often create in his mind a painful sense of responsibility." *Id.*, at 348.

The Indiana law vested in Judge Stump the power to entertain and act upon the petition for sterilization. He is, therefore, under the controlling cases, immune from damages liability even if his approval of the petition was in error. Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further **1109 proceedings consistent with this opinion. [FN13]

FN13. The issue is not presented and we do not decide whether the District Court correctly concluded that the federal claims against the other defendants were required to be dismissed if Judge Stump, the only state agent, was found to be absolutely immune. Compare *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1 (CA1 1976), with *Guedry v. Ford*, 431 F.2d 660 (CA5 1970).

*It is so ordered.*

Mr. Justice BRENNAN took no part in the consideration or decision of this case.

Mr. Justice STEWART, with whom Mr. Justice MARSHALL and Mr. Justice POWELL join, dissenting.

It is established federal law that judges of general

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

434

**EXHIBIT 2 PAGE 576**

LOVE00950

98 S.Ct. 1099                                                                Page 11

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

jurisdiction are absolutely immune from monetary liability "for their *365 judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646.

It is also established that this immunity is in no way diminished in a proceeding under 42 U.S.C. § 1983. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288. But the scope of judicial immunity is limited to liability for "judicial acts," and I think that what Judge Stump did on July 9, 1971, was beyond the pale of anything that could sensibly be called a judicial act.

Neither in *Bradley v. Fisher* nor in *Pierson v. Ray* was there any claim that the conduct in question was not a judicial act, and the Court thus had no occasion in either case to discuss the meaning of that term. [FN1] Yet the proposition that judicial immunity extends only to liability for "judicial acts" was emphasized no less than seven times in Mr. Justice Field's opinion for the Court in the *Bradley* case. [FN2] *Cf. Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128. And if the limitations inherent in that concept have any realistic meaning at all, then I cannot believe that the action of Judge Stump in approving Mrs. McFarlin's petition is protected by judicial immunity.

> FN1. In the *Bradley* case the plaintiff was a lawyer who had been disbarred; in the *Pierson* case the plaintiffs had been found guilty after a criminal trial.

> FN2. See 13 Wall., at 347, 348, 349, 351, 354, 357.

The Court finds two reasons for holding that Judge Stump's approval of the sterilization petition was a judicial act. First, the Court says, it was "a function normally performed by a judge." Second, the Court says, the act was performed in Judge Stump's "judicial capacity." With all respect, I think that the first of these grounds is factually untrue and that the second is legally unsound.

When the Court says that what Judge Stump did

was an act "normally performed by a judge," it is not clear to me whether the Court means that a judge "normally" is asked to approve a mother's decision to have her child given surgical *366 treatment generally, or that a judge "normally" is asked to approve a mother's wish to have her daughter sterilized. But whichever way the Court's statement is to be taken, it is factually inaccurate.

In Indiana, as elsewhere in our country, a parent is authorized to arrange for and consent to medical and surgical treatment of his minor child. Ind.Code Ann. § 16-8- 4-2 (1973). And when a parent decides to call a physician to care for his sick child or arranges to have a surgeon remove his child's tonsils, he does not, "normally" or otherwise, need to seek the approval of a judge. [FN3] On the other hand, **1110 Indiana did in 1971 have statutory procedures for the sterilization of certain people who were *institutionalized*. But these statutes provided for administrative proceedings before a board established by the superintendent of each public hospital. Only if after notice and an evidentiary hearing, an order of sterilization was entered in these proceedings could there be review in a circuit court. See Ind.Code Ann. §§ 16-13-13-1 through 16-13-13-4 (1973). [FN4]

> FN3. This general authority of a parent was held by an Indiana Court of Appeals in 1975 not to include the power to authorize the sterilization of his minor child. *A. L. v. G. R. H.*, 163 Ind.App. 636, 325 N.E.2d 501.
> Contrary to the Court's conclusion, *ante*, at 1106, that case does not in the least demonstrate that an Indiana judge is or ever was empowered to act on the merits of a petition like Mrs. McFarlin's. The parent in that case did not petition for judicial approval of her decision, but rather "filed a complaint for declaratory judgment seeking declaration of her right under the common-law attributes of the parent-child relationship to have her son . . . sterilized." 163 Ind.App., at 636-637, 325 N.E.2d, at 501. The Indiana Court of Appeals' decision simply established a limitation on the parent's common-law

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 2 PAGE 577

435

LOVE00951

98 S.Ct. 1099                                                    Page 12

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

rights. It neither sanctioned nor contemplated any procedure for judicial "approval" of the parent's decision.

Indeed, the procedure followed in that case offers an instructive contrast to the judicial conduct at issue here:

"At the outset, we thank counsel for their excellent efforts in representing a seriously concerned parent and in providing the guardian ad litem defense of the child's interest." *Id.*, at 638, 325 N.E.2d, at 502.

FN4. These statutes were repealed in 1974.

*367 In sum, what Judge Stump did on July 9, 1971, was in no way an act "normally performed by a judge." Indeed, there is no reason to believe that such an act has ever been performed by *any* other Indiana judge, either before or since.

When the Court says that Judge Stump was acting in "his judicial capacity" in approving Mrs. McFarlin's petition, it is not clear to me whether the Court means that Mrs. McFarlin submitted the petition to him only because he was a judge, or that, in approving it, he *said* that he was acting as a judge. But however the Court's test is to be understood, it is, I think, demonstrably unsound.

It can safely be assumed that the Court is correct in concluding that Mrs. McFarlin came to Judge Stump with her petition because he was a County Circuit Court Judge. But false illusions as to a judge's power can hardly convert a judge's response to those illusions into a judicial act. In short, a judge's approval of a mother's petition to lock her daughter in the attic would hardly be a judicial act simply because the mother had submitted her petition to the judge in his official capacity.

If, on the other hand, the Court's test depends upon the fact that Judge Stump *said* he was acting in his judicial capacity, it is equally invalid. It is true that Judge Stump affixed his signature to the approval of the petition as "Judge, DeKalb Circuit Court." But the conduct of a judge surely does not become a judicial act merely on his own say-so. A judge is not free, like a loose cannon, to inflict

indiscriminate damage whenever he announces that he is acting in his judicial capacity. [FN5]

FN5. Believing that the conduct of Judge Stump on July 9, 1971, was not a judicial act, I do not need to inquire whether he was acting in "the clear absence of all jurisdiction over the subject matter." *Bradley v. Fisher,* 13 Wall., at 351. "Jurisdiction" is a coat of many colors. I note only that the Court's finding that Judge Stump had jurisdiction to entertain Mrs. McFarlin's petition seems to me to be based upon dangerously broad criteria. Those criteria are simply that an Indiana statute conferred "jurisdiction of all . . . causes, matters and proceedings," and that there was not in 1971 any Indiana law specifically prohibiting what Judge Stump did.

*368 If the standard adopted by the Court is invalid, then what is the proper measure of a judicial act? Contrary to implications in the Court's opinion, my conclusion that what Judge Stump did was not a judicial act is not based upon the fact that he acted with informality, or that he may not have been "in his judge's robes," or "in the courtroom itself." *Ante,* at 1107. And I do not reach this conclusion simply "because the petition was not given a docket number, was not placed on file with the clerk's office, and was approved in an *ex parte* proceeding without notice to the minor, without a hearing, and without the appointment of a guardian *ad litem.*" *Ante,* at 1106.

It seems to me, rather that the concept of what is a judicial act must take its content from a consideration of the factors that support immunity from liability for the performance of such an act. Those factors **1111 were accurately summarized by the Court in *Pierson v. Ray,* 386 U.S., at 554, 87 S.Ct., at 1218:

"[I]t 'is . . . for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences'. . . . It is a judge's duty to decide all cases within his jurisdiction that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 2 PAGE 578

436

LOVE00952

98 S.Ct. 1099    Page 13

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation."

Not one of the considerations thus summarized in the *Pierson* opinion was present here. There was no "case," controversial \*369 or otherwise. There were no litigants. There was and could be no appeal. And there was not even the pretext of principled decision-making. The total absence of *any* of these normal attributes of a judicial proceeding convinces me that the conduct complained of in this case was not a judicial act.

The petitioners' brief speaks of "an aura of deism which surrounds the bench . . . essential to the maintenance of respect for the judicial institution." Though the rhetoric may be overblown, I do not quarrel with it. But if aura there be, it is hardly protected by exonerating from liability such lawless conduct as took place here. And if intimidation would serve to deter its recurrence, that would surely be in the public interest. [FN6]

> FN6. The only question before us in this case is the scope of judicial immunity. How the absence of a "judicial act" might affect the issue of whether Judge Stump was acting "under color of" state law within the meaning of 42 U.S.C. § 1983, or the issue of whether his act was that of the State within the meaning of the Fourteenth Amendment that need not, therefore, be pursued here.

Mr. Justice POWELL, dissenting.

While I join the opinion of Mr. Justice STEWART, I wish to emphasize what I take to be the central feature of this case—Judge Stump's preclusion of any possibility for the vindication of respondents' rights elsewhere in the judicial system.

*Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872), which established the absolute judicial immunity at issue in this case, recognized that the immunity was designed to further the public interest in an independent judiciary, sometimes at the expense of legitimate individual grievances. *Id.*, at 349; accord, *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). The *Brady* Court accepted those costs to aggrieved individuals because the judicial system itself provided other means for protecting individual rights:

"Against the consequences of [judges'] erroneous or irregular action, from whatever motives proceeding, the law \*370 has provided for private parties numerous remedies, and to those remedies they must, in such cases, resort." 13 Wall., at 354.

Underlying the *Bradley* immunity, then, is the notion that private rights can be sacrificed in some degree to the achievement of the greater public good deriving from a completely independent judiciary, because there exist alternative forums and methods for vindicating those rights. [FN1]

> FN1. See Handler & Klein, The Defense of Privilege in Defamation Suits Against Government Executive Officials, 74 Harv.L.Rev. 44, 53-55 (1960); Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209, 233-235 (1963); Note, Federal Executive Immunity From Civil Liability in Damages: A Reevaluation of *Barr v. Maeto*, 77 Colum.L.Rev. 625, 647 (1977).

But where a judicial officer acts in a manner that precludes all resort to appellate or other judicial remedies that otherwise would be available, the underlying assumption of the *Bradley* doctrine is inoperative. See \*\*1112*Pierson v. Ray, supra*, 386 U.S., at 554, 87 S.Ct., at 1213, 1218. [FN2] In this case, as Mr. Justice STEWART points out, *ante*, at 1111, Judge Stump's unjudicial conduct insured that "[t]here was and could be no appeal." The complete absence of normal judicial process foreclosed resort to any of the "numerous remedies" that "the law has provided for private parties." *Bradley, supra*, at 354.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 S.Ct. 1099

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(Cite as: 435 U.S. 349, 98 S.Ct. 1099)

Page 14

> FN2. In both *Bradley* and *Pierson* any errors committed by the judges involved were open to correction on appeal.

In sum, I agree with Mr. Justice STEWART that petitioner judge's actions were not "judicial," and that he is entitled to no judicial immunity from suit under 42 U.S.C. § 1983.

435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

Briefs and Other Related Documents (Back to top)

• 1978 WL 206600 (Appellate Brief) Motion of the American Civil Liberties Union, the Indiana Civil Liberties Union, and the Mental Health Law Project, to File Brief Amici Curiae and Brief Amici Curiae (Jan. 09, 1978)

• 1978 WL 206601 (Appellate Brief) Motion for Leave to File Brief and Brief of the National Center for Law and the Handicapped, Inc. Amicus Curiae (Jan. 09, 1978)

• 1978 WL 206602 (Appellate Brief) Motion for Leave to File Brief Amici Curiae and Brief for Amici Curiae American Coalition of Citizens with Disabilities; Epilepsy Foundation of America; Counsel for Handicapped People; Developmental Disabilities Law Project (Jan. 09, 1978)

• 1978 WL 206599 (Appellate Brief) Reply Brief for the Petitioners. (Jan. 04, 1978)

• 1977 WL 189264 (Appellate Brief) Brief for Respondents (Dec. 16, 1977)

• 1977 WL 189263 (Appellate Brief) Brief for the Petitioners. (Nov. 16, 1977)

• 1977 WL 189262 (Appellate Brief) Brief of the State of Indiana as Amicus Curiae in Support of Petition for Writ of Certiorari (Jul. 12, 1977)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 2 PAGE 580    438

LOVE00954

20

**EXHIBIT 2 PAGE 581**

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN DIEGO

RECEIVED
JUL 1 8 2005
BY: _____ CSR# _____

DATE: July 13, 2005

PRESENT HON.: JOHN S. MEYER
                        JUDGE

CLERK: A. GERBA
BAILIFF:

REPORTER A:

REPORTER B:

CSR#

REPORTERS' ADDRESS: P.O. BOX 128
SAN DIEGO, CA 92112-4104

---

GIC843843

**FRANK E. ROGOZIENSKI**
            Plaintiff,

vs.

**JAMES D. ALLEN, S. MICHAEL LOVE**
                        Defendants.

---

## MINUTE ORDER

### RE: COURT'S RECUSAL

The Court hereby recuses itself from this case on the grounds of its relationship with defendant S. Michael Love.

---

IT IS SO ORDERED.

Dated: 7-13-05

HON. JOHN S. MEYER
JUDGE OF THE SUPERIOR COURT

**EXHIBIT 2 PAGE 582**

439

LOVE00956

21

**EXHIBIT 2 PAGE 583**

LOVE00957

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

330 W. Broadway, Dept. 65
San Diego, CA 92101
619-685-6018

**RECEIVED**
JUL 1 5 2005
BY:------------------

TO:

FRANK E. ROGOZIENSKI        #51445
1203 SECOND STREET
CORONADO, CA 92118

---

| | | |
|---|---|---|
| FRANK E ROGOZIENSKI | | Case No.: GIC843843 |
| | Plaintiff(s) | |
| | vs. | **NOTICE OF CASE REASSIGNMENT** |
| JAMES D ALLEN, et al. | | DUE TO CHALLENGE, RECUSAL |
| | Defendant(s) | OR SPECIAL ASSIGNMENT |

COMPLAINT FILED  03/07/05

EFFECTIVE IMMEDIATELY, THE ABOVE-ENTITLED CASE HAS BEEN REASSIGNED TO THE INDEPENDENT CALENDAR PROGRAM WITH JUDGE
**JOAN M. LEWIS, DEPARTMENT 65, 619-685-6018.**

ALL SUBSEQUENT DOCUMENTS FILED IN THIS CASE MUST INCLUDE THE NAME OF THE NEW JUDGE AND THE DEPARTMENT NUMBER ON THE FIRST PAGE IMMEDIATELY BELOW THE NUMBER OF THE CASE.  ALL COUNSEL AND PARTIES IN PRO PER ARE ADVISED THAT DIVISION II OF THE SUPERIOR COURT RULES IS STRICTLY ENFORCED.  IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

UNLESS NOTIFIED OTHERWISE, ALL PENDING DATES ARE VACATED. PLEASE RESCHEDULE ANY CURRENTLY PENDING MOTIONS OR EX PARTE HEARINGS IN THE NEW DEPARTMENT.

### CERTIFICATE OF SERVICE
I certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by placing a true copy in a separate envelope, addressed as shown; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at San Diego, California.

DATED: 07/15/05

BY: CLERK OF THE SUPERIOR COURT

STEVEN G. AMUNDSON (D)
DONALD A. ENGLISH (D)
FRANK E. ROGOZIENSKI (P)

**EXHIBIT 2 PAGE 584**

440

SUPCT CIV-723(Rev 2-00)          REA-NOTICE OF CASE REASSIGNMENT

L0VE00958

22

EXHIBIT 2 PAGE 585

L0VE00959

1  Daniel M. White (SBN# 068011)
   Steven G. Amundson (SBN# 073501 )
2  **WHITE & OLIVER**
   A Professional Corporation
3  550 West C Street, Suite 950
   San Diego, California  92101
4  Telephone:  (619) 239-0300
   Facsimile:  (619) 239-0344
5
   Attorneys for Defendant
6  S. MICHAEL LOVE

7

8                 SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                        FOR THE COUNTY OF SAN DIEGO

10 FRANK E. ROGOZIENSKI,                    )   Case No. GIC843843
                                            )
11            Plaintiff,                     )   **AMENDED NOTICE OF**
                                            )   **DEMURRER HEARING TO FIRST**
12                                           )   **AMENDED COMPLAINT BY**
       v.                                   )   **DEFENDANT**
13                                           )   **S. MICHAEL LOVE**
                                            )
14 JAMES D. ALLEN, S. MICHAEL LOVE, and    )
   DOES 1 through 10, inclusive,            )
15                                           )
            Defendants.                      )   Date:  September 9, 2005
16                                           )   Time:  8:30 a.m.
   _____ )   Dept:  65
17                                             The Honorable Joan M. Lewis

18 TO THE PARTIES HERETO AND THEIR ATTORNEYS OF RECORD:

19        PLEASE TAKE NOTICE that the hearing of the demurrer of defendant S. Michael Love

20 previously scheduled for July 15, 2005, at 11:00 a.m. in Department 61 of the above-entitled

21 Court, located at 330 W. Broadway, San Diego, California, has been continued to September 9,

22 2005 at 8:30 a.m., and has been moved to Department 65 with Honorable Joan M. Lewis

23 presiding.

24

25                                 WHITE & OLIVER

26

27                           By: _____
                                  Steven G. Amundson
28                                Attorneys for Defendant       **EXHIBIT 2 PAGE 586**
                                  S. MICHAEL LOVE

_____
                                                                   64725.1    **44** 1
AMENDED NOTICE OF DEMURRER HEARING TO FIRST AMENDED COMPLAINT BY DEFENDANT S. MICHAEL LOVE

RECEIVED
JUL 18 2005
BY:_____

LOVE00960

**23**

EXHIBIT 2 PAGE 587

RECEIVE[D]
JUL 2 1 2005
BY: _____

1   Donald A. English, Esq.      (State Bar No. 115569)
    Christy I. Yee, Esq.         (State Bar No. 166238)
2   ENGLISH & GLOVEN
    A Professional Corporation
3   550 West "C" Street, Suite 1800
    San Diego, California 92101
4   Telephone: (619) 338-6610
    Facsimile:  (619) 338-6657
5

6   Attorneys for Defendant
    James D. Allen
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF SAN DIEGO

10  FRANK E. ROGOZIENSKI,            )   Case No. GIC 843843
                                     )
11            Plaintiff              )   AMENDED NOTICE OF HEARING ON
                                     )   DEFENDANT JAMES D. ALLEN'S
12       v.                          )   DEMURRER TO PLAINTIFF'S FIRST
                                     )   AMENDED COMPLAINT
13  JAMES D. ALLEN, S. MICHAEL LOVE  )
    and DOES 1 through 10, inclusive,)   Date:        September 2, 2005
14                                   )   Time:        8:30 a.m.
            Defendants.              )   Dept:        65
15                                   )   Judge:       Joan M. Lewis
                                     )
16                                   )
                                     )   Complaint Filed:    March 7, 2005
17                                   )   Trial Date:         None set
                                     )
18  _____)

19       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20       PLEASE TAKE NOTICE THAT on September 2, 2005, at 8:30 a.m., or as soon thereafter as this

21  matter may be heard in Department 65 of the San Diego Superior Court located at 330 West Broadway,

22  San Diego, California, defendant James D. Allen ("Mr. Allen") will demur to plaintiff Frank E.

23  Rogozienski's First Amended Complaint in the above-entitled matter. This hearing is continued from

24  the original hearing date, July 15, 2005, in Department 61, due to the case being reassigned. The

25  demurrer will be based upon this amended notice and original notice, the demurrer, the memorandum of

26  points and authorities, the request for judicial notice, the notice of lodgment of documents and attached

27  / / /

28  / / /

                                          **EXHIBIT 2 PAGE 588**    442

                                          Allen's Amended Notice of Hearing - Demurrer

LOVE00962

1    exhibits, the notice of lodgment of Federal authorities, the pleadings, records and files in this action, and

2    on such further argument as may be presented at the hearing, if any.

3

4    Dated: *July 30, 2005*

                    ENGLISH & GLOVEN

5                        A Professional Corporation

6

7                        By: *Donald A. English*

                        Donald A. English

8                            Christy I. Yee

                    Attorneys for Defendant

9                        James D. Allen

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         **EXHIBIT 2 PAGE 589**

                                                  443

                              Allen's Amended Notice of Hearing - Demurrer

L0VE00963

24

**EXHIBIT 2 PAGE 590**

LOVE00964

RECEIVED
JUL 2 1 2005
BY:_____

FER
CAL

1   Daniel M. White (SBN# 068011)
    Steven G. Amundson (SBN# 073501)
2   **WHITE & OLIVER**
    A Professional Corporation
3   550 West C Street, Suite 950
    San Diego, California 92101
4   Telephone: (619) 239-0300
    Facsimile: (619) 239-0344
5
6   Attorneys for Defendant
    S. MICHAEL LOVE
7
8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA
9                    FOR THE COUNTY OF SAN DIEGO
10  FRANK E. ROGOZIENSKI,                  )  Case No. GIC843843
                                           )
11           Plaintiff,                    )  **SECOND AMENDED NOTICE OF**
                                           )  **DEMURRER HEARING TO FIRST**
12                                         )  **AMENDED COMPLAINT BY**
         v.                                )  **DEFENDANT**
13                                         )  **S. MICHAEL LOVE**
                                           )
14  JAMES D. ALLEN, S. MICHAEL LOVE, and   )
    DOES 1 through 10, inclusive,          )
15                                         )  Date: September 2, 2005
             Defendants.                   )  Time: 8:30 a.m.
16  _____)  Dept: 65
                                              The Honorable Joan M. Lewis
17
18  TO THE PARTIES HERETO AND THEIR ATTORNEYS OF RECORD:
19           PLEASE TAKE NOTICE that the hearing of the demurrer of defendant S. Michael Love
20  previously noticed for September 9, 2005, at 8:30 a.m. in Department 65 of the above-entitled
21  Court, located at 330 W. Broadway, San Diego, California, has been changed to September 2,
22  2005 at 8:30 a.m. in Department 65.
23
24                    WHITE & OLIVER
25
26           By:_____
                    Steven G. Amundson
27                  Attorneys for Defendant
                    S. MICHAEL LOVE          **EXHIBIT 2 PAGE 591**
28

*(left margin, vertical)* WHITE & OLIVER / A Professional Corporation

                                                            444
                                                            64811.1
AMENDED NOTICE OF DEMURRER HEARING TO FIRST AMENDED COMPLAINT BY DEFENDANT S. MICHAEL LOVE

LOVE00965

**EXHIBIT 2 PAGE 592**

25

LOVE00966

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

330 W. Broadway, Dept. 65
San Diego, CA 92101
619-685-6018



RECEIVED
JUL 2 6 2005
BY:................

TO:

FRANK E. ROGOZIENSKI        #51445
1203 SECOND STREET
CORONADO, CA 92118

---

| FRANK E ROGOZIENSKI | | Case No.: GIC843843 |
|---|---|---|
| | Plaintiff(s) | **NOTICE OF CASE ASSIGNMENT** |
| vs. | | **AND** |
| JAMES D ALLEN, et al. | | **CASE MANAGEMENT CONFERENCE** |
| | Defendant(s) | Sanctions pursuant to CCP 575.2, 177.5 and CRC 227(b) may be imposed for failure to serve this notice. Superior Court Rules Division II, Rule 2.3. |

THE ABOVE-ENTITLED CASE HAS BEEN ASSIGNED TO THE INDEPENDENT CALENDAR PROGRAM WITH JUDGE JOAN M. LEWIS.

COUNSEL: CHECK SERVICE LIST. IF YOU HAVE BROUGHT A PARTY INTO THIS CASE WHO IS NOT INCLUDED IN THE SERVICE LIST, Superior Court Rules, Division II, Rule 2.9 REQUIRES YOU TO SERVE THEM WITH A COPY OF THIS NOTICE.

Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above. All inquiries regarding this notice should be referred to the court and phone number listed above.

| TYPE OF HEARING | DATE | TIME | REPORT TO JUDGE |
|---|---|---|---|
| Case Management Conference | 09/02/05 | 08:30AM | JOAN M. LEWIS |

A Case Management Statement must be completed by counsel for all parties and timely filed with the court prior to the initial Case Management Conference (Rule 2.9, CRC 212).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case; and be fully prepared to participate effectively in the hearing.

**CERTIFICATE OF SERVICE**

I certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by placing a true copy in a separate envelope, addressed as shown; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at San Diego, California.

DATED: 07/25/05

BY: CLERK OF THE SUPERIOR COURT

STEVEN G. AMUNDSON (D)
DONALD A. ENGLISH (D)
FRANK E. ROGOZIENSKI (P)

**EXHIBIT 2 PAGE 593**

445

26

EXHIBIT 2 PAGE 594

San Diego Superior Court, Ruling for Case GIC843843    http://www.sandiego.courts.ca.gov/portal/online/ViewRuling.Asp

Return to Request Ruling

The following is a TENTATIVE ruling for 9/2/2005,
Department 65, the Honorable Joan M. Lewis presiding.

Case Number GIC843843

Plaintiff's motion to strike and disregard Defendant Allen's points and authorities is denied.

Defendant Allen's request for judicial notice is granted.

Defendant James D. Allen's demurrer to the first, third, fifth, seventh, eighth, eleventh and twelfth causes of action is sustained without leave to amend as these claims are barred by the doctrine of judicial immunity. The Court is inclined to sustain the demurrer to the ninth cause of action for breach of contract for the same reason but would like to hear argument on this.

The Court would also like to hear argument on the thirteenth cause of action for unjust enrichment.

Defendant S. Michael Love's request for judicial notice is granted.

Defendant Love's demurrer to the first and second causes of action is sustained as the Court concludes that Plaintiff has failed to adequately state facts that would support an allegation that this Defendant intended to disrupt the contractual relations pled in the First Amended Complaint.

The demurrer to the third through sixth causes of action is sustained as the Court finds Plaintiff has not adequately pled that this Defendant interfered with economic relationships that could have prospectively brought economic advantage to the Plaintiff.

The demurrer to the seventh cause of action is sustained because Plaintiff has failed to allege any facts to support the allegation that the Defendant engaged any acts of threats, intimidation or coercion by way of state action.

**EXHIBIT 2 PAGE 595**    446

LOVE00969

San Diego Superior Court, Ruling for Case GIC843843          http://www.sandiego.courts.ca.gov/portal/online/ViewRuling.Asp

The demurrer to the eighth cause of action for fraudulent concealment is sustained as the Court concludes no duty was owed to Plaintiff.

The demurrer to the tenth cause of action is sustained because no remedy exists based on the facts pled. Specifically, Plaintiff has failed to plead that Defendant Love has any monies that should be restored to the Plaintiff nor is there any conduct to be enjoined.

The demurrer to the eleventh and twelfth causes of action is sustained as Plaintiff has failed to cite persuasive authority that would support a finding that this Defendant owed him a duty of care under these facts and/or that Plaintiff can proceed to sue for damages for conduct that allegedly violated the rules of Professional Conduct.

The demurrer to the thirteenth cause of action is sustained because there are no allegations that this Defendant holds any identified property in trust for the Plaintiff.

The Court is inclined to sustain the demurrer without leave to amend as it is not persuaded that Plaintiff will be able to plead facts to state a cause of action against this Defendant. However, at the time of oral argument the Court would entertain argument as to whether leave to amend should be given.

---

This ruling file posted to web server: 9/1/2005 12:52:12 PM
This ruling file retrieved by browser: 9/1/2005 4:39:02 PM

**EXHIBIT 2 PAGE 596**          447

LOVE00970

27

**EXHIBIT 2 PAGE 597**

RECEIVED

NOV 1 0 2005

BY:_____

F I L E D
Clerk of the Superior Court

OCT 1 9 2005

By: R. LINDSEY-COOPER, Deputy

1

2

3

4

5

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         FOR THE COUNTY OF SAN DIEGO

10   FRANK E. ROGOZIENSKI,                    )   Case No. GIC 843843
                                              )
11              Plaintiff                     )   [PROPOSED] ORDER SUSTAINING
                                              )   DEFENDANTS JAMES D. ALLEN'S AND S.
12        v.                                  )   MICHAEL LOVE'S DEMURRERS TO
                                              )   FIRST AMENDED COMPLAINT, AND EACH
13   JAMES D. ALLEN, S. MICHAEL LOVE          )   CAUSE OF ACTION, WITHOUT LEAVE TO
     and DOES 1 through 10, inclusive,        )   AMEND
14                                            )
                                              )
15              Defendants.                   )
                                              )   Date:        September 2, 2005
16                                            )   Dept:        65
                                                  Judge:       Hon. Joan M. Lewis
                                                  Complaint Filed:   March 7, 2005
17        The demurrers to the first amended complaint by defendants James D. Allen ("Mr. Allen") and

18   S. Michael Love ("Mr. Love") came on for hearing in Department 65 of the above-entitled Court before

19   the Honorable Joan M. Lewis on September 2, 2005 at 8:30 a.m. Donald A. English, Esq. and Christy

20   I. Yee, Esq. of English & Gloven, A Professional Corporation, appeared on behalf of defendant Mr.

21   Allen. Daniel M. White, Esq. of White & Oliver, A Professional Corporation, appeared on behalf of

22   defendant Mr. Love. Plaintiff Frank E. Rogozienski appeared in pro per on his own behalf.

23        The Court, after having considered defendants' moving and reply papers, plaintiff's opposition

24   papers, and oral argument of counsel presented at the hearing, makes the following rulings:

25        1.    Plaintiff's motion to strike and disregard defendant Mr. Allen's memorandum of points

26   and authorities is denied.

27        2.    Defendant Mr. Allen's request for judicial notice is granted.               **EXHIBIT 2 PAGE 598**

28                                                                                          44⁸

                              [PROPOSED] ORDER SUSTAINING DEFEND

LOVE00972

3. Defendant Mr. Allen's demurrer to the first amended complaint and each cause of action against Mr. Allen is sustained as follows:

   (a) As to the first cause of action for intentional interference with contractual relations as the cause of action is barred by the doctrine of judicial immunity;

   (b) As to the third cause of action for intentional interference with prospective economic relations as the cause of action is barred by the doctrine of judicial immunity;

   (c) As to the fifth cause of action for negligent interference with prospective economic advantage as the cause of action is barred by the doctrine of judicial immunity;

   (d) As to the seventh cause of action for civil rights violations as the cause of action is barred by the doctrine of judicial immunity;

   (e) As to the eighth cause of action for deceit and fraudulent concealment as the cause of action is barred by the doctrine of judicial immunity;

   (f) As to the ninth cause of action for breach of contract as the cause of action is barred by the doctrine of judicial immunity;

   (g) As to the eleventh cause of action for wilful misconduct and intentional infliction of injury as the cause of action is barred by the doctrine of judicial immunity;

   (h) As to the twelfth cause of action for negligence as the cause of action is barred by the doctrine of judicial immunity; and

   (i) As to the thirteenth cause of action for unjust enrichment as the cause of action is barred by the doctrine of judicial immunity.

4. The Court sustains Mr. Allen's demurrer, without leave to amend, as to each cause of action against Mr. Allen in the first amended complaint as the Court finds that based upon the doctrine of judicial immunity, plaintiff has not pled, and would not be able to plead by amendment, any facts to state a cause of action against Mr. Allen.

5. Defendant Mr. Love's request for judicial notice is granted.

**EXHIBIT 2 PAGE 599**

449

[PROPOSED] ORDER SUSTAINING DEMURRER

LOVE00973

6.    Defendant Mr. Love's demurrer to the first amended complaint and each cause of action against Mr. Love is sustained, without leave to amend, as follows:

    (a)    As to the first cause of action for intentional interference with contractual relations as the Court concludes that plaintiff has failed to adequately state facts that would support the allegation that Mr. Love intended to disrupt the contractual relations pled in the first amended complaint;

    (b)    As to the second cause of action for intentional interference with contractual relations as the Court concludes that plaintiff has failed to adequately state facts that would support the allegation that Mr. Love intended to disrupt the contractual relations pled in the first amended complaint;

    (c)    As to the third cause of action for intentional interference with prospective economic advantage as the Court finds plaintiff has not adequately pled that Mr. Love interfered with economic relationships that could have prospectively brought economic advantage to plaintiff;

    (d)    As to the fourth cause of action for intentional interference with prospective economic advantage as the Court finds that plaintiff has not adequately pled that Mr. Love interfered with economic relationships that could have prospectively brought economic advantage to plaintiff;

    (e)    As to the fifth cause of action for negligent interference with prospective economic advantage as the Court finds that plaintiff has not adequately pled that Mr. Love interfered with economic relationships that could have prospectively brought economic advantage to plaintiff;

    (f)    As to the sixth cause of action for negligent interference with prospective economic advantage as the Court finds that plaintiff has not adequately pled that Mr. Love interfered with economic relationships that could have prospectively brought economic advantage to plaintiff;

**EXHIBIT 2 PAGE 600**    450

(g)    As to the seventh cause of action for civil rights violations as the Court finds plaintiff has failed to allege any facts to support the allegation that Mr. Love engaged in any acts of threats, intimidation or coercion by way of state action;

(h)    As to the eighth cause of action for deceit and fraudulent concealment as the Court concludes Mr. Love owed no duty to plaintiff;

(i)    As to the tenth cause of action for unfair competition as no remedy exists based upon the facts pled and plaintiff has failed to plead that Mr. Love has any monies that should be restored to plaintiff, nor is there any conduct to be enjoined;

(j)    As to the eleventh cause of action for wilful misconduct and intentional infliction of injury as the Court concludes Mr. Love owed no duty to plaintiff and plaintiff cannot sue for damages for conduct that allegedly violated the Rules of Professional Conduct;

(k)    As to the twelfth cause of action for negligence as the Court concludes Mr. Love owed no duty to plaintiff and plaintiff cannot sue for damages for conduct that allegedly violated the Rules of Professional Conduct; and

(l)    As to the thirteenth cause of action for unjust enrichment as there are no allegations that Mr. Love holds any identified property in trust for plaintiff.

7.    The Court sustains Mr. Love's demurrer, without leave to amend, as to each cause of action against Mr. Love in the first amended complaint as the Court finds plaintiff has not pled, and would not be able to plead by amendment, any facts to state a cause of action against Mr. Love.

8.    Given the following ruling, the first amended complaint shall be dismissed in its entirety. Defendants are directed to prepare an order for the Court's rulings.

IT IS SO ORDERED.

Dated:  OCT 1 9 2005

JOAN M. LEWIS
Hon. Joan M. Lewis
Judge of the Superior Court

**EXHIBIT 2 PAGE 601**    451

L0VE00975

1     APPROVED AS TO FORM AND CONTENT:

2

3     Dated: _September 28, 2005_      ENGLISH & GLOVEN

4                          A Professional Corporation

5

6                      By: _Donald English_

7                           Donald A. English
                          Christy I. Yee

8                 Attorneys for Defendant James D. Allen

9

10    Dated: _____      WHITE & OLIVER
                          A Professional Corporation

11

12                      By:_____

13                           Daniel M. White, Esq.
                Attorneys for Defendant S. Michael Love

14

15

16    Dated: _____      FRANK E. ROGOZIENSKI, INC.

17

18

19                      By:_____

20                          Frank E. Rogozienski, Esq.
              Attorneys for Plaintiff Frank E. Rogozienski

21

22

23

24

25

26

27

28

**EXHIBIT 2 PAGE 602**

452

[PROPOSED] ORDER SUSTAINING DEFENDANTS'

1    APPROVED AS TO FORM AND CONTENT:

2

3    Dated: _September 28, 2005_

4                                    ENGLISH & GLOVEN
                                     A Professional Corporation
5

6    By: _Donald A. English_

7        Donald A. English
         Christy I. Yee
8        Attorneys for Defendant James D. Allen

9

10   Dated: _12 October 2005_

11                                   WHITE & OLIVER
                                     A Professional Corporation
12   By: _Steven C. Anderson_

13       Daniel M. White, Esq.
         Attorneys for Defendant S. Michael Love
14

15

16   Dated: _____

17                                   FRANK E. ROGOZIENSKI, INC.

18

19   By: _____

20       Frank E. Rogozienski, Esq.
         Attorneys for Plaintiff Frank E. Rogozienski
21

22

23

24

25

26

27

28                              **EXHIBIT 2 PAGE 603**        453

LOVE00977

1    APPROVED AS TO FORM AND CONTENT:

2

3    Dated: _September 28, 2005_          ENGLISH & GLOVEN
                                          A Professional Corporation
4

5

6    By: _Donald A English_
                                          Donald A. English
7                                         Christy I. Yee
                                          Attorneys for Defendant James D. Allen
8

9    Dated: _____

10                                        WHITE & OLIVER
                                          A Professional Corporation
11

12                                        By: _____
                                              Daniel M. White, Esq.
13                                        Attorneys for Defendant S. Michael Love

14

15   _APPROVED AS TO FORM AND CONFORMING TO COURT'S ORDER_

16   Dated: _9/30/05_                     FRANK E. ROGOZIENSKI, INC.

17

18

19                                        By: _____
                                              Frank E. Rogozienski, Esq.
20                                        Attorneys for Plaintiff Frank E. Rogozienski

21

22

23

24

25

26

27                                        **EXHIBIT 2 PAGE 604**    454

28

L0VE00978

28

EXHIBIT 2 PAGE 605

LOVE00979

RECEIVED
NOV 10 2005
BY:................

FILED
Clerk of the Superior Court
OCT 1 9 2005
By: R. LINDSEY-COOPER, Deputy

1
2
3
4
5
6
7
8

SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

FOR THE COUNTY OF SAN DIEGO

10 | FRANK E. ROGOZIENSKI,  )  Case No. GIC 843843
11 |            Plaintiff  )  JUDGMENT OF DISMISSAL
12 |        v.  )
13 | JAMES D. ALLEN, S. MICHAEL LOVE  )  Date:    September 2, 2005
    | and DOES 1 through 10, inclusive,  )  Dept:    65
14 |  )  Judge:    Hon. Joan M. Lewis
15 |            Defendants.  )  Complaint Filed:    March 7, 2005
    |  )

16        Based upon this Court's September 2, 2005 order sustaining, without leave to amend, James D.

17 Allen's and S. Michael Love's demurrers to the first amended complaint, and each cause of action

18 therein,

19        IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment dismissing this action

20 be, and hereby is, entered in favor of defendants James D. Allen and S. Michael Love.

21        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant James D. Allen is

22 entitled to costs of suit in the amount of $_____; and defendant S. Michael Love is

23 entitled to costs of suit in the amount of $_____.

24

25 Dated: ___OCT 1 9 2005___        JOAN M. LEWIS

26                                    _____
                                     Hon. Joan M. Lewis
27                                    Judge of the Superior Court

28                                    **EXHIBIT 2 PAGE 606**            455

LOVE00980

1    APPROVED AS TO FORM AND CONTENT:

2

3    Dated: _September 28, 2005_

           ENGLISH & GLOVEN
4                    A Professional Corporation

5

6                    By: _Donald A. English_

                       Donald A. English
7                        Christy I. Yee

                 Attorneys for Defendant James D. Allen
8

9

10   Dated: _____

           WHITE & OLIVER
11                 A Professional Corporation

12                    By: _____

                   Daniel M. White, Esq.
13             Attorneys for Defendant S. Michael Love

14

15

16   Dated: _____

           FRANK E. ROGOZIENSKI, INC.
17

18

19                    By: _____

                   Frank E. Rogozienski, Esq.
20           Attorneys for Plaintiff Frank E. Rogozienski

21

22

23

24

25

26

27

28                         **EXHIBIT 2 PAGE 607**    458

LOVE00981

1    APPROVED AS TO FORM AND CONTENT:

2

3    Dated: _September 28, 2005_    ENGLISH & GLOVEN
                                     A Professional Corporation
4

5

6                                    By: _Donald English._
                                         Donald A. English
7                                        Christy I. Yee
                                         Attorneys for Defendant James D. Allen
8

9    Dated: _12 October 2005_        WHITE & OLIVER
                                     A Professional Corporation
10

11

12                                   By: _Daniel White_
13                                       Daniel M. White, Esq.
                                         Attorneys for Defendant S. Michael Love
14

15

16   Dated: _____         FRANK E. ROGOZIENSKI, INC.

17

18

19                                   By: _____
                                         Frank E. Rogozienski, Esq.
20                                       Attorneys for Plaintiff Frank E. Rogozienski

21

22

23

24

25

26

27

28                                   **EXHIBIT 2 PAGE 608**    45▓

L0VE00982

1  APPROVED AS TO FORM AND CONTENT:

2

3  Dated: _September 28, 2005_          ENGLISH & GLOVEN
                                        A Professional Corporation
4

5

6  By: _Donald A. English_
                                        Donald A. English
7                                       Christy I. Yee
                                        Attorneys for Defendant James D. Allen
8

9  Dated: _____              WHITE & OLIVER
10                                      A Professional Corporation
11

12                                      By:_____
                                        Daniel M. White, Esq.
13                                      Attorneys for Defendant S. Michael Love

14     _APPROVED AS TO FORM_

15
16  Dated: _9/30/05_                    FRANK E. ROGOZIENSKI, INC.

17

18

19                                      By:_____
                                        Frank E. Rogozienski, Esq.
20                                      Attorneys for Plaintiff Frank E. Rogozienski

21

22

23

24

25

26

27
                                        **EXHIBIT 2 PAGE 609**    458
28

LOVE00983

29

EXHIBIT 2 PAGE 610

L0VE00984



1  Donald A. English, Esq.        (State Bar No. 115569)
   Christy I. Yee, Esq.           (State Bar No. 166238)
2  ENGLISH & GLOVEN
   A Professional Corporation
3  550 West "C" Street, Suite 1800
   San Diego, California 92101
4  Telephone: (619) 338-6610
   Facsimile:  (619) 338-6657
5

6  Attorneys for Defendant
   James D. Allen
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF SAN DIEGO

10  FRANK E. ROGOZIENSKI,            )    Case No. GIC 843843
                                     )
11         Plaintiff                 )    PROOF OF SERVICE BY MAIL
                                     )
12     v.                            )
                                     )
13  JAMES D. ALLEN, S. MICHAEL LOVE  )
    and DOES 1 through 10, inclusive,)
14                                   )    Complaint Filed:    March 7, 2005
           Defendants.               )    Trial Date:         None set
15                                   )

16      I, Nona Sabo, declare that:  I am over the age of 18 years and not a party to the case; I am

17  employed in the County of San Diego, California, where the mailing occurs; and my business address is

18  550 West "C" Street, Suite 1800, San Diego, California 92101.

19      On November 9, 2005, I served the following document(s):

20      1.    ORDER SUSTAINING DEFENDANTS' JAMES D. ALLEN AND S. MICHAEL
              LOVE'S DEMURRERS TO FIRST AMENDED COMPLAINT, AND EACH CAUSE
21            OF ACTION, WITHOUT LEAVE TO AMEND

22      2.    JUDGMENT OF DISMISSAL

23  by placing a true copy of each document in a separate envelope addressed to each addressee, respectively,

24  as follows:

25  Frank E. Rogozienski, Esq.                    Attorneys for Plaintiff
    Frank E. Rogozienski, Inc.                    FRANK E. ROGOZIENSKI
26  1660 Union Street, Suite 300
    San Diego, CA 92101
27  Tel: (619) 237-1878

28                                    EXHIBIT 2 PAGE 611      459

                              PROOF OF SERVICE BY MAIL

LOVE00985

1

2  Daniel M. White, Esq.
3  White & Oliver, APC
   550 West C Street, Suite 950
4  San Diego, CA 92101
   Tel: (619) 239-0300
5  Fax: (619) 239-0344

Attorneys for Defendant
S. MICHAEL LOVE

6        I then sealed each envelope and, with postage thereon fully prepaid, placed each for deposit in the

7  United States Postal Service, this same day, at my business address shown above, following ordinary

8  business practices. I am readily familiar with the business practices for collecting and processing of

9  correspondence and pleadings for mailing with the United States Postal Service; and that the

10 correspondence and pleadings shall be deposited with the United States Postal Service this same day in

11 the ordinary course of business.

12       I declare under penalty of perjury under the laws of the State of California that the foregoing is

13 true and correct.

14

15 Dated:  November 9, 2005

   Nona Sabo

16 Nona Sabo

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 2 PAGE 612**

460

2

PROOF OF SERVICE BY MAIL

LOVE00986

30

**EXHIBIT 2 PAGE 613**

L0VE00987

RECEIVED
NOV - 2005
BY.............

1  Donald A. English, Esq.    (State Bar No. 115569)
   Christy I. Yee, Esq.       (State Bar No. 166238)
2  ENGLISH & GLOVEN
   A Professional Corporation
3  550 West "C" Street, Suite 1800
   San Diego, California 92101
4  Telephone: (619) 338-6610
   Facsimile:  (619) 338-6657
5
6  Attorneys for Defendant
   James D. Allen
7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                   FOR THE COUNTY OF SAN DIEGO
10
11 FRANK E. ROGOZIENSKI,          )  Case No. GIC 843843
12        Plaintiff               )  NOTICE OF RULING AND NOTICE OF
13     v.                         )  ORDER
                                  )
14 JAMES D. ALLEN, S. MICHAEL LOVE )  Date:      September 2, 2005
   and DOES 1 through 10, inclusive, ) Dept:      65
15                                )  Judge:     Honorable Joan M. Lewis
        Defendants.               )  Complaint Filed:   March 7, 2005
16                                )
17 _____ )

18    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

19    NOTICE IS HEREBY GIVEN THAT on September 2, 2005 in Department 65 of the above-
20 entitled court, the Honorable Joan M. Lewis sustained, without leave to amend, the demurrers filed by
21 defendants James D. Allen and S. Michael Love to the first amended complaint of plaintiff Frank E.
22 Rogozienski.  A copy of the Court's October 19, 2005 order is attached hereto as Exhibit "1".

23 Dated: November 14, 2005          ENGLISH & GLOVEN
24                                   A Professional Corporation
25
26                                   By: Donald A. English
                                         Donald A. English
27                                       Christy I. Yee
                                         Attorneys for Defendant      EXHIBIT 2 PAGE 614
28                                       James D. Allen

461
NOTICE OF RULING AND NOTICE OF ORDER

# Exhibit "1"

**EXHIBIT 2 PAGE 615**

462

L0VE00989

1

2          F I L E D
          Clerk of the Superior Court

3          OCT 1 9 2005

4          By: R. LINDSEY-COOPER, Deputy

5

6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF SAN DIEGO

10   FRANK E. ROGOZIENSKI,              )     Case No. GIC 843843
                                        )
11              Plaintiff               )     [PROPOSED] ORDER SUSTAINING
                                        )     DEFENDANTS JAMES D. ALLEN'S AND S.
12        v.                            )     MICHAEL LOVE'S DEMURRERS TO
                                        )     FIRST AMENDED COMPLAINT, AND EACH
13   JAMES D. ALLEN, S. MICHAEL LOVE    )     CAUSE OF ACTION, WITHOUT LEAVE TO
     and DOES 1 through 10, inclusive,  )     AMEND
14                                      )
                                        )
15              Defendants.            )      Date:          September 2, 2005
     _____)     Dept:          65
16                                            Judge:         Hon. Joan M. Lewis
                                              Complaint Filed:   March 7, 2005

17          The demurrers to the first amended complaint by defendants James D. Allen ("Mr. Allen") and

18   S. Michael Love ("Mr. Love") came on for hearing in Department 65 of the above-entitled Court before

19   the Honorable Joan M. Lewis on September 2, 2005 at 8:30 a.m. Donald A. English, Esq. and Christy

20   I. Yee, Esq. of English & Gloven, A Professional Corporation, appeared on behalf of defendant Mr.

21   Allen. Daniel M. White, Esq. of White & Oliver, A Professional Corporation, appeared on behalf of

22   defendant Mr. Love. Plaintiff Frank E. Rogozienski appeared in pro per on his own behalf.

23          The Court, after having considered defendants' moving and reply papers, plaintiff's opposition

24   papers, and oral argument of counsel presented at the hearing, makes the following rulings:

25          1.      Plaintiff's motion to strike and disregard defendant Mr. Allen's memorandum of points

26   and authorities is denied.

27          2.      Defendant Mr. Allen's request for judicial notice is granted.          **EXHIBIT 2 PAGE 616**

28                                                                                          463

     _____
     [PROPOSED] ORDER SUSTAINING DEFENDANTS'

LOVE00990

3.   Defendant Mr. Allen's demurrer to the first amended complaint and each cause of action against Mr. Allen is sustained as follows:

(a)   As to the first cause of action for intentional interference with contractual relations as the cause of action is barred by the doctrine of judicial immunity;

(b)   As to the third cause of action for intentional interference with prospective economic relations as the cause of action is barred by the doctrine of judicial immunity;

(c)   As to the fifth cause of action for negligent interference with prospective economic advantage as the cause of action is barred by the doctrine of judicial immunity;

(d)   As to the seventh cause of action for civil rights violations as the cause of action is barred by the doctrine of judicial immunity;

(e)   As to the eighth cause of action for deceit and fraudulent concealment as the cause of action is barred by the doctrine of judicial immunity;

(f)   As to the ninth cause of action for breach of contract as the cause of action is barred by the doctrine of judicial immunity;

(g)   As to the eleventh cause of action for wilful misconduct and intentional infliction of injury as the cause of action is barred by the doctrine of judicial immunity;

(h)   As to the twelfth cause of action for negligence as the cause of action is barred by the doctrine of judicial immunity; and

(i)   As to the thirteenth cause of action for unjust enrichment as the cause of action is barred by the doctrine of judicial immunity.

4.   The Court sustains Mr. Allen's demurrer, without leave to amend, as to each cause of action against Mr. Allen in the first amended complaint as the Court finds that based upon the doctrine of judicial immunity, plaintiff has not pled, and would not be able to plead by amendment, any facts to state a cause of action against Mr. Allen.

**EXHIBIT 2 PAGE 617**

5.   Defendant Mr. Love's request for judicial notice is granted.

4|64

[PROPOSED] ORDER SUSTAINING DEFENDANTS'

LOVE00991

6.     Defendant Mr. Love's demurrer to the first amended complaint and each cause of action against Mr. Love is sustained, without leave to amend, as follows:

(a)     As to the first cause of action for intentional interference with contractual relations as the Court concludes that plaintiff has failed to adequately state facts that would support the allegation that Mr. Love intended to disrupt the contractual relations pled in the first amended complaint;

(b)     As to the second cause of action for intentional interference with contractual relations as the Court concludes that plaintiff has failed to adequately state facts that would support the allegation that Mr. Love intended to disrupt the contractual relations pled in the first amended complaint;

(c)     As to the third cause of action for intentional interference with prospective economic advantage as the Court finds plaintiff has not adequately pled that Mr. Love interfered with economic relationships that could have prospectively brought economic advantage to plaintiff;

(d)     As to the fourth cause of action for intentional interference with prospective economic advantage as the Court finds that plaintiff has not adequately pled that Mr. Love interfered with economic relationships that could have prospectively brought economic advantage to plaintiff;

(e)     As to the fifth cause of action for negligent interference with prospective economic advantage as the Court finds that plaintiff has not adequately pled that Mr. Love interfered with economic relationships that could have prospectively brought economic advantage to plaintiff;

(f)     As to the sixth cause of action for negligent interference with prospective economic advantage as the Court finds that plaintiff has not adequately pled that Mr. Love interfered with economic relationships that could have prospectively brought economic advantage to plaintiff;

**EXHIBIT 2 PAGE 618**

465

[PROPOSED] ORDER SUSTAINING DEFENDANTS'

LOVE00992

(g)  As to the seventh cause of action for civil rights violations as the Court finds plaintiff has failed to allege any facts to support the allegation that Mr. Love engaged in any acts of threats, intimidation or coercion by way of state action;

(h)  As to the eighth cause of action for deceit and fraudulent concealment as the Court concludes Mr. Love owed no duty to plaintiff;

(i)  As to the tenth cause of action for unfair competition as no remedy exists based upon the facts pled and plaintiff has failed to plead that Mr. Love has any monies that should be restored to plaintiff, nor is there any conduct to be enjoined;

(j)  As to the eleventh cause of action for wilful misconduct and intentional infliction of injury as the Court concludes Mr. Love owed no duty to plaintiff and plaintiff cannot sue for damages for conduct that allegedly violated the Rules of Professional Conduct;

(k)  As to the twelfth cause of action for negligence as the Court concludes Mr. Love owed no duty to plaintiff and plaintiff cannot sue for damages for conduct that allegedly violated the Rules of Professional Conduct; and

(l)  As to the thirteenth cause of action for unjust enrichment as there are no allegations that Mr. Love holds any identified property in trust for plaintiff.

7.  The Court sustains Mr. Love's demurrer, without leave to amend, as to each cause of action against Mr. Love in the first amended complaint as the Court finds plaintiff has not pled, and would not be able to plead by amendment, any facts to state a cause of action against Mr. Love.

8.  Given the following ruling, the first amended complaint shall be dismissed in its entirety. Defendants are directed to prepare an order for the Court's rulings.

IT IS SO ORDERED.

Dated:  OCT 1 9 2005

JOAN M. LEWIS
Hon. Joan M. Lewis
Judge of the Superior Court

**EXHIBIT 2 PAGE 619**

466

[PROPOSED] ORDER SUSTAINING DEFENDANTS'

LOVE00993

1 | APPROVED AS TO FORM AND CONTENT:

2

3 | Dated: _September 28, 2005_      ENGLISH & GLOVEN

4 |          A Professional Corporation

5

6 |          By: _Donald A. English_

7 |             Donald A. English
            Christy I. Yee
         Attorneys for Defendant James D. Allen

8

9

10 | Dated: _____      WHITE & OLIVER
         A Professional Corporation

11

12 |          By: _____

13 |             Daniel M.  White, Esq.
         Attorneys for Defendant S. Michael Love

14

15

16 | Dated: _____      FRANK E.  ROGOZIENSKI, INC.

17

18

19 |          By: _____
            Frank E. Rogozienski, Esq.

20 |          Attorneys for Plaintiff Frank E.  Rogozienski

21

22

23

24

25

26

27 |                            **EXHIBIT 2 PAGE 620**

28 |                                          467

[PROPOSED] ORDER SUSTAINING DEFENDANTS'

LOVE00994

1    APPROVED AS TO FORM AND CONTENT:

2

3    Dated: _September 28, 2005_              ENGLISH & GLOVEN

4                                            A Professional Corporation

5

6                                            By: _Donald A. English_

7                                               Donald A. English
                                                Christy I. Yee
                                                Attorneys for Defendant James D. Allen
8

9    Dated: _12 October 2005_                 WHITE & OLIVER

10                                            A Professional Corporation

11

12                                            By: _Steven C. Ander_

13                                               Daniel M. White, Esq.
                                                Attorneys for Defendant S. Michael Love
14

15

16   Dated: _____                   FRANK E. ROGOZIENSKI, INC.

17

18

19                                            By: _____

20                                               Frank E. Rogozienski, Esq.
                                                Attorneys for Plaintiff Frank E. Rogozienski

21

22

23

24

25

26

27

28                                            **EXHIBIT 2 PAGE 621**         468

[PROPOSED] ORDER SUSTAINING DEFENDANTS'

LOVE00995

1 | APPROVED AS TO FORM AND CONTENT:

2

3 | Dated: _September 28, 2005_     ENGLISH & GLOVEN

4 |     A Professional Corporation

5

6 | By: _Donald A English_

    Donald A. English

7 |     Christy I. Yee

    Attorneys for Defendant James D. Allen

8

9 | Dated: _____     WHITE & OLIVER

10 |     A Professional Corporation

11

12 | By: _____

13 |     Daniel M. White, Esq.

    Attorneys for Defendant S. Michael Love

14

15 | _APPROVED AS TO FORM AND CONFORMING TO COURT'S ORDER_

16 | Dated: _9/30/05_     FRANK E. ROGOZIENSKI, INC.

17

18

19 | By: _____

    Frank E. Rogozienski, Esq.

20 |     Attorneys for Plaintiff Frank E. Rogozienski

21

22

23

24

25

26

27 | **EXHIBIT 2 PAGE 622**

28 |                          469

LOVE00996

31

**EXHIBIT 2 PAGE 623**

RECEIVED
NOV - 2 2005
BY:_____

1  Donald A. English, Esq.   (State Bar No. 115569)
   Christy I. Yee, Esq.   (State Bar No. 166238)
2  ENGLISH & GLOVEN
   A Professional Corporation
3  550 West "C" Street, Suite 1800
   San Diego, California 92101
4  Telephone: (619) 338-6610
   Facsimile: (619) 338-6657
5
6  Attorneys for Defendant
   James D. Allen
7
8             SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                    FOR THE COUNTY OF SAN DIEGO
10
11  FRANK E. ROGOZIENSKI,          )   Case No. GIC 843843
                                   )
12            Plaintiff            )   NOTICE OF ENTRY OF JUDGMENT
                                   )
13       v.                        )
                                   )
14  JAMES D. ALLEN, S. MICHAEL LOVE)   Date:        September 2, 2005
    and DOES 1 through 10, inclusive, )   Dept:        65
15                                 )   Judge:       Honorable Joan M. Lewis
              Defendants.          )   Complaint Filed:   March 7, 2005
16                                 )
                                   )
17  _____  )
18       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

19       NOTICE IS HEREBY GIVEN THAT on October 19, 2005 in Dept. 65 of the above-entitled

20  court, the Honorable Joan M. Lewis entered judgment in this action in favor of defendants James D.

21  Allen and S. Michael Love ("defendants") and against plaintiff Frank E. Rogozienski ("plaintiff"). The

22  Court ordered that plaintiff's first amended complaint be dismissed with prejudice, and that defendants

23  ///

24  ///

25  ///

26

27                                    **EXHIBIT 2 PAGE 624**

28
                                                        470
                                    NOTICE OF ENTRY OF JUDGMENT

LOVE00998

1    recover costs of suit against plaintiff in a sum to be determined. Attached as Exhibit "1" is a true and

2    correct copy of the judgment entered on October 19, 2005.

3    Dated: November *14*, 2005        ENGLISH & GLOVEN
                                      A Professional Corporation

4

5

6                            By: *Donald English.*
                                   Donald A. English

7                                    Christy L Yee
                                   Attorneys for Defendant

8                                    James D. Allen

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                       **EXHIBIT 2 PAGE 625**

27

28                                            471

LOVE00999

# Exhibit "1"

**EXHIBIT 2 PAGE 626**    472

LOVE01000

F I L E D
Clerk of the Superior Court

OCT 19 2005

By: R. LINDSEY-COOPER, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | | |
|---|---|---|
| FRANK E. ROGOZIENSKI, | ) | Case No. GIC 843843 |
| Plaintiff | ) | JUDGMENT OF DISMISSAL |
| v. | ) | |
| JAMES D. ALLEN, S. MICHAEL LOVE and DOES 1 through 10, inclusive, | ) | Date:        September 2, 2005<br>Dept:        65<br>Judge:       Hon. Joan M. Lewis |
| Defendants. | ) | Complaint Filed:    March 7, 2005 |

Based upon this Court's September 2, 2005 order sustaining, without leave to amend, James D. Allen's and S. Michael Love's demurrers to the first amended complaint, and each cause of action therein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment dismissing this action be, and hereby is, entered in favor of defendants James D. Allen and S. Michael Love.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant James D. Allen is entitled to costs of suit in the amount of $_____; and defendant S. Michael Love is entitled to costs of suit in the amount of $_____.

Dated: _____OCT 1 9 2005_____

JOAN M. LEWIS
_____
Hon. Joan M. Lewis
Judge of the Superior Court

**EXHIBIT 2 PAGE 627**    4/3

1   APPROVED AS TO FORM AND CONTENT:

2

3   Dated: _September 28, 2005_          ENGLISH & GLOVEN
                                         A Professional Corporation
4

5                                        By: _Donald A. English_
6                                            Donald A. English
                                             Christy I. Yee
7                                        Attorneys for Defendant James D. Allen

8

9
    Dated: _____             WHITE & OLIVER
10                                        A Professional Corporation

11

12                                       By: _____
                                             Daniel M.  White, Esq.
13                                       Attorneys for Defendant S. Michael Love

14

15

16  Dated: _____             FRANK E.  ROGOZIENSKI, INC.

17

18

19                                       By: _____
                                             Frank E. Rogozienski, Esq.
                                         Attorneys for Plaintiff Frank E.  Rogozienski
20

21

22

23

24

25

26

27

28                                       **EXHIBIT 2 PAGE 628**         474

1 | APPROVED AS TO FORM AND CONTENT:

2

3 | Dated: _September 28, 2005_          ENGLISH & GLOVEN
                                         A Professional Corporation

4

5                                        By: _Donald A. English_

6                                            Donald A. English
                                             Christy I. Yee

7                                        Attorneys for Defendant James D. Allen

8

9 | Dated: _12 October 2005_             WHITE & OLIVER
                                         A Professional Corporation
10

11

12                                       By: _Edwin G. Auker_

13                                           Daniel M. White, Esq.
                                         Attorneys for Defendant S. Michael Love

14

15

16 | Dated: _____              FRANK E. ROGOZIENSKI, INC.

17

18

19                                       By: _____
                                             Frank E. Rogozienski, Esq.
                                         Attorneys for Plaintiff Frank E. Rogozienski

20

21

22

23

24

25

26

27                                       **EXHIBIT 2 PAGE 629**        475

28

L0VE01003

1  APPROVED AS TO FORM AND CONTENT:

2

3  Dated: _September 28, 2005_    ENGLISH & GLOVEN
                          A Professional Corporation

4

5                       By: _Donald A. English_

6                         Donald A. English

7                         Christy I. Yee
                      Attorneys for Defendant James D. Allen

8

9

10  Dated: _____    WHITE & OLIVER
                          A Professional Corporation

11

12                     By: _____

13                      Daniel M. White, Esq.
                      Attorneys for Defendant S. Michael Love

14

15  _APPROVED AS TO FORM_

16  Dated: _9/30/05_    FRANK E. ROGOZIENSKI, INC.

17

18

19                   By: _____
                      Frank E. Rogozienski, Esq.
                      Attorneys for Plaintiff Frank E. Rogozienski

20

21

22

23

24

25

26

27                   **EXHIBIT 2 PAGE 630**

28

476

LOVE01004

32

**EXHIBIT 2 PAGE 631**

L0VE01005

RECEIVED

NOV 15 2005

BY:_____

1  Donald A. English, Esq.    (State Bar No. 115569)
   Christy I. Yee, Esq.    (State Bar No. 166238)
2  ENGLISH & GLOVEN
   A Professional Corporation
3  550 West "C" Street, Suite 1800
   San Diego, California 92101
4  Telephone: (619) 338-6610
   Facsimile: (619) 338-6657
5

6  Attorneys for Defendant
   James D. Allen
7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                FOR THE COUNTY OF SAN DIEGO

10

11  FRANK E. ROGOZIENSKI,            )    Case No. GIC 843843
                                     )
12           Plaintiff              )    PROOF OF SERVICE BY MAIL
                                     )
13       v.                          )
                                     )
14  JAMES D. ALLEN, S. MICHAEL LOVE  )
    and DOES 1 through 10, inclusive, )
15                                   )    Complaint Filed:    March 7, 2005
             Defendants.             )    Trial Date:        None set
16  _____)

17        I, Nona Sabo, declare that: I am over the age of 18 years and not a party to the case; I am

18  employed in the County of San Diego, California, where the mailing occurs; and my business address is

19  550 West "C" Street, Suite 1800, San Diego, California 92101.

20        On November 14, 2005 I served the following document(s):

21        1.    NOTICE OF RULING AND NOTICE OF ORDER; and

22        2.    NOTICE OF ENTRY OF JUDGMENT

23  by placing a true copy of each document in a separate envelope addressed to each addressee, respectively,

24  as follows:

25  Frank E. Rogozienski, Esq.              Attorney for Plaintiff
    Frank E. Rogozienski, Inc.             FRANK E. ROGOZIENSKI
26  1660 Union Street, Suite 300
    San Diego, CA 92101
27  Tel: (619) 237-1878
    Fax: (619) 237-1870                    **EXHIBIT 2 PAGE 632**
28
                                           47
                                    ─────────────────────────
                                    PROOF OF SERVICE BY MAIL

LOVE01006

1

2   Daniel M. White, Esq.                     Attorneys for Defendant
  White & Oliver, APC                      S. MICHAEL LOVE

3   550 West C Street, Suite 950
  San Diego, CA 92101

4   Tel: (619) 239-0300
  Fax: (619) 239-0344

5

6        I then sealed each envelope and, with postage thereon fully prepaid, placed each for deposit in

7 the United States Postal Service, this same day, at my business address shown above, following

8 ordinary business practices. I am readily familiar with the business practices for collecting and

9 processing of correspondence and pleadings for mailing with the United States Postal Service; and

10 that the correspondence and pleadings shall be deposited with the United States Postal Service this

11 same day in the ordinary course of business.

12        I declare under penalty of perjury under the laws of the State of California that the foregoing is

13 true and correct.

14

15   Dated: November _14_, 2005                 _Nona Sabo_

16                                      Nona Sabo

17

18

19

20

21

22

23

24

25

26                                         **EXHIBIT 2 PAGE 633**

27

28                                               478

                            2                        PROOF OF SERVICE BY MAIL

33

EXHIBIT 2 PAGE 634

1  FRANK E. ROGOZIENSKI, ESQ (SBN.51445)
2  FRANK E. ROGOZIENSKI, INC.
   A Professional Corporation
3  Attorneys at Law
   1660 Union Street, Third Floor
4  San Diego, CA 92101
   Telephone: (619)237-1878
5  Facsimile: (619)237-1870

6  Attorneys for Plaintiff, FRANK E. ROGOZIENSKI

F I L E D
Clerk of the Superior Court

JAN - 4 2006

By: ROSE MARIE LEY,
Deputy.

7

8

9        SUPERIOR COURT OF THE STATE OF CALIFORNIA

10            FOR THE COUNTY OF SAN DIEGO

11

12  FRANK E. ROGOZIENSKI,          )     Case No. GIC843843
                                   )
13              Plaintiff,         )     NOTICE OF APPEAL
                                   )
14          v.                     )
                                   )
15  JAMES D. ALLEN, S. MICHAEL     )
    LOVE and DOES 1 through 10,    )
16  inclusive,                     )
                                   )
17              Defendants.        )
                                   )
18  _____)

19

20      Plaintiff, FRANK E. ROGOZIENSKI, appeals to the Court of

21  Appeal of the State of California, Fourth Appellate District,

22  Division One, from:

23      1.   Order Sustaining Defendants James D. Allen's And S.

24  Michael Love's Demurrers To First Amended Complaint, And Each Cause

25  Of Action, Without Leave To Amend filed on October 19, 2005.  A

26  Notice Of Ruling And Notice Of Order was served by mail on November

27

28  _____          **EXHIBIT 2 PAGE 635**

NOTICE OF APPEAL
                              1
                                                           479

LOVE01009

1    14, 2005; and

2        2.    Judgment Of Dismissal filed on October 19, 2005.    A

3    Notice Of Entry Of Judgment was served by mail on November 14,

4    2005.

5    Dated: January 3, 2005                    FRANK E. ROGOZIENSKI, INC.

6

7                                              By: _____
                                                   Frank E. Rogozienski
8                                                  Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                **EXHIBIT 2 PAGE 636**

28

_____

NOTICE OF APPEAL                                                        480

                        2

LAW OF...CES
FRANK E. ROGOZIENSKI
A PROFESSIONAL CORPORATION
1660 UNION STREET
3RD FLOOR
SAN DIEGO, CALIFORNIA 92101
(619) 237-1670

LOVE01010

**34**

**EXHIBIT 2 PAGE 637**

L0VE01011

APP-003

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** (*Name, state bar number, and address*): | **FOR COURT USE ONLY** |

FRANK E. ROGOZIENSKI (SBN 51445)
FRANK E. ROGOZIENSKI, INC.
1660 Union St., 3rd Fl., San Diego, CA 92101
TELEPHONE NO: 619-237-1878
E-MAIL ADDRESS (*Optional*):                FAX NO. (*Optional*): 619-237-1870
ATTORNEY FOR (*Name*): FRANK E. ROGOZIENSKI, Plaintiff and Appellant

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central Division

PLAINTIFF/PETITIONER: FRANK E. ROGOZIENSKI

DEFENDANT/RESPONDENT: JAMES D. ALLEN, S. MICHAEL LOVE, et al.

**F I L E D**
Clerk of the Superior Court

**JAN - 9 2006**

By: ROSE MARIE LEY,
Deputy

NOTICE DESIGNATING RECORD ON APPEAL
(UNLIMITED CIVIL CASE)

Superior Court Case Number:
GIC 843843

RE: Appeal filed on (*date*): January 5, 2006

Court of Appeal Case Number (*If known*):

**Notice:** Please read *Information on Appeal Procedures for Unlimited Civil Cases* (Judicial Council form APP-001) before completing this form. This form must be filed in the superior court, not in the Court of Appeal.

TO: Clerk of the Superior Court of California, County of (*name of county*): SAN DIEGO

NOTICE IS HEREBY GIVEN that (*name*): FRANK E. ROGOZIENSKI

The [✓] Appellant   [ ] Respondent in the above case elects to proceed with the following record on appeal:

(*check only one*)

1. [ ] (Appendix Only; no Reporter's Transcript)
   a. elects under rule 5.1 of the California Rules of Court to prepare own transcript in lieu of a court-prepared clerk's transcript.
   AND
   b. elects to have no reporter's transcript. (*Date and sign only.*)

2. [✓] (Appendix and Reporter's Transcript)
   a. elects under rule 5.1 of the California Rules of Court to prepare own transcript in lieu of a court-prepared clerk's transcript.
   AND
   b. elects a reporter's transcript as designated on page 3. (*Fill out the reporter's transcript section on page 3.*)

3. [ ] (Clerk's Transcript Only; no Reporter's Transcript)
   a. elects under rule 5 of the California Rules of Court to proceed with a clerk's transcript as designated on page 2. (*Fill out the clerk's transcript section on page 2.*)
   AND
   b. elects to have no reporter's transcript.

4. [ ] (Clerk's and Reporter's Transcripts)
   a. elects under rule 5 of the California Rules of Court to proceed with a clerk's transcript as designated on page 2. (*Fill out the clerk's transcript section on page 2*)
   AND
   b. elects a reporter's transcript as designated on page 3. (*Fill out the reporter's transcript section on page 3.*)

Date: January 6, 2006

FRANK E. ROGOZIENSKI, INC.
(TYPE OR PRINT NAME)

▶

(SIGNATURE OF PARTY OR ATTORNEY)

**EXHIBIT 2 PAGE 638**

Page 1 of 4

Form Approved for Optional Use
Judicial Council of California
APP-003 [Rev. July 1, 2004]

NOTICE DESIGNATING RECORD ON APPEAL
(UNLIMITED CIVIL CASE)

Cal. Rules of Court, rules 4–5.2
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

681

LOVE01012

| CASE NAME: | CASE NUMBER: |
|---|---|
| ROGOZIENSKI v. ALLEN, et al. | GIC 843843 |

**NOTICE DESIGNATING CLERK'S TRANSCRIPT**
(Cal. Rules of Court, rule 5)

A. It is requested that the following documents in the superior court file be included in the clerk's transcript *(give the specific title of each document, an accurate description, and the date of filing):*

Document Title and Description                                                                      Date of Filing

(NOTE: Items 1–7 are required to be a part of the clerk's transcript and will automatically be included.)

1. Notice of appeal

2. Notice designating record on appeal *(this document)*

3. Judgment or order appealed from

4. Notice of entry of judgment *(if any)*

5. Notice of intention to move for new trial or motion to vacate the judgment, for judgment notwithstanding the verdict, or for reconsideration of an appealed order *(if any)*

6. Ruling on item 5

7. Register of actions *(if any)*

8.

9.

10.

11.

12.

13.

14.

15.

16.

17.

B. It is requested that the following EXHIBITS admitted into evidence or marked for identification be copied into clerk's transcript on appeal *(check only one box):*

☐ 1. All Exhibits

☐ 2. Specific Exhibits *(give the exhibit number [for example, Plaintiff's #1, Defendant's B, Respondent's A], a brief description, and admission status.):*

**EXHIBIT 2 PAGE 639**

☐ See additional pages.

APP-003 [Rev. July 1, 2004]          **NOTICE DESIGNATING RECORD ON APPEAL**          Page 2 of 4
                                     **(UNLIMITED CIVIL CASE)**                     **482**

L0VE01013

| CASE NAME: | CASE NUMBER: |
|---|---|
| ROGOZIENSKI v. ALLEN, et al. | GIC 843843 |

**NOTICE DESIGNATING REPORTER'S TRANSCRIPT**
(Cal. Rules of Court, rule 4)

| Reporter's Name | Dept. | Date | Nature of Proceedings |
|---|---|---|---|
| 1. PATRICIA WHITELAW | 65 | 09/02/05 | Hearing on Demurrers |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |
| 16. | | | |

**EXHIBIT 2 PAGE 640**

☐ See additional pages.

APP-003 [Rev. July 1, 2004]   **NOTICE DESIGNATING RECORD ON APPEAL**   Page 3 of 4
(UNLIMITED CIVIL CASE)   **483**

LOVE01014

| CASE NAME: | CASE NUMBER: |
|---|---|
| ROGOZIENSKI v. ALLEN, et al. | GIC 843843 |

**NOTICE TO PARTIES:** A copy of this document must be mailed or personally delivered to the other party or parties to this appeal. A PARTY TO THE APPEAL MAY NOT PERFORM THE MAILING OR DELIVERY HIMSELF OR HERSELF. A person who is at least 18 years old and is not a party to this appeal must complete the information below and mail (by first-class mail, postage prepaid) or personally deliver the front and back of this document. When the front and back of this document have been completed and a copy mailed or personally delivered, the original may then be filed with the court.

## PROOF OF SERVICE

☑ Mail    ☐ Personal Service

F I L E D
Clerk of the Superior Court

JAN - 9 2006

By: ROSE MARIE LEY,
Deputy

1. At the time of service I was at least 18 years of age and not a party to this legal action.

2. My residence or business address is *(specify):*
   Business: 1660 Union St., 3rd Floor
   San Diego, CA 92101

3. I mailed or personally delivered a copy of the *Notice Designating Record on Appeal (Unlimited Civil Case)* as follows *(complete either a or b):*

   a. ☑ Mail. I am a resident of or employed in the county where the mailing occurred.

   (1) I enclosed a copy in an envelope and

   (a) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

   (b) ☑ placed the envelope for collection and mailing on the date and at the place shown in items below, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

   (2) The envelope was addressed and mailed as follows:

   (a) Name of person served: Donald A. English, Esq.          Daniel M. White, Esq.

   (b) Address on envelope:
   English & Gloven                                White & Oliver
   550 West "C" St., No. 1800                      550 West "C" St., No. 950
   San Diego, CA 92101                             San Diego, CA 92101

   (c) Date of mailing: 1/6/06

   (d) Place of mailing *(city and state):* San Diego, CA

   b. ☐ Personal delivery. I personally delivered a copy as follows:

   (1) Name of person served:

   (2) Address where delivered:

   (3) Date delivered:

   (4) Time delivered:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: January 6, 2006

Sherryl M. Bolinger
(TYPE OR PRINT NAME)

► *[signature]*
(SIGNATURE OF DECLARANT)

**EXHIBIT 2 PAGE 641**

LOVE01016

D047858

# IN THE COURT OF APPEAL OF CALIFORNIA

## FOURTH APPELLATE DISTRICT, DIVISION ONE

| | |
|---|---|
| FRANK E. ROGOZIENSKI,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JAMES D. ALLEN and S.<br>MICHAEL LOVE,<br><br>    Defendants and Respondents. | Court of Appeal No. D047858<br>(San Diego Superior Court No.<br>GIC843843) |

From the Superior Court for San Diego County
Honorable Joan M. Lewis, Judge

---

## RESPONDENT JAMES D. ALLEN'S RESPONDENT'S BRIEF

---

Donald A. English, Esq. (Bar No. 115569)
Christy I. Yee, Esq. (Bar No. 166238)
ENGLISH & GLOVEN
A Professional Corporation
550 West C Street, Suite 1800
San Diego, CA 92101-3545
Telephone: (619) 338-6610
Facsimile: (619) 338-6657
Attorneys for Respondent
James D. Allen

**EXHIBIT 2 PAGE 642**

D047858

## IN THE COURT OF APPEAL OF CALIFORNIA

## FOURTH APPELLATE DISTRICT, DIVISION ONE

FRANK E. ROGOZIENSKI,

    Plaintiff and Appellant,

    v.

JAMES D. ALLEN and S. MICHAEL LOVE,

    Defendants and Respondents.

Court of Appeal No. D047858
(San Diego Superior Court No. GIC843843)

From the Superior Court for San Diego County
Honorable Joan M. Lewis, Judge

---

### RESPONDENT JAMES D. ALLEN'S RESPONDENT'S BRIEF

---

Donald A. English, Esq. (Bar No. 115569)
Christy I. Yee, Esq. (Bar No. 166238)
ENGLISH & GLOVEN
A Professional Corporation
550 West C Street, Suite 1800
San Diego, CA 92101-3545
Telephone: (619) 338-6610
Facsimile: (619) 338-6657
Attorneys for Respondent
James D. Allen

**EXHIBIT 2 PAGE 643**

LOVE01018

## TABLE OF CONTENTS

I.      INTRODUCTION .................................... 1

II.     STATEMENT OF THE CASE AND FACTS ................. 2

        A.    Overview .................................... 2

        B.    The Parties ................................ 3

        C.    The Underlying Marital Dissolution Action ............. 4

              1.    Decisions by Mr. Allen as Temporary Judge ....... 5

              2.    Mr. Allen's Voluntary Withdrawal as Temporary
                    Judge ................................... 6

              3.    Mr. Rogozienski's Related Petitions and Appeals ... 7

        D.    Mr. Rogozienski's Civil Action against Mr. Allen ....... 9

              1.    The Claims against Mr. Allen in the First
                    Amended Complaint ........................ 9

              2.    The Trial Court's Order Sustaining Mr. Allen's
                    Demurrer Without Leave to Amend and the
                    Judgment of Dismissal in Favor of Mr. Allen ..... 11

III.    APPLICABLE STANDARD OF REVIEW .................. 13

IV.     THE TRIAL COURT'S ORDER SUSTAINING THE
        DEMURRER WITHOUT LEAVE TO AMEND AND THE
        JUDGMENT OF DISMISSAL SHOULD BE AFFIRMED ..... 15

        A.    The Trial Court Properly Sustained the Demurrer Because
              Each of the Claims Against Mr. Allen Was Barred
              by the Absolute Judicial Immunity Doctrine .......... 15

i

**EXHIBIT 2 PAGE 644**

LOVE01019

## TABLE OF CONTENTS

1.    The Judicial Immunity Doctrine . . . . . . . . . . . . . . . 15

    a.    The Judicial Immunity Doctrine is Well
    Established and Founded Upon Important
    Public Policies . . . . . . . . . . . . . . . . . . . . . . 15

    b.    The Judicial Immunity Doctrine Applies to
    Judicial and Quasi-Judicial Officers . . . . . . . 17

    c.    The Judicial Immunity Doctrine Applies to
    All Claims Alleging Judicial Misconduct
    in the Performance of Judicial Acts,
    including Bribery and Corruption . . . . . . . . 19

2.    Mr. Allen Was a Judicial or Quasi-Judicial Officer
    Entitled to Protection from Civil Liability Under
    the Absolute Judicial Immunity Doctrine . . . . . . . . 26

3.    The Breach of Contract and Unjust Enrichment
    Claims Were Properly Dismissed Based Upon
    the Judicial Immunity Doctrine . . . . . . . . . . . . . . 33

4.    Mr. Allen's Rulings Were Not Without Jurisdiction
    and Immunity Applies . . . . . . . . . . . . . . . . . . . . . 35

B.    The Trial Court's Sustaining of the Demurrer Without
    Leave to Amend was Correct and Not an Abuse of
    Discretion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . 42

ii

**EXHIBIT 2 PAGE 645**

LOVE01020

## TABLE OF AUTHORITIES

State Cases

Baar v. Tigerman
    (1983) 140 Cal.App.3d 979 ............................. 18

Blank v. Kirwan
    (1985) 39 Cal.3d 311 ............................. 13, 14

Frost v. Geernaert
    (1988) 200 Cal.App.3d 1104 ................. 14, 22, 31, 38

Graphic Arts Mutual Insurance Co. v. Time Travel International, Inc.
    (2005) 126 Cal.App.4th 405 ............................. 13, 14

Greene v. Zank
    (1984) 158 Cal.App.3d 497 ............................. 31

Howard v. Drapkin
    (1990) 222 Cal.App.3d 843 .............. 16-18, 22-25, 31, 34

In re Brittany K.
    (2002) 96 Cal.App.4th 805 ............................. 26

Moore v. Regents of University of California
    (1990) 51 Cal.3d 120 ............................. 13, 33

Olney v. Sacramento County Bar Assn.
    (1989) 212 Cal.App.3d 807 ............................. 18

Oppenheimer v. Ashburn
    (1959) 173 Cal.App.2d 624 ............................. 16

Pearson v. Reed
    (1935) 6 Cal.App.2d 277 ............................. 18

Stasz v. Schwab
    (2004) 121 Cal.App.4th 420 ............................. 36, 37

**EXHIBIT 2 PAGE 646**

L0VE01021

## TABLE OF AUTHORITIES

Tagliavia v. County of Los Angeles
    (1980) 112 Cal.App.3d 759 ............................ 17

Taliaferro v. County of Contra Costa
    (1960) 182 Cal.App.2d 587 .......................... 13, 23

Taylor v. Mitzel
    (1978) 82 Cal.App.3d 665 ............................. 18

Turpen v. Booth
    (1880) 56 Cal. 65 ................................... 18

Vaillette v. Fireman's Fund Ins. Co.
    (1993) 18 Cal.App.4th 680 .......................... 14, 38

Walker v. Allstate Indemnity Company
    (2000) 77 Cal.App.4th 750 ............................ 12


Federal Cases

Bradley v. Fisher
    (1871) 80 U.S. 335 ........................ 1, 15, 16, 40

Coverdell v. Dept. of Social & Health Services
    (9th Cir. 1987) 834 F.2d 758 ......................... 18

Dennis v. Sparks
    (1980) 449 U.S. 24 ............................ 21, 22, 30

Moore v. Brewster
    (9th Cir. 1996) 96 F.3d 1240 ........................ 18

Mosher v. Saalfeld
    (9th Cir. 1978) 589 F.2d 438 ........................ 18

Myers v. Morris
    (8th Cir. 1987) 810 F.2d 1437 ....................... 18

iv

**EXHIBIT 2 PAGE 647**

L0VE01022

## TABLE OF AUTHORITIES

New Alaska Development Corp. v. Guetschow
  (9th Cir. 1989) 869 F.2d 1298 ............................ 18

Ricotta v. State of California
  (S.D. Cal. 1998) 4 F.Supp.2d 961 ................. 18-21, 31, 34

Stump v. Sparkman
  (1978) 435 U.S. 349 .................................... 35


Statutes

California Rules of Court, Rule 244(b) ........................ 6


Other Authority

Black's Law Dictionary (6th ed. 1990) p. 191, col. 2 ............. 32

v

**EXHIBIT 2 PAGE 648**

LOVE01023

## I.

## INTRODUCTION

Protecting judicial officers -- including temporary judges who perform vital adjudicative functions to assist the overburdened judiciary -- from vexatious actions by disgruntled litigants serves important public purposes of "the highest importance to the proper administration of justice. . . ." Bradley v. Fisher (1871) 80 U.S. 335, 347. The well established doctrine of judicial immunity is absolute and insulates judicial and quasi-judicial officers from liability for any civil claims, regardless of the severity of the alleged judicial misconduct. California courts uniformly dispose of civil claims against judicial and quasi-judicial officers, including temporary judges, at the pleadings stage to effectuate the important public policies underlying the judicial immunity doctrine.

This is an appeal from an order and judgment of dismissal in favor of respondent James D. Allen following the trial court's ruling sustaining respondent's demurrer to appellant's first amended complaint, without leave to amend, on the grounds of judicial immunity. Each of appellant's dismissed claims which were premised upon allegations that respondent committed acts of misconduct while acting in his capacity as temporary judge in appellant's dissolution action was properly dismissed under the absolute judicial immunity

1

**EXHIBIT 2 PAGE 649**

L0VE01024

doctrine. The trial court correctly applied controlling California law, as well as established principles enunciated by the United States Supreme Court and the California federal district courts. The trial court's order and judgment should be affirmed.

## II.

## STATEMENT OF THE CASE AND FACTS

A.      Overview

This matter is one in a series of related appeals and protracted litigation arising out of the marital dissolution of appellant, Frank E. Rogozienski ("Mr. Rogozienski"), which began nearly a decade ago. Respondent, James D. Allen ("Mr. Allen"), served as a temporary judge by appointment by the San Diego Superior Court and the parties' stipulation in Mr. Rogozienski's dissolution action. Dissatisfied with certain rulings made by Mr. Allen, Mr. Rogozienski (as well as his ex-wife) filed multiple appeals which have since been resolved by this Court.

In addition to appealing certain of Mr. Allen's rulings and the judgment in the dissolution action, Mr. Rogozienski also filed a civil lawsuit against Mr. Allen alleging certain misconduct while serving as temporary judge. The trial court properly sustained Mr. Allen's demurrer to the first amended complaint and found that each of the claims against Mr. Allen was barred as a matter of

2

**EXHIBIT 2 PAGE 650**

L0VE01025

law by the absolute judicial immunity doctrine. The trial court's ruling was supported by established, controlling legal authorities which bar civil claims against judicial and quasi-judicial officers, including temporary judges, for alleged misconduct while serving in their judicial capacity. The trial court's ruling and judgment in favor of Mr. Allen were correct and should be affirmed.[1]

**B.    The Parties**

Mr. Allen is an experienced and highly respected attorney specializing in the area of family law and has practiced law in San Diego for over 40 years. From time to time, Mr. Allen volunteered his services and served as pro tem judge of the San Diego Superior Court on a pro bono basis from 1982 to 1997. From time to time, Mr. Allen also served as a pro tem settlement judge in the San Diego Family Court from approximately 1994 to the present. Mr. Allen served as temporary judge in Mr. Rogozienski's dissolution action, In re

---

[1]    Mr. Rogozienski's opening brief jointly addresses the trial court's order and judgment as to both Mr. Allen and respondent S. Michael Love. Both Mr. Allen and Mr. Love filed separate demurrers on different grounds to the separate claims asserted against them in the first amended complaint. Both demurrers were sustained, without leave to amend. This brief is being submitted solely on behalf of Mr. Allen and will address only the portion of the trial court's order and judgment relating to Mr. Allen. Other than the introduction and factual and procedural background sections, the bulk of Mr. Rogozienski's opening brief addresses issues relating solely to Mr. Love. The sections exclusively addressing issues relating to Mr. Allen begin on page 63 of the opening brief.

3

**EXHIBIT 2 PAGE 651**

LOVE01026

Marriage of Rogozienski, San Diego Superior Court, Case No. D440154 ("dissolution action") by court appointment and the parties' agreement. (Appellant's Appendix ("AA"), p.15.)

Mr. Rogozienski is a former executive and attorney for Qualcomm. In addition to his position at Qualcomm, Mr. Rogozienski has been a practicing attorney for more than 30 years. In addition to being a party, Mr. Rogozienski was associated counsel of record in his dissolution action.[2] (AA, p. 192.)

Respondent S. Michael Love ("Mr. Love") was counsel for Mr. Rogozienski's ex-wife, Shirley Rogozienski ("Mrs. Rogozienski") in the dissolution action. (AA, p. 14.)

## C.   The Underlying Marital Dissolution Action

In 1998, Mr. Rogozienski's then family law counsel requested that Mr. Allen serve as the parties' temporary judge in the dissolution action. Both Mr. Rogozienski and Mrs. Rogozienski and their respective family law counsel entered into a stipulation for Mr. Allen to serve as temporary judge in the dissolution action. (AA, p. 15.) On August 4, 1998, the Presiding Judge of the San Diego Superior Court approved the parties' stipulation and signed an order

---

[2]   For reasons discussed herein, Mr. Rogozienski currently remains a party to the dissolution action, which is still pending.

4

**EXHIBIT 2 PAGE 652**

L0VE01027

appointing Mr. Allen as temporary judge in the dissolution action. (AA, pp. 15, 154, 242-243.)

### 1. Decisions by Mr. Allen as Temporary Judge

Mr. Allen served as temporary judge in the dissolution action for approximately four and a half years. The dissolution action was contentious and involved complex issues relating to the interpretation of a pre-marital agreement, division of substantial assets and liabilities, spousal support, and numerous other issues. The dissolution proceeding was decided in three separate phases. The first phase involved the parties' dispute as to the enforceability of a pre-marital agreement. On May 10, 1999, Mr. Allen issued a statement of decision upholding the validity and enforceability of the pre-marital agreement which was drafted by Mr. Rogozienski. (AA, pp. 116, 243.) Both parties appealed this decision. (AA, pp. 192, 243.)

The second phase related to Mrs. Rogozienski's contentions regarding Mr. Rogozienski's duties owed to her during the marriage regarding the management of separate and community funds used in the investment of Qualcomm stock and options. After Mr. Allen issued his intended statement of decision, the second phase was resolved pursuant to a stipulation between the parties filed with the Superior Court on December 7, 2000. Because of the parties' stipulation, there were no appeals of this phase.

5

**EXHIBIT 2 PAGE 653**

L0VE01028

The third phase resolved all remaining reserved issues. The matter was tried over a period of 14 days from October 24, 2001 to November 19, 2001. Additional evidence was received in October 2002. Mr. Allen issued a Second Amended Statement of Decision on November 12, 2002, and a Judgment of Dissolution was entered on November 25, 2002. (AA, pp. 25-26, 243.)

### 2.    Mr. Allen's Voluntary Withdrawal as Temporary Judge

Despite numerous rulings which were in his favor, including an award of approximately 78 percent of the Qualcomm stock valued in excess of $80,000,000 (which was acquired during the marriage), Mr. Rogozienski sought to challenge Mr. Allen's authority to further serve as temporary judge. On March 7, 2003 during a post trial proceeding, Mr. Rogozienski challenged Mr. Allen's jurisdiction to hear post judgment matters and, for the first time, raised California Rules of Court, Rule 244(b) as a basis to potentially remove Mr. Allen as temporary judge in the dissolution action. (AA, p. 27.)

Under Rule 244(b), a temporary judge must subscribe the oath of office and certify that the temporary judge is aware of and will comply with Canon 6 of the Code of Judicial Ethics. At the time that Mr. Allen was appointed as temporary judge in the dissolution action on August 4, 1998, the Judicial

6

EXHIBIT 2 PAGE 654

LOVE01029

Council form entitled "Order, Stipulation and Oath for Temporary Judge" did not include such a certification.[3] (AA, p. 154.)

On March 17, 2003, Mr. Rogozienski filed a statement of disqualification requesting that Mr. Allen be disqualified as temporary judge in the dissolution matter. (AA, p. 27.) On March 27, 2003, Mr. Allen voluntarily withdrew as temporary judge from the Rogozienski dissolution without conceding any of the Mr. Rogozienski's allegations. (Ibid.)

### 3.    Mr. Rogozienski's Related Petitions and Appeals

On May 23, 2003, Mr. Rogozienski filed a petition with this Court for a writ of error coram vobis for an order directing the Superior Court to hear and rule on a motion to set aside certain of Mr. Allen's rulings and orders. On October 8, 2003, this Court granted Mr. Rogozienski's petition and ordered the Superior Court to hear evidence and apply the legal standard for disqualification to determine whether certain of Mr. Allen's rulings should be

---

[3]    This was because Rule 244(b) was amended to add the certification requirement on July 1, 2001 -- approximately three years after Mr. Allen's appointment.

7

EXHIBIT 2 PAGE 655

L0VE01030

set aside and re-tried by the Superior Court.[4] <u>Rogozienski v. Superior Court</u>,

Appeal No. D042201.

On October 20, 2004, the San Diego Superior Court issued a statement

of decision on Mr. Rogozienski's motion to set aside the judgment and certain

rulings in the dissolution action. The Superior Court ruled that Mr. Allen's

rulings after grounds for disqualification arose should be set aside and re-tried.

Mr. Rogozienski appealed the Superior Court's ruling which left undisturbed

Mr. Allen's earlier rulings regarding the validity of the pre-marital agreement.

On March 16, 2006, this Court affirmed the Superior Court's rulings except

as to the pre-marital agreement. <u>Rogozienski v. Rogozienski</u>, Appeal No.

D045626. This Court held that as the trial court had set aside Mr. Allen's

other rulings and the final judgment, Mr. Rogozienski was entitled to have the

same judge in the new trial hear the evidence on all of the issues in the

dissolution action, including the issues relating to the pre-marital agreement.

<u>Ibid</u>.

---

[4]  In so doing, this Court made no findings regarding whether the standard
for disqualification had been met under the facts and made no rulings as to
whether Mr. Allen's rulings should be set aside or whether Mr. Allen should
be disqualified. This Court left to the sound discretion of the trial court the
determination of whether the rulings should be set aside

8

**EXHIBIT 2 PAGE 656**

LOVE01031

Based upon this Court's ruling on Mr. Rogozienski's appeal of the Superior Court's set aside rulings, this Court dismissed Mr. Rogozienski's and Mrs. Rogozienski's companion appeals of Mr. Allen's rulings on the validity of the pre-marital agreement on the grounds that they had been rendered moot. Rogozienski v. Rogozienski, Appeal No. D041355. As a result of the rulings and judgment being set aside, a new trial has been ordered in the dissolution action.

**D.**     **Mr. Rogozienski's Civil Action against Mr. Allen**

      **1.**     **The Claims against Mr. Allen in the First Amended Complaint**

On March 7, 2005, Mr. Rogozienski, appearing in pro per, filed (but did not serve) a complaint against Mr. Allen alleging six causes of action against him. (AA, pp. 200-222, 242.) Each of these causes of action sought damages from Mr. Allen arising out of alleged acts Mr. Allen committed while acting in his capacity as temporary judge.

On March 28, 2005, Mr. Rogozienski filed a first amended complaint against Mr. Allen adding three additional causes of action, for a total of nine claims against Mr. Allen, including intentional interference with contractual

9

**EXHIBIT 2 PAGE 657**

LOVE01032

and economic relationships, civil rights violations, fraud, breach of contract, negligence, and unjust enrichment.[5] (AA, pp. 12-47.)

Each and every claim in the first amended complaint against Mr. Allen alleged damages arising from acts allegedly committed by Mr. Allen in his capacity as temporary judge in the dissolution action. Mr. Rogozienski acknowledged the infirmities in his first amended complaint and admitted that he was "in some doubt as to whether he is entitled to redress from all the defendants or from one or more of them . . ." and requested the trial court determine whether the defendants had any liability to him. (AA, p. 14.) As discussed below, the trial court correctly determined that the first amended

_____

[5]    The first amended complaint alleged the following causes of action against Mr. Allen:

1.    The first cause of action for intentional interference with contractual relations;
2.    The third cause of action for intentional interference with prospective economic relations;
3.    The fifth cause of action for negligent interference with prospective economic advantage;
4.    The seventh cause of action for civil rights violations;
5.    The eighth cause of action for deceit and fraudulent concealment;
6.    The ninth cause of action for breach of contract;
7.    The eleventh cause of action for "willful misconduct and intentional infliction of injury";
8.    The twelfth cause of action for negligence; and
9.    The thirteenth cause of action for unjust enrichment.

(AA, pp. 12-47.)

10

**EXHIBIT 2 PAGE 658**

LOVE01033

complaint failed to state facts to constitute a cause of action against Mr. Allen based upon established law and compelling public policies under the judicial immunity doctrine.

### 2.    The Trial Court's Order Sustaining Mr. Allen's Demurrer Without Leave to Amend and the Judgment of Dismissal in Favor of Mr. Allen

On or about June 13, 2005, Mr. Allen brought a general demurrer to the first amended complaint and each of the nine causes of action alleged against him on the grounds that the allegations failed to state facts sufficient to constitute a cause of action and were barred by (1) the judicial immunity doctrine, (2) the litigation privilege, and (3) the Tort Claims Act. (AA, pp. 87-93.)[6] Each of these three separate, independent grounds for demurrer alone was sufficient for the trial court to sustain the demurrer, without leave to amend, as to each and every cause of action alleged against Mr. Allen.

Mr. Allen requested the trial court take judicial notice of certain documents and facts, including the appointment of Mr. Allen as temporary judge in the dissolution action, the findings, decisions, orders, and judgment

---

[6]    Mr. Allen also specially demurred to the seventh cause of action for civil rights violations on the grounds it was vague, unintelligible, and uncertain under Code of Civil Procedure section 430.10, subdivision (f). (AA, pp. 89-90.)

11

**EXHIBIT 2 PAGE 659**

LOVE01034

of Mr. Allen acting in the capacity of temporary judge in the dissolution action, and Mr. Rogozienski's and Mrs. Rogozienski's notices of appeal. (AA, pp. 242-244.)

After considering the parties' briefs and judicially noticeable facts contained in lodged exhibits, and oral argument of counsel at the hearing on September 2, 2005, the trial court sustained Mr. Allen's demurrer, without leave to amend.[7]  (AA, pp. 448-454.)  The trial court based its ruling specifically on the doctrine of judicial immunity, which barred each of Mr. Rogozienski's claims against Mr. Allen as a matter of law. (Ibid.) In so doing, the trial court implicitly found it unnecessary to sustain the demurrer on the other grounds asserted by Mr. Allen, including the absolute defenses based upon the litigation privilege and the Tort Claims Act.[8] Following the trial

---

[7]    The trial court also granted Mr. Allen's request for judicial notice. (AA, p. 448.)

[8]    As the trial court sustained Mr. Allen's demurrer solely on the grounds that each of the claims alleged against him in the first amended complaint were barred by the judicial immunity doctrine, each of these other independent grounds for the demurrer (e.g., the litigation privilege and the Tort Claims Act) will not be addressed herein. Mr. Allen's demurrer, supporting points and authorities, and reply points and authorities set forth these arguments and supporting authorities for these additional defenses should this Court need to review or is inclined to consider additional grounds to affirm the sustaining of the demurrer given the de novo review. (AA, pp. 87-93, 94-114, and 349-359.) The trial court's order sustaining the demurrer, without leave to amend, and the judgment of dismissal in favor of Mr. Allen should be affirmed as each of the grounds for demurrer asserted by Mr. Allen was proper and constituted an absolute defense to each of the claims against Mr. Allen. See Walker v.

12

**EXHIBIT 2 PAGE 660**

LOVE01035

court's order sustaining the demurrer, without leave to amend, a judgment of dismissal in favor of Mr. Allen was entered. (AA, pp. 470-476.)

## III.

## APPLICABLE STANDARD OF REVIEW

The standard of review for an appeal from a judgment of dismissal after a demurrer is sustained without leave to amend is de novo as to whether a cause of action has been stated as a matter of law. Graphic Arts Mutual Insurance Co. v. Time Travel International, Inc. (2005) 126 Cal.App.4th 405, 410. Appellate courts assume the truth of all facts properly pled in the complaint, but will not assume the truth of contentions, deductions, or conclusions of law or fact. Blank v. Kirwan (1985) 39 Cal.3d 311, 318; Moore v. Regents of University of California (1990) 51 Cal.3d 120, 125. In addition, "[w]here an allegation [in the complaint] is contrary to law or to a fact of which a court may take judicial notice, it is to be treated as a nullity. [Citation omitted.]" Taliaferro v. County of Contra Costa (1960) 182 Cal.App.2d 587, 592.

---

Allstate Indemnity Company (2000) 77 Cal.App.4th 750, 754 ["The judgment must be affirmed if 'any one of the several grounds of demurrer is well taken. [Citation omitted].'"].

13

**EXHIBIT 2 PAGE 661**

LOVE01036

The applicable standard of review for reviewing a trial court's denial of leave to amend is abuse of discretion. Graphic Arts Mutual Insurance Co., supra, 126 Cal.App.4th at p. 410. If there is no reasonable possibility that the defect may be cured by amendment, the trial court has not abused its discretion, and the appellate court should affirm. Blank, supra, 39 Cal.3d at 318. "[L]eave to amend should not be granted where... amendment would be futile." Vaillette v. Fireman's Fund Ins. Co. (1993) 18 Cal.App.4th 680, 685 [emphasis in original]. "The burden of proving such reasonable possibility is squarely on the plaintiff." Blank, supra, 39 Cal.3d at 318. A demurrer is properly sustained without leave to amend "where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but, under the substantive law, no liability exists. Obviously no amendment would change the result. [Citation omitted]." Frost v. Geernaert (1988) 200 Cal.App.3d 1104, 1107.

As discussed below, the trial court's ruling sustaining the demurrer, without leave to amend, was well founded upon the established judicial immunity doctrine, as set forth in controlling California and Supreme Court authorities. The trial court's order and judgment were correct and should be affirmed.

14

EXHIBIT 2 PAGE 662

L0VE01037

**IV.**

**THE TRIAL COURT'S ORDER SUSTAINING THE DEMURRER**

**WITHOUT LEAVE TO AMEND AND THE JUDGMENT OF**

**DISMISSAL SHOULD BE AFFIRMED**

A. **The Trial Court Properly Sustained the Demurrer Because Each**

**of the Claims Against Mr. Allen Was Barred by the Absolute**

**Judicial Immunity Doctrine**

 1. **The Judicial Immunity Doctrine**

  a. **The Judicial Immunity Doctrine is Well Established**

   **and Founded Upon Important Public Policies**

The doctrine of judicial immunity is deeply rooted in the common law

and has been a centuries old settled doctrine derived from the English courts.

Bradley v. Fisher (1871) 80 U.S. 335, 347. In Bradley v. Fisher, the infamous

case involving the appeal of the defense attorney in the murder trial of

President Abraham Lincoln who brought a civil action for damages against the

presiding judge in the case for allegedly acting "falsely, fraudulently,

corruptly, and maliciously," the United States Supreme Court explained that

the doctrine of judicial immunity is based upon principles of paramount

importance to our system of justice:

> [T]he [judge] cannot be subjected to
> responsibility for [alleged acts of misconduct] in

15

**EXHIBIT 2 PAGE 663**

LOVE01038

> a civil action, however erroneous the act may
> have been, and however injurious in its
> consequences it may have proved to the plaintiff.
> For it is a general principle of the highest
> importance to the proper administration of justice
> that a judicial officer, in exercising the authority
> vested in him, shall be free to act upon his own
> convictions, without apprehension of personal
> consequences to himself. Liability to answer to
> every one who might feel himself aggrieved by
> the action of the judge, would be inconsistent with
> the possession of this freedom, and would destroy
> that independence without which no judiciary can
> be either respectable or useful. (Emphasis added.)

Id. at pp. 347-348.

California courts uniformly recognize the doctrine of judicial immunity

is "longstanding and absolute [and] bars civil actions against judges for acts

performed in the exercise of their judicial functions. . . . [I]t applies to all

judicial determinations, including those rendered in excess of the judge's

jurisdiction, no matter how erroneous or even malicious or corrupt they may

be. [Citations omitted.]" Howard v. Drapkin (1990) 222 Cal.App.3d 843,

851; see also Oppenheimer v. Ashburn (1959) 173 Cal.App.2d 624, 630

["[C]ivil immunity of the judiciary in the performance of judicial functions is

deeply rooted in California law."].

**EXHIBIT 2 PAGE 664**

LOVE01039

Consistent with the public policies enunciated by the United States Supreme Court, California courts similarly apply the judicial immunity doctrine to effectuate the important public policies integral to the administration of justice:

> The rationale behind the doctrine is twofold. First, it 'protect[s] the finality of judgments [and] discourag[es] inappropriate collateral attacks. [Citation omitted.] Second, it protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants. [Citation omitted.] With respect to the latter reason, the immunity is necessary in order to have an independent and impartial judiciary. The public is best served when its judicial officers are free from fear of consequences for acts performed in their judicial capacity. [Citation omitted.]

Howard, supra, 222 Cal.App.3d at p. 852.

    **b.**    **The Judicial Immunity Doctrine Applies to Judicial and Quasi-Judicial Officers**

Judicial immunity is broadly applied and precludes all civil actions against judicial officers or persons other than judges acting in a judicial or quasi-judicial capacity. Howard, supra, 222 Cal.App.3d at pp. 852-853. As the appellate court in Howard v. Drapkin summarized, California courts have extended absolute judicial immunity to protect quasi-judicial officers from civil suits for their acts performed in their official capacity, including court commissioners acting as temporary judges (Tagliavia v. County of Los

17

**EXHIBIT 2 PAGE 665**

LOVE01040

Angeles (1980) 112 Cal.App.3d 759, 763); grand jurors (Turpen v. Booth (1880) 56 Cal. 65, 69); administrative law hearing officers (Taylor v. Mitzel (1978) 82 Cal.App.3d 665, 670-671); arbitrators (Baar v. Tigerman (1983) 140 Cal.App.3d 979, 985); organizations sponsoring an arbitrator (Olney v. Sacramento County Bar Assn. (1989) 212 Cal.App.3d 807, 814-815); and prosecutors (Pearson v. Reed (1935) 6 Cal.App.2d 277, 286-288).[9] Howard, supra, 222 Cal.App.3d at pp. 852-853.

Federal courts have similarly extended absolute judicial immunity to judicial and quasi-judicial officers, including pro tem judges and persons assisting judicial officers.[10] See e.g., Ricotta v. State of California (S.D. Cal. 1998) 4 F.Supp.2d 961, 973 [judicial immunity applied to sitting Superior Court judges and pro tem judges]; Moore v. Brewster (9th Cir. 1996) 96 F.3d

---

[9]    The Howard court also noted that federal courts have extended quasi-judicial immunity to court-appointed persons such as a court appointed conservator (Mosher v. Saalfeld (9th Cir. 1978) 589 F.2d 438, 422), a court appointed receiver (New Alaska Development Corp. v. Guetschow (9th Cir. 1989) 869 F.2d 1298, 1302-1303), a child protective services worker acting pursuant to a court order (Coverdell v. Dept. of Social & Health Services (9th Cir. 1987) 834 F.2d 758, 754-765, and guardian ad litem, psychologists and attorneys for children in child abuse cases (Myers v. Morris (8th Cir. 1987) 810 F.2d 1437, 1465-1468.).

[10]    California courts rely on federal court decisions as persuasive authority in applying the absolute judicial immunity doctrine in civil suits. Howard, supra, 222 Cal.App.3d at pp. 855- 857.

EXHIBIT 2 PAGE 666

LOVE01041

1240, 1244-1245 [claims against Federal District Court Judge Brewster, the law clerk, and court clerk dismissed under judicial immunity doctrine].

      c.    **The Judicial Immunity Doctrine Applies to All Claims Alleging Judicial Misconduct in the Performance of Judicial Acts, including Bribery and Corruption**

California and federal courts have consistently applied the judicial immunity doctrine to protect judicial and quasi-judicial officers from liability for myriad claims alleging serious misconduct in the performance of judicial acts, including intentional, malicious torts such as intentional infliction of emotional distress, violation of civil rights, bribery, and corruption.

For example, in <u>Ricotta v. State of California</u> (S.D. Cal. 1998) 4 F.Supp.2d 961, the plaintiff sued numerous state court judges (San Diego Superior Court Judge William Howatt Jr., Judge Thomas R. Murphy, Judge Marguerite L. Wagner, Judge Gerald L. Barry, Jr., Judge Ruston Maino), judge pro tems (Judge Pro Tem Paul E. Gavin and Judge Pro Tem Gordon Meyer) and others for violations of civil rights, RICO, conspiracy, and claims for equitable, injunctive, declaratory relief and restitution.

19

**EXHIBIT 2 PAGE 667**

LOVE01042

Each of the claims were based upon, among other things, allegations that the judges and judge pro tems had accepted bribes, made rulings against the plaintiff in his underlying marital dissolution proceedings as a result of undue influence, deprived the plaintiff of a fair trial, and had violated their duties under the Judicial Canons and other laws. Id. at pp. 970-971. The plaintiff sought damages for the amount of the judgments entered against him in the underlying dissolution proceedings, damages for alleged loss of business reputation and ability to earn a livelihood, attorneys' fees incurred in the "corrupt trials," punitive damages, and other damages and relief. Id. at p. 971.

The district court recognized that "the general rules of judicial immunity also apply to Pro Tem Judges" and rejected the plaintiff's claim that Pro Tem Judge Meyer was biased and refused to recuse himself despite his relationship with the plaintiff's wife's attorney. Id. at p. 973. The amended complaint was dismissed as against both Pro Tem Judges Meyer and Gavin based upon judicial immunity. Ibid.

In granting each of the defendant judges' motion to dismiss the claims alleged against them, with prejudice, the district court stated:

> [A]llegations that a conspiracy produced a certain decision should no more pierce the actors' immunity than allegations of bad faith, personal interest or outright malevolence. [Citations omitted.] The public policy that underlies judicial immunity is the furtherance of independent and

20

**EXHIBIT 2 PAGE 668**

LOVE01043

disinterested judicial decision making. [Citation omitted.] To effectuate this policy the Ninth Circuit broadly construes the scope of judicial immunity which applies even if there are allegations that a judicial decision resulted from a bribe or a conspiracy. [Citation omitted.] (Emphasis added.)

Id. at p. 972.

The district court's decision in Ricotta is consistent with the holding and principles enunciated by the United States Supreme Court in Dennis v. Sparks (1980) 449 U.S. 24. In Dennis, the Supreme Court upheld a dismissal of an action for damages against a judge, in which the plaintiff alleged the judge had engaged in a"corrupt conspiracy involving bribery" with certain parties in an underlying proceeding. Id. at p. 24. The Supreme Court held that the judge was properly dismissed as he was immune from liability under the judicial immunity doctrine.[11] Id. at p. 27. The judicial immunity doctrine was held to apply even though the judge was alleged to have accepted a bribe from the parties to issue an injunction, which was later dissolved by an appellate court. Id. at p. 24. In affirming the judgment of dismissal, the Supreme Court

---

[11]     Mr. Rogozienski relies upon Dennis v. Sparks in his opening brief (p. 46-49) and essentially concedes that the trial court properly dismissed claims against Mr. Allen which, as in Dennis, were based upon an alleged conspiracy and bribery.

21

**EXHIBIT 2 PAGE 669**

LOVE01044

reiterated the principles underlying the judicial immunity doctrine even in

cases which allege the judge committed malicious and corrupt acts:

> Judicial immunity arose because it was in the
> pubic interest to have judges who were at liberty
> to exercise their independent judgment about the
> merits of a case without fear of being mulcted for
> damages should an unsatisfied litigant be able to
> convince another tribunal that the judge acted not
> only mistakenly but with malice and corruption.
> [Citations omitted.]

Id. at p. 31.

California courts consistently recognize that "the protection [under

judicial immunity] must be absolute, even to the malicious or corrupt judge.

The effect of judicial immunity is that the action against the judicial officer

must be dismissed. [Citation omitted.]" (Emphasis added.) Howard, supra,

222 Cal.App.3d at p. 852.

    d.    **Claims Precluded by the Judicial Immunity Doctrine**

        **are Properly Dismissed on Demurrer**

Claims against judicial or quasi-judicial officers are properly dismissed

at the pleading stage on demurrer based upon the absolute judicial immunity

doctrine.  See e.g., Howard, supra, 222 Cal.App.3d at p. 848 [demurrer

sustained without leave to amend under judicial immunity doctrine for claims

against court approved psychologist for negligence, fraud, intentional and

negligent infliction of emotional distress]; Frost v. Geernaert (1988) 200

22

**EXHIBIT 2 PAGE 670**

LOVE01045

Cal.App.3d 1104, 1107 [demurrer sustained without leave to amend under judicial immunity doctrine for claims against Superior Court judges for fraud, corruption, conspiracy, and infliction of emotional distress]; <u>Taliaferro v. County of Contra Costa</u> (1960) 182 Cal.App.2d 587, 592-594 [claims for damages against justice of the peace dismissed on demurrer without leave to amend under absolute judicial immunity even though justice of peace had no jurisdiction to issue warrant against plaintiff].

To effectuate the important public policies underlying the judicial immunity doctrine, claims against judicial or quasi-judicial officers must be dismissed at the earliest stage in the proceedings:

> Such doctrines are not mere defenses to liability. [Citations omitted.]  <u>If such protection is to be meaningful it must be effective to prevent suits such as this one from going beyond demurrer. Avoiding the expense and burden of having to defend an action such as this one is precisely the goal which the principles of absolute immunity and privilege were intended to achieve</u>. In order to best protect the ability of neutral third parties to aggressively mediate or resolve disputes, a dismissal at the very earliest stage of the proceedings is critical to the proper functioning and continued availability of these services. (Emphasis added.)

<u>Howard</u>, <u>supra</u>, 222 Cal.App.3d at p. 864.

23

**EXHIBIT 2 PAGE 671**

LOVE01046

The public policies underlying judicial immunity for judicial officers apply equally to quasi-judicial officers, such as persons who perform decision-making functions normally done by judges. Id. at pp. 853-854. As the Howard court noted, barring civil actions against those who assist the judiciary in performing fact-finding, decision-making, or dispute resolution services is necessary to promote these individuals to provide these valuable services:

> [W]e believe it appropriate that these 'nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process ' [citation omitted] should be given absolute quasi-judicial immunity for damage claims arising from their performance of duties in connection with the judicial process. Without such immunity, such persons will be reluctant to accept court appointments or provide work product for the courts' use. Additionally, the threat of civil liability may affect the manner in which they perform their jobs. [Citation omitted.] (Emphasis added.)

Id. at p. 857.

In Howard v. Drapkin, the appellate court affirmed the trial court's order sustaining the defendant court-approved psychologist's demurrer without leave to amend on the grounds of judicial immunity. The plaintiff, a party in an underlying family law action, entered into a stipulation with her former husband for the defendant to perform a psychological evaluation and issue non-binding findings and recommendations to the Superior Court. The terms

24

**EXHIBIT 2 PAGE 672**

LOVE01047

of the stipulation required the parties to pay the defendant directly for her services in advance. The stipulation was approved by the Superior Court and converted into an order. Id. at pp. 848-849.

The plaintiff later brought a civil suit against the defendant psychologist alleging claims for negligence, emotional distress, and fraud based upon, among other things, the defendant's alleged failure to disclose certain conflicts of interest involving the defendant's prior professional relationship with the plaintiff's former husband and her personal relationship with the spouse of one of the partners in the law firm representing the former husband. Id. at pp. 848-850. The plaintiff claimed that defendant was not entitled to judicial immunity because she was not a quasi-judicial officer and had been hired and paid by the parties by private agreement. Id. at p. 850.

Despite the plaintiff's allegations of misconduct and wrongdoing, the appellate court agreed with the trial court that the plaintiff's claim should be dismissed on demurrer as the defendant was entitled to protection from liability under the quasi-judicial immunity doctrine.[12] Id. at p. 860.

---

[12] The appellate court in Howard also sustained the demurrer based upon the litigation privilege, which Mr. Allen asserted as an alternative ground in support of his demurrer. The appellate court ruled that the litigation privilege barred liability for any of defendant's statements and "alleged nondisclosures," including the failure to disclose the defendant's relationship with the plaintiff's former husband which the plaintiff claimed constituted a conflict of interest. Howard, supra, 222 Cal.App.3d at pp. 849-850.

25

EXHIBIT 2 PAGE 673

LOVE01048

California and federal decisions consistently uphold the absolute judicial or quasi-judicial immunity doctrine to protect those who perform valuable judicial functions from liability for all civil claims as a matter of law on demurrer or challenges to the pleadings, in which allegations of serious misconduct and resulting damage to the plaintiff must be presumed true.

2.    <u>Mr. Allen Was a Judicial or Quasi-Judicial Officer Entitled to Protection from Civil Liability Under the Absolute Judicial Immunity Doctrine</u>

There is no dispute that Mr. Allen was the temporary judge in the dissolution action by court appointment and by the parties' stipulation. (AA, pp. 15, 154, 242-243.) In the order appointing Mr. Allen as temporary judge, the Superior Court conferred upon Mr. Allen the authority to perform "duties of the Judge of the Superior Court . . ." (AA, pp. 154.) A duly appointed temporary judge "has full judicial powers. . . ." <u>In re Brittany K.</u> (2002) 96 Cal.App.4th 805, 812.

Throughout the first amended complaint, Mr. Rogozienski admitted that Mr. Allen was acting in his capacity as a temporary judge in the dissolution action at the time of the events giving rise to Mr. Rogozienski's claims:

26

**EXHIBIT 2 PAGE 674**

L0VE01049

In or about June 1998, Plaintiff and Petitioner
entered into a written agreement in which they
agreed (a) to an entry of the order that ALLEN
could act as temporary judge in the Underlying
Proceeding.... (AA, p. 15.)

ALLEN served as temporary judge from the time
of his appointment by the Presiding Judge of the
Superior Court on August 4, 1998 until his
withdrawal on March 27, 2003 in response to
Plaintiff's challenge of him for cause. (AA, p.
15.)

In or about the Summer of 2001, but no later than
November or early December of 2001, ALLEN
and LOVE entered into a conspiracy. . . to benefit
themselves and others with whom they were
associated designed to injure, harm and cause
damage to Plaintiff...[A] purpose of the
CONSPIRACY was for LOVE to make a gift to
ALLEN of LOVE's interest in Warner Springs
Ranch in violation of ALLEN's and LOVE's
ethical and other obligations, and to conceal the
fact of such gift. (AA, pp. 17-18.)

The first amended complaint further alleged that the purported
misconduct (Mr. Allen's alleged receipt of, and failure to disclose, a "gift"
from Mr. Love) while Mr. Allen was serving as temporary judge influenced
his rulings and purportedly deprived Mr. Rogozienski of monies and rights,
including the right to a fair trial:

In a telephone status conference in the Underlying
Proceeding on April 30, 2002, ALLEN, acting in
his role as then temporary judge in the Underlying
Proceeding, stated, '...insofar as fees [including
for LOVE] are concerned, that's one of the other

27

**EXHIBIT 2 PAGE 675**

LOVE01050

issues that I'm still struggling with....' <u>Although both knew, neither LOVE nor ALLEN made any disclosure of the gift</u> of the LOVES' Unit 850A half-interest in Warner Springs Ranch which had been made to ALLEN in March of 2002.... (Emphasis added.) (AA, p. 25.)

On October 11, 2002, <u>ALLEN, acting in his role as then temporary judge</u> in the Underlying Proceeding, reopened trial in the Underlying Proceeding to receive evidence on certain issues he had reserved from the trial in October - November 2000. The trial on these issues was completed on that date.. <u>At this hearing, ALLEN stated he would order [Mr. Rogozienski] to pay $250,000 of [Mrs. Rogozienski's] attorneys' fees and costs, including fees for LOVE."</u> <u>Although both knew, neither LOVE nor ALLEN made any disclosure of the gift</u> of the LOVES' Unit 850A half-interest in Warner Springs Ranch which had been made to ALLEN in March of 2002.... (Emphasis added.) (AA, pp. 25-26.)

On October 23, 2002, <u>ALLEN, acting in his role as then temporary judge</u> in the Underlying Proceeding, issued his Amended Statement of Decision. On November 12, 2002, <u>ALLEN, acting in his role as then temporary judge</u> in the Underlying Proceeding, signed and issued his Second Amended Statement of Decision and the final Judgment. <u>Although both knew, neither LOVE nor ALLEN made any disclosure of the gift</u> of the LOVES' Unit 850A half-interest in Warner Springs Ranch which had been made to ALLEN in March of 2002.... (Emphasis added.) (AA, p. 26.)

28

**EXHIBIT 2 PAGE 676**

L0VE01051

> On December 17, 2002, LOVE met privately with
> ALLEN, without notice, and obtained ALLEN's
> signature on certain orders which permitted the
> immediate issuance, over the counter, of a writ of
> execution on Plaintiff's separate and share of the
> community property within which permitted the
> levy on assets held in Plaintiff's Family Trust.
> (Emphasis added.) (AA, p. 26-27.)[13]

The first amended complaint further alleged that the purported

acceptance of, and failure to disclose, the "gift" constituted bribery,

corruption, and a denial of a right to a fair trial:

> On information and belief, the gift of the LOVES'
> unit 850 one-half interest in Warner Springs
> Ranch constituted bribery and corruption....
> (Emphasis added.) (AA, p. 44.)

> As more fully alleged in the FACTUAL
> BACKGROUND, Defendants interfered...with
> the exercise or enjoyment by Plaintiff of
> Plaintiff's right to a fair trial... where doubts are
> not raised concerning the trial judge's
> impartiality. (Emphasis added.) (AA, p. 38.)

Even assuming the truth of these allegations (which Mr. Allen expressly

denies), the allegations failed to state a cause of action against Mr. Allen as a

matter of law. The factual allegations incorporated in each of the nine claims

asserted against Mr. Allen demonstrated on their face that the alleged wrongful

---

[13]   Mr. Allen disputes Mr. Rogozienski's allegations of undue influence
and improper rulings. This is consistent with Retired Superior Court Judge
Anthony Joseph's findings submitted to the court in the dissolution action.
(AA, pp. 224-241.)

**EXHIBIT 2 PAGE 677**

LOVE01052

acts -- the alleged acceptance of a bribe, corruption, failure to disclose alleged

conflicts of interest, influenced and biased rulings, and a conspiracy to deprive

Mr. Rogozienski of due process and civil rights -- were all judicial acts

absolutely protected by the judicial immunity doctrine.[14]   See e.g., Dennis,

---

[14]    The factual allegations of Mr. Allen's purported acceptance of the "gift," the failure to disclose the "gift," and the resulting biased and influenced rulings were all incorporated in the nine causes of action against Mr. Allen:

The first cause of action for intentional interference with contractual relations, the third cause of action for intentional interference with prospective economic relations, and the fifth cause of action for negligent interference with economic advantage alleged that Mr. Allen's improper rulings and the acts of misconduct in his capacity as temporary judge wrongfully interfered with Mr. Rogozienski's purported contractual or economic relationships with his former wife, his employer, and his family law counsel. (AA, p. 30.)

The seventh cause of action for civil rights violations alleged that Mr. Allen's improper acts of accepting the "gift" and his biased rulings while acting in his capacity as temporary judge deprived Mr. Rogozienski of his right to a fair trial and raised doubts about Mr. Allen's impartiality in the proceedings. (AA, p. 38.)

The eighth cause of action for deceit/fraudulent concealment alleged that while acting in his capacity as temporary judge, Mr. Allen failed to disclose the alleged "gift" from Mr. Love. (AA, pp. 38-40.)

The ninth cause of action for breach of contract alleged that, in his capacity as temporary judge, Mr. Allen breached his contract with Mr. Rogozienski to serve as temporary judge by accepting the alleged "gift" and making improper rulings while continuing to accept payment for services from Mr. Rogozienski. (AA, pp. 40-41.)

The eleventh cause of action entitled, "Willful Misconduct and Intentional Infliction of Injury" and the twelfth cause of action for negligence alleged that, while acting in his capacity as temporary judge, Mr. Allen's

30

**EXHIBIT 2 PAGE 678**

L0VE01053

supra, 449 U.S. at p. 24 [immunity for alleged violation of civil rights arising

out of alleged bribery and corruption]; Howard, supra, 222 Cal.App.3d at p.

848 [immunity for claims based upon alleged failure to disclose conflicts of

interest]; Frost, supra, 200 Cal.App.3d at p. 1107 [immunity for claims of

fraud, corruption, conspiracy, and infliction of emotional distress]; Ricotta,

supra, 4 F.Supp.2d at p. 970 [immunity for alleged violations of civil rights,

RICO, conspiracy, and claims for equitable, injunctive, declaratory relief and

restitution].[15]

---

alleged acceptance of the "gift" and his alleged failure to disclose the "gift"
constituted violations of ethical rules. (AA, pp. 42-46.)

The thirteenth cause of action for unjust enrichment alleged that
Mr. Allen was unjustly enriched by accepting the "gift," failing to disclose the
"gift," and making improper rulings which required Mr. Rogozienski to pay
monies to Mrs. Rogozienski in the dissolution action. (AA, p. 46.)

[15]    As discussed herein, Mr. Rogozienski relies upon case law which
supports the trial court's ruling sustaining the demurrer. In addition to citing
Dennis v. Sparks, which upheld judicial immunity in a case alleging bribery
and a conspiracy, Mr. Rogozienski cites Greene v. Zank (1984) 158
Cal.App.3d 497, a case involving an action by an applicant for admission to
the State Bar against the State Bar, the Committee of Bar Examiners, and their
officials. As did the Supreme Court in Dennis v. Sparks, the appellate court
in Greene upheld the trial court's order sustaining the defendants' demurrer,
without leave to amend, and dismissal of the entire action based upon the
quasi-judicial immunity doctrine. Greene, supra, 158 Cal.App.3d at pp. 512-
513. Mr. Rogozienski has cited no authority contrary to controlling case law
cited and discussed in Mr. Allen's demurrer and in this brief.

31

**EXHIBIT 2 PAGE 679**

LOVE01054

While Mr. Rogozienski contends that acceptance of a bribe which was alleged to have influenced Mr. Allen's rulings is not a judicial act, it is this very act that is causally related to Mr. Rogozienski's alleged damages.[16] Stated differently, it is the rulings -- judicial acts -- which Mr. Rogozienski claimed were influenced as a result of the alleged bribe that caused him alleged damages, including payment of monies to Mrs. Rogozienski as ordered by Mr. Allen, the cost of re-trying the dissolution action because of Mr. Rogozienski's challenge of Mr. Allen's rulings, and the fees paid to Mr. Rogozienski's counsel and to Mr. Allen in the dissolution action. These judicial acts are absolutely protected under the judicial immunity doctrine.

Established, controlling authorities applied to the alleged facts in the first amended complaint required a dismissal of all claims against Mr. Allen under the judicial immunity doctrine. The alleged facts could give rise to no liability as the very acts alleged to have been committed are those held to be absolutely protected under the judicial immunity doctrine. This Court should, as did the trial court, disregard the conclusory and unsupportable allegation that the judicial immunity doctrine is inapplicable as it is contrary to

---

[16]    "Bribery" is defined in Black's Law Dictionary as "the offering, giving, receiving, or soliciting of something of value for the purpose of influencing the action of an official in the discharge of his or her public or legal duties." Black's Law Dictionary (6th ed. 1990) p. 191, col. 2.

**EXHIBIT 2 PAGE 680**

L0VE01055

established law and the alleged facts and judicial admissions in the first amended complaint.[17]

The trial court correctly applied controlling law and the underlying public policies supporting the dismissal of claims against judicial officers and quasi-judicial officers at the pleading stage based upon the absolute judicial immunity doctrine. Even assuming the truth of the allegations, no cause of action could be stated against Mr. Allen as a matter of law.[18] The demurrer was properly sustained, without leave to amend, and the judgment of dismissal was correct.

3. The Breach of Contract and Unjust Enrichment Claims Were Properly Dismissed Based Upon the Judicial Immunity Doctrine

Mr. Rogozienski contends that Mr. Allen was not entitled to judicial immunity on the ninth cause of action for the breach of contract claim because Mr. Allen was paid for his services as temporary judge by the parties under a private agreement, and Mr. Allen's alleged acceptance of the "gift" constituted

---

[17] In reviewing demurrer rulings, like trial courts, appellate courts may properly disregard allegations that are contrary to law and which constitute contentions or conclusions of law. Moore v. Regents of the University of California (1990) 51 Cal.3d 120, 125.

[18] Although the truth of allegations are assumed on demurrer, Mr. Allen unequivocally denies the truth of Mr. Rogozienski's allegations of wrongdoing or misconduct.

33

EXHIBIT 2 PAGE 681

L0VE01056

a breach of contract.[19] Mr. Rogozienski likewise contends that the thirteenth cause of action for unjust enrichment is outside the scope of the judicial immunity doctrine.[20] Mr. Rogozienski's arguments ignore the broad scope of the judicial immunity doctrine, which bars all claims -- regardless of the legal theory or claim -- for any alleged act or misconduct performed in a judicial capacity.

In Ricotta, supra, the district court rejected similar claims for restitution, including for the amount of the judgment plaintiff paid in the underlying dissolution action, attorneys' fees, and litigation expenses incurred in the "corrupt trials." Ricotta, supra, 4 F.Supp.2d at p. 971. Similarly, the appellate court in Howard, supra, rejected the plaintiff's argument that the judicial immunity doctrine should not apply simply because the defendant was retained and paid by the parties under an agreement as a "private evaluator" which was subsequently converted into a court order. Howard, supra, 222 Cal.App.3d at pp. 848-851.

---

[19]    Mr. Rogozienski concedes that there is no reported decision that supports his position, but argues that public policy should not extend judicial immunity to bar liability in this case. Mr. Rogozienski's argument is contrary to established public policies which support the application of the judicial immunity doctrine in actions such as the instant case.

[20]    Mr. Rogozienski similarly concedes there are no authorities on point that support his contention that the unjust enrichment claim is outside the scope of judicial immunity.

34

EXHIBIT 2 PAGE 682

LOVE01057

The facts alleged in the first amended complaint cannot support any claim, including claims for breach of contract and unjust enrichment. Mr. Rogozienski admitted that Mr. Allen performed services as a temporary judge by issuing rulings in the dissolution action. (AA, pp. 4, 25-27.) The fact that Mr. Rogozienski alleged that the rulings were tainted by the alleged "bribe" does not alter the nature of the rulings as judicial acts. Mr. Allen's alleged acts are absolutely protected by the judicial immunity doctrine, regardless of the legal theory of recovery.

The trial court's sustaining of the demurrer as to the breach of contract and unjust enrichment claims was correct and should be affirmed.

### 4. Mr. Allen's Rulings Were Not Without Jurisdiction and Immunity Applies

A judge's actions, even in excess of jurisdiction, are absolutely immune. Stump v. Sparkman (1978) 435 U.S. 349, 356-357 ["A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was done in excess of his authority...."]

35

**EXHIBIT 2 PAGE 683**

LOVE01058

California courts have held that a litigant's sole remedy for complaints that a judicial officer was acting in excess of, or in the absence of, jurisdiction because of alleged bias, corruption, or misconduct lies in challenging the order or act, not in a civil lawsuit against the judicial or quasi-judicial officer. See e.g., <u>Stasz v. Schwab</u> (2004) 121 Cal.App.4th 420, 440. In <u>Stasz</u>, the Court of Appeal upheld the trial court's order sustaining a demurrer without leave to amend in an action brought against the American Arbitration Association ("AAA") based upon the plaintiff's allegation that the arbitration was conducted in "clear absence of jurisdiction" and that AAA was not immune from liability. In affirming the trial court's order dismissing the entire action against AAA, the Court of Appeal stated:

> <u>We hold that bias in the arbitration process should be remedied by challenging the arbitration award, not by seeking to impose liability on the arbitrator or the sponsoring organization</u>...
>
> 'Upon application of a party, the court shall vacate an award where...there was evident partiality by an arbitrator appointed as a neutral for corruption in any of the arbitrators or misconduct prejudicing the rights of any party... <u>we believe that the proper remedy lies therein rather than in a civil suit against the arbitrator.</u> [Citation omitted.]' (Emphasis added.)

<u>Id</u>. at p. 441-442.

36

**EXHIBIT 2 PAGE 684**

L0VE01059

The Court of Appeal expressly rejected the plaintiff's contention that the arbitration proceedings should have been automatically stayed pending the outcome of her appeal and was thus conducted in clear absence of jurisdiction stripping AAA of immunity. Id. In so doing, the Court of Appeal stated that the plaintiff's remedy for an alleged violation of the automatic stay statute was to "seek a stay of the arbitration proceedings and, possibly, to petition the trial court to vacate the award on that ground, not to seek to impose liability on the AAA." Id. at p. 443, emphasis added.

In the instant case, Mr. Allen made rulings as temporary judge which were set aside upon Mr. Rogozienski's application to this Court and the Superior Court in the dissolution action. The setting aside of the rulings did not strip Mr. Allen of immunity for his rulings and judicial acts.

Simply stated, the remedy for claims of biased rulings or judicial misconduct is a proceeding to set aside the rulings, not a civil suit against the judicial officer. Mr. Rogozienski exercised his rights as a private litigant and obtained an order setting aside certain of Mr. Allen's rulings. (AA, p. 28; Rogozienski v. Superior Court, Appeal No. D042201.)  Mr. Rogozienski successfully appealed to this Court and obtained an opportunity for a full re-trial of the dissolution action. Rogozienski v. Superior Court, Appeal Nos. D045626, D041355. Mr. Rogozienski's petitions and appeals regarding Mr.

37

EXHIBIT 2 PAGE 685

LOVE01060

Allen's rulings were proceedings permitted by law and allowed Mr. Rogozienski to obtained appropriate remedies based upon his allegations of conduct which disqualified Mr. Allen. In contrast, Mr. Rogozienski's civil lawsuit against Mr. Allen was improper and not permitted by law.[21] The trial court's order sustaining the demurrer and judgment of dismissal were correct and should be affirmed.

**B.    The Trial Court's Sustaining of the Demurrer Without Leave to Amend was Correct and Not an Abuse of Discretion**

Courts may properly deny leave to amend where there is no reasonable possibility that the defect may be cured by amendment, and "the nature of the plaintiff's claim is clear, but, under the substantive law, no liability exists… [citation omitted]." Frost, supra, 200 Cal.App.3d at p. 1107; Vaillette, supra, 18 Cal.App.4th at p. 685 ["[L]eave to amend should not be granted where… amendment would be futile." (Emphasis in original.)].

---

[21]    Each of Mr. Rogozienski's motions and petitions in the dissolution action, including Mr. Rogozienski's motion to set aside Mr. Allen's rulings and petition for error coram vobis, was based upon allegations identical to those in the first amended complaint -- that Mr. Allen improperly accepted a "gift" from Mr. Love and made biased rulings as temporary judge.

38

**EXHIBIT 2 PAGE 686**

LOVE01061

Under the facts alleged, there was no liability and it would have been futile to permit amendment. The facts supporting the claims alleged in the 137 paragraph pleading were based upon judicial acts that were absolutely protected. No cause of action could be stated against Mr. Allen under the substantive law.

The trial court did not abuse its discretion in determining there was no possibility of stating any cause of action given that the crux of Mr. Rogozienski's suit was an allegation that was immune from liability -- a judicial officer's alleged acceptance of a bribe which influenced his rulings.[22] Mr. Rogozienski, an experienced attorney, had already amended his complaint once before service to add three additional causes of action, for a total of nine claims against Mr. Allen. As the law protects temporary judges from all civil suits, regardless of the severity of the alleged judicial misconduct, granting leave to amend would have been futile. As the United States Supreme Court noted, disgruntled litigants who bring suits against judges are apt to make serious allegations to sustain the action, but such suits cannot be allowed to survive:

---

[22]    At the hearing on the demurrer, the trial court noted that Mr. Rogozienski's complaint against Mr. Allen "in this case is that Mr. Allen supposedly committed some impropriety while he was acting as a temporary judge in [Mr. Rogozienski's] divorce case. . . ." (Reporter's Transcript, p. 12, ll. 24-26.)

39

**EXHIBIT 2 PAGE 687**

LOVE01062

If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away. <u>Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action.</u> (Emphasis added.)

<u>Bradley v. Fisher,</u> <u>supra,</u> 80 U.S. at p. 348.

The trial court properly exercised its discretion in denying leave to amend as there was no possibility that Mr. Rogozienski could state any claims to defeat the judicial immunity doctrine.

## V.

## CONCLUSION

The trial court did not err in sustaining the demurrer without leave to amend and entering judgment in favor of Mr. Allen. Centuries old established law and compelling public policies underlying judicial immunity require protection for judicial officers, including temporary judges, from civil suits based upon alleged judicial misconduct. Private litigants are afforded lawful proceedings to present their grievances against judicial officers and to obtain relief from improper rulings. However, the law prohibits litigants from

40

**EXHIBIT 2 PAGE 688**

LOVE01063

pursuing civil actions against judicial officers. The trial court's order and

judgment should be affirmed.

Dated: August **25**, 2006      ENGLISH & GLOVEN
                                    A Professional Corporation


                                    By: *Donald English*
                                         Donald A. English
                                         Christy I. Yee
                          Attorneys for Respondent
                          James D. Allen

41

EXHIBIT 2 PAGE 689

LOVE01064

## CERTIFICATE OF COMPLIANCE

Pursuant to rule 14(c) of the California Rules of Court, I hereby certify that this brief contains 8,942 words, including footnotes. In making this certification, I have relied on the word count of the computer program used to prepare the brief.

Dated: August 25, 2006

Donald A. English

42

**EXHIBIT 2 PAGE 690**

LOVE01065

## DECLARATION OF SERVICE BY U.S. MAIL

<u>Frank E. Rogozienski v. James D. Allen, et al.</u>
Court of Appeal No. D047858
Superior Court No. GIC843843

    I, Antoniette Jennings, declare as follows:

    At the time of service, I was at least 18 years of age and not a party to this legal action. I am employed in the county where the within-mentioned service occurred. My business address is 550 West "C" Street, Suite 1800, San Diego, California 92101.

    On August 25, 2006, I served the following documents:

**Respondent James D. Allen's Respondent's Brief**

on the below named person(s) by United States mail as follows:

Frank E. Rogozienski, Esq.    Attorneys for Appellant
Frank E. Rogozienski, Inc.
1660 Union Street, Third Floor
San Diego, CA 92101

Daniel M. White, Esq.    Attorneys for Respondent
Steven G. Amundson, Esq.    S. Michael Love
White & Oliver, A.P.C.
550 West C Street, Suite 950
San Diego, CA 92101

California Supreme Court
350 McAllister Street
San Francisco, CA 94102
(4 copies of brief)

Clerk, Appeals Section
San Diego Superior Court
Central Division
220 West Broadway, Room 3005
San Diego, CA 92101

1

**EXHIBIT 2 PAGE 691**

LOVE01066

## DECLARATION OF SERVICE BY U.S. MAIL

<u>Frank E. Rogozienski v. James D. Allen, et al.</u>
Court of Appeal No. D047858
Superior Court No. GIC843843

  I sealed each envelope and, with postage thereon fully prepaid, placed each for deposit in the United States Postal Service, this same day, at my business address shown above, following ordinary business practices.  I am readily familiar with the business practices for collecting and processing of correspondence and pleadings for mailing with the United States Postal Service; and that the correspondence and pleadings shall be deposited with the United States Postal Service this same day in the ordinary course of business.

  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  Executed this ____ day of August, 2006 at San Diego, California.


_____
Antoniette Jennnings


2

**EXHIBIT 2 PAGE 692**

LOVE01067



RECEIVED

AUG 2 8 2006

WHITE & OLIVER
550 West "C" St., Suite 950
San Diego, CA 92101

**EXHIBIT 2 PAGE 693**

LOVE01068

LOVE01069

COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT—DIVISION ONE

| | |
|---|---|
| FRANK E. ROGOZIENSKI, | 4th Civil № D047858 |
| Plaintiff and Appellant, | SDSC Case № GIC843843 |
| v. | |
| JAMES D. ALLEN and S. MICHAEL LOVE, | |
| Defendants and Respondents. | |

ON APPEAL FROM THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN DIEGO
THE HONORABLE JOAN M. LEWIS, JUDGE PRESIDING

## RESPONDENT'S BRIEF OF S. MICHAEL LOVE

Daniel M. White, Bar No. 068011
Steven G. Amundson, Bar No.073501
WHITE & OLIVER
550 West C Street—Suite 950
San Diego, California 92101
Phone: 619.239.0300
Fax: 619.239.0344
Attorneys for
Defendant/Respondent
S. Michael Love

**EXHIBIT 2 PAGE 694**

LOVE01070

## COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT—DIVISION ONE

| | |
|---|---|
| FRANK E. ROGOZIENSKI,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JAMES D. ALLEN and S. MICHAEL LOVE,<br><br>Defendants and Respondents. | 4th Civil № D047858<br><br>SDSC Case №<br>GIC843843 |

ON APPEAL FROM THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN DIEGO
THE HONORABLE JOAN M. LEWIS, JUDGE PRESIDING

---

### RESPONDENT'S BRIEF OF S. MICHAEL LOVE

---

Daniel M. White, Bar No. 068011
Steven G. Amundson, Bar
No.073501
WHITE & OLIVER
550 West C Street—Suite 950
San Diego, California 92101
Phone: 619.239.0300
Fax: 619.239.0344
Attorneys for
Defendant/Respondent
S. Michael Love

**EXHIBIT 2 PAGE 695**

LOVE01071

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................... 1

II. STATEMENT OF THE CASE ......................... 4
      A.   The Conduct as Alleged. ...................... 4
      B.   The Causes of Action in the FAC. ............... 5
      C.   The Demurrers to Frank's FAC and the Judgment of
           Dismissal. ............................... 8

III. THE STANDARD OF REVIEW ..................... 10

IV.   THE TRIAL COURT DID NOT ABUSE ITS DISCRETION
      IN SUSTAINING LOVE'S DEMURRERS TO EACH
      CAUSE OF ACTION WITHOUT LEAVE TO AMEND.
      ............................................ 12
      A. The Twelfth Cause of Action for Negligence. ........ 12
      B.   The Eleventh Cause of Action for "Willful
           Misconduct." ............................... 18
      C.   The Seventh Cause of Action for Civil Rights
           Violations. ................................. 19
      D.   The Eighth Cause of Action for "Deceit Fraudulent
           Concealment." .......................... 22
      E.   The First and Second Causes of Action for Intentional
           Interference with Contractual Relations. ......... 27
          1.   The First Cause of Action Did Not Include
              Allegations and Could Not Have Included
              Allegations of Existing Contractual Relations With
              Which the "Gift" Could Have Interfered. ...... 27
          2.   The Second Cause of Action Did Not Include
              Allegations and Could Not Have Included
              Allegations of an Existing Contractual Relation
              With Which the "Gift" Could Have Tortiously
              Interfered. ............................... 30
      F.   The Third, Fourth Fifth and Sixth Causes of Action for
           Intentional and Negligent Interference with
           Prospective Economic Advantage. ............ 33
          1.   All Four Causes of Action Fail for Lack of a
              Relationship from which It was Probable Frank

71840.1

i

**EXHIBIT 2 PAGE 696**

LOVE01072

Would Realize Any Economic Benefit. . . . . . . 34

2.  The Third and Fourth Causes of Action also Failed Because the Claimed Violation of RPC 5-300(A) Does Not Constitute the Essential Independent Wrongful Conduct. . . . . . . . . . . . . . . . . . . . . . . 35

3.  The Fifth and Sixth Causes of Action Fail Because the Alleged Violation of RPC 5-300(A) Cannot Constitute the Breach of a "Duty" Necessary for Such Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

G.  The Tenth Cause of Action for Unfair Competition Against Love. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

H.  The Thirteenth Cause of Action for "Unjust Enrichment" as Against Love. . . . . . . . . . . . . . . . 39

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**EXHIBIT 2 PAGE 697**

L0VE01073

## TABLE OF AUTHORITIES

Page(s)

### CASES:

*Academy of California Optometrists*
(1975) 51 Cal.App.3d 999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Blank v. Kirwan*
(1985) 39 Cal.3d 311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Calistoga Civic Club v. Calistoga*
(1983) 143 Cal.App.3d 111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Camsi VI v. Hunter Technology Corp.*
(1991) 230 Cal.App.3d 1525 . . . . . . . . . . . . . . . . . . . . . . . . 12, 22

*Chronometrics, Inc. v. Sysgen*
(1980) 101 Cal.App.3d 597 . . . . . . . . . . . . . . . . . . . . . . . . . : . . . 17

*Della Penna v. Toyota Motors Sales*
(1995) 11 Cal.4th 376 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 35

*Goodman v. Kennedy*
(1976) 18 Cal.3d 335 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22

*Herron v. State Farm Mutual Ins. Co.*
(1961) 56 Cal.3d 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Jones v. Kmart Corp.*
(1998) 17 Cal.4th 329 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : . . 21

*J'aire Corp. v. Gregory*
(1979) 24 Cal.3d 799 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Klemm v. Superior Court*
(1977) 75 Cal.App.3d 893 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Korea Supply Co. v. Lackey Martin Co.*
(2003) 29 Cal.4th 1134 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*LiMandri v. Judkins*
(1997) 52 Cal.App.4th 326 . . . . . . . . . . . . . . . 23-26, 31, 32, 35-37

*Noble v. Sears, Roebuck & Co.*
(1973) 33 Cal.App.3d 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Pacific Gas & Electric Co. v. Bear Stearns & Co.
(1990) 50 Cal.3d 1118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Ross v. Creel Printing & Publishing Co.*
(2002) 100 Cal.App.4th 736 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Schonfeldt v. State of California*
(1998) 61 Cal.App.4th 1462 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Shifando v. City of Los Angeles*
(2003) 31 Cal.4th 1074 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Whilhelm v. Pray, Price, Williams & Russell*
(1986) 186 Cal.App.3d 1324 . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Youst v. Longo*
(1987) 43 Cal.3d 64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34


CALIFORNIA STATUTES:

California Code of Civil Procedure section 472c(a) . . . . . . . . . . . 10

Business & Professions Code section 17203 . . . . . . . . . . . . . . . . . 38

Business & Professions Code section 17200 *et seq.* . . . . . . . . . . 7, 38

California Civil Code section 52.1 . . . . . . . . . . . . . . . . . . . . . 20, 21

California Civil Code section 52.1(b) . . . . . . . . . . . . . . . . . . . . 7, 20

California Rule of Court 444(c) . . . . . . . . . . . . . . . . . . . . . . . . . 22

Civil Code section 1709 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

LOVE01075

<u>CALIFORNIA RULES OF PROFESSIONAL CONDUCT</u>:

Rule of Professional Conduct 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Rule of Professional Conduct 2-111(A)(2) . . . . . . . . . . . . . . . . . . . 17

Rule of Professional Conduct 5-102 . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rule of Professional Conduct 5-220 . . . . . . . . . . . . . . . . . . . . . . . . . 23

Rule of Professional Conduct 5-300(A)

. . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9, 12-15, 17-19, 21, 24-26, 35-37

Rule of Professional Conduct 7-103 . . . . . . . . . . . . . . . . . . . . . . 16, 17

Rule of Professional Conduct 1-100(a) . . . . . . . . . . . . . . . . . . 14, 36


<u>FEDERAL STATUTES</u>:

42 U.S.C. section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20


<u>FEDERAL CASES</u>:

*Jenkins v. MCI Telecommunications Corp.*
     (C.D. Cal. 1997) 974 F.Supp. 1133 . . . . . . . . . . . . . . . . . . . . . . 20

*Dennis v. Sparks*
     (1980) 449 U.S. 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

LOVE01076

COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT—DIVISION ONE

| | |
|---|---|
| FRANK E. ROGOZIENSKI, | 4th Civil № D047858 |
| Plaintiff and Appellant, | |
| | SDSC Case № |
| v. | GIC843843 |
| JAMES D. ALLEN and S. MICHAEL LOVE, | |
| Defendants and Respondents. | |

ON APPEAL FROM THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN DIEGO
THE HONORABLE JOAN M. LEWIS, JUDGE PRESIDING

## RESPONDENT'S BRIEF OF S. MICHAEL LOVE

## I. INTRODUCTION

Appellant Frank Rogozienski ("Frank"[1]) appeals from the judgment

entered against him after separate and independent demurrers, brought by

each of the defendants and respondents S. Michael Love ("Love") and

James D. Allen ("Allen"), were sustained without leave to amend.  Love

represented Shirley Rogozienski ("Shirley"), Frank's ex-wife, for a number

---

[1]
 Frank Rogozienski and Shirley Rogozienski will be referred to by first name, as is
accepted practice in dissolution proceedings, to avoid confusion. The prior action out
of which this arises is a dissolution proceeding.

---

71840.1                            1                    **EXHIBIT 2 PAGE 701**

LOVE01077

of years in a dissolution proceeding between Frank and Shirley which commenced in 1997. Allen served for a period as a stipulated acting judge in that dissolution proceeding.

Frank attempted to plead twelve separate cognizable tort causes of action as against Love, all arising out of a claim that Love violated California Rule of Professional Conduct ("RPC") 5-300(A) during that dissolution proceeding, when Love allegedly gave Allen an ownership interest in Warner Springs Ranch (the "gift").[2] Frank acknowledged in his First Amended Complaint ("FAC") that there was "some doubt as to whether he [was] entitled to redress from all the Defendants or from one or more of them . . .." FAC ¶ 8, Vol. I, Appellant's Appendix of Pleadings, p. 14 ("I AA 14"). Frank's doubts as to his highly questionable legal claims in this action were confirmed. The trial court held that Frank failed to allege sufficient facts under any of the various tort claims he plead, all of which were dependent upon the claimed violation of RPC 5-300(A), and sustained the demurrers to each without leave to amend.

This court and the trial court previously granted separate relief to Frank in the ongoing dissolution proceeding between Frank and Shirley, which relief Frank also sought based on Love's claimed violation of RPC 5-

---

[2]
 There has never been an adjudication in any forum whether there was a "gift" or whether Love violated RPC 5-300(A), both of which he denies.

LOVE01078

300(A).  On October 8, 2003, this court granted Frank's writ of error *coram vobis*, by which he sought to set aside certain of Allen's rulings and orders in the dissolution proceeding. *Rogozienski v. Superior Court*, Case No. D042201.  The Superior Court then heard Frank's motion and granted specified relief, setting aside certain rulings and orders made by Allen before the alleged "gift."  October 20, 2004, Statement of Decision in *Rogozienski v. Rogozienski*, San Diego Superior Court Case No.: D440154. I AA 72-83.  On March 8, 2006, this court granted additional relief on Frank's subsequent writ of error *coram vobis*, and held that the trial court erred in not also setting aside the decisions of Allen prior to the "gift." *Rogozienski v. Rogozienski* (2006) Case No. D041355 and Case No. D045626.

     Frank separately filed this civil action against Love and Allen, attempting to state a host of tort claims for damages for breaches of duties allegedly owed to him in the dissolution proceeding.  The trial court properly found that Love had no duty to Frank under any of the various causes of action, and that Frank had not alleged and could not amend to allege any of the various causes of action.  Frank was given every opportunity to explain to the trial court how he believed he could successfully amend.  II AA p. 47.  Frank declined the opportunity to do so before the trial court (Reporter's Transcript ("RT"), September 9, 2005, p.

71840.1

3

**EXHIBIT 2 PAGE 703**

L0VE01079

31, l. 15-p. 32, l. 4), and has not attempted to do so in his brief on this

appeal. Appellant's Opening Brief ("AOB").

## II. STATEMENT OF THE CASE

### A.    The Conduct as Alleged.

As alleged in the FAC, Frank and Shirley were married in 1982. In

October 1997, Shirley brought a dissolution action in which Love

represented her. Love represented her in that dissolution proceeding until

February 2005. FAC ¶ 9, I AA 14. In June 1998, Frank and Shirley entered

into a written agreement for Allen to act as temporary judge in the

dissolution action, the costs to be split. FAC ¶ 10, I AA 15. Allen served in

that capacity until he withdrew on March 27, 2003. FAC ¶ 10, I AA 15.

Allen was friends with attorney Harold Bottomley, a former

associate in Allen's firm. FAC ¶ 11, I AA 15-16. Bottomley was interested

in acquiring a membership in Warner Springs Ranch, and Allen also

became interested. FAC ¶ 15, I AA 17. Love had two separate half-interest

memberships in Warner Springs, which he was not using and no longer

wanted. FAC ¶ 17, I AA 18. In February 2002, Love quit-claimed the two

interests to Bottomley, who in turn quit-claimed one of them to Allen. FAC

¶ 24-25, I AA 21-22. Neither Allen nor Love disclosed this to Frank. FAC

¶ 36, I AA 25. Allen made decisions in the dissolution action both before

and after this "gift" occurred. FAC ¶ 37-38, I AA 26.

---

**EXHIBIT 2 PAGE 704**

LOVE01080

The rulings and orders of Allen subsequent to the "gift" were set aside before this action was commenced. FAC ¶ 43, I AA 28. (The decisions of Allen in the dissolution prior to the gift have since been set aside. *Rogozienski v. Superior Court* (2006) Court of Appeal, Fourth District, Division One, No. D041355 and No. D045626. AOB, p. 21, fn. 8.

B.    **The Causes of Action in the FAC.**

In the FAC, Frank attempted to state multiple tort causes of action against Love:

1-2:    The first and second causes of action allege intentional interference with existing contractual relations, the first against both Allen and Love, and the second against Love alone. I AA 30-33. The contractual relations which are the subject of the first cause of action, with which the "gift" allegedly interfered, were: (1) contractual relationships between Frank and Shirley, including a prenuptial agreement and agreements for ownership of property (FAC ¶ 52, I AA 31); (2) contractual relationships between Frank and Qualcomm relating to Frank's stock or stock options (FAC ¶ 53, I AA 31); and (3) a contractual relationship for attorney's fees between Frank and the attorney representing him in the dissolution proceeding brought against him by Shirley (FAC ¶

54, I AA 31). The contractual relation which is the subject of the second cause of action, against Love alone with which the "gift" allegedly interfered, was Frank's agreement to pay Allen one-half his fees for service as judge in the dissolution proceeding. FAC ¶ 61, I AA 32.

3-4. The third and fourth causes of action allege intentional interference with prospective economic advantage, the third against both Allen and Love and the fourth only against Love. I AA 34-35. The prospective economic advantages which were allegedly to accrue to Frank, and are the subject of the third cause of action, were the same three existing economic relationships identified in the first cause of action. The economic relationship which is the subject of the fourth cause of action was the same as in the second, Frank's agreement to pay one-half of Allen's fees. I AA 33-34.

4-6: The fifth and sixth causes of action allege negligent interference with prospective economic advantage as a result of the "gift." I AA 35-37. The fifth cause of action alleges interference by both Allen and Love with the same three economic relationships which were identified in the first cause of action. FAC ¶ 84, I AA 36. The sixth cause of

action alleges that Love negligently interfered with the probable future economic benefit Frank was somehow to obtain from Frank's economic relationship with Allen, the agreement to pay one-half of Allen's fee for Allen's work as a temporary judge. FAC ¶ 92, I AA 37.

7:    The seventh cause of action alleges civil rights violations by Allen and Love, who "interfered or attempted to interfere by coercion" with Frank's exercise of his right to a fair trial in the dissolution proceeding because of the "gift." FAC ¶ 99, I AA 38. Frank specified in his opposition to Love's demurrer to the FAC that this claim was based only on alleged violation of his rights under California Civil Code section 52.1(b), and specifically not under 42 U.S.C. section 1983. I AA 257.

8:    The eighth cause of action alleges fraudulent concealment by both Love and Allen, for failure to disclose to Frank the "gift" of the half-interest in Warner Springs Ranch. I AA 39-40.

9:    The ninth cause of action alleges breach of contract against Allen only. I AA 40-41.

10:    The tenth cause of action alleges unfair competition against Love, for violation of California Business & Professions Code section 17200 et seq., unfair competition against Frank

**EXHIBIT 2 PAGE 707**

LOVE01083

by the "gift" from Love to Allen during Love's representation

of Shirley in her dissolution action against Frank. I AA 41-

42.

11:     The eleventh cause of action is an unidentified tort for

"willful misconduct and intentional infliction of injury," also

against Love for violation of California Rule of Professional

Conduct 5-300(A) by the "gift." FAC ¶ 121, I AA 42-44.

12:     The twelfth cause of action alleges negligence against both

Allen and Love, for breaches of their duties as members of

the State Bar of California, by the making of the "gift" to

Allen and the failure to disclose it to Frank. FAC ¶ 132, I AA

45-46.

13:     The thirteenth cause of action seeks unjust enrichment from

both Allen and Love as "constructive trustees" of unspecified

property. I AA 46.

**C.     The Demurrers to Frank's FAC and the Judgment of Dismissal.**

Love demurred to each of the causes of action Frank alleged against

him, (I AA 51-83), as did Allen on separate and independent grounds. I AA

85-244. Frank opposed Love's demurrer (II AA 245-262), and Allen's

demurrer. I AA 263-275. Frank argued that Love, as the attorney for

Shirley in the underlying dissolution proceeding, owed duties to him under

---

71840.1                              8                    **EXHIBIT 2 PAGE 708**

LOVE01084

RPC 5-300(A) and otherwise, such that each of his attempted causes of

action adequately plead facts sufficient to support the various tort causes of

action as well as the claims for relief where no tort was identified.  In his

opposition to Love's demurrer, Frank requested opportunity for leave to

amend if the demurrers were going to be sustained, but was silent as to how

he might amend as to any of the causes of action consistent with the theory

of the case as he had plead it.  I AA 262, ll. 15-16.  Love and Allen each

filed replies to Frank's oppositions to their respective demurrers.  II AA

338-348, II AA 349-438.

       Prior to oral argument, the trial court issued its tentative ruling.  II

AA 446-447.  The court's tentative ruling was to sustain Love's demurrers

and Allen's demurrers to each of the causes of action against them.  In

addition the trial court stated:

> The Court is inclined to sustain the demurrer
> without leave to amend as it is not persuaded
> that Plaintiff will be able to plead facts to state a
> cause of action against this Defendant.
> However, at the time of oral argument the Court
> would entertain argument as to whether leave to
> amend should be given.  II AA 447.

       Oral argument was held on September 2, 2005.  Reporter's

Transcript ("RT") September 2, 2005.  As stated by the trial court:

> As to Mr. Love and the cause of action brought
> against Mr. Love, after hearing further
> argument again and listening to both counsel, or
> Mr. Rogozienski and Mr. White - and the

71840.1                                    9                    **EXHIBIT 2 PAGE 709**

L0VE01085

concern that I had initially in looking at this had
to do with the, the duty aspect - I don't believe
Mr. Rogozienski, that you have provided the
court any additional information that helps in
making a decision that this matter as to Mr.
Love should be sustained with leave to amend.

I don't believe that there are any circumstances
that could be added in this complaint that would
conclude that a duty was owed to you by Mr.
Love. And again, as to each and every cause of
action, the demurrer by Mr. Love is sustained
without leave to amend. RT 31:24-32:4.

Frank had made no effort in his opposition to Love's demurrer or at

oral argument to suggest any proposed amendment(s). RT 31:15-16. The

order sustaining the demurrers of both Love and Allen without leave to

amend was filed October 19, 2005. II AA 448-454. The judgment of

dismissal was filed October 19, 2005. II AA 455-458.

### III. THE STANDARD OF REVIEW

The question on this appeal by Frank from the judgment of dismissal

in favor of Love is whether or not the trial court abused its discretion when

it sustained Love's demurrer as to each of Frank's causes of action against

him without leave to amend. California Code of Civil Procedure section

472c(a). When a demurrer is sustained without leave to amend, the

reviewing court decides "whether there is a reasonable possibility that the

defect can be cured by amendment: if it can be, the trial court has abused its

discretion and we reverse; if not, there has been no abuse of discretion and

---

71840.1                              10                    **EXHIBIT 2 PAGE 710**

we affirm. The burden of proving such reasonable possibility is squarely on the plaintiff." *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (citations omitted); *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.

In *Goodman v. Kennedy* (1976) 18 Cal.3d 335, Goodman and others sought damages from attorney Kennedy for losses they incurred on certain shares of stock purchased from Kennedy's clients, who were officers of the corporation issuing the stock. The trial court sustained attorney Kennedy's demurrer to plaintiffs' third amended complaint without leave to amend, and plaintiffs appealed from the ensuing judgment of dismissal. The legal question on appeal was "whether or under what circumstances an attorney's duty of care in giving legal advice to a client extends to persons with whom the client in acting upon the advice deals wholly at arms length." Id. at 339.

The California Supreme Court in *Goodman* found that under the circumstances alleged there, the defendant attorney had no duty of disclosure to the non-client plaintiffs. The Supreme Court also considered whether plaintiffs should have been given an opportunity to amend their pleadings to allege, if they could, facts sufficient to cure the defects in their attempts to state causes of action for fraud. The Supreme Court held:

> However, the burden is on the plaintiff to demonstrate that the trial abused its discretion. Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. Id. at 349 (citations omitted).

LOVE01087

The burden and standard of review were further explained by the California appellate court in *Camsi VI v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525:

> But in any event no abuse of discretion should be found where there is no material dispute as to the facts, the applicable law is clear, and under the facts and the law the plaintiff cannot prevail: In such a case, "[o]bviously, no amendment would change the result." Id. at 1539 (citations omitted).

Even assuming the facts as alleged in Frank's FAC are true, Love submits that Frank did not state and could not amend sufficient to state any of his attempted causes of action against Love for the conduct or failures alleged. "If there is no liability as a matter of law, leave to amend should not be granted." *Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462, 1465. Love had no duty to Frank related to the "gift," and the claimed violation of RPC 5-300(A) did not give rise to any separate tort claim in favor of Frank.

### IV. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN SUSTAINING LOVE'S DEMURRERS TO EACH CAUSE OF ACTION WITHOUT LEAVE TO AMEND.

#### A. The Twelfth Cause of Action for Negligence.

Love will address the propriety of the trial court's rulings as to each cause of action against Love in the order presented by Frank in the AOB.

---

LOVE01088